1

**IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND**

2

3    MARYLAND SHALL ISSUE, INC.
     9613 Harford Rd., Ste C #1015
4    Baltimore, Maryland 21234-2150

5    ENGAGE ARMAMENT LLC
     701 E. Gude Dr., Ste 101,
6    Rockville, Maryland 20850

7    ANDREW RAYMOND                                    Case No.:
     14819 Poplar Hill Rd
8    Darnestown MD 20874

9
     CARLOS RABANALES
10   7727 Green Valley Rd,
     Frederick, Maryland 21701                         JURY DEMANDED

11
     BRANDON FERRELL
12   40 Mountain Laurel Court
     Gaithersburg, Maryland 20879
13

14
     DERYCK WEAVER
15   8712 Lowell Street
     Bethesda, Maryland 20817
16

17   JOSHUA EDGAR
     8416 Flower Hill Terr.
18   Gaithersburg Maryland 20879

19   I.C.E. FIREARMS & DEFENSIVE
20    TRAINING, LLC,
     24129 Pecan Grove Lane
21   Gaithersburg, Maryland 20882

22   RONALD DAVID
23   24129 Pecan Grove Lane
     Gaithersburg, Maryland 20882
24

25   NANCY DAVID
     24129 Pecan Grove Lane
26   Gaithersburg, Maryland 20882

27       *Plaintiffs,*

28                                        1

v.

**MONTGOMERY COUNTY,**
 **MARYLAND**
**101 Monroe Street**
**Rockville, Maryland 20850**

*Defendant.*

**SERVE:**
**Marc P. Hansen, Esq.**
**County Attorney,**
**Montgomery County, MD**
**101 Monroe Street, 3rd floor**
**Rockville, Maryland 20850**

*Service Agent for Defendant.*

---

**VERIFIED COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF**
**AND FOR COMPENSATORY DAMAGES, NOMINAL DAMAGES, PUNITIVE**
**DAMAGES AND ATTORNEY'S FEES**

COME NOW, the Plaintiffs, through counsel, and sue the Defendant, and for cause state as

follows:

**INTRODUCTION**

1.      On April 16, 2021, the Defendant, Montgomery County, Maryland ("the County")

signed into law Bill 4-21, a copy of which is attached to this complaint as Exhibit A. Bill 4-21 becomes

effective on July 16, 2021. Through the enactment of County ordinance 4-21, the County has

unlawfully exceeded its powers and jurisdiction to criminally regulate the possession and transfer of

lawfully owned firearms in a way that is in direct conflict with Article XI–E, § 3 of the Maryland

Constitution and in a manner that is inconsistent with multiple existing Maryland statutes. The

restrictions enacted by Bill 4-21 violate the Maryland Takings Clause, Article III § 40 and the Due Process Clause of Article 24 of the Maryland Declaration of Rights by depriving plaintiffs of their vested property rights in the personal property regulated by Bill 4-21. The ban on the mere possession or dissemination of computer code imposed by Bill 4-21 violates the First Amendment to the United States Constitution. The hopelessly vague language adopted by Bill 4-21 violates the Due Process Clause of the Fourteenth Amendment and the Due Process Clause of Article 24 of the Maryland Declaration of Rights. Pursuant to 42 U.S.C. § 1983, Plaintiffs seek declaratory and injunctive relief and compensatory damages, including nominal damages, for the violations of their Federal constitutional rights, as alleged below. Plaintiffs further seek an award of attorneys' fees under 42 U.S.C. § 1988, in an amount to be determined, for the violations of their Federal constitutional rights, as alleged below. Plaintiffs seek declaratory and injunctive relief on their State Constitutional and statutory law claims.

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction over this matter pursuant to MD Code, Courts and Judicial Proceedings, § 1-501, and MD Code, Courts and Judicial Proceedings, § 3-403, as this complaint seeks prospective declaratory and injunctive relief damages, attorneys' fees pursuant to 42 U.S.C. § 1988, and other relief afforded by 42 U.S.C. § 1983. This complaint raises both state law claims as well as claims arising under the United States Constitution. This declaratory judgment action is brought pursuant to MD Code, Courts and Judicial Proceedings § 3-406, and MD Code, Courts and Judicial Proceedings, § 3-409, for the purpose of determining questions of actual controversy between the parties and terminating uncertainty and controversy giving rise to this proceeding. Plaintiffs request a speedy hearing of this action in accordance with MD Code, Courts and Judicial Proceedings, § 3-409(e).

3.      Venue is properly in this Court in this matter pursuant to MD Code, Courts and Judicial Proceedings, § 6-201, as the defendant resides, carries on a regular business and maintains its principal offices in Montgomery County, Maryland. Montgomery County is named as a defendant and is a necessary party to this action under MD Code, Courts and Judicial Proceedings, § 3-405(b).

## MONTGOMERY COUNTY BILL 4-21

4.      In relevant part, Bill 4-21 amends several sections of Chapter 57 of the Montgomery County Code ("County Code"). Specifically, Bill 4-21 amends Section 57-1, to broaden the definition of a "gun or firearm" to include "**a ghost gun**" and, in addition, to provide the following new definitions (additions enacted by Bill 4-21 are **bolded**, portions of existing law that are deleted by Bill 4-21 are in *brackets and italics*):

a. A "**3D printing process**" is defined as "**a process of making a three-dimensional, solid object using a computer code or program, including any process in which material is joined or solidified under computer control to create a three-dimensional object;**"

b. A "**ghost gun**" is defined as "**a firearm, including an unfinished frame or receiver, that lacks a unique serial number engraved or cased in metal alloy on the frame or receiver by a licensed manufacturer, maker or importer under federal law or markings in accordance with 27 C.F.R. § 479.102. It does not include a firearm that has been rendered permanently inoperable, or a firearm that is not required to have a serial number in accordance with the Federal Gun Control Act of 1968;**"

c. The term "**Undetectable gun**" is defined as:

**(A) a firearm that, after the removal of all its parts other than a major component, is not detectable by walk-through metal detectors commonly used at airports or other public buildings;**

4

(B) a major component that, if subjected to inspection by the types of detection devices commonly used at airports or other public buildings for security screening, would not generate an image that accurately depicts the shape of the component; or

C) a firearm manufactured wholly of plastic, fiberglass, or through a 3D printing process.

d. A "**Major component**" is defined as "**with respect to a firearm: (1) the slide or cylinder or the frame or receiver; and (2) in the case of a rifle or shotgun, the barrel;**"

e. A "Place of public assembly" is defined as **a place where the public may assemble, whether the place is publicly or privately owned, including a** *[government owned]* park *[identified by the Maryland-National Capital Park and Planning Commission]*; place of worship; [elementary or secondary] school; *[public]* library; *[government-owned or -operated]* recreational facility; **hospital; community health center; long-term facility**; or multipurpose exhibition facility, such as a fairgrounds or conference center. A place of public assembly includes all property associated with the place, such as a parking lot or grounds of a building.

5.      Bill 4-21 amends Section 57-7 of the County Code to provide (new additions in bold):

(c) A person must not give, sell, rent, lend, or otherwise transfer to a minor:

(1) a ghost gun or major component of a ghost gun;

(2) an undetectable gun or major component of an undetectable gun; or

(3) a computer code or program to make a gun through a 3D printing process.

(d) A person must not purchase, sell, transfer, possess, or transfer a ghost gun, including a gun through a 3D printing process, in the presence of a minor.

(e) A person must not store or leave a ghost gun, an undetectable gun, or a

major component of a ghost gun or an undetectable gun, in a location

that the person knows or should know is accessible to a minor.

6.      Bill 4-21 also amends 57-11 of the County Code to provide (new provisions added by Bill 4-21 are in **bold**, portions deleted by Bill 4-21 are in *brackets* and *italics*):

(a) [A] **In or within 100 yards of a place of public assembly, a** person must not:

(1) sell, transfer, possess, or transport **a ghost gun, undetectable gun,** handgun, rifle, or shotgun, or ammunition **or major component** for these firearms*[, in or within 100 yards of a place of public assembly]*; **or**

(2) **sell, transfer, possess, transport a firearm created through a 3D printing process.**

(b) This section does not:

* * * *;

(3) apply to the possession of a firearm or ammunition, **other than a ghost gun or an undetectable gun**, in the person's own home;

(4) apply to the possession of one firearm, and ammunition for the firearm, at a business by either the owner **who has a permit to carry the firearm,** or one authorized employee of the business **who has a permit to carry the firearm;**

(5) apply to the possession of a handgun by a person who has received a permit to carry the handgun under State law; or

(A) transported in an enclosed case or in a locked firearms rack on a motor vehicle, **unless the firearm is a ghost gun or an undetectable gun;** or

6

\* \* \* \*

7.      Bill 4-21 leaves unaltered the penalties for a violation of Chapter 57 of the County Code. Under Section 57-15 of the County Code, with an exception for violations of Section 5-8 not applicable here: "Any violation of this Chapter or a condition of an approval certificate issued under this Chapter is a Class A violation to which the maximum penalties for a Class A violation apply." Under Section 1-19 of the County Code, the maximum penalties applicable for a violation of the offenses created by Bill 4-21 are criminal penalties of a $1,000 fine and 6 months in jail. Under Section 1-20(c) of the County Code, "[e]ach day any violation of County law continues is a separate offense."

### STATE AND FEDERAL FIREARMS LAW

8.      Under Federal law, a person may legally manufacture a firearm for his own personal use. See 18 U.S.C. § 922(a). See *Defense Distributed v. Department of State*, 838 F.3d 451 (5th Cir. 2016). Under Maryland law, a person is likewise permitted to manufacture a firearm for her own personal use. Firearms manufactured for personal use are not required to be serialized or engraved with a serial number under Federal law or Maryland law.

9.      Under Federal law, 18 U.S.C. § 921(a)(3), "[t]he term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."

10.      Similarly, under Maryland law, MD Code, Public Safety, § 5-101(h)(1), a "firearm" is defined as "(i) a weapon that expels, is designed to expel, or may readily be converted to expel a projectile by the action of an explosive; or (ii) the frame or receiver of such a weapon." Maryland law

7

does not define "frame or receiver." Maryland law does not define or regulate the possession, sale or transfer of "major components" for firearms. Fully finished receivers are commonly sold with serial numbers already engraved in compliance with Federal law and such fully finished receivers may be lawfully assembled by law-abiding persons for personal use by obtaining other components that lawfully available and sold throughout the United States.

11.     Since 1968, the Federal Bureau of Alcohol, Tobacco and Firearms ("ATF") has defined a "receiver" as "[t]hat part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel." See 27 C.F.R. § 478.11; 33 Fed. Reg. 18558 (1968). Under ATF Guidance, an unfinished receiver that has not yet had "machining of any kind performed in the area of the trigger/hammer (fire-control) recess (or cavity)," is not considered to be a receiver and is thus not considered to be a firearm. ATF Firearms Technology Branch Technical Bulletin 14-01. Such firearms are sometimes informally called "80% receivers," depending on the extent to which milling has already occurred. While Bill 4-21 purports to regulate "major components" of firearms and defines major components to mean "(1) the slide or cylinder or the frame or receiver; and (2) in the case of a rifle or shotgun, the barrel," Bill 4-21 does not attempt to define "frame or receiver." Federal law does not require the manufacturer place any serial number on the slide or cylinder, or barrel, but rather requires that "an individual serial number" be placed on the "frame or receiver." 27 C.F.R. § 478.92(a)(1)(i). See also 27 C.F.R. § 479.102. Maryland law does not regulate the placement of serial numbers. A receiver that has been serialized by a federally regulated firearms manufacturer is treated as a "firearm" under Federal law and is thus subject to the fully panoply of Federal regulation, including the performance of a background check otherwise required by Federal law.

9.      Persons otherwise prohibited from owning firearms are still legally barred from the manufacture, transfer, or possession of modern firearms or modern ammunition, regardless of the method of manufacture. Such possession, actual or constructive, is a violation of 18 U.S.C. § 922(g), which is punishable by up to 10 years imprisonment under Federal law. See 18 U.S.C. § 924(a)(2). Possession of a firearm by a prohibited person is likewise a serious crime under Maryland law. See MD Code, Public Safety, § 5-101(g)(3), § 5-133(b)(1), § 5-205(b)(1).

10.     Under current Federal law, it is unlawful to "manufacture, import, sell, ship, deliver, possess, transfer, or receive" any firearm that is not "detectable" by a "Security Exemplar" or any "major component" of which does not show up accurately on airport x-ray machines. 18 U.S.C. § 922(p). A knowing violation of that prohibition is a Federal felony, punishable by five years of imprisonment and a fine. See 18 U.S.C. § 924(f). For these purposes, Federal law provides that "the term "Security Exemplar" means an object, to be fabricated at the direction of the Attorney General, that is-- (i) constructed of, during the 12-month period beginning on the date of the enactment of this subsection, 3.7 ounces of material type 17-4 PH stainless steel in a shape resembling a handgun; and (ii) suitable for testing and calibrating metal detectors." 18 U.S.C. § 922(p)(2)(C).

11.     Law-abiding Americans, including hobbyists, have lawfully manufactured firearms for personal use since before the Revolutionary War and that practice continues up to the present day. While there is no definitive count of such personal-use firearms, the total number of such firearms manufactured for personal use is undoubtedly in the hundreds of thousands and are in common use within the United States and Maryland. Such firearms manufactured for personal use include rifles and pistols and all such firearms successfully manufactured for personal use may be used for legitimate lawful purposes, including self-defense in the home. The Second Amendment to the United States Constitution guarantees a right to use firearms "for the core lawful purpose of self-defense."

9

*District of Columbia v. Heller*, 554 U.S. 570, 630 (2008). The Second Amendment protects arms that are "typically possessed by law-abiding citizens for lawful purposes." (Id. at 625).

12.     Under MD Code, Criminal Law, § 4-203(b)(3), Maryland law expressly permits a person to transport a handgun "on the person or in a vehicle while the person is transporting the handgun to or from the place of legal purchase or sale, or to or from a bona fide repair shop, or between bona fide residences of the person, or between the bona fide residence and place of business of the person, if the business is operated and owned substantially by the person if each handgun is unloaded and carried in an enclosed case or an enclosed holster." Such transport and carriage of long guns, such as rifles and shotguns, are permitted under Maryland law without restriction.

13.     Under MD Code, Criminal Law, § 4-203(b)(5), Maryland law expressly permits "the moving by a bona fide gun collector of part or all of the collector's gun collection from place to place for public or private exhibition if each handgun is unloaded and carried in an enclosed case or an enclosed holster." Such transport and carriage of long guns, such as rifles and shotguns, are permitted under Maryland law without restriction.

14.     Under MD Code, Criminal Law, § 4-203(b)(6), Maryland law expressly permits "the wearing, carrying, or transporting of a handgun by a person on real estate that the person owns or leases or where the person resides or within the confines of a business establishment that the person owns or leases." Such persons are not required to possess or obtain a Maryland carry permit under MD Code, Public Safety, § 5-306. There is no limitation on the number of handguns or types of ammunition that may be possessed, worn, carried or transported under this provision of Section 4-203(b)(6). Such transport, wear and carriage of rifles and shotguns in a person's residence or business are permitted under Maryland law without restriction.

15.    Under MD Code, Criminal Law, § 4-203(b)(7), Maryland law expressly permits "the wearing, carrying, or transporting of a handgun by a supervisory employee: (i) in the course of employment; (ii) within the confines of the business establishment in which the supervisory employee is employed; and (iii) when so authorized by the owner or manager of the business establishment." Such persons are not required to possess or obtain a Maryland carry permit under MD Code, Public Safety, § 5-306. There is no limitation on the number of handguns or ammunition that may be possessed, worn, carried or transported under this provision of Section 4-203(b)(7). There is no limitation on the number of supervisory employees whom the employer may authorize to carry a firearm under this section. Such transport, wear and carriage of rifles and shotguns by business employees are permitted under Maryland law without restriction.

16.    Under MD Code, Public Safety, § 5-133(d)(2)(i), a person under the age of 21 may temporarily transfer and possess a regulated firearm, including a handgun, if the person is "1. under the supervision of another who is at least 21 years old and who is not prohibited by State or Federal law from possessing a firearm; and 2. acting with the permission of the parent or legal guardian of the transferee or person in possession." Under MD Code, Public Safety, § 5-133(d)(2)(iv), a person under the age of 21 may temporarily transfer or possess a regulated firearm, including a handgun, if the person is "1. participating in marksmanship training of a recognized organization; and 2. under the supervision of a qualified instructor."

17. MD Code, Criminal Law, § 4-104, expressly permits a minor child under the age of 16 to have access to any firearm if that access "is supervised by an individual at least 18 years old" or if the minor child under the age of 16 has a certificate of firearm and hunter safety issued under § 10-301.1 of the Natural Resources Article. By necessary implication, access to a firearm by a minor child between the ages of 16 and 18 is permitted by Section 4-104 without restriction.

11

18.    The regulation of unserialized firearms is a matter of significant state-wide and national interest. In the 2021 General Assembly, ghost guns were addressed in three bills. Two bills, House Bill 638 and Senate Bill 624, would have imposed extensive regulation on the possession and transfer of ghost guns, but would have also afforded a path for existing owners to retain possession of their existing, unserialized firearms that they had lawfully manufactured for personal use. One bill, House Bill 1291, would have banned unserialized firearms manufactured for personal use completely. Similar legislation was proposed in the 2020 General Assembly session, with House Bill 910 and Senate Bill 958, and in the 2019 General Assembly session, with House Bill 740 and Senate Bill 882. House Bill 740 passed the House of Delegates in 2019, and it instructed the Maryland State Police to "develop a plan for a system in the State for the registration of firearms not imprinted with a serial number issued by a federally licensed firearms manufacturer or importer and submit a report describing the system . . . ." In the 2021 Session, provisions of House Bill 638 were incorporated into other legislation that had passed the Senate (Senate Bill 190), and that bill, as amended, passed the House Judiciary Committee and was reported to the floor of the House of Delegates, where it was further amended. That bill ultimately did not pass the House.

19. On May 7, 2021, the Attorney General announced that the Department of Justice, the Bureau of Alcohol, Tobacco and Firearms, would engage in new rule-making proceedings for the purpose of regulating the manufacture and transfer of "ghost guns." See Press Release, Justice Department Proposes New Regulation to Update Firearm Definitions Proposed Rule Seeks to Close "Ghost Gun" Loophole (available at https://bit.ly/3wceMr3). These proposed regulations have been published in the Federal Register. 86 Fed. Reg. 27720-10 (May 21, 2021). The proposed regulations would regulate manufacturers and dealers but would not limit or regulate the possession of unserialized firearms lawfully built by individuals for their own personal use. These proposed

12

regulations do not limit or regulate the sale or possession of receivers that are otherwise serialized in accordance with existing Federal law.

**MARYLAND CONSTITUTIONAL AND STATUTORY PREEMPTION PROVISIONS**

20.      Maryland law contains several preemption statutes that broadly preempt local jurisdictions from regulating firearms:

a. MD Code, Public Safety, § 5-104, provides that "[t]his subtitle supersedes any restriction that a local jurisdiction in the State imposes on a sale of a regulated firearm, and the State preempts the right of any local jurisdiction to regulate the sale of a regulated firearm."

b. MD Code, Public Safety, § 5-134(a), provides that "[t]his section supersedes any restriction that a local jurisdiction in the State imposes on the transfer by a private party of a regulated firearm, and the State preempts the right of any local jurisdiction to regulate the transfer of a regulated firearm."

c. MD Code, Public Safety, § 5-207(a), enacted into law in 2021 as part of House Bill 4, provides that "[t]his section supersedes any restriction that a local jurisdiction in the State imposes on the transfer by a private party of a rifle or shotgun, and the State preempts the right of any local jurisdiction to regulate the transfer of a rifle or shotgun."

d. MD Code, Criminal Law, § 4-209, provides:

(a) Except as otherwise provided in this section, the State preempts the right of a county, municipal corporation, or special taxing district to regulate the purchase, sale, taxation, transfer, manufacture, repair, ownership, possession, and transportation of:

(1) a handgun, rifle, or shotgun; and
(2) ammunition for and components of a handgun, rifle, or shotgun.

Exceptions

13

(b)(1) A county, municipal corporation, or special taxing district may regulate the purchase, sale, transfer, ownership, possession, and transportation of the items listed in subsection (a) of this section:

(i) with respect to minors;
(ii) with respect to law enforcement officials of the subdivision; and
(iii) except as provided in paragraph (2) of this subsection, within 100 yards of or in a park, church, school, public building, and other place of public assembly.

(2) A county, municipal corporation, or special taxing district may not prohibit the teaching of or training in firearms safety, or other educational or sporting use of the items listed in subsection (a) of this section.

For purposes of these preemption provisions, a "regulated firearm" includes any handgun. MD Code, Public Safety, § 5-101(r)(1). For purposes of these preemption provisions, the terms "handgun," "rifle," and "shotgun" are defined in MD Code, Criminal Law, § 4-201.

21. Section 6 of Chapter 13, of the 1972 Sessions Laws of Maryland provides: "That all restrictions imposed by the law, ordinances, or regulations of the political subdivisions on the wearing, carrying, or transporting of handguns are superseded by this Act, and the State of Maryland hereby preempts the right of the political subdivisions to regulate said matters." https://bit.ly/2SvsRkJ. This provision has been held to preclude the County from regulating the sale of ammunition in the County. See *Montgomery County v. Atlantic Guns, Inc.*, 302 Md. 540, 489 A.2d 1114 (1985).

22.   Montgomery County has chartered home rule under Article XI-A of the Maryland Constitution and, under that provision, the County is empowered to enact "local laws." Section 4 of Article XI-A of the Maryland Constitution states that "[a]ny law so drawn as to apply to two or more of the geographical subdivisions of this State shall not be deemed a Local Law, within the meaning of this Act." Article XI–E, § 6, of the Maryland Constitution provides that "[a]ll charter provisions, or amendments thereto, adopted under the provisions of this Article, shall be subject to all applicable laws enacted by the General Assembly." Under these provisions, Montgomery County is not

empowered to enact "general laws." Under Maryland law, a general law "deals with the general public welfare, a subject which is of significant interest not just to any one county, but rather to more than one geographical subdivision, or even to the entire state." *Steimel v. Board*, 278 Md. 1, 5, 357 A.2d 386, 388 (1976). Thus, "some statutes, local in form, have been held to be general laws, since they affect the interest of the whole state." *Cole v. Secretary of State*, 249 Md. 425, 434, 240 A.2d 272, 278 (1968). Similarly, "[a] law may be local in the sense that it operates only within a limited area, but general in so far as it affects the rights of persons without the area to carry on a business or to do the work incident to a trade, profession, or other calling within the area." *Dasch v. Jackson*, 170 Md. 251, 261, 183 A. 534, 538 (1936).

23.      Under the Maryland Express Powers Act, MD Code, Local Government, § 10-202(a), a "[a] county may enact local laws and may repeal or amend any local law enacted by the General Assembly on any matter covered by the express powers in this title." However, MD Code, Local Government, §10-206(a), provides that a county may pass an ordinance, resolution, or bylaw only if such laws are "not inconsistent with State law." Similarly, MD Code, Local Government, §10-206(b), provides that "[a] county may exercise the powers provided under this title only to the extent that the powers are not preempted by or in conflict with public general law." Under binding precedent, a local law is inconsistent with State law when the local law prohibits an activity which is permitted by State law, or permits an activity prohibited by state law. See *City of Baltimore v. Sitnick*, 254 Md. 303, 317, 255 A.2d 376, 382 (1969) ("a political subdivision may not prohibit what the State by general public law has permitted").

## PARTIES

**Plaintiffs:**

24      Plaintiff Maryland Shall Issue, Inc. ("MSI") is a Maryland corporation, located at 9613 Harford Rd., Ste C #1015, Baltimore, MD 21234-2150. MSI is an Internal Revenue Service certified Section 501(c)(4), non-profit membership organization with approximately 2000 members statewide. MSI is an all-volunteer, non-partisan organization dedicated to the preservation and advancement of gun owners' rights in Maryland. It seeks to educate the community about the right of self-protection, the safe handling of firearms, and the responsibility that goes with carrying a firearm in public. The purposes of MSI include promoting the exercise of the right to keep and bear arms; and education, research, and legal action focusing on the constitutional right to privately own, possess and carry firearms. MSI has one or more members who live and/or work in Montgomery County, and who possess "ghost guns" in their homes and/or in their businesses and engage in other conduct regulated by Bill 4-21. MSI has one or more members who live outside of Montgomery County but who travel to and/or work within Montgomery County. Each of the individual plaintiffs identified below are members of MSI. Among the membership of MSI are "qualified instructors" who engage in firearms training, including firearms instruction of minors.

25.      MSI filed extensive comments with Montgomery County, objecting to Bill 4-21 prior to its enactment. A true and correct copy of those comments are attached to this Complaint as Exhibit B. These comments were ignored by the County in enacting Bill 4-21 and omitted as part of the legislative packet made public by the County. As a participant in this process, MSI has a specialized interest in the subject matter addressed by Bill 4-21. The Bill, as enacted, burdens the ability of MSI members to keep and bear arms within Montgomery County, including firearms that are otherwise lawful in Maryland, but nonetheless are banned or restricted by Bill 4-21. MSI is thus aggrieved by

16

the passage of Bill 4-21. MSI has representational standing to sue on behalf its members who live in Montgomery County or who travel through Montgomery County or who otherwise are adversely affected by the County's unlawful actions.

26.     Plaintiff ENGAGE ARMAMENT LLC ("Engage"), is a Maryland corporation, and is located at 701 E. Gude Dr., Ste 101, Rockville, MD 20850, within Montgomery County. Pursuant to 18 U.S.C. § 923, Engage is a Type I and Type VII and Type X Federally licensed dealer and manufacturer of firearms and explosive devices at its current location. See 27 C.F.R. § 478.41 *et seq.* Pursuant to MD Code, Public Safety, § 5-106, Engage is a Maryland State licensed firearms dealer and is thus authorized by State law to engage "in the business of selling, renting or transferring regulated firearms." As part of its business, Engage manufactures firearm components, including receivers, and then assembles such components into finished firearms which it then sells, all in full compliance with Federal and State law. Engage is a dealer for machines and computer code for the manufacture of firearms by individuals for personal use. It regularly demonstrates such computer code to potential purchasers. From time to time, Engage stocks and sells unserialized items, which are not receivers under Federal law, but which can be lawfully machined and built into firearms by the purchaser for personal use. These otherwise lawful items are banned as "ghost guns" by Bill 4-21. As part of its business, Engage may transfer firearms in the presence of a minor who is accompanied by a parent. The business location of Engage is arguably within 100 yards of a "place of public assembly" as defined by Bill 4-21.

27.     Plaintiff Andrew Raymond is an individual co-owner of Engage, and resides in Montgomery County, Maryland. His residence in Darnestown, Maryland is within 100 yards of a public street. Plaintiff Raymond regularly conducts the business activities of Engage. He is the father of two minor children who reside with him at his residence in Montgomery County. He assembles

17

Firearms is arguably located within 100 yards of a "place of public assembly" as that term is defined in Bill 4-21. ICE Firearms provides instruction in the safe use of firearms.

33.     Plaintiff Ronald David is the owner and operator of ICE Firearms. He resides in Gaithersburg, Maryland and his home is arguably within 100 yards of a "place of public assembly" as that term is defined by Bill 4-21. He possesses computer code of the type regulated by Bill 4-21. He likewise possesses one or more receivers as defined and banned by Bill 4-21 as a "ghost gun." He is a "qualified handgun instructor" within the meaning of MD Code, Public Safety, § 5-101(q), and a National Rifle Association-certified Training Counselor in every shooting discipline.

34.     Plaintiff Nancy David resides in Gaithersburg, Maryland and her home is arguably within 100 yards of a "place of public assembly" as that term is defined by Bill 4-21. She possesses computer code of the type regulated by Bill 4-21. She is a "qualified handgun instructor" within the meaning of MD Code, Public Safety, § 5-101(q). She does not possess a Maryland carry permit.

**Defendant:**

35.     The Defendant is Montgomery County, Maryland, with its principal place and seat located in Rockville, Maryland. Montgomery County is a "person" for purposes of the relief sought by this suit within the meaning of MD Code, Courts and Judicial Proceedings, § 3-401.

## COUNT I – VIOLATIONS OF THE MARYLAND CONSTITUTION

36.     The Plaintiffs reallege and incorporate herein by reference all the foregoing allegations of this complaint.

37.     Bill 4-21 regulates "matters of significant interest to the entire state." *Cole v. Secretary of State*, 249 Md. 425, 434, 240 A.2d 272, 278 (1968). The General Assembly has repeatedly debated and introduced legislation, in both the House of Delegates and in the Senate, attempting to address the subject matters regulated by Bill 4-21. One such bill, House Bill 740, passed the House of

Delegates in 2019. This legislative activity is strong evidence that the matter is of general interest, thereby demonstrating that Bill 4-21 is not a local law within the meaning of Article XI–E, § 3 of the Maryland Constitution and is thus *ultra vires*. See *Allied Vending, Inc. v. City of Bowie*, 332 Md. 279, 631 A.2d 77 (1993).

38.     Bill 4-21 has redefined the "place of public assembly" to include "a place where the public may assemble, whether the place is publicly or privately owned, including a park; place of worship; school; library; recreational facility; hospital; community health center; long-term facility; or multipurpose exhibition facility, such as a fairgrounds or conference center." Such "place of public assembly includes all property associated with the place, such as a parking lot or grounds of a building."

39. Bill 4-21's definition of a "place of public assembly arguably encompasses every sidewalk, every restaurant, every coffee shop, and every private business in the entire County as all such locales may be places where the public "may" assemble either in the present or in the future. The term may even include private homes in so far as such homes "may" be used by two or more of the public from time to time in the present or in the future to "assemble." Bill 4-21 regulates the totality of Montgomery County. It would be, as a practical matter, impossible for any person to travel through Montgomery County without passing through an area within 100 yards of such locales now regulated by Bill 4-21. Allowing county governments to expand their regulatory powers in this manner will create a nightmarish hodgepodge of local laws that vary from county to county, from city to city and from town to town, all of which could impose criminal penalties of the sort imposed by Montgomery County under Bill 4-21. Bill 4-21 directly and adversely affects the rights of non-residents of Montgomery County "to carry on a business or to do the work incident to a trade, profession, or other calling within the area." *Dasch v. Jackson*, 170 Md. 251, 261, 183 A. 534, 538

(1936). By regulating and criminalizing conduct that takes place within 100 yards of such locations, Montgomery County has exceeded its authority beyond that allowed by MD Code, Criminal Law, § 4-209. Through the enactment of Bill 4-21, the County has effectively nullified the preemption provisions of Section 4-209 as well as the preemption provisions of MD Code, Public Safety, § 5-134(a), MD Code, Public Safety, § 5-207(a). Bill 4-21 is not a local law within the meaning of Article XI–E, § 3 of the Maryland Constitution and is thus *ultra vires*.

## COUNT II – VIOLATION OF THE EXPRESS POWERS ACT

40.     Plaintiffs reallege and incorporate herein by reference all the foregoing allegations of this complaint.

41.     Under the Express Powers Act, MD Code, Local Government, §10-206, Montgomery County laws must be "not inconsistent with State law" and the County is barred from enacting laws that are "preempted by or in conflict with public general law."

42.     Bill 4-21 violates these provisions of the Express Powers Act in multiple ways:

*a.* MD Code, Criminal Law, § 4-209(a) preempts the County regulation of the "purchase, sale, taxation, transfer, manufacture, repair, ownership, possession, and transportation" of all firearms, but allows the County to regulate such matters "within 100 yards of or in a park, church, school, public building, and other place of public assembly." By redefining a "place of public assembly" to include all places where the public "may assemble" at the present or at some unspecified date in the future and expressly including ordinary private property within that definition, the County has vastly and illegally expanded the scope of its authority provided by Section 4-209 beyond the bounds permitted by the language of Section 4-209. To the extent Bill 4-21 purports to apply to these expanded areas, it is expressly preempted by the preemption provisions of Section 4-209(a).

22

*b.* Bill 4-21 bans the "transfer" of all firearms within 100 yards of the County's illegally redefined "place of public assembly." In so far as Bill 4-21's ban on such transfers includes regulated firearms and to the extent Bill 4-21 purports to apply to expanded areas beyond those areas permitted by Section 4-209, that ban is separately preempted by MD Code, Public Safety, § 5-134(a), which provides that "[t]his section supersedes any restriction that a local jurisdiction in the State imposes on the transfer by a private party of a regulated firearm, and the State preempts the right of any local jurisdiction to regulate the transfer of a regulated firearm."

*c.* Bill 4-21 bans the "sale" of all firearms within 100 yards of the County's illegally redefined "place of public assembly." In so far as Bill 4-21's ban on such sales includes rifles and shotguns, and to the extent Bill 4-21 purports to apply to expanded areas beyond those areas permitted by Section 4-209, that ban is preempted by MD Code, Public Safety, § 5-207(a), which provides that "[t]his section supersedes any restriction that a local jurisdiction in the State imposes on the transfer by a private party of a rifle or shotgun, and the State preempts the right of any local jurisdiction to regulate the transfer of a rifle or shotgun."

*d.* Bill 4-21 expressly precludes any person, including a parent, from giving, lending, or otherwise transferring to a minor a "ghost gun or a major component of a ghost gun." In so far as this provision regulates the temporary transfer of a regulated firearm, it illegally bans an activity that is expressly permitted by MD Code, Public Safety, § 5-133(d), which allows a minor to transfer and possess a regulated firearm under the active supervision of an adult with a parent's permission. Such transfers often include instruction in the use of firearms. To the extent that Bill 4-21 burdens such instruction, Bill 4-21 is preempted by MD Code, Criminal Law, § 4-209(b)(2), which provides that "[a] county, municipal corporation, or special taxing district may not prohibit the teaching of or training in firearms safety, or other educational or sporting use of the items listed in subsection (a) of

23

this section." These provisions fully apply to instruction in the use of unserialized regulated firearms lawfully manufactured for personal use.

   *e.* Bill 4-21 expressly precludes any person, including a parent, from giving, lending or otherwise transferring to a minor a "ghost gun or a major component of a ghost gun," including the slide of a handgun or a barrel of a rifle. MD Code, Criminal Law, § 4-104, expressly permits a minor child under the age of 16 to have access to any firearm if that access "is supervised by an individual at least 18 years old" or if the minor child under the age of 16 has a certificate of firearm and hunter safety issued under § 10-301.1 of the Natural Resources Article. By necessary implication, access to a firearm by a minor child between the ages of 16 and 18 is likewise permitted by Section 4-104 without any restriction. These provisions fully apply to the transfer of unserialized firearms lawfully manufactured by an individual for personal use. Bill 4-21's ban on lending, giving, or transferring a ghost gun to a minor is inconsistent with these provisions.

   *f.* Bill 4-21 provides that a "person must not store or leave a ghost gun, an undetectable gun, or a major component of a ghost gun or an undetectable gun, in a location that the person knows or should know is accessible to a minor." MD Code, Criminal Law, § 4-104, expressly permits a minor child under the age of 16 to have access to any firearm if that access "is supervised by an individual at least 18 years old" or if the minor child under the age of 16 has a certificate of firearm and hunter safety issued under § 10-301.1 of the Natural Resources Article. By necessary implication, access to a firearm by a minor child between the ages of 16 and 18 is permitted by Section 4-104 without restriction. In so far as these provisions limit access to a ghost guns or components of ghost guns to a minor in a manner that Section 4-104 permits, Bill 4-21 is inconsistent with Section 4-104.

   *g.* Bill 4-21 expressly bans the transport, in a vehicle and otherwise, of a "ghost gun," within 100 yards of the County's illegally expanded "place of public assembly." This ban on transport

24

is inconsistent with MD Code, Criminal Law, § 4-203(b)(3), which provides that a person is permitted to transport a handgun "on the person or in a vehicle while the person is transporting the handgun to or from the place of legal purchase or sale, or to or from a bona fide repair shop, or between bona fide residences of the person, or between the bona fide residence and place of business of the person, if the business is operated and owned substantially by the person if each handgun is unloaded and carried in an enclosed case or an enclosed holster." Transport of unloaded rifles and shotguns, including unserialized rifles and shotguns, is permitted under Maryland law without restriction.

   *h.* Bill 4-21 expressly bans the "transport," in a vehicle and/or otherwise, of a "ghost gun" within 100 yards of the County's illegally expanded "place of public assembly." This ban is inconsistent with MD Code, Criminal Law, § 4-203(b)(5), which expressly permits "the moving by a bona fide gun collector of part or all of the collector's gun collection from place to place for public or private exhibition if each handgun is unloaded and carried in an enclosed case or an enclosed holster." Such transport and carriage of unloaded rifles and shotguns, including unserialized rifles and shotguns, are permitted under Maryland law without restriction.

   *i.* Bill 4-21 expressly bans the sale, transfer, possession or transport of a firearm, including a "ghost gun" or a "major component" of any firearm, within 100 yards of the County's illegally expanded "place of public assembly." These bans are inconsistent with and preempted by § 6 of Ch. 13, of Session Laws of 1972 of Maryland, which expressly preempts all local law restrictions on the wearing, carrying, or transporting of handguns in the following language:

"SEC. 6. Be it further enacted, That all restrictions imposed by the law, ordinances, or regulations of the political subdivisions on the wearing, carrying, or transporting of handguns are superseded by this Act, and the State of Maryland hereby preempts the right of the political subdivisions to regulate said

25

matters." See *Montgomery County v. Atlantic Guns, Inc.*, 302 Md. 540, 543-44, 489 A.2d 1114, 1115-16 (1985).

       *j*. Bill 4-21 expressly bans the mere possession in the home of a "ghost gun" if the home is within 100 yards of the County's illegally expanded "place of public assembly." As thus defined, this ban on home possession will extend to thousands of homes within 100 yards of Bill 4-21's newly defined and illegally expanded "place of public assembly." This ban on home possession is inconsistent with MD Code, Criminal Law, § 4-203(b)(6), which expressly permits "the wearing, carrying, or transporting of a handgun by a person on real estate that the person owns or leases or where the person resides...." Home possession of unserialized handguns, rifles and shotguns lawfully manufactured for personal use is permitted under Maryland law without restriction.

       *k*. Bill 4-21 bans possession of a firearm or ammunition by a business, if the business is within 100 yards of the County's illegally expanded "place of public assembly." However, Bill 4-21 provides that the bans otherwise imposed by Section 57-11 of the County Code do not "apply to the possession of one firearm, and ammunition for the firearm, at a business by either the owner who has a permit to carry the firearm, or one authorized employee of the business who has a permit to carry the firearm." The requirement that the owner must have "a permit to carry the firearm" is inconsistent with MD Code, Criminal Law, § 4-203(b)(6), which permits "the wearing, carrying, or transporting of a handgun by a person . . . within the confines of a business establishment that the person owns or leases." Such persons are not required to possess or obtain a Maryland carry permit. Bill 4-21's limitation to possession of "one" firearm by the owner is likewise inconsistent with Section 4-203(b)(6), as that section imposes no limitation on the number of handguns that may be possessed, worn, carried or transported under this provision of Section 4-203(b)(6). Transport, wear, carriage

and possession of rifles and shotguns, including unserialized rifles and shotguns, in a person's business are permitted under Maryland law without restriction.

*l.* Bill 4-21 bans possession of a firearm or ammunition, if the business is within 100 yards of the County's illegally expanded "place of public assembly." However, Bill 4-21 provides that the bans otherwise imposed by Section 57-11 of the County Code do not "apply to the possession of one firearm, and ammunition for the firearm, at a business by … one authorized employee of the business who has a permit to carry the firearm." The requirement that the "authorized employee" must have "a permit to carry the firearm" is inconsistent with MD Code, Criminal Law, § 4-203(b)(7), which expressly permits "the wearing, carrying, or transporting of a handgun by a supervisory employee: (i) in the course of employment; (ii) within the confines of the business establishment in which the supervisory employee is employed; and (iii) when so authorized by the owner or manager of the business establishment." Such authorized persons covered by Section 4-203(b)(7) are not required to possess or obtain a Maryland carry permit to carry within the business confines of the employer's business. Bill 4-21's limitation to possession of "one" firearm by "one" authorized employee is likewise inconsistent with Section 4-203(b)(7), as that section imposes no limitation on the number of handguns or ammunition that may be possessed, worn, carried or transported under this provision of Section 4-203(b)(7), and imposes no limitation on the number of employees who may be "authorized" by the employer under Section 4-203(b)(7). Transport, wear, carriage and possession of rifles and shotguns, including unserialized rifles and shotguns, by business employees are permitted under Maryland law without restriction.

*m.* Bill 4-21 defines "ghost gun" to include "an unfinished receiver." Section 4-209 permits the County to regulate "ammunition for and components of a handgun, rifle, or shotgun," but it does not empower the County to redefine such "components" to include an "unfinished receiver."

loaded handgun in the course of his employment at Engage, "within the confines of a business establishment" as "authorized" by the owners of Engage. He does not possess a wear and carry permit.

30.     Plaintiff Deryck Weaver, is an individual supervisory employee of Engage, and resides in Bethesda, Maryland. His residence is arguably within 100 yards of a "place of public assembly" as that term is defined in Bill 4-21. He is the father of one minor child who lives with him at his residence. He is a qualified handgun instructor within the meaning of MD Code, Public Safety, §5-101(q), as well as a National Rifle Association-certified handgun instructor and National Rifle Association-certified Chief Range Safety Officer. He possesses within his home one or more "ghost guns," including a rifle and a pistol "ghost gun." From time to time, he assembles a firearm in the presence of his minor child for the purposes of instruction. Pursuant to MD Code, Criminal Law, 4-203(b)(7), he wears and carries a fully loaded handgun in the course of his employment at Engage, "within the confines of a business establishment" as "authorized" by the owners of Engage. He does not possess a wear and carry permit.

31.     Plaintiff Joshua Edgar works as a contractor at Engage, and resides in Gaithersburg, Maryland. His residence is arguably within 100 yards of a place of public assembly as that term is defined in Bill 4-21. He possesses within his home one or more "ghost guns," including a rifle and a pistol "ghost gun." From time to time, he assembles a firearm in the presence of a minor child for purposes of instruction. He does not possess a wear and carry permit.

32.     Plaintiff I.C.E. FIREARMS & DEFENSIVE TRAINING, LLC, ("ICE Firearms") is a Maryland corporation located at 24129 Pecan Grove Lane, Gaithersburg, Maryland. ICE Firearms provides firearm training to individuals with handguns, rifles and shotguns. ICE Firearms possesses computer code of the type regulated by Bill 4-21. ICE Firearms likewise possesses parts of firearms that are banned by Bill 4-21, including "unfinished receivers" arguably banned by Bill 4-21. ICE

19

firearms in the presence of his children in his residence. He possesses in his home computer code which may be used to manufacture firearms within the meaning of Bill 4-21. He possesses one or more ghost guns at his residence and at his place of employment at Engage. As co-owner of Engage, he has authorized more than one supervisory employee at Engage to wear and carry loaded firearms within the business confines of Engage for their self-protection and for the protection of the business. At Engage, he possesses more than one firearm for the protection of himself and his business. He possesses computer code of the type regulated by Bill 4-21

28.     Plaintiff Carlos Rabanales is an individual co-owner of Engage. He resides in Frederick County, Maryland and regularly conducts the business activities of Engage. As co-owner of Engage, he has authorized more than one supervisory employee at Engage to carry firearms within the business confines of Engage for their self-protection and for the protection of the business. At Engage, he possesses more than one firearm for the protection of himself and his business. He may transport unserialized firearm parts and components to and from Engage as part of the business of Engage.

29.     Plaintiff Brandon Ferrell, is an individual supervisory employee of Engage, and resides in Montgomery County, Maryland. His residence in Gaithersburg is arguably within 100 yards of a place of public assembly, as defined by Bill 4-21. Pursuant to MD Code, Criminal Law, 4-203(b)(7), he is considered to be a supervisory employee at Engage and wears and carries a fully loaded handgun in the course of his employment at Engage, "within the confines of a business establishment" as "authorized" by the owners of Engage. He possesses one or more "ghost guns" at his residence and at his place of employment at Engage. He possesses computer code of the type regulated by Bill 4-21. Pursuant to MD Code, Criminal Law, 4-203(b)(7), he wears and carries a fully

18

An unfinished frame or receiver that is not a "firearm" under Federal law is not a firearm under Maryland law and thus an "unfinished receiver" is fully legal in under Maryland law if such a receiver is sufficiently "unfinished" as to not constitute a "firearm." By defining a "ghost gun" to include any "unfinished receiver," Bill 4-21 has gone beyond the scope allowed for local regulation by Section 4-209 and is thus preempted by Section 4-209 and inconsistent with existing Maryland law.

## COUNT III – VIOLATION OF THE MARYLAND TAKINGS CLAUSE AND
## DUE PROCESS CLAUSE

43.     Plaintiffs reallege and incorporate herein by reference all the foregoing allegations of this complaint. This Count arises under the Maryland Takings Clause, Article III, §40 of the Maryland Constitution, and the Due Process Clause, Article 24 of the Maryland Declaration of Rights.

44.     Personal property interests of Maryland residents are protected by both the Maryland Takings Clause, Article III, §40 of the Maryland Constitution, and the Due Process Clause, Article 24 of the Maryland Declaration of Rights. These provisions are interpreted *in pari materia* with the Fifth Amendment of the United States Constitution, fully encompass personal property and may afford more protection than the Fifth Amendment. *Dua v. Comcast Cable*, 370 Md. 604, 805 A.2d 1061, 1070-72 (2002).

45. Maryland's Taking Clause and Due Process Clause are violated "[w]henever a property owner is deprived of the beneficial use of his property or restraints are imposed that materially affect the property's value, without legal process or compensation." *Serio v. Baltimore County*, 384 Md. 373, 863 A.2d 952, 967 (2004).

46. Maryland's Taking Clause and Due Process Clause govern retrospective laws. "Retrospective statutes are those 'acts which operate on transactions which have occurred or rights

28

and obligations which existed before passage of the act." *Muskin v. State Dept. of Assessments and Taxation*, 422 Md. 544, 30 A.3d 962, 969 (2011).

47. Under the Maryland's Taking Clause and Due Process Clause, "[n]o matter how 'rational' under particular circumstances, the State is constitutionally precluded from abolishing a vested property right or taking one person's property and giving it to someone else." *Dua v. Comcast Cable of Maryland, Inc.*, 370 Md. 604, 623, 805 A.2d 1061 (2002).

48. The property adversely affected by the provisions of Bill 4-21 constitute protected personal property within the meaning of the Maryland Takings Clause and Due Process Clause as the term property for these purposes "embraces 'everything which has exchangeable value or goes to make up a man's wealth." *Dodds v. Shamer*, 339 Md. 540, 663 A.2d 1318, 1322 (1995). The personal property regulated by Bill 4-21 has exchangeable value. Plaintiffs have vested property rights in the continued possession and use of the property regulated by Bill 4-21.

49. Bill 4-21 is a retrospective ordinance as it will deprive the plaintiffs of the beneficial use and possession of their lawful vested property rights and property that was lawfully acquired and possessed prior to the County's enactment of Bill 4-21. The restraints and bans that are imposed by Bill 4-21 materially affect the value of this previously lawfully acquired and possessed property, all without legal process or compensation.

50. Bill 4-21 violates Maryland Takings Clause, Article III, §40, and the Due Process Clause, Article 24 of the Maryland Declaration of Rights. Under Maryland law, a court may enjoin a statute that violates Article 40 "unless and until condemnation proceedings in accordance with law be had, and just compensation awarded and paid for tendered." *Department of Natural Resources v. Welsh*, 308 Md. 54, 65, 521 A.2d 313, 318 (1986). Plaintiffs are entitled to declaratory and equitable relief for the unconstitutional taking of their vested property rights by Bill 4-21.

29

**COUNT IV – THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT**

**AND ARTICLE 24 OF THE MARYLAND DECLARATION OF RIGHTS**

51. Plaintiffs reallege and incorporate herein by reference all the foregoing allegations of this complaint. This Count for violations of the Due Process Clause of the Fourteenth Amendment to the United States Constitution is brought pursuant to and arises under 42 U.S.C. § 1983. For purposes of this Count, defendant Montgomery County has acted under "color of state law" within the meaning of Section 1983 in enacting Bill 4-21. This Count also arises under Article 24 of the Maryland Declaration of Rights.

52. The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." Article 24 of the Maryland Declaration of Rights provides that "[t]hat no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

53. The Due Process Clause of the Fourteenth Amendment prohibits the enactment or enforcement of vague legislation. *Sessions v. Dimaya*, 138 S.Ct. 1204, 1212 (2018) ("the prohibition of vagueness in criminal statutes…is an 'essential' of due process, required by both 'ordinary notions of fair play and the settled rules of law"). A penal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). "[A] vague law is no law at all." *United States v. Davis*, 139 S. Ct. 2319, 2323 (2019).

54. Such a statute need not be vague in all possible applications in order to be void for vagueness. *Johnson v. United States*, 576 U.S. 591, 602 (2015) ("our holdings squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp"). "*Johnson* made clear that our decisions 'squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp.'" *Dimaya*, 138 S.Ct. at 1214 n.3. A court "cannot construe a criminal statute on the assumption that the Government will use it responsibly," *United States v. Stevens,* 559 U.S. 460, 480 (2010), and "cannot find clarity in a wholly ambiguous statute simply by relying on the benevolence or good faith of those enforcing it." *Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1322 (11th Cir. 2017) (en banc).

55. Article 24 of the Maryland Declaration of Rights prohibits the enactment or enforcement of vague legislation. *Galloway v. State*, 365 Md. 599, 614, 781 A.2d 851 (2001) ("The void-for-vagueness doctrine as applied to the analysis of penal statutes requires that the statute be "sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties."). Under Article 24, a statute must provide "legally fixed standards and adequate guidelines for police ... and others whose obligation it is to enforce, apply, and administer [it]" and "must eschew arbitrary enforcement in addition to being intelligible to the reasonable person." (Id. at 615).

56. Bill 4-21 is a penal statute as a violation of Bill 4-21 is a Class A violation that can result in a criminal fine and up to six months imprisonment for each day in which the violation continues. Bill 4-21 contains no *mens rea* requirement of any type and thus these punishments may be imposed without regard to the defendant's intent or knowledge. Under the Due Process Clause of the Fourteenth Amendment, plaintiffs may bring a pre-enforcement action challenging Bill 4-21 as they are not required "to risk criminal prosecution to determine the proper scope of regulation."

*Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965). Maryland law is in accord for purposes of allowing a pre-enforcement action arising under Article 24 of the Maryland Declaration of Rights. *Pizza di Joey, LLC v. Mayor of Baltimore*, 470 Md. 308, 343-44, 235 A.3d 873 (2020) (collecting cases).

57. Bill 4-21 criminally punishes conduct that takes place within 100 yards of "a place of public assembly," which is defined as "a place where the public may assemble, whether the place is publicly or privately owned." Such places include, but are not limited to, "a park; place of worship; school; library; recreational facility; hospital; community health center; long-term facility; or multipurpose exhibition facility, such as a fairgrounds or conference center." Bill 4-21 includes within these places "all property associated with the place, such as a parking lot or grounds of a building."

58. Bill 4-21 does not define "public," and that term could arguably be read to include any person who may be present in Montgomery County for any reason. Bill 4-21 does not define "may assemble," and thus that term could be read to include a meeting of two or more people in one place for any reason, including for every-day activities such as lunch. By enlarging the ordinance to reach into places where the public "may" assemble," Bill 4-21 may be arguably read to encompass any location where it is possible for two or more members of the public to meet, either in the present or sometime in the undefined future. Bill 4-21 fails to provide any notice of the actual location of such places and it is impossible to predict or know where two or more members of the "public" "may" meet. These terms could change in their application from day to day. Plaintiffs are thus left to guess at where two or more members of "public" "may assemble."

59. Bill 4-21 bans conduct taking place within 100 yards of a "library," but includes no definition of "library." Bill 4-21 deleted the statute's former definition of "library" as limited to a "public" library and expressly covers places regardless of "whether the place is publicly or privately owned." The term "library" could thus be arguably read to include any "library" of any type or size.

32

regardless of whether the library is in the home or private building if, at any time in the present or the future, two or more members of the undefined public "may" assemble in that library. Plaintiffs are left to guess as to the locations of such "libraries."

60. Bill 4-21 does not define "recreational facility," but it does delete the statute's former limitation to "government-owned or operated" recreational facility and thus the term "recreational facility" could be arguably read to include a backyard swing set or private playground or other place where "recreation" may take place. Bill 4-21 adds to statute's preexisting scope to include a "community health center" and "long-term facility," but provides no definition for either type of facility. Bill 4-21 does not define "school," but does delete the statute's former limitation to "elementary or secondary" school, thereby arguably regulating within 100 yards of any "school" of any size and of any type, private or public, including locations where any organization, of any type, may present instruction of any kind. Plaintiffs are left to guess as to the locations encompassed within the vague use of these terms.

61. Bill 4-21 does not define "park" but it does delete the ordinance's former definition of "park" as including only a "government owned" park that was "identified by the Maryland-National Capital Park and Planning Commission." The term "park" thus could be arguably read to include any grassy spot, a commercial "park" or a tract of private land attached to a country house if it possible for two or more members of the public to "assemble" in that privately owned "park." Plaintiffs are left to guess as to the locations encompassed within the vague use of "park."

62. Bill 4-21 defines "ghost gun" to include "an unfinished receiver." Bill 4-21 then purports to ban the sale, rental, lending or the giving of an "unfinished receiver" to a minor or affording access to an "unfinished receiver" to a minor. Bill 4-21 also bans, within 100 yards of a "place of public assembly," as illegally expanded by Bill 4-21, the sale, transfer, manufacture, assembly, possession

33

or transport of an unfinished receiver, including possession of an unfinished receiver in the home. Bill 4-21 does not define "unfinished receiver." An unfinished receiver that is not a "receiver" under Federal law is not a receiver under Maryland law and thus there is no definition for "unfinished receiver" that could be applied to Bill 4-21. Plaintiffs are left to guess as to the meaning of "unfinished receiver" as used in Bill 4-21.

63. Bill 4-21 defines "major component" of a firearm to include "the slide or cylinder" and, in the case of a rifle or shotgun, the "barrel." Bill 4-21 then purports, to ban the sale, rental, lending or the giving of a "major component" of a ghost gun to a minor or affording access to a "major component" to a minor. Bill 4-21 also bans, within 100 yards of its illegally defined place of "public assembly," the sale, transfer, possession, or transport of a "major component." A "major component" of a firearm, as defined by Bill 4-21, is not a firearm under Federal or Maryland law and a "major component" as thus defined can be lawfully obtained, transferred and transported without restrictions under Federal and Maryland law. A "major component," as thus defined by Bill 4-21, can be lawfully used to build a fully *serialized* firearm for personal use. There is no practical way to distinguish a "major component" that can be used to build *a non-serialized* firearm from a major component that can be used to build *a serialized* firearm. Bill 4-21 thus arguably can be read as banning the building of *any serialized* firearm, including a firearm that is not a "ghost gun" under the Bill 4-21's own definition of a "ghost gun." Bill 4-21 is self-contradictory, vague and leaves enforcement of this provision to the arbitrary and discriminatory discretion of law enforcement officials.

64. Bill 4-21's regulation of places where two or more members of the "public" "may" assemble in the present or unknowable future provides no reasonable notice of the actual locations that are criminally regulated by Bill 4-21. Bill 4-21's use of vague and undefined terms deprives ordinary people, including plaintiffs, of the ability to understand what conduct is prohibited and what

34

conduct is not. Bill 4-21's use of vague terms, including its reach into the home and other private property, permits and encourages arbitrary and discriminatory enforcement of its provisions in the sanctity of the home and other places protected by the Fourth Amendment of the United States Constitution. Bill 4-21 provides no standards for enforcement by law enforcement personnel or by other officials of the County who may be charged with its enforcement. Rather, Bill 4-21 hands off "to unelected prosecutors and judges," the duty of defining criminal behavior thorough *ad hoc* discretionary enforcement decisions. *Davis*, 139 S.Ct. at 2323. Bill 4-21 is accordingly void for vagueness under the Due Process Clause of the Fourteenth Amendment and Article 24 of the Maryland Declaration of Rights, both facially and as applied to one or more of the individual plaintiffs.

65. Each of the plaintiffs has engaged and intends to engage in conduct arguably regulated by the unconstitutionally vague provisions of Bill 4-21, including the actual or constructive possession of firearms, major components and "unfinished receivers." Each of the plaintiffs is and has been chilled in the actions they may take by the prospect of enforcement of Bill 4-21's unconstitutionally vague provisions. Each of the plaintiffs and MSI's members are hindered or chilled in their right to live or work in Montgomery County or to otherwise travel through Montgomery County by the threat of arbitrary or discriminatory enforcement of the unconstitutionally vague provisions of Bill 4-21. Each of the plaintiffs has been harmed and is imminently threatened with future harm by the prospect of enforcement of the unconstitutionally vague provisions of Bill 4-21.

66. Pursuant to 42 U.S.C. § 1983, plaintiffs are entitled to declaratory and equitable relief and compensatory damages, including nominal damages, for the foregoing violations of their Due Process rights under the Fourteenth Amendment. *Uzuegbunam v. Preczewski*, 141 S.Ct. 792 (2021). The County's wholesale and utter disregard of Plaintiffs' Due Process rights is so reckless or callously

indifferent to the federally protected rights of plaintiffs as to warrant the imposition of further sanctions to achieve punishment or deterrence. Accordingly, punitive damages are appropriate and may be awarded by the trier of fact. *Smith v. Wade*, 461 U.S. 30 (1983). Plaintiffs are likewise entitled to reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, for the foregoing violations of their Due Process rights under the Fourteenth Amendment. Plaintiffs are entitled to declaratory and equitable relief for their claims arising under Article 24 of the Maryland Declaration of Rights.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request:

A. That this Court issue a declaratory judgment that Bill 4-21 is not a local law and is thus unconstitutional under Article XI–E, § 3 of the Maryland Constitution, as more fully set forth in Count I above;

B. That this Court issue a declaratory judgment that Bill 4-21 violates the Express Powers Act, MD Code, Local Government, § 10-206, in that it is inconsistent with, and/or preempted by Maryland statutes, as more fully set forth in Count II, above;

C. That this Court issue a declaratory judgment that Bill 4-21 violates the Maryland Takings Clause, Article III § 40, and the Due Process Clause of Article 24 of the Maryland Declaration of Rights, in so far as it deprives plaintiffs and MSI members of the beneficial use of their lawfully acquired, vested property rights, as more fully set forth in Count III above, enjoin enforcement of Bill 4-21 until compensation is paid, calculate the amount of compensation due, and order the County to pay such compensation;

D. That this Court issue a declaratory judgment that Bill 4-21 is void for vagueness under the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights, as more fully set forth in Count IV above;

E. That this Court find that all plaintiffs have been and/or will be irreparably harmed by the conduct of defendant challenged in Counts I, II, III and IV and enter a preliminary and permanent injunction barring the County from enforcing Bill 4-21 against plaintiffs and the members of MSI;

F. That this Court award plaintiffs compensatory and punitive damages for the County's violations of the plaintiffs' Fourteenth Amendment constitutional rights, including without limitation, nominal damages, as authorized by 42 U.S.C. § 1983;

G. That this Court award attorney's fees and costs against defendant, as authorized by 42 U.S.C. § 1988;

H. That this Court award the plaintiffs such other and further relief as in law and justice they may be entitled to receive, including punitive damages.

## JURY DEMAND

COME NOW the Plaintiffs, by and through counsel, demand a trial by jury as to all issues triable by jury in this matter.

Respectfully submitted,

MARK W. PENNAK
Maryland Shall Issue, Inc.
9613 Harford Rd
Ste C #1015
Baltimore, MD 21234-21502
mpennak@marylandshallissue.org
Phone: (301) 873-3671
MD Atty No. 1905150005

*Counsel for Plaintiffs*

**FILED**

MAY 2 8 2021

Clerk of the Circuit Court
Montgomery County, Md.

37

1
2
3          IN CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND
4
5    MARYLAND SHALL ISSUE, INC., ET AL,          Case No.:
          Plaintiffs,
6
     vs.                                         DECLARATION OF
7                                                DANIEL CARLIN-WEBER
     MONTGOMERY COUNTY, MARYLAND,
8
          Defendant.
9
10         COMES NOW, the declarant, DANIEL CARLIN-WEBER, and hereby solemnly declares under

11   penalties of perjury and upon personal knowledge that the contents of the following declaration are true:

12         1. My name is DANIEL CARLIN-WEBER and I am the Chairman of the Board of Directors of

13   MARYLAND SHALL ISSUE, INC., a named plaintiff in the above captioned matter.  I execute this declaration on

14   behalf of MARYLAND SHALL ISSUE, INC.

15         2. I have read and otherwise reviewed the allegations of the Complaint in this matter.  I hereby

16   adopt and declare that the factual allegations in the complaint that relate or refer to MARYLAND SHALL ISSUE,

17   INC., are true and correct to the best of my knowledge and belief.

18         Dated this day of MAY 27, 2021:

19
20                                               _____
                                                 DANIEL CARLIN-WEBER
21                                               Chairman of the Board of Directors, Maryland Shall
                                                 Issue, Inc.
22
23
24
25
26
27
28
     DECLARATION OF DANIEL CARLIN-WEBER - I

1

2

3              IN CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

4

5    MARYLAND SHALL ISSUE, INC., ET AL,          Case No.:

6              Plaintiffs,

7    vs.                                          DECLARATION OF
                                                  PLAINTIFF ANDREW RAYMOND
8    MONTGOMERY COUNTY, MARYLAND,

9              Defendant

10            COMES NOW, the declarant, ANDREW RAYMOND, and hereby solemnly declares under

11   penalties of perjury and upon personal knowledge that the contents of the following declaration are true:

12            1. My name is ANDREW RAYMOND and I am a named plaintiff in the above captioned matter

13   and the co-owner of ENGAGE ARMAMENT LLC, which is also a named plaintiff in this matter. I execute this

14   declaration on behalf of myself and of ENGAGE ARMAMENT LLC.

15            2. I have read and otherwise reviewed the allegations of the Complaint in this matter. I hereby

16   adopt and declare that the factual allegations in the complaint that relate or refer to myself and ENGAGE

17   ARMAMENT LLC, are true and correct to the best of my knowledge and belief.

18            Dated this day of MAY 27, 2021:

19

20                                               _____
                                                 ANDREW RAYMOND
21

22

23

24

25

26

27

28

DECLARATION OF PLAINTIFF ANDREW RAYMOND - 1

IN CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

MARYLAND SHALL ISSUE, INC., ET AL,

    Plaintiffs,

vs.

MONTGOMERY COUNTY, MARYLAND,

    Defendant

Case No.:

DECLARATION OF
PLAINTIFF CARLOS RABANALES

COMES NOW, the declarant, CARLOS RABANALES, and hereby solemnly declares under penalties of perjury and upon personal knowledge that the contents of the following declaration are true:

1. My name is CARLOS RABANALES and I am a named plaintiff in the above captioned matter and the co-owner of ENGAGE ARMAMENT LLC, which is also a named plaintiff in this matter. I execute this declaration on behalf of myself and of ENGAGE ARMAMENT LLC.

2. I have read and otherwise reviewed the allegations of the Complaint in this matter. I hereby adopt and declare that the factual allegations in the complaint that relate or refer to myself and ENGAGE ARMAMENT LLC, are true and correct to the best of my knowledge and belief.

Dated this day of MAY 27, 2021:

CARLOS RABANALES

DECLARATION OF PLAINTIFF CARLOS RABANALES - 1

IN CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

MARYLAND SHALL ISSUE, INC., ET AL,

     Plaintiffs,

vs.

MONTGOMERY COUNTY, MARYLAND,

     Defendant

Case No.:

DECLARATION OF
PLAINTIFF BRANDON FERRELL

COMES NOW, the declarant, BRANDON FERRELL, and hereby solemnly declares under penalties of perjury and upon personal knowledge that the contents of the following declaration are true:

    1. My name is BRANDON FERRELL and I am a named plaintiff in the above captioned matter.

    2. I have read and otherwise reviewed the allegations of the Complaint in this matter. I hereby adopt and declare that the factual allegations in the complaint that relate or refer to myself are true and correct to the best of my knowledge and belief.

    Dated this day of MAY 27, 2021:

                                BRANDON FERRELL

DECLARATION OF PLAINTIFF BRANDON FERRELL - 1

1

2

3            IN CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

4

MARYLAND SHALL ISSUE, INC., ET AL,          Case No.:
5
          Plaintiffs,
6
vs.                                         DECLARATION OF
7                                           PLAINTIFF DERYCK WEAVER

MONTGOMERY COUNTY, MARYLAND,
8
          Defendant
9

10              COMES NOW, the declarant, DERYCK WEAVER, and hereby solemnly declares under penalties

11    of perjury and upon personal knowledge that the contents of the following declaration are true:

12              1. My name is DERYCK WEAVER and I am a named plaintiff in the above captioned matter.

13              2. I have read and otherwise reviewed the allegations of the Complaint in this matter.  I hereby

14    adopt and declare that the factual allegations in the complaint that relate or refer to myself are true and correct to the

15    best of my knowledge and belief.

16              Dated this day of MAY 27, 2021:

17

18                                              DERYCK WEAVER

19

20

21

22

23

24

25

26

27

28

DECLARATION OF PLAINTIFF DERYCK WEAVER - 1

1

2

3                   IN CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

4

5    MARYLAND SHALL ISSUE, INC., ET AL,          Case No.:

6              Plaintiffs,

7    vs.                                         DECLARATION OF
                                                 PLAINTIFF JOSHUA EDGAR
8    MONTGOMERY COUNTY, MARYLAND,

     Defendant

9

10              COMES NOW, the declarant, JOSHUA EDGAR, and hereby solemnly declares under penalties of

11   perjury and upon personal knowledge that the contents of the following declaration are true:

12              1. My name is JOSHUA EDGAR and I am a named plaintiff in the above captioned matter.

13              2. I have read and otherwise reviewed the allegations of the Complaint in this matter. I hereby

14   adopt and declare that the factual allegations in the complaint that relate or refer to myself are true and correct to the

15   best of my knowledge and belief.

16              Dated this day of MAY 27, 2021:

17

18                                               JOSHUA EDGAR

19

20

21

22

23

24

25

26

27

28

     DECLARATION OF PLAINTIFF JOSHUA EDGAR  - 1

1
2
3                   IN CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND
4
5    MARYLAND SHALL ISSUE, INC., ET AL,          Case No.:
            Plaintiffs,
6
7    vs.                                         DECLARATION OF
                                                 PLAINTIFF RONALD DAVID
8    MONTGOMERY COUNTY, MARYLAND,
            Defendant
9
10          COMES NOW, the declarant, RONALD DAVID, and hereby solemnly declares under penalties

11   of perjury and upon personal knowledge that the contents of the following declaration are true:

12          1. My name is RONALD DAVID and I am a named plaintiff in the above captioned matter, and

13   the owner of I.C.E. FIREARMS & DEFENSIVE TRAINING, LLC, which is also a named plaintiff in this matter.  I

14   execute this declaration on behalf of myself and on behalf of I.C.E. FIREARMS & DEFENSIVE TRAINING, LLC.

15          2. I have read and otherwise reviewed the allegations of the Complaint in this matter.  I hereby

16   adopt and declare that the factual allegations in the complaint that relate or refer to myself and to I.C.E. FIREARMS

17   & DEFENSIVE TRAINING, LLC, are true and correct to the best of my knowledge and belief.

18          Dated this day of MAY 27, 2021:

19
20   _____
                   RONALD DAVID
21
22
23
24
25
26
27
28

DECLARATION OF PLAINTIFF RONALD DAVID - 1

1

2                   IN CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

3

4   MARYLAND SHALL ISSUE, INC., ET AL,        Case No.:

5            Plaintiffs,

6   vs.                                        DECLARATION OF
                                               PLAINTIFF NANCY DAVID
7   MONTGOMERY COUNTY, MARYLAND,

8            Defendant

9
             COMES NOW, the declarant, NANCY DAVID, and hereby solemnly declares under penalties of
10
    perjury and upon personal knowledge that the contents of the following declaration are true:
11
                 1. My name is NANCY DAVID and I am a named plaintiff in the above captioned matter.
12
                 2. I have read and otherwise reviewed the allegations of the Complaint in this matter.  I hereby
13
    adopt and declare that the factual allegations in the complaint that relate or refer to myself are true and correct to the
14
    best of my knowledge and belief.
15
             Dated this day of MAY 27, 2021:
16

17

18                                             NANCY DAVID

19

20

21

22

23

24

25

26

27

28
    DECLARATION OF PLAINTIFF NANCY DAVID  - 1

**EXHIBIT A**

| | |
|---|---|
| Bill No. | 4-21 |
| Concerning: | Weapons - Protection of Minors and Public Places - Restrictions Against Ghost Guns and Undetectable Guns |
| Revised: | 04/06/2021    Draft No. 5 |
| Introduced: | January 19, 2021 |
| Enacted: | April 6, 2021 |
| Executive: | April 16, 2021 |
| Effective: | July 16, 2021 |
| Sunset Date: | None |
| Ch. 7 , Laws of Mont. Co. | 2021 |

# COUNTY COUNCIL
# FOR MONTGOMERY COUNTY, MARYLAND

---

Lead Sponsor: Council Vice-President Albornoz

Co-Sponsors: Council President Hucker, Councilmembers Katz, Jawando, Navarro, Friedson, Rice, Riemer and Glass

---

**AN ACT** to:

(1) define terms related to firearm laws;

(2) restrict the [[manufacture,]] possession, use, sale, and transfer of ghost guns, undetectable guns, and certain other firearms with respect to minors;

(3) restrict the [[manufacture,]] possession, use, sale, and transfer of ghost guns, undetectable guns, and certain other firearms within 100 yards of places of public assembly; and

(4) generally amend the law regarding firearms and other weapons.

By amending
  Montgomery County Code
  Chapter 57, Weapons
  Sections 57-1, 57-7, and 57-11

By adding
  Montgomery County Code
  Chapter 57, Weapons
  Section 57-16

| | |
|---|---|
| **Boldface** | *Heading or defined term.* |
| Underlining | *Added to existing law by original bill.* |
| [Single boldface brackets] | *Deleted from existing law by original bill.* |
| Double underlining | *Added by amendment.* |
| [[Double boldface brackets]] | *Deleted from existing law or the bill by amendment.* |
| * * * | *Existing law unaffected by bill.* |

*The County Council for Montgomery County, Maryland approves the following Act:*

1    **Sec. 1. Sections 57-1, 57-7, and 57-11 are amended, and Section 57-16 is**

2  **added, as follows:**

3  **57-1. Definitions.**

4    In this Chapter, the following words and phrases have the following meanings:

5      *3D printing process*: <u>a process of making a three-dimensional, solid</u>

6      <u>object using a computer code or program, including any process in</u>

7      <u>which material is joined or solidified under computer control to create a</u>

8      <u>three-dimensional object.</u>

9             \*   \*   \*

10     *Gun* or *firearm*: Any rifle, shotgun, revolver, pistol, <u>ghost gun,</u>

11     <u>undetectable gun,</u> air gun, air rifle or any similar mechanism by

12     whatever name known which is designed to expel a projectile through a

13     gun barrel by the action of any explosive, gas, compressed air, spring or

14     elastic.

15    (1)  The term "antique firearm" means (a) any firearm (including any

16        firearm with a matchlock, flintlock, percussion cap, or similar

17        type of ignition system) manufactured in or before 1898; and (b)

18        any replica of any firearm described in subparagraph (a) if such

19        replica (i) is not designed or redesigned or using rimfire or

20        conventional centerfire fixed ammunition, or (ii) uses rimfire or

21        conventional centerfire fixed ammunition which is no longer

22        manufactured in the United States and which is not readily

23        available in the ordinary channels of commercial trade.

24    (2)  <u>"Ghost gun" means a firearm, including an unfinished frame or</u>

25        <u>receiver, that lacks a unique serial number engraved or cased in</u>

26        <u>metal alloy on the frame or receiver by a licensed manufacturer,</u>

27        <u>maker or importer under federal law or markings in accordance</u>

28           with 27 C.F.R. § 479.102. It does not include a firearm that has

29           been rendered permanently inoperable, or a firearm that is not

30           required to have a serial number in accordance with the Federal

31           Gun Control Act of 1968.

32      (3)    "Handgun" means any pistol, revolver or other firearm capable of

33           being concealed on the person, including a short-barreled shotgun

34           and a short-barreled rifle as these terms are defined below.

35           "Handgun" does not include a shotgun, rifle, or antique firearm.

36    [(3)] (4)    "Rifle" means a weapon designed or redesigned, made or

37           remade, and intended to be fired from the shoulder and designed

38           or redesigned and made or remade to use the energy of the

39           explosive in a fixed metallic cartridge to fire only a single

40           projectile through a rifled bore for each single pull of the trigger.

41    [(4)] (5)    The term "short-barreled rifle" means a rifle having one

42           (1) or more barrels less than sixteen (16) inches in length and any

43           weapon made from a rifle (whether by alternation, modification

44           or otherwise) if such weapon, as modified, has an overall length

45           of less than twenty-six (26) inches.

46    [(5)] (6)    The term "short-barreled shotgun" means a shotgun having

47           one (1) or more barrels less than eighteen (18) inches in length

48           and any weapon made from a shotgun (whether by alteration,

49           modification or otherwise) if such weapon as modified has an

50           overall length of less than twenty-six (26) inches.

51    [(6)] (7)    "Shotgun" means a weapon designed or redesigned, made

52           or remade, and intended to be fired from the shoulder and

53           designed or redesigned and made or remade to use the energy of

54           the explosive in a fixed shotgun shell to fire through a smooth

55          bore either a number of ball shot or a single projectile for each
56          single pull of the trigger.

57     (8)     "Undetectable gun" means:

58          (A)     a firearm that, after the removal of all its parts other than a
59                  major component, is not detectable by walk-through metal
60                  detectors commonly used at airports or other public
61                  buildings;

62          (B)     a major component that, if subjected to inspection by the
63                  types of detection devices commonly used at airports or
64                  other public buildings for security screening, would not
65                  generate an image that accurately depicts the shape of the
66                  component; or

67          (C)     a firearm manufactured wholly of plastic, fiberglass, or
68                  through a 3D printing process.

69                          *       *       *

70     *Major component* means, with respect to a firearm:

71     (1)     the slide or cylinder or the frame or receiver; and

72     (2)     in the case of a rifle or shotgun, the barrel.

73     *Minor*: An individual younger than 18 years old.

74                          *       *       *

75     *Place of public assembly*: A "place of public assembly" is a place where
76     the public may assemble, whether the place is publicly or privately
77     owned, including a [government owned] park [identified by the
78     Maryland-National Capital Park and Planning Commission]; place of
79     worship; [elementary or secondary] school; [public] library;
80     [government-owned or -operated] recreational facility; hospital;
81     community health center; long-term facility; or multipurpose exhibition

82    facility, such as fairgrounds or a conference center. A place of public
83    assembly includes all property associated with the place, such as a
84    parking lot or grounds of a building.

85          *  *  *

86 **57-7. Access to guns by minors.**

87  (a) A person must not give, sell, rent, lend, or otherwise transfer any rifle or
88    shotgun or any ammunition or major component for these guns in the
89    County to a minor. This subsection does not apply when the transferor
90    is at least 18 years old and is the parent, guardian, or instructor of the
91    minor, or in connection with a regularly conducted or supervised
92    program of marksmanship or marksmanship training.

93  (b) An owner, employee, or agent of a gun shop must not allow a minor to,
94    and a minor must not, enter the gun shop unless the minor is
95    accompanied by a parent or other legal guardian at all times when the
96    minor is in the gun shop.

97  (c) A person must not give, sell, rent, lend, or otherwise transfer to a minor:
98    (1) a ghost gun or major component of a ghost gun;
99    (2) an undetectable gun or major component of an undetectable gun;
100      or
101    (3) a computer code or program to make a gun through a 3D printing
102      process.

103  (d) A person must not [[manufacture or assemble]] purchase, sell, transfer,
104    possess, or transfer a ghost gun, including [[making]] a gun created
105    through a 3D printing process, in the presence of a minor.

106  (e) A person must not store or leave a ghost gun, an undetectable gun, or a
107    major component of a ghost gun or an undetectable gun, in a location
108    that the person knows or should know is accessible to a minor.

| 109 | | [(c)] (f) | This section must be construed as broadly as possible within the |
|---|---|---|---|

109      [(c)] (f)      This section must be construed as broadly as possible within the
110                limits of State law to protect minors.

111    **57-11.  Firearms in or near places of public assembly.**

112      (a)      [A] In or within 100 yards of a place of public assembly, a person must
113                not:

114            (1)      sell, transfer, [[manufacture, assemble,]] possess, or transport a
115                       ghost gun, undetectable gun, handgun, rifle, or shotgun, or
116                       ammunition or major component for these firearms[, in or within
117                       100 yards of a place of public assembly]; or

118            (2)      sell, transfer, possess, or transport[[, or use a computer code to
119                       create,]] a firearm created through a 3D printing process.

120      -(b)      This section does not:

121            (1)      prohibit the teaching of firearms safety or other educational or
122                       sporting use in the areas described in subsection (a);

123            (2)      apply to a law enforcement officer, or a security guard licensed to
124                       carry the firearm;

125            (3)      apply to the possession of a firearm or ammunition, other than a
126                       ghost gun or an undetectable gun, in the person's own home;

127            (4)      apply to the possession of one firearm, and ammunition for the
128                       firearm, at a business by either the owner who has a permit to
129                       carry the firearm, or one authorized employee of the business
130                       who has a permit to carry the firearm;

131            (5)      apply to the possession of a handgun by a person who has
132                       received a permit to carry the handgun under State law; or

133            ((6)      apply to separate ammunition or an unloaded firearm:

| | | |
|---|---|---|
| 134 | (A) | transported in an enclosed case or in a locked firearms rack |
| 135 | | on a motor vehicle, <u>unless the firearm is a ghost gun or an</u> |
| 136 | | <u>undetectable gun;</u> or |
| 137 | (B) | being surrendered in connection with a gun turn-in or |
| 138 | | similar program approved by a law enforcement agency. |
| 139 | | *       *       * |

140 **57-15. Penalty.**

141       Any violation of this Chapter or a condition of an approval certificate issued

142 under this Chapter is a Class A violation to which the maximum penalties for a Class

143 A violation apply. Any violation of Section 57-8 is a Class A civil violation.

144 **57-16.** <u>**Reporting requirement.**</u>

145     <u>(a)</u>   <u>The County Police Department must submit a report annually to the</u>

146           <u>County Executive and the County Council regarding the availability and</u>

147           <u>use of ghost guns and undetectable guns in the County.</u>

148     <u>(b)</u>   <u>The report must include the number of ghost guns and undetectable</u>

149           <u>guns recovered by the Department during the prior year.</u>

150     <u>(c)</u>   <u>Each report must be available to the public on the Police Department's</u>

151           <u>website.</u>

BILL NO. 4-21

*Approved*:

_____     4/7/2021

Tom Hucker, President, County Council     Date

*Approved*:

_____     4/16/2021

Marc Elrich, County Executive     Date

*This is a correct copy of Council action.*

_____     4/16/2021

Selena Mendy Singleton, Esq., Clerk of the Council     Date

- 8 -

EXHIBIT B



**MARYLAND SHALL ISSUE®**
SELF DEFENSE IS A CIVIL RIGHT

**President**
Mark W. Pennak

February 9, 2021

## WRITTEN TESTIMONY OF MARK W. PENNAK, PRESIDENT, MSI, IN OPPOSITION TO BILL 4-21 (Corrected)

I am the President of Maryland Shall Issue ("MSI"). Maryland Shall Issue is an all-volunteer, non-partisan organization dedicated to the preservation and advancement of gun owners' rights in Maryland. It seeks to educate the community about the right of self-protection, the safe handling of firearms, and the responsibility that goes with carrying a firearm in public. I am also an attorney and an active member of the Bar of the District of Columbia and the Bar of Maryland. I recently retired from the United States Department of Justice, where I practiced law for 33 years in the Courts of Appeals of the United States and in the Supreme Court of the United States. I am an expert in Maryland firearms Law, federal firearms law and the law of self-defense. I am also a Maryland State Police certified handgun instructor for the Maryland Wear and Carry Permit and the Maryland Handgun Qualification License and a certified NRA instructor in rifle, pistol and personal protection in the home, personal protection outside the home, muzzle loading as well as a range safety officer. I write in OPPOSITION TO BILL 4-21. For the reasons set forth below, this bill is preempted by State law and, if enacted, would be violative of the First Amendment and the Second Amendment of the Constitution. The Council would be well-advised to stay its hand and allow the General Assembly take the lead in these matters.

**The Bill Is Preempted:**

State law, MD Code, Criminal Law, § 4-209, broadly preempts "the right of a county, municipal corporation, or special taxing district to regulate the purchase, sale, taxation, transfer, manufacture, repair, ownership, possession, and transportation of: (1) a handgun, rifle, or shotgun; and (2) ammunition for and components of a handgun, rifle, or shotgun." The statute provides, as an exception, that the locality may regulate these subject matters '(i) with respect to minors; (ii) with respect to law enforcement officials of the subdivision; and (iii) except as provided in paragraph (2) of this subsection, within 100 yards of or in a park, church, school, public building, and other place of public assembly."

This bill violates Section 4-209 in multiple ways. First, and perhaps most egregiously, the bill defines a place of public assembly to include "a place where the public may assemble, whether the place is publicly or privately owned." The bill thus defines public "assembly" as a privately or publicly owned place where people "may assemble" and is thus utterly circular. It includes places where persons "may" assemble, not merely places where people do assemble or even regularly assemble.

It could thus include any place, private or public, that people "may" assemble in the unknowable future.

Such an extraordinarily broad, circular definition is no definition at all. It is so vague as to violate the Due Process Clause of the Fourteenth Amendment. See *Giovani Carandola, Ltd. v. Fox*, 470 F.3d 1074, 1079 (4th Cir. 2006) (recognizing that "[a] statute is impermissibly vague if it either (1) fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits or (2) authorizes or even encourages arbitrary and discriminatory enforcement" (internal quotations omitted). See also *Grayned v. City of Rockford*, 408 U.S. 104, 108-109, (1972) ("A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis"). This body has an obligation to define regulatory prohibitions, not make them so vague as to ensnare the innocent or lead to arbitrary enforcement, especially where the law affects Constitutional rights. *City of Chicago v. Morales*, 527 U.S. 41, 54 (1999). A statute will be deemed unconstitutionally vague if it (1) "fails to give ordinary people fair notice of the conduct it punishes," or (2) is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). The definition of place of public assembly fails that test.

Even more fundamentally, the bill's definition of place of public assembly is in conflict with Section 4-209. The proviso in Section 4-209 that allows the County to regulate firearms in within a 100 yards of "another place of public assembly" must read in context. See, e.g., *Berry v. Queen*, 469 Md. 674, 690, 233 A.3d 42 (2020) ("In order to interpret a word's specific meaning in a particular statute we look to the context in which the word is used.") (citation omitted). That proviso does not allow the County to regulate places where people "may" assemble, it allows regulation of a place within 100 yards "**another** place **of** public assembly," thus covering specific, existing locations where people typically already assemble.

The rule is that "'when general words in a statute follow the designation of particular things or classes of subjects or persons, the general words will usually be construed to include only those things or persons of the same class or general nature as those specifically mentioned.'" *In re Wallace W.*, 333 Md. 186, 190, 634 A.2d 53 (1993), quoting *Giant of Md. v. State's Attorney*, 274 Md. 158, 167, 334 A.2d 107, 113 (1975). This is simply an application of the canon of *ejusdem generis* which is based on "the supposition that if the legislature had intended the general words to be construed in an unrestricted sense, it would not have enumerated the specific things." *State v. 158 Gaming Devices*, 304 Md. 404, 429 n. 12, 499 A.2d 940 (1985). See also *State v. Sinclair*, 274 Md. 646, 650, 659, 337 A.2d 703 (1975). As the Supreme Court has also noted, the canon of *ejusdem generis* "limits general terms [that] follow specific ones to matters similar to those specified." *CSX Transp., Inc. v. Alabama Dept. of Revenue*, 562 U.S. 277, 294 (2011).

Here, by using the term "another place of public assembly," the statute was obviously intended to include "another" place which is akin or similar to the places expressly mentioned in the same statutory sentence, viz. a "park," a "church," a "school" or a "public building." Privately owned businesses or private property in

general are not like any of these specific places. Read literally, the bill's definition of a "place of public assembly" dramatically expands the area subject to local regulation to include any place within 100 yards of a private business or private property that "may" be used as place of assembly as well as to any place within 100 yards of a park, school, church or a public building. A place of public assembly as defined by this bill could cover a private business or a private home used as a place for a book club to meet, or a private property used to host any sort of event, no matter how small or limited in scope. It intrudes into private homes and businesses in a wholly unprecedented way. That is a vast overreach of legislative power by the County. It will not go unchallenged.

Even if the definition of "another place of public assembly" is limited to private businesses, the term is unbelievably broad. Given the number of private businesses in the County, such application would expand the exception to a huge portion of the County, including literally thousands of private homes within a 100 yards of a business. This sweep into private homes is not saved by Section 57-11, as this bill amends Section 57-11 to directly regulate the mere possession of "a ghost gun or undetectable gun" in the person's own home. The Section 4-209 exception for "another" place of public assembly simply cannot be reasonably read to allow such all-encompassing regulation of private possession in one's own home.   This is particularly so given that State law expressly permits home possession of firearms, including handguns. MD Code, Criminal Law, § 4-203(b)(6) (providing that a person may wear, carry or transport a handgun "on real estate that the person owns or leases"). Nothing in Section 4-209 allows the County to regulate home possession of firearms. For these reasons alone, the bill's definition of "public assembly" will not survive judicial review. See *Montgomery County v. Atlantic Guns, Inc.*, 302 Md. 540, 489 A.2d 1114 (1985).

The bill conflicts with State law in other ways. The bill amends Section 57-11 to regulate possession of a firearm and ammunition at a business, providing that such owner may possess a firearm only if the owner "has a permit to carry the firearm." It similarly allows an authorized employee of the business to possess a firearm only if the employee "has a permit to carry the firearm." These amendments (requiring the owner and the employee to have a permit) bring the bill into direct conflict with State law. Specifically, MD Code, Criminal Law, § 4-203(b), expressly provides that a person need not have a permit to transport a handgun between the residence "and the place of business of the person" if the business is owned substantially by that person (Section 4-203(b)(3)), and further provides that a person may, without a permit, wear and carry a handgun "within the confines of a business establishment that the person owns or leases" (Section 4-203(b)(6)). Section 4-203(b)(7) extends the same right to wear and carry a handgun, without a permit, to an authorized supervisory employee within the confines of the business. These State law provisions are also not limited to "one" firearm, much less to ammunition for that one firearm, as required by this bill. These provisions of State law bar the County from regulating possession of firearms by business owners and employees.

Specifically, under the Express Powers Act, counties in Maryland have no power to pass legislation that is inconsistent with State law. See MD Code, Local

Government, §10-206(a) (providing that a county may pass an ordinance, resolution, or bylaw that is "not inconsistent with State law"). Thus, "[a] county may exercise the powers provided under this title only to the extent that the powers are not preempted by or in conflict with public general law." (Id. at §10-206(b)). It is thus well established that a local law is preempted by conflict when the local law prohibits an activity which is permitted by State law, or permits an activity prohibited by state law.  See *City of Baltimore v. Sitnick*, 254 Md. 303, 317, 255 A.2d 376 (1969) ("a political subdivision may not prohibit what the State by general public law has permitted"). The bill obviously fails that test. Nothing in Section 4-209 allows the County to enact regulations that actually and directly ban conduct expressly permitted by State law. This County has already been rebuffed in its attempt to regulate ammunition by the Maryland Court of Appeals. See *Montgomery County v. Atlantic Guns, Inc.*, 302 Md. 540, 489 A.2d 1114 (1985). The limited exception for regulation allowed in Section 4-209 cannot be construed to allow the County to directly contravene State law in this manner. See, e.g., *Allied Vending, Inc. v. City of Bowie*, 332 Md. 279, 297-98, 631 A.2d 77 (1993) ("state law may pre-empt local law in one of three ways: 1) pre-emption by conflict, 2) express pre-emption, or 3) implied pre-emption").

This bill also seeks to outlaw so called "ghost guns" to the extent possible and in so doing violates existing State law. For example, the bill bans the mere possession or transport of any firearm (including a ghost gun) within 100 yards of a place of public assembly.  As noted, the bill expressly amends Section 57-11 to make clear that this ban applies to ghost guns in the home. As explained above, the County may not ban the possession of any firearms in the home as State law expressly permits such possession. MD Code, Public Safety, §4-203(b)(6). That includes ghost gun possessions in the home. The County may not regulate home possession of any firearm. Period. Full stop.

The bill also provides that a person "must not" "sell, transfer, possess, transport, or use a computer code to create, a firearm through a 3D printing process." That language is a grammatical mess. Does the bill ban the mere sale or possession of such code or does it ban such a sale or possession only when it is used "to create a firearm." If it bans the former, then the bill is blatantly unconstitutional under the First Amendment and Second Amendment, as discussed below, and preempted, as discussed above. If it bans only the latter, then the bill is nonsense, as it is hard to envision a "transport" or "sale" of code that "creates" a gun. Such poor draftsmanship is intolerable in a bill that would attach penalties for a Class A violation. *Sessions v. Dimaya*, 138 S.Ct. 1204, 1212 (2018) ("the prohibition of vagueness in criminal statutes…is 'essential' of due process required by both 'ordinary notions of fair play and the settled rules of law") (citation omitted). See also *Myers v. State*, 248 Md. App. 422, 437, 241 A.3d 997 (2020) ("The United States Supreme Court has stated that 'a vague law is no law at all.'"), quoting *United States v. Davis*, 139 S. Ct. 2319, 2323 (2019).

The bill also bans "access" by a minor to any "major component" of a ghost gun and defines a major component to include "the slide or cylinder or the frame or receiver" or the barrel in the case of a rifle or shotgun. That limitation is inconsistent with

current State law that regulates access by a minor under the age of 16 to a loaded "firearm," not merely access to an unloaded component of a firearm. MD Code, Criminal Law, § 4-104. Current State law allows such access to an entire firearm, including a loaded firearm, if the child under the age of 16 has a hunter safety certificate. (Id.). The statute also expressly permits such access if supervised "by an individual at least 18 years old." (Id.). Once again, the bill improperly prohibits an activity permitted by State law.

Similarly, the bill provides that a person "must not" sell, lend or otherwise transfer a ghost gun to a minor and bans the manufacture or assembly of "a gun" (any gun) in the mere presence of a minor, including in the home, by a parent or firearms instructor or other adult. These bans are directly contrary to State law, which provides that a minor (or any person under 21) may "transfer" and possess a regulated firearm (including a handgun) if that person is under the supervision of a person over 21 or being trained by an instructor. MD Code, Public Safety, § 5-133(d). Such firearms instruction by an adult also frequently includes cleaning firearms, which is a process that necessarily includes disassembly and assembly of a firearm. Yet, this bill would ban these activities expressly permitted by State law. Indeed, Section 4-209(b)(2) flatly prohibits the County from banning firearms training, including the training of minors. That is exactly what this bill does by banning the assembly of any firearm in the mere "presence" of a minor and by banning the use of a ghost gun in the training or supervised access expressly allowed by Section 5-133(d).

**The Bill Violates The First Amendment:**

The bill amends Section 57-11 to ban the mere possession, transport, sale or transfer of computer software. Yet, there is no doubt that computer "software" or a "computer program" is fully protected by the First Amendment. See, e.g., *Junger v. Daley*, 209 F.3d 481, 482 (6th Cir. 2000) ("Because computer source code is an expressive means for the exchange of information and ideas about computer programming, we hold that it is protected by the First Amendment."); *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 449 (2d Cir. 2001) ("[C]omputer code, and computer programs constructed from code can merit First Amendment protection."). Banning computer programs is thus akin to banning a book and banning distribution of computer code is thus akin to banning the distribution of a book. Legally, if passed, the bill would turn County law enforcement officers into censors and the County government into a bunch of book burners.

The ban imposed by the bill is a purely "content-based" prior restraint on a First Amendment activities. See *Reed v. Town of Gilbert*, 135 S.Ct. 2218 (2015). It is well-established that prior restraints to speech are "the most serious and least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). Under *Reed*, a facially content-neutral law will still be categorized as content-based if it "cannot be '"justified without reference to the content of the regulated speech,"' or ... adopted by the government 'because of disagreement with the message [the speech] conveys.'" 135 S.Ct. at 2227, quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Here, there is nothing remotely facially neutral

about the bans imposed by this bill. The bans are based on the County's "disagreement with the message." Such a prior restraint on the message cannot stand. See *Defense Distributed v. Dept. of State*, 838 F.3d 451, 468-70 (5th Cir. 2016), *cert. denied* 138 S.Ct. 638 (2018) (Jones, J. dissenting on other grounds) (reaching the merits of the First Amendment claim not considered by the majority and noting that the government's restriction on the export of 3-D printing code was content-based and thus must be analyzed under strict scrutiny).

Moreover, every American has a First Amendment right to receive information. Although the First Amendment refers only to the right to speak, courts have long recognized that the Amendment also protects the right to receive the speech of others. See *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765 (1978) (stating that the "First Amendment ... afford[s] the public access to discussion, debate, and the dissemination of information and ideas"); *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748 (1976) (ban on advertising of prescription drug prices overturned); *Bigelow v. Virginia*, 421 U.S. 809, (1975) (ban on abortion advertising invalid); *Lamont v. Postmaster General*, 381 U.S. 301, (1965) (a postal regulation limiting the importation of Communist publications overturned); *Martin v. City of Struthers*, 319 U.S. 141 (1943) (ordinance prohibiting door-to-door solicitation invalid as to distribution of leaflets announcing a religious meeting). Every person in Maryland has a constitutional right to receive, purchase or otherwise obtain the very computer software or programs that the bill would ban.

**The Bill Is Unconstitutional Under The Second Amendment:**

As noted, the bill would ban mere possession of a "ghost gun" within 100 yards of broad and vague definition of a place of public assembly, including banning possession in the home. This bill is thus a gun ban, pure and simple. Such a gun ban violates the Second Amendment right of owners to possess firearms under *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. Chicago*, 561 U.S. 742, 750 (2010). Even under the least demanding test ("intermediate scrutiny"), if the State can accomplish its legitimate objectives without a ban (a naked desire to penalize gun owners is not legitimate), then the State must use that alternative. *McCullen v. Coakley*, 134 S. Ct. 2518, 2534 (2014). Stated differently, under intermediate scrutiny, the State has the burden to demonstrate that its law does not "burden substantially more [protected conduct] than is necessary to further the government's legitimate interest." Id. at 2535, quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 796 (1989). See also *NY State Rifle & Pistol Ass'n. v. Cuomo*, 804 F.3d 242, 264 (2d Cir. 2015), cert. denied, 136 S.Ct. 2486 (2016) (striking down a 7 round load limit in a firearm magazine because the limit was "untethered from the stated rationale"). See also *Reynolds v. Middleton*, 779 F.3d 222, 232 (4th Cir. 2015) (holding that, under the intermediate scrutiny test as construed in *McCullen*, the government must "prove that it actually tried other methods to address the problem"). (Emphasis in original).

The test for "strict scrutiny" is even more demanding as, under that test, the State must prove both a "compelling need" and that it used the "least" restrictive alternative in addressing that need. See *United States v. Playboy Entm't. Grp., Inc.*,

529 U.S. 803, 813 (2000). More generally, the constitutionality of gun laws must be analyzed under the "text, history and tradition" test that was actually used in *Heller* and *McDonald*. See, e.g., *Heller v. District of Columbia*, 670 F.3d 1244, 1269 (D.C. Cir. 2016) (Kavanaugh, J., dissenting) ("In my view, *Heller* and *McDonald* leave little doubt that courts are to assess gun bans and regulations based on text, history, and tradition, not by a balancing test such as strict or intermediate scrutiny."). There is no "text, history or tradition" that could possibly support the types of bans imposed by this bill.

The manufacture of a homemade firearm or the use of a 3-D printer to create a homemade gun or gun component does not make that gun illegal in the slightest under long-standing federal law and state law. Under federal law, a person may legally manufacture a firearm for his own personal use. See 18 U.S.C. § 922(a). However, "it is illegal to transfer such weapons in any way." *Defense Distributed v. United States*, 838 F.3d 451, 454 (5th Cir. 2016). This manufacture "involves starting with an '80% lower receiver,' which is simply an unfinished piece of metal that looks quite a bit like a lower receiver but is not legally considered one and may therefore be bought and sold freely. It requires additional milling and other work to turn into a functional lower receiver." (Id).

Manufacturing an "80% lower" into a "functional lower receiver" is not a trivial process. It takes machine tools, expertise and hours of time. Miscues are common and, when made, essentially convert the "80% lower" into scrap metal. Individuals who undertake this process are overwhelmingly hobbyists, not criminals. Even after the receiver is successfully made, the owner would still have to purchase the additional parts, such as a barrel, the trigger, slide and all the internal parts to complete the assembly. All these additional parts are expensive. With the cost of the tools to mill the receiver, plus the cost of the parts, a final assembled homemade gun costs more to make than it would to actually buy an identical gun from a dealer. This bill would ban the hobby and penalize the hobbyist for the continued possession of any gun (within a 100 yards of a place of public assembly) that the hobbyist constructed prior to the enactment of the law. That result likely includes literally thousands of law-abiding people in Montgomery County.

Banning manufacture or the mere possession of any gun made by a 3-D printer, cannot be justified under any of these tests applicable to the Second Amendment. The bills' ban on the use of computers is akin to the argument that the Second Amendment protects only muskets that were used during the Revolutionary War, a contention that the Court in *Heller* rejected as "bordering on the frivolous." *Heller*, 554 U.S. at 582. Indeed, almost all firearms are manufactured using computer software. The County simply may not ban the possession of these types of arms. See *Defense Distributed v. Dept. of State*, 121 F.Supp.3d 680, 699 (W.D. Tex. 2015), *aff'd*, 838 F.3d 451 (5th Cir. 2016), *cert. denied*, 138 S.Ct. 638 (2018) (sustaining a regulation of 3-D printed guns under the Second Amendment because plaintiffs were "not prohibited from manufacturing their own firearms" and were "not prohibited from acquiring the computer files at issue").

Heller held that guns in "common use" by law abiding persons are prima facie protected arms under the Second Amendment. *Heller*, 554 U.S. at 627. Homemade guns easily satisfy this requirement as there are literally tens of thousands of such guns made over many years throughout the United States. Guns for personal use have been made at home for centuries, even before the Revolutionary War. The Council simply may not disregard that reality. See *Caetano v. Massachusetts*, 136 S.Ct.1027 (2016) (summarily reversing Massachusetts' highest court for failing to follow the reasoning of Heller in sustaining a state ban on stun guns); *Ramirez v. Commonwealth*, 479 Mass. 331, 332, 352 (2017) (on remand from *Caetano*, holding that "the absolute prohibition against civilian possession of stun guns under § 131J is in violation of the Second Amendment" and declaring the State's absolute ban to be "facially invalid"). Homemade guns are at least as much "in common use" as stun guns at issue in Caetano.

Here, the supposed evil that this bill purports to address is guns without serial numbers because such guns are not "traceable." Yet, tracing runs out after identification of the gun's first purchaser and firearms may be sold and resold many times in their lifetime. Criminals, who may not possess firearms at all, will not be deterred by the bill as possession of a firearm by a prohibited person is already a 10-year federal felony, 18 U.S.C. § 922(g), and a serious crime under existing State law, MD Code, Public Safety, § 5-101(g)(3), § 5-133(b)(1), § 5-205(b)(1). The few crimes that are solved by tracing guns left at a crime scene are only a small fraction of guns used in crimes because very few guns are actually traced by the ATF. See David B. Kopel, Clueless: The Misuse of BATF Firearms Tracing Data. http://www.davekopel.org/2A/LawRev/CluelessBATFtracing.htm. See also Police Departments Fail to Regularly Trace Crime Guns. https://www.thetrace.org/2018/12/police-departments-gun-trace-atf/. The ATF itself has cautioned against any use of trace data, noting that "[t]he firearms selected [for tracing] do not constitute a random sample and should not be considered representative of the larger universe of all firearms used by criminals, or any subset of that universe." Bureau of Alcohol, Tobacco, Firearms and Explosives. Firearms Trace Data, 2016: Maryland, https://www.atf.gov/docs/163521-mdatfwebsite15pdf/download. As the ATF further notes, "[n]ot all firearms used in crime are traced and not all firearms traced are used in crime," stating further that "[f]irearms are normally traced to the first retail seller, and sources reported for firearms traced do not necessarily represent the sources or methods by which firearms in general are acquired for use in crime."

But, if the concern is truly that these guns lack a serial number (rather than a desire to penalize gun owners), then that concern can be addressed without banning homemade guns. Specifically, there are alternatives to bans. For example, a new law passed in California (which is ranked by the Giffords Law Center as having the most restrictive gun laws in the nation) provides that a new resident to the state shall apply to the Department of Justice for a unique serial number within 60 days of arrival for any firearm the resident wishes to possess in the state that the resident previously self-manufactured or self-assembled or a firearm the resident owns, that does not have a unique serial number or other mark of identification. As of July 1, 2018, prior to manufacturing or assembling a new firearm, a person is

required to apply to California for a unique serial number. The gun owner is then simply required to engrave that number onto the receiver and report back to California that he or she has done so. As of January 1, 2019, owners of existing guns were required to apply for such serial numbers and perform this engraving. See California Penal Code §§ 29180-29184.

In short, assembly of new homemade guns and existing possession is permitted as long as this serial number is obtained, engraved and reported. California Penal Code §29180. In this way, the owner is identified and the gun is fully "traceable" and thus no longer a so-called "ghost gun." As this law indicates, there is no reason to take the extreme step of flatly banning homemade guns or converting existing owners into criminals. Under *Heller*, the County may not simply reject this alternative simply because a general ban is more convenient or cheaper. Gun owners may not be penalized for such flimsy reasons. See, e.g., *Board of Estimate of City of New York v. Morris*, 489 U.S. 688, 702 n.10 (1989); *Heller v. District of Columbia*, 801 F.3d 264, 310 (D.C. Cir. 2015) (Henderson, J., concurring in part and dissenting in part). Indeed, in 2018, the House Judiciary Committee in the General Assembly favorably reported a bill (HB 740) that expressly required the State Police to conduct a study of this California alternative. Such legislation may be enacted in the future. The Council has no role in such State-wide matters.

In sum, the Council should not venture out on this ill-conceived regulatory adventure that will, more likely than not, be struck down as preempted or otherwise invalidated by the courts. Waiting for the State to act also makes fiscal sense. If the State General Assembly decides to regulate "ghost guns," then the substantial litigation costs associated with defending that policy will be borne by the State, not by the County. Such legislation, if enacted by the General Assembly, will also undoubtedly conflict in some way with the bans that would be imposed by this bill, thereby resulting in the preemption of the County law. The Council should await action by the General Assembly. "Feel good" legislation is no substitute for sound legal judgment.

Sincerely,

*Mark W. Pennak*

Mark W. Pennak
President, Maryland Shall Issue, Inc.
mpennak@marylandshallissue.org