**IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND**

| | |
|---|---|
| **MARYLAND SHALL ISSUE, INC.,** *et al.***,** | **Case No.: 485899V** |
| *Plaintiffs,* | |
| vs. | **EXPEDITED HEARING REQUESTED** |
| **MONTGOMERY COUNTY, MARYLAND**, | |
| *Defendant.* | |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM REGARDING
ENACTMENT OF SENATE BILL 387 AND HOUSE BILL 425 INTO LAW
AND
MOTION FOR EXPEDITED HEARING AND DECISION**

**I.     INTRODUCTION**

Pursuant to MD Code, Courts and Judicial Proceedings, § 3-409(e), plaintiffs respectfully renew their request for "a speedy hearing" on plaintiffs' motion for partial summary judgment as well as on the Motion to Dismiss and Alternative Motion for Summary Judgment filed by defendant. Plaintiffs request that the Court "advance it on the calendar" to be heard and decided as soon as possible.

This renewed motion for expedited treatment is necessitated by the enactment by the General Assembly of Senate Bill 387 and House Bill 425, which are identical bills enacted into law on April 9, 2022, after Governor Hogan advised the General Assembly that he would allow these two bills to become law without his signature. SB 387 was thus enacted under Article II, Section 17(b) of the Maryland Constitution as Chapter 19. See https://bit.ly/3HsrZBj. HB 425 was enacted under Article II, Section 17(b) of the Maryland Constitution, as Chapter 18. See

- Page 1 -

https://bit.ly/3C7rgEE. A copy of HB 425, is attached. As detailed below, SB 387/HB 425 creates specific deadlines for compliance by existing owners of privately made firearms ("PMF") that are regulated by Bill 4-21. Bill 4-21, which defines a PMF to be a scary "ghost gun," Section 57-1(2), regulates such a PMF in a manner that is wildly inconsistent with this newly enacted, State-wide legislation. As detailed below, a prompt decision on the pending motions is needed as soon as possible to allow the full implementation of SB 387/HB 425 in Montgomery County.

## II.    BILL 4-21 IS INCONSISTENT WITH SB 387/HB 425

SB 387/HB 425 creates a new subtitle 7 in Title 5 of the Public Safety article of the Maryland Code and regulates the possession of PMFs in ways that are incompatible and in direct conflict with the regulation of PMFs by Bill 4-21. This new legislation thus makes clear that Bill 4-21 is not a "local law" within the meaning of Article XI, § 3 of the Maryland Constitution, as alleged in Count I of the Complaint. SB 387/HB 425 impliedly preempts local regulation of PMFs and is also violative of the Express Powers Act, MD Code, Local Government, § 10-206, as alleged in Count II, because Bill 4-21 is "inconsistent" with and otherwise "in conflict with public general law" established by SB 387/HB 425. (Id.).

The conflicts between Bill 4-21 and SB 387/HB 425 are many and stark. First, Bill 4-21 bans the mere possession of an existing PMFs throughout Montgomery County as of July 16, 2021, the effective date of the Bill. See Section 57-11(a) of the Montgomery County Code, as amended by Bill 4-21. In contrast, SB 387/HB 425 creates two separate regulatory approaches to PMFs. Under the provisions relating to **sales and purchases**, SB 387/HB 425 provides that "a person may not purchase, receive, sell, offer to sell, or transfer an unfinished frame or receiver unless it is required by federal law to be, and has been, imprinted with a serial number by a federally licensed firearms manufacturer or federally licensed firearms importer in compliance with all

1    federal laws and regulations applicable to the manufacture and import of firearms." See Section 5-

2    703(a). This provision goes into effect on June 1, 2022. See Section 4 of SB 387/HB 425.

3         SB 387/HB 425 takes a different approach to **possession** of PMFs by existing owners. In

4    contrast to the flat ban on possession enacted by Bill 4-21, SB 387/HB 425 allows existing owners

5    of PMFs to lawfully retain possession if the PMF is serialized by a federal firearms licensee by

6    March 1, 2023, in accordance with federal law. See Section 5-703(b)(2)(i). As explained below,

7    new federal regulations just published by the ATF in final form will require federal licensees to

8    mark PMFs using a specific marking protocol involving the use of the licensee's abbreviated

9    license number. Alternatively, SB 387/HB 425 also provides that existing owners may have their

10   existing PMFs serialized by a federal firearms licensee with a marking system that uses the owner's

11   zip code, initials, and another unique number. See Section 5-703(b)(2)(ii). Under the first

12   alternative, the owner need not register the PMF with State Police, as the federal licensee's ATF

13   number will provide a means of ensuring traceability in much the same manner as firearms are

14   currently traceable. Under the second alternative, such registration is required, thereby ensuring

15   traceability in that manner. See Section 5-703(b)(2)(ii)(2).

16        SB 387/HB 425 also allows a non-licensee to continue to manufacture a firearm for

17   personal use, providing in Section 5-703(b)(1)(iii), that the ban on possession of an unserialized

18   firearm, otherwise imposed by the bills, does not apply to possession of an unfinished frame or

19   receiver by a person who made the unfinished frame or receivers "without the use of any

20   prefabricated parts." See Section 5-703(b)(1)(iii). Such a person has 30 days in which to obtain a

21   serial number from a federal licensee in accordance with the marking protocols set out in Bill

22   387/HB 425. Similarly, SB 387/HB 425 regulates only items that have "reached a stage of

23   manufacture where it may readily be completed, assembled, or converted to be used as the frame

or receiver of a functional firearm" and thus becomes an "unfinished frame or receiver" as thus defined in the bill in Section 5-701(h). No serialization or registration is required prior to that time. This provision limits the reach of the bills to match the reach of the federal law.

SB 387/HB 425 requires the Maryland State Police to create "a system to register firearms" that are imprinted in accordance with the provisions of SB 387/HB 425. See Section 5-704(a). SB 387/HB 425 protects such registration information from public disclosure (Section 5-704(b)), and requires the Governor to include in the annual budget an appropriation of at least $150,000 in order "to fund the registration activities" conducted by the State Police (Section 5-704(c)). In contrast, Bill 4-21 criminalizes the possession of all unfinished frames or receivers, regardless of stage of manufacture. See Section 57-1(2) (defining "ghost gun" to include "an unfinished frame or receiver"); Section 57.11(a) (banning the sale, transfer, possession or transport of a "ghost gun"). Yet, in stark contrast to SB 387/HB 425, Bill 4-21 makes no attempt to define what constitutes an "unfinished frame or receiver." Bill 4-21 contains no provision that would allow an owner to serialize or register an unfinished frame or receiver or to continue to manufacture firearms for personal use. Bill 4-21 is plainly inconsistent with the elaborate regulatory and registration system created by SB 387/HB 425.

SB 387/HB 425 also expressly exempts from its coverage the sale, transfer or delivery, or possession of an unserialized firearm by a federal firearms licensee, such as plaintiff Engage Armament. See Section 5-702(2). Bill 4-21 has no such exemption. Bill 4-21 thus makes it legally impossible for a federal licensee in the County, including Engage Armament, to provide the serialization services expressly allowed and contemplated by SB 387/HB 425. See Section 5-703(b). Similarly, under SB 387/HB 425, an owner of a PMF is free to sell the unserialized firearm to a federal licensee. (Id.). That is legally impossible under Bill 4-21, as the Bill bans both the sale

1   and the possession of a "ghost gun," including an "unfinished frame or receiver." See Section 57-

2   11(a).

3           As noted, Bill 4-21 purports to ban "unfinished frames or receivers," but never defines the

4   term, thus creating an extraordinarily vague criminal law. See Plaintiffs Memo. In Support of

5   Motion for Partial Summary Judgment at 44. In contrast, SB 387/HB 425 sets forth a specific

6   definition for this term in Section 5-701(h), and that definition is quite similar to the federal

7   definition of a "firearm" found in 18 U.S.C. § 921(a)(3). SB 387/HB 425 then adds further content

8   to that definition by expressly providing that the provisions of SB 387/HB 425 are to be "construed

9   in a manner that is consistent" with new federal ATF regulations that define "frame or receiver"

10  in greater detail. See Section 3 of SB 387/HB 425. Those federal ATF regulations became final on

11  April 11, 2022. See https://bit.ly/3uzgswM. These new federal regulations also impose very

12  specific requirements on federal firearms licensees (including gunsmiths) to serialize PMFs that

13  may come into their possession. See, e.g., 27 C.F.R. § 478.92 and § 479.102, as amended by the

14  new rule. Thus, SB 387/HB 425 was designed to work in conjunction with these provisions of

15  federal law. The bans imposed by Bill 4-21 are utterly untethered to federal law.

16          Other differences are also apparent. For example, Bill 4-21 purports to ban the sale, transfer,

17  possession, and transport of "major components" of firearms. See Section 57-11(a). SB 387/HB

18  425 does not purport to regulate "major components" (other than a frame or receiver) at all. Under

19  Bill 4-21, the ban on components would prevent a law-abiding resident of the County from

20  building a firearm for personal use by using a fully **serialized** frame or receiver, which are

21  available from federal firearms licensees throughout the United States. Under federal and State

22  law, such a use of a serialized receiver means that the firearm is not a "ghost gun" and is thus

23  perfectly legal under SB 387/HB 425 and federal law. Yet, the manufacture of the same serialized

- Page 5 -

firearm would be impossible under Bill 4-21 because of Bill 4-21's bans on "components." See Plaintiff's Memo. In Opposition at 25. Bill 4-21 would likewise ban a federally licensed firearms manufacturer, such as plaintiff Engage Armament, from using components to build an otherwise perfectly lawful firearm that the licensee is fully entitled to manufacture under federal and State law. (Id.). By intentionally not regulating "components," SB 387/HB 425 avoids these absurd results.

Bill 4-21 imposes criminal sanctions for mere possession of a "ghost gun" without regard to the intent or knowledge of the possessor and thus creates strict criminal liability for mere possession. Such strict liability imposed by vague legislation is highly questionable under the Due Process Clause of the Fourteenth Amendment. See, e.g., *Lawrence v. State*, 475 Md. 384, 420-21, 257 A.3d 588 (2021) (taking pains to expressly "signal" the General Assembly that the ban on carrying a handgun "about" the person found in MD Code Criminal Law, § 4-203(b)(1), is unconstitutionally vague, and that the Court would strike it down on that basis in the next appropriate case). See also Plaintiffs' Memo. In Support of Motion for Partial Summary Judgment at 38 (discussing *City of Chicago v. Morales*, 527 U.S. 41, 54 (1999)).

SB 387/HB 425, in contrast, contains an express *mens rea* provision, providing that the ban on possession "does not apply to possession of a firearm unless a person knew or reasonably should have known that the firearm was not imprinted with a serial number as described under this subsection." Section 5-703(b)(1)(i). Similarly, SB 387/HB 425 provides that the ban on possession "does not apply to persons who received the firearm through inheritance," as long as such person gets the firearm serialized by a federal licensee within 30 days of such receipt in accordance with serialization provisions in the bills. See Section 5-703(b)(ii). Bill 4-21 contains no such provision allowing possession by inheritance, much less a provision allowing continued possession through

1    serialization. In sum, Bill 4-21 bans the very types of possession expressly permitted by SB

2    387/HB 425, and, by banning possession by a federal licensee, effectively bans serialization

3    services by a federal licensee, as allowed and specified by SB 387/HB 425.

4         For the foregoing reasons, plaintiffs respectfully submit that SB 387/HB 425 has occupied

5    the field of PMF regulation in Maryland and thus has preempted Bill 4-21. See Plaintiffs' Memo.

6    In Support of Motion for Partial Summary Judgment at 19; Plaintiffs' Memo. In Opposition at 17.

7    This legislation by the General Assembly also necessarily embodies a recognition that the

8    regulation of PMFs is a matter of State-wide concern. Bill 4-21 thus "indirectly affects matters of

9    significant interest to the entire state" and is thus not a "local law" within the meaning of the

10    Maryland Constitution. *Cole v. Secretary of State*, 249 Md. 425, 434, 240 A.2d 272 (1968). See

11    Plaintiffs' Memo. In Opposition at 21-26. At the very least, Bill 4-21 is "inconsistent" with SB

12    387/HB 425 within the meaning of the Express Powers Act and is thus invalid on that basis as well.

13    (Id. at 6-21).

14         SB 387/HB 425 goes into effect on June 1, 2022. See Section 4. As noted, existing owners

15    have until March 1, 2023, to obtain serialization services from federal licensees. That clock is now

16    ticking. Yet, Bill 4-21 makes it impossible for existing owners to obtain serialization services in

17    Montgomery County, as it bans mere possession by owners and federal firearms licensees alike. It

18    is thus urgent that Bill 4-21 be struck down as soon as possible to allow SB 387/HB 425 to work

19    as intended by the General Assembly. Plaintiffs again respectfully request an expedited hearing

20    and a decision on these pending motions at the earliest practicable date.

21

22

23

- Page 7 -

**CONCLUSION**

For all the foregoing reasons, this Court should grant expedited hearing and decision on the pending motions. Plaintiffs' motion for partial summary judgment should be granted and defendant's motion to dismiss and for summary judgment should be denied.

Respectfully submitted,

*/s/ Mark W. Pennak*

MARK W. PENNAK
Maryland Shall Issue, Inc.
9613 Harford Rd, Ste C #1015
Baltimore, MD 21234-21502
mpennak@marylandshallissue.org
Phone: (301) 873-3671
MD Atty No. 1905150005
*Counsel for Plaintiffs*

Dated: April 14, 2022

1

**CERTIFICATE OF SERVICE**

2          The undersigned counsel hereby certifies that on April 14, 2022, a copy of the foregoing

3   Plaintiffs' Supplemental Memorandum Regarding Enactment Of Senate Bill 387 And House Bill

4   425 Into Law and Motion for Expedited Hearing and Decision was served on the following counsel

5   for defendant Montgomery County via the MDEC e-filing system:

6   Edward Barry Lattner            Edward.Lattner@MontgomeryCountyMD.gov

7   Patricia Lisehora Kane          patricia.kane@montgomerycountymd.gov

8   Sean Charles O Hara             sean.ohara@montgomerycountymd.gov

9

10

11                              /s/ *Mark W. Pennak*

12                              MARK W. PENNAK
                                *Counsel for Plaintiffs*

13

14

15

16

17

18

19

20

21

22

23

- Page 9 -

# HOUSE BILL 425

E4 (2lr1537)

*ENROLLED BILL*

*— Judiciary/Judicial Proceedings —*

Introduced by **The Speaker (By Request – Office of the Attorney General) and Delegate Lopez**

Read and Examined by Proofreaders:

_____
Proofreader.

_____
Proofreader.

Sealed with the Great Seal and presented to the Governor, for his approval this

_____ day of _____ at _____ o'clock, _____M.

_____
Speaker.

CHAPTER _____

1    AN ACT concerning

2    **Public Safety – Untraceable Firearms**

3    FOR the purpose of altering a certain definition of "firearm" to include a certain unfinished
4        frame or receiver; prohibiting a person from purchasing, receiving, selling, offering
5        to sell, or transferring an unfinished frame or ~~receiver, or~~ *receiver; prohibiting a*
6        *person from selling, offering to sell, or transferring a certain firearm; prohibiting a*
7        *person from* possessing a firearm on or after a certain date, unless it is required by
8        federal law to be, and has been, imprinted with a certain number in a certain
9        manner; requiring the Secretary of State Police to suspend a certain dealer's license
10       if the dealer is charged with a certain crime; requiring the Secretary to revoke a
11       certain dealer's license if the dealer is convicted of a certain crime; *providing for a*
12       *system of registration of a certain firearm with the Secretary; requiring the Governor*
13       *to include a certain appropriation in the annual State budget;* and generally relating
14       to firearms.

---

EXPLANATION: **Capitals indicate matter added to existing law**.
   **[**Brackets**]** indicate matter deleted from existing law.
   Underlining indicates amendments to bill.
   ~~Strike out~~ indicates matter stricken from the bill by amendment or deleted from the law by
   amendment.
   *Italics indicate opposite chamber/conference committee amendments.*



2                                    **HOUSE BILL 425**

1   BY repealing and reenacting, without amendments,
2           Article – Public Safety
3           Section 5–101(a)
4           Annotated Code of Maryland
5           (2018 Replacement Volume and 2021 Supplement)

6   BY repealing and reenacting, with amendments,
7           Article – Public Safety
8           Section 5–101(h) and 5–114
9           Annotated Code of Maryland
10          (2018 Replacement Volume and 2021 Supplement)

11  BY adding to
12          Article – Public Safety
13          Section 5–701 through ~~5–705~~ *5–706* to be under the new subtitle "Subtitle 7.
14                  Untraceable Firearms"
15          Annotated Code of Maryland
16          (2018 Replacement Volume and 2021 Supplement)

17          SECTION 1. BE IT ENACTED BY THE GENERAL ASSEMBLY OF MARYLAND,
18  That the Laws of Maryland read as follows:

19                              **Article – Public Safety**

20  5–101.

21          (a)     In this subtitle the following words have the meanings indicated.

22          (h)     (1)     "Firearm" means:

23                          (i)     a weapon that expels, is designed to expel, or may readily be
24  converted to expel a projectile by the action of an explosive; **[**or**]**

25                          (ii)    the frame or receiver of such a weapon**; OR**

26                          **(III)   AN UNFINISHED FRAME OR RECEIVER, AS DEFINED IN §
27  5–701 OF THIS TITLE**.

28                  (2)     "Firearm" includes a starter gun.

29  5–114.

30          (a)     (1)     The Secretary shall suspend a dealer's license if the licensee:

31                          (i)     is under indictment for a crime of violence; **[**or**]**

1         (ii)   is arrested for a violation of this subtitle that prohibits the
2 purchase or possession of a regulated firearm**; OR**

3         **(III)   IS CHARGED WITH A CRIME UNDER SUBTITLE 7 OF THIS**
4 **TITLE**.

5         (2)   (i)   The Secretary may suspend a dealer's license if the licensee is
6 not in compliance with the record keeping and reporting requirements of § 5–145 of this
7 subtitle.

8         (ii)   The Secretary may lift a suspension under this paragraph after
9 the licensee provides evidence that the record keeping violation has been corrected.

10       (b)   The Secretary shall revoke a dealer's license if:

11       (1)   it is discovered that false information has been supplied or false
12 statements have been made in an application required by this subtitle; or

13       (2)   the licensee:

14             (i)   is convicted of a disqualifying crime;

15             (ii)   is convicted of a violation classified as a common law crime and
16 receives a term of imprisonment of more than 2 years;

17             (iii)   is a fugitive from justice;

18             (iv)   is a habitual drunkard;

19             (v)   is addicted to a controlled dangerous substance or is a habitual
20 user;

21             (vi)   has spent more than 30 consecutive days in a medical institution
22 for treatment of a mental disorder, unless the licensee produces a physician's certificate,
23 issued after the last institutionalization and certifying that the licensee is capable of
24 possessing a regulated firearm without undue danger to the licensee or to another;

25             (vii)   has knowingly or willfully manufactured, offered to sell, or sold
26 a handgun not on the handgun roster in violation of § 5–406 of this title; **[**or**]**

27             (viii)   has knowingly or willfully participated in a straw purchase of a
28 regulated firearm**; OR**

29             **(IX)   IS CONVICTED OF A CRIME UNDER SUBTITLE 7 OF THIS**
30 **TITLE**.

1      (c)      If the Secretary suspends or revokes a dealer's license, the Secretary shall
2   notify the licensee in writing of the suspension or revocation.

3      (d)      A person whose dealer's license is suspended or revoked may not engage in
4   the business of selling, renting, or transferring regulated firearms, unless the suspension
5   or revocation has been subsequently withdrawn by the Secretary or overruled by a court in
6   accordance with § 5–116 of this subtitle.

7                 SUBTITLE 7. UNTRACEABLE FIREARMS.

8   **5–701.**

9      **(A)**      IN THIS SUBTITLE THE FOLLOWING WORDS HAVE THE MEANINGS
10   INDICATED.

11      **(B)**      "ANTIQUE FIREARM" HAS THE MEANING STATED IN § 4–201 OF THE
12   CRIMINAL LAW ARTICLE.

13      **(C)**      "FEDERALLY LICENSED FIREARMS DEALER" MEANS A PERSON
14   LICENSED BY THE FEDERAL BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND
15   EXPLOSIVES TO DEAL IN FIREARMS.

16      **(D)**      "FEDERALLY LICENSED FIREARMS IMPORTER" MEANS A PERSON
17   LICENSED BY THE FEDERAL BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND
18   EXPLOSIVES TO IMPORT FIREARMS.

19      **(E)**      "FEDERALLY LICENSED FIREARMS MANUFACTURER" MEANS A PERSON
20   LICENSED BY THE FEDERAL BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND
21   EXPLOSIVES TO MANUFACTURE FIREARMS.

22      **(F)**      "FIREARM" HAS THE MEANING STATED IN § 5–101 OF THIS TITLE.

23      **(G)**      "SECRETARY" MEANS THE SECRETARY OF STATE POLICE OR THE
24   SECRETARY'S DESIGNEE.

25      **(H)**      "UNFINISHED FRAME OR RECEIVER" MEANS A FORGED, CAST, PRINTED,
26   EXTRUDED, OR MACHINED BODY OR SIMILAR ARTICLE THAT~~:~~

27          ~~(1)~~      HAS REACHED A STAGE IN MANUFACTURE WHERE IT MAY READILY
28   BE COMPLETED, ASSEMBLED, OR CONVERTED TO BE USED AS THE FRAME OR
29   RECEIVER OF A FUNCTIONAL FIREARM~~; OR~~

1       ~~(2)     IS MARKETED OR SOLD TO THE PUBLIC TO BECOME OR BE USED~~
2  ~~AS THE FRAME OR RECEIVER OF A FUNCTIONAL FIREARM ONCE COMPLETED,~~
3  ~~ASSEMBLED, OR CONVERTED~~.

4  **5–702.**

5       THIS SUBTITLE DOES NOT APPLY TO:

6       **(1)**   A FIREARM THAT:

7             **(I)**    WAS MANUFACTURED BEFORE *OCTOBER 22,* 1968; OR

8             **(II)**   IS AN ANTIQUE FIREARM;

9       **(2)**   A SALE, AN OFFER TO SELL, A TRANSFER, OR A DELIVERY OF A
10 FIREARM OR AN UNFINISHED FRAME OR RECEIVER TO, OR POSSESSION OF A
11 FIREARM OR UNFINISHED FRAME OR RECEIVER BY:

12                **(I)**    A FEDERALLY LICENSED FIREARMS DEALER;

13                **(II)**   A FEDERALLY LICENSED FIREARMS MANUFACTURER; OR

14                **(III)**  A FEDERALLY LICENSED FIREARMS IMPORTER; OR

15      **(3)**   A TRANSFER OR SURRENDER OF A FIREARM OR AN UNFINISHED
16 FRAME OR RECEIVER TO A LAW ENFORCEMENT AGENCY.

17 **5–703.**

18      **(A)**   *(1)*   A PERSON MAY NOT PURCHASE, RECEIVE, SELL, OFFER TO SELL,
19 OR TRANSFER AN UNFINISHED FRAME OR RECEIVER UNLESS IT IS REQUIRED BY
20 FEDERAL LAW TO BE, AND HAS BEEN, IMPRINTED WITH A SERIAL NUMBER BY A
21 FEDERALLY LICENSED FIREARMS MANUFACTURER OR FEDERALLY LICENSED
22 FIREARMS IMPORTER IN COMPLIANCE WITH ALL FEDERAL LAWS AND REGULATIONS
23 APPLICABLE TO THE MANUFACTURE AND IMPORT OF FIREARMS.

24           *(2)   EXCEPT AS PROVIDED IN PARAGRAPH (1) OF THIS SUBSECTION, A*
25 *PERSON MAY NOT SELL, OFFER TO SELL, OR TRANSFER A FIREARM UNLESS IT IS*
26 *IMPRINTED WITH A SERIAL NUMBER AS DESCRIBED UNDER SUBSECTION (B) OF THIS*
27 *SECTION.*

28      **(B)**   *(1)*   *THIS SUBSECTION DOES NOT APPLY TO:*

1            *(I)      POSSESSION OF A FIREARM UNLESS A PERSON KNEW OR*
2 *REASONABLY SHOULD HAVE KNOWN THAT THE FIREARM WAS NOT IMPRINTED WITH*
3 *A SERIAL NUMBER AS DESCRIBED UNDER THIS SUBSECTION;*

4            *(II)      POSSESSION OF A FIREARM THAT DOES NOT COMPLY WITH*
5 *THE MARKING REQUIREMENTS DESCRIBED UNDER THIS SUBSECTION BY A PERSON*
6 *WHO RECEIVED THE FIREARM THROUGH INHERITANCE, AND IS NOT OTHERWISE*
7 *PROHIBITED FROM POSSESSING THE FIREARM, FOR A PERIOD NOT EXCEEDING 30*
8 *DAYS AFTER INHERITING THE FIREARM; OR*

9            *(III)      POSSESSION OF AN UNFINISHED FRAME OR RECEIVER BY A*
10 *PERSON THAT MADE OR MANUFACTURED THE UNFINISHED FRAME OR RECEIVER,*
11 *WITHOUT THE USE OF ANY PREFABRICATED PARTS, AND WHO IS NOT OTHERWISE*
12 *PROHIBITED FROM POSSESSING THE UNFINISHED FRAME OR RECEIVER, FOR A*
13 *PERIOD NOT EXCEEDING 30 DAYS AFTER THE PERSON MADE OR MANUFACTURED THE*
14 *UNFINISHED FRAME OR RECEIVER.*

15         *(2)*   ON OR AFTER ~~JANUARY~~ *MARCH* 1, 2023, A PERSON MAY NOT
16 POSSESS A FIREARM UNLESS:

17         ~~(1)~~ *(I)*   THE FIREARM IS REQUIRED BY FEDERAL LAW TO BE, AND
18 HAS BEEN, IMPRINTED BY A FEDERALLY LICENSED FIREARMS MANUFACTURER OR
19 FEDERALLY LICENSED FIREARMS IMPORTER WITH A SERIAL NUMBER IN
20 COMPLIANCE WITH ALL FEDERAL LAWS AND REGULATIONS APPLICABLE TO THE
21 MANUFACTURE AND IMPORT OF FIREARMS; OR

22         ~~(2)~~ *(II)*   THE FIREARM*:*

23            *1.*   HAS BEEN IMPRINTED BY A FEDERALLY LICENSED
24 FIREARMS DEALER, *FEDERAL FIREARMS MANUFACTURER,* OR OTHER FEDERAL
25 LICENSEE AUTHORIZED TO PROVIDE MARKING SERVICES*,* WITH ~~THE FIRST THREE~~
26 ~~AND LAST FIVE DIGITS OF THE LICENSEE'S FEDERAL FIREARMS LICENSE NUMBER,~~
27 ~~FOLLOWED BY A HYPHEN, AND THEN FOLLOWED BY ANOTHER NUMBER~~*:*

28            *A.*   *THE ZIP CODE OF THE CURRENT OWNER OR PERSON*
29 *THAT MADE, COMPLETED, OR INITIALLY ASSEMBLED THE FIREARM;*

30            *B.*   *THE INITIALS OF THE CURRENT OWNER OR PERSON*
31 *THAT MADE, COMPLETED, OR INITIALLY ASSEMBLED THE FIREARM; AND*

32            *C.*   *A NUMBER THAT DOES NOT MATCH A NUMBER USED BY*
33 *THE CURRENT OWNER ON ANOTHER FIREARM OR BY THE PERSON WHO MADE,*
34 *COMPLETED, OR INITIALLY ASSEMBLED THE FIREARM ON ANY OTHER FIREARM THAT*
35 *THE PERSON HAS MADE, COMPLETED, OR INITIALLY ASSEMBLED; AND*

1            *2.*      *HAS BEEN REGISTERED WITH THE SECRETARY.*

2       **(C)**   *(1)*   *A PERSON WHO VIOLATES SUBSECTION (A) OF THIS SECTION IS*
3  *GUILTY OF A MISDEMEANOR AND SUBJECT TO IMPRISONMENT NOT EXCEEDING 5*
4  *YEARS OR A FINE NOT EXCEEDING $10,000 OR BOTH.*

5            *(2)*   *A PERSON WHO VIOLATES SUBSECTION (B) OF THIS SECTION IS*
6  *GUILTY OF A MISDEMEANOR AND SUBJECT TO IMPRISONMENT NOT EXCEEDING 2*
7  *YEARS OR A FINE NOT EXCEEDING $10,000 OR BOTH.*

8            *(3)*   *EACH VIOLATION OF THIS SECTION IS A SEPARATE CRIME.*

9       *(D)*   **A FEDERALLY LICENSED FIREARMS DEALER OR OTHER FEDERAL**
10 **LICENSEE AUTHORIZED TO PROVIDE MARKING SERVICES WHO IMPRINTS A FIREARM**
11 **UNDER SUBSECTION ~~(B)(2)~~ *(B)(2)(II)* OF THIS SECTION SHALL:**

12           ~~(1)~~   **IMPRINT THE FIREARM IN COMPLIANCE WITH ALL FEDERAL LAWS**
13 **AND REGULATIONS APPLICABLE TO AFFIXING SERIAL NUMBERS TO FIREARMS,**
14 **INCLUDING:**

15                ~~(I)~~ *(1)*   **MINIMUM SIZE AND DEPTH REQUIREMENTS; AND**

16                ~~(II)~~ *(2)*   **REQUIREMENTS THAT THE NUMBERS NOT BE**
17 **READILY SUSCEPTIBLE TO BEING OBLITERATED, ALTERED, OR REMOVED~~; AND~~.**

18           ~~(2)   RETAIN RECORDS FOR ALL FIREARMS IMPRINTED IN~~
19 ~~ACCORDANCE WITH ALL FEDERAL LAWS AND REGULATIONS APPLICABLE TO THE~~
20 ~~SALE OF A FIREARM.~~

21 **5–704.**

22       ~~(A)   A PERSON WHO VIOLATES THIS SUBTITLE IS GUILTY OF A~~
23 ~~MISDEMEANOR AND ON CONVICTION IS SUBJECT TO IMPRISONMENT NOT~~
24 ~~EXCEEDING 3 YEARS OR A FINE NOT EXCEEDING $10,000 OR BOTH.~~

25       ~~(B)   EACH VIOLATION OF THIS SUBTITLE IS A SEPARATE CRIME.~~

26       *(A)*   **THE SECRETARY SHALL MAINTAIN A SYSTEM TO REGISTER FIREARMS**
27 *IMPRINTED WITH SERIAL NUMBERS UNDER § 5–703(B)(2)(II) OF THIS SUBTITLE.*

28       *(B)*   **REGISTRATION DATA PROVIDED FOR REGISTRATION IS NOT OPEN TO**
29 *PUBLIC INSPECTION.*

1       *(C)*   *FOR EACH FISCAL YEAR, THE GOVERNOR SHALL INCLUDE IN THE*
2   *ANNUAL STATE BUDGET AN APPROPRIATION OF AT LEAST $150,000 TO FUND*
3   *REGISTRATION ACTIVITIES CONDUCTED BY THE SECRETARY UNDER THIS SECTION.*

4   **5–705.**

5       THE SECRETARY MAY ADOPT REGULATIONS TO CARRY OUT THE PROVISIONS
6   OF THIS SUBTITLE.

7   *5–706.*

8       *NOTHING IN THIS SUBTITLE MAY BE CONSTRUED IN A MANNER THAT*
9   *ABRIDGES OR OTHERWISE LIMITS A PERSON'S RIGHT AGAINST SELF–INCRIMINATION*
10  *UNDER THE UNITED STATES CONSTITUTION OR THE MARYLAND DECLARATION OF*
11  *RIGHTS.*

12      SECTION 2. AND BE IT FURTHER ENACTED, That, if any provision of this Act or
13  the application thereof to any person or circumstance is held invalid for any reason in a
14  court of competent jurisdiction, the invalidity does not affect other provisions or any other
15  application of this Act that can be given effect without the invalid provision or application,
16  and for this purpose the provisions of this Act are declared severable.

17      *SECTION 3. AND BE IT FURTHER ENACTED, That this Act shall be construed in*
18  *a manner that is consistent with proposed federal rule 2021R–05, updating parts 447, 478,*
19  *and 479 of the Code of Federal Regulations, published in the Federal Register (Volume 86,*
20  *No. 97) on May 21, 2021. If the proposed federal rule is modified at the time of adoption,*
21  *this Act shall be construed in a manner that is consistent with those modifications.*

22      SECTION ~~3.~~ *4.* AND BE IT FURTHER ENACTED, That this Act shall take effect
23  June 1, 2022.

Approved:

_____
                                                                    Governor.

_____
                                          Speaker of the House of Delegates.

_____
                                             President of the Senate.

**IN CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND**

**MARYLAND SHALL ISSUE, INC., et al***.,*

*Plaintiffs,*

**vs.**                                                    **CASE NO.: 485899V**

**MONTGOMERY COUNTY, MARYLAND***,*

*Defendant.*

**ORDER**

Upon consideration of plaintiffs' motion for an expedited hearing and decision on the pending motions filed by plaintiffs and defendant, and any response thereto, it is this _____ day of _____, 2022, by the Circuit Court for Montgomery County hereby,

ORDERED, that plaintiffs' motion to expedite is granted. A hearing on the pending motions will be scheduled at the earliest practicable time and any decision on the pending motions will issue as soon as practicable.

_____
Judge, Circuit Court for
Montgomery County, Maryland

cc:  All Parties of record.

- 1 -

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on April 14, 2022, a copy of the foregoing proposed Order was served on the following counsel for defendant Montgomery County via the MDEC e-filing system:

Edward Barry Lattner                Edward.Lattner@MontgomeryCountyMD.gov

Patricia Lisehora Kane             patricia.kane@montgomerycountymd.gov

Sean Charles O Hara                sean.ohara@montgomerycountymd.gov

/s/ *Mark W. Pennak*

MARK W. PENNAK
*Counsel for Plaintiffs*

- 2 -