**IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND**

MARYLAND SHALL ISSUE, INC., *et al.*,        \*

                              \*

      Plaintiffs                \*

                              \*

      v.                         \*     Case No.: 485899V

                              \*

MONTGOMERY COUNTY, MARYLAND    \*

                              \*

      Defendant              \*

**DEFEDANT'S REPLY TO PLAINTIFFS' SUPPLEMENTAL MEMORANDUM REGARDING ENACTMENT OF SENATE BILL 387 AND HOUSE BILL 425 INTO LAW**

**INTRODUCTION**

In response to the increasing number of ghost guns recovered by law enforcement, last month the General Assembly enacted Senate Bill 387 (2022 Md. Laws ch. 19) (**Ex. H**)[1] and House Bill 425 (2022 Md. Laws ch. 18) (**Ex. I**). The bills are identical. Consistent with new federal firearms regulations, 87 Fed. Reg. 24652-24749 (eff. Aug. 24, 2022), this new state law expands the definition of "firearm" to include an unfinished frame or receiver and thereby closes the loophole that allowed unlicensed individuals to sell "do-it-yourself" unserialized (ghost) guns without a background check. These unfinished frames or receivers will be subject to the same rules applicable to other firearms.

As discussed below, Bill 4-21 is not preempted by, or in conflict with, SB 387/HB 425.

**SB 387/HB 425**

Effective June 1, 2022, SB 387/HB 425 prohibits a person from purchasing, receiving, selling, offering to sell, or transferring an "unfinished frame or receiver" or a firearm unless it serialized by a federal firearms licensee. Md. Code Ann., Public Safety (PS) § 5-703(a). The

---

[1] County Exs. A - G are attached to its Mot. Summ. J.

term "firearm" is broadened to include an "unfinished frame or receiver," PS § 5-101(h)(iii), which in turn is defined as an article that "has reached a stage in manufacture where it may readily be completed, assembled, or converted to be used as the frame or receiver of a functional firearm." § 5-701(h). This definition is consistent with the new federal firearms regulations.

Effective March 1, 2023, a person must not possess a firearm (now including an unfinished frame or receiver) unless it either serialized in accordance with federal law or imprinted with the owner's zip code, initials, and another unique number, and then registered with the State Police. PS § 5-703(b)(2). A person who either receives an unserialized firearm through inheritance or manufactures an unserialized firearm without the use of any prefabricated parts, has 30 days to have that firearm serialized.

## ANALYSIS

### Conflict

"The crux of conflict preemption is that a political subdivision may not prohibit what the State by general public law has permitted, but it may prohibit what the State has not **expressly** permitted. Conflict preemption occurs when a local law prohibits an activity which is intended to be permitted by state law, or permits an activity which is intended to be prohibited by state law." *Montgomery Cty. v. Complete Lawn Care, Inc.*, 240 Md. App. 664, 688 (2019) (emphasis in original) (internal quotations and citations omitted). Maryland courts have thus long followed the concurrent powers doctrine, committed to the principle that "[a]dditional regulation by [a local] ordinance does not render [the local ordinance] void" even though the state may have enacted statutes regulating a field. *Rossberg v. State*, 111 Md. 394 (1909) (citation omitted); *accord E. Tar Prods. Corp. v. State Tax Comm'n of Maryland*, 176 Md. 290, 296-97 (1939) (observing that a local law requiring "more than the [state] statute requires creates no conflict").

2

Historically, Maryland has employed two tests to determine whether state law conflict preempts local law: the functional test and the verbal test. Under the functional test, a local law is not conflict preempted if it advances, or is consistent with, the state law's purposes.[2] *See Mayor & City Council of Balt. v. Hart*, 395 Md. 394, 409 (2006); *Caffrey v. Dep't of Liquor Control for Montgomery Cty.*, 370 Md. 272, 306-07 (2002) (citing *Mayor & Aldermen of City of Annapolis v. Annapolis Waterfront Co.*, 284 Md. 383, 393 (1979) ("Municipalities are free to provide for additional standards and safeguards in harmony with concurrent state legislation.")). Under the verbal test, a local law is conflict preempted if it prohibits conduct that the state law expressly permits. *City of Balt. v. Sitnick*, 254 Md. 303, 317 (1969).

In 2006, the Court of Appeals indicated in *Hart* that the functional test has "tak[en] priority over the verbal test under the conflict rule." 395 Md. at 409 (quoting J. Scott Smith, *State and Local Legislative Powers: An Analysis of the Conflict and Preemption Doctrines in Maryland*, 8 U. Balt. L. Rev. 300, 308-09 (1979)). Regardless of which test is employed, Bill 4-21 does not conflict with state law.

A decision upholding Bill 4-21 would fit comfortably within a century-long line of Court of Appeals' decisions upholding local laws that advanced, or were consistent with, the purposes of Maryland law. In a 1909 case, the Court of Appeals upheld a local law prohibiting the sale of cocaine and imposing harsher penalties than Maryland law because "further and additional penalties may be imposed by [local law], without creating inconsistency." *Rossberg v. State*, 111 Md. 394 (1909). And in 1922, the Court of Appeals upheld a local law exempting emergency vehicles from yielding, even though a state law required them to do so, because "it was not the purpose of the municipality to derogate in any respect from the general rule laid down by the

---

[2] But a local law is not in conflict with state law merely because it would frustrate some underlying state purpose. *Complete Lawn Care, Inc.*, 240 Md. App. at 688.

[General Assembly], but only to grant certain priorities when human life might be at stake." *State v. Brown*, 142 Md. 27 (1922).

In 1969, the Court of Appeals upheld a local law setting a higher minimum wage within the locality than did state law because the locality sought to achieve the same goal as the state—prohibiting the payment of substandard wages. *Sitnick*, 254 Md. at 307, 321 (citation omitted). In 1979, the Court upheld a city charter provision permitting port wardens to consider environmental factors when approving wharf construction as consistent with state law, even though state law did not list those factors as considerations, because the purpose of both laws was to allow port wardens to regulate construction on the waterways. *Annapolis Waterfront Co.*, 284 Md. at 392. Finally, in 2006, the Court of Appeals upheld a local law requiring emergency vehicles to stop at red traffic signals, even though state law permitted them to proceed after slowing down, because the local law advanced the state law's underlying safety purposes. *Hart*, 395 Md. at 409-10.

Putting aside that Bill 4-21 is expressly authorized by CL § 4-209(b)(1) (which should end the argument altogether), Bill 4-21 advances the goal of SB 387/HB 425—eliminating the dangers posed by unserialized ghost guns. SB 387/HB 425 attacks the problem directly by requiring those guns to be serialized and treated like other firearms. Bill 4-21 does this by regulating those remaining unserialized guns with respect to minors and within 100 yards of or in a place of public assembly. As discussed below, the General Assembly identified Bill 4-21 as complementary local legislation when it was considering SB 387/HB 425.

Neither does Bill 4-21 conflict with SB 387/HB 425 under the verbal test. Even explicit state statutory exemptions permitting specific conduct have not been interpreted by Maryland courts as express permission—demonstrating the high degree of verbal conflict necessary to

preempt local law. For example, the Court of Appeals has held that Maryland employment laws, which exempt some employers from state non-discrimination laws, do not prevent local governments from imposing their own non-discrimination requirements on the very employers the state exempts. *Nat'l Asphalt Pavement Ass'n, Inc. v. Prince George's Cty.*, 292 Md. 75, 79 (1981) (upholding local blanket non-discrimination prohibition despite a state exemption for employers with fewer than 15 employees); *Montrose Christian School Corp. v. Walsh*, 363 Md. 565, 581 (2001) (likewise for religious entities). The Court reasoned that the exempted employers were "not permitted by the statute to discriminate in their employment practices; they simply [were] not covered." *Nat'l Asphalt Pavement Ass'n, Inc.*, 292 Md. at 79.

There is no verbal conflict here. County law, including Bill 4-21, does not address the licensing of firearms dealers, the serialization of firearms, or the necessity of a background check. Bill 4-21 regulates ghost and undetectable guns with respect to **minors** and within 100 yards of or in a **place of public assembly**, precisely as authorized by the General Assembly in Md. Code Ann. Crim. Law (CL) § 4-209(b)(1). Thus, Bill 4-21 does not ban or criminalize the possession of unserialized ghost guns "throughout Montgomery County," as Plaintiffs suggest. Pls.' Supp. Mem. 2 & 4. Neither does Bill 4-21 make it "legally impossible" for the owner of a ghost gun to transport that that gun to a federal licensee in the County to either sell it (to the federal licensee) or have it serialized. Pls.' Supp. Memo. 4-5.[3] Both the state and county bills seek to enhance public safety by reducing the number of unserialized ghost guns. Because the new state law requires that unfinished frames or receivers be serialized (like other firearms), there will hopefully be an ever-shrinking number of unserialized ghost guns subject to Bill 4-21.

---

[3] Plaintiffs also suggest that Bill 4-21 conflicts with SB 387/HB 425 because the former bans the sale, transfer, possession, and transportation of "major components" of firearms while the latter "does not purport to regulate 'major components.'" Pls.' Supp. Mem. 5. Putting aside Plaintiffs' inaccurate characterization of Bill 4-21 (it does not ban major components), there can be no conflict where local address a matter unaddressed by state law.

**Preemption**

The new state law did not preempt the County's authority under CL § 4-209(b)(1). As the County noted in its Mot. Summ. J. 35-36, because "the General Assembly is presumed to be aware of existing local law when it legislates," the legislature's failure to "address the interaction of its statutes with pre-existing local … laws suggests that it intended no change in the applicability of the local laws." *Ad + Soil, Inc. v. Cty. Comm'rs of Queen Anne's Cty.*, 307 Md. 307, 333 (1986); *see also City of Balt. v. Sitnick*, 254 Md. 303, 322 ("There is a presumption of statutory construction that the Legislature acts with the knowledge of existing laws on the subject matter under consideration."). As in *Sitnick*, SB 387 and HB 425 "included no repealer of the [local] law[s] nor, as a matter of fact, the standard clause repealing all inconsistent laws." 254 Md. at 322. This failure to grapple with preexisting local law "is an important factor indicating that there was no intent by the General Assembly to preempt the field." *Nat'l Asphalt Pavement Ass'n, Inc. v. Prince George's Cty.*, 292 Md. 75, 79 (1981). *See also Mayor and Aldermen of City of Annapolis v. Annapolis Waterfront Co.*, 284 Md. 383, 393 (1979). This failure to "mention[] preexisting local … ordinances [is] a clear indication that the General Assembly did not intend to preempt these local laws." *Bd. of Child Care of Balt. Annual Conference of the Methodist Church, Inc. v. Harker*, 316 Md. 683, 698 (1989).

Reliance upon presumption is not necessary here, as the General Assembly was told of, and explicitly acknowledged, preexisting County law regulating ghost and undetectable guns. And, aware of that local regulation, the General Assembly chose not to revisit the grant of local authority in CL § 4-209(b)(1) or preempt the County's local regulation.

In his oral testimony supporting HB 425 before the House Judiciary Committee, the

6

County Executive made explicit reference to the County's recent enactment of County Bill 4-21[4] and noted that, although the law was under challenge (*i.e.*, this lawsuit), the County was "energized" by momentum in Annapolis on ghost guns.[5]

The County submitted written testimony in support of both SB 387 (**Ex. J**) and HB 425 (**Ex. K**), noting the increasing number of ghost guns being recovered by law enforcement officials in the County and the use of ghost guns in some recent County shootings.[6]

> The danger of these deadly weapons is that they can be easily assembled from components bought online with no required background check, have no serial numbers, and are, therefore, untraceable. These fully functional firearms are often difficult to identify as guns due to their shape or configuration and can evade metal detectors or x-ray machines creating a potential threat to public safety. Tragically, last month's shooting at Magruder High School involved a 17-year-old using a 9 mm ghost gun purchased online to shoot and seriously harm a fellow student inside the school. And last summer at a recreation center in Germantown, a ghost gun was used by a 14-year-old to fatally shoot a 20-year-old. While it's not fully known how many ghost guns are used in crimes, Montgomery County Department of Police reports that the number is rising. In 2021, 70 ghost guns were recovered from crime scenes in the County- up from 16 ghost guns in 2019 and 56 ghost guns in 2020.

> With increasing incidents of gun violence in Maryland, Montgomery County supports stricter gun safety laws to include untraceable and undetectable firearms. We urge the Committee to adopt a favorable report on HB 425.

The Senate Judicial Proceedings Committee Floor Report (**Ex. O**), as well as the Department of Legislative Services Fiscal Notes that accompanied SB 387 (**Ex. P**) and HB 425 (**Ex. Q**) reveal that, like Bill 4-21, the state bills were intended to address the increasing number

---

[4] The County Executive's testimony, available on the General Assembly website, begins around 1:06:53. https://mgaleg.maryland.gov/mgawebsite/Committees/Media/false?cmte=jud&ys=2022RS&clip=JUD_2_9 _2022_meeting_1&url=https%3A%2F%2Fmgahouse.maryland.gov%2Fmga%2Fplay%2F9205a485-2ac3-4674- bfe0-a1a38317bad2%2F%3Fcatalog%2F03e481c7-8a42-4438-a7da-93ff74bdaa4c%26playfrom%3D3215343.

[5] The County Executive also testified in support of SB 387 before Senate Judicial Proceedings Committee. https://mgaleg.maryland.gov/mgawebsite/Committees/Media/false?cmte=jpr&ys=2022RS&clip=JPR_2_16_2022_ meeting_1&url=https%3A%2F%2Fmgahouse.maryland.gov%2Fmga%2Fplay%2Ff8abc56e-c69e-41ba-ba75- 3485182db38f%2F%3Fcatalog%2F03e481c7-8a42-4438-a7da-93ff74bdaa4c%26playfrom%3D9760051.

[6] The County's Victim Services Advisory Board also supported SB 387. **Ex. L.** The attached witness signup sheets, printed from the General Assembly's website, also evidence the receipt of this written and oral testimony for SB 387 (**Ex. M**) and HB 425 (**Ex. N**) (highlighting added to identify County speakers).

of unserialized ghost guns recovered by law enforcement. And they also noted complementary local legislation that has been enacted to address the problem, including Bill 4-21 (emphasis added).

> **Background:** According to the U.S. Department of Justice, between 2016 and 2020, more than 23,000 ghost guns were recovered by law enforcement from potential crime scenes, including 325 in connection with homicides and attempted homicides. In November 2020, the Baltimore Sun reported that between 2016 and 2019, more than 12,000 build kits were shipped to Maryland, with total sales of the kits exceeding $1.0 million. The Baltimore Sun further reported that the Baltimore City Police Department recovered 126 privately made firearms in 2020 compared to 29 recovered in 2019, and that nearly one-quarter of such firearms recovered were from individuals under the age of 21.
>
> Eight states (California, Connecticut, Hawaii, Nevada, New Jersey, New York, Rhode Island, and Washington) and the District of Columbia have enacted laws regulating privately made firearms to varying degrees. California and Connecticut have enacted laws that require privately made firearms to be registered and marked with a serial number obtained from a governmental agency within each state. Nevada and New Jersey require serialization of unfinished frames and receivers by federally licensed firearms manufacturers and importers. The District of Columbia passed legislation in 2020 to ban build kits and specifically the possession of unfinished frames and receivers and untraceable firearms.
>
> Some cities and local jurisdictions have also started to implement laws to address privately made firearms. In August 2021, San Diego became the first city in California to prohibit the sale of unserialized frames and receivers, and San Francisco passed similar legislation shortly thereafter. **In Maryland, Montgomery County passed legislation in April 2021 to restrict the access of privately made firearms to minors and in places of public assembly within the county.**

It is self-evident that SB 387/HB 425 does not expressly preempt Bill 4-21 or any local regulation of firearms. Neither does it impliedly preempt Bill 4-21. Indeed, the record demonstrates that the County actively supported SB 387/HB 425 and that the General Assembly saw Bill 4-21 as a legitimate legislative response to the alarming proliferation of unserialized ghost guns.

Respectfully submitted,

JOHN P. MARKOVS
ACTING COUNTY ATTORNEY

/s/ *Patricia Lisehora Kane*
Patricia Lisehora Kane, Chief
Division of Litigation
patricia.kane@montgomerycountymd.gov
CPF ID No. 8011010189

/s/ *Edward B. Lattner*
Edward B. Lattner, Chief
Division of Government Operations
edward.lattner@montgomerycountymd.gov
CPF ID No. 8612300002

/s/ *Sean C. O'Hara*
Sean C. O'Hara
Associate County Attorney
sean.ohara@montgomerycountymd.gov
CPF ID No. 1212120337

*Attorneys for Defendant Montgomery
County, Maryland*
101 Monroe Street, Third Floor
Rockville, Maryland 20850-2540
(240) 777-6700
(240) 777-6705 Fax

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 12th day of May 2022, a copy of the foregoing was electronically served through the MDEC to:

Mark W. Pennak
Maryland Shall Issue, Inc.
9613 Harford Rd., Ste. C #1015
Baltimore, MD 21234-21502
mpennak@marylandshallissue.org

/s/ *Edward B. Lattner*
Edward B. Lattner, Chief
Division of Government Operations

Def.'s Reply to Pls.' Supp.
21-003732

Chapter 19

## (Senate Bill 387)

AN ACT concerning

## Public Safety – Untraceable Firearms

FOR the purpose of altering a certain definition of "firearm" to include a certain unfinished frame or receiver; prohibiting a person from purchasing, receiving, selling, offering to sell, or transferring an unfinished frame or ~~receiver, or~~ receiver; prohibiting a person from selling, offering to sell, or transferring a certain firearm; prohibiting a person from possessing a firearm on or after a certain date, unless it is required by federal law to be, and has been, imprinted with a certain number in a certain manner; requiring the Secretary of State Police to suspend a certain dealer's license if the dealer is charged with a certain crime; requiring the Secretary to revoke a certain dealer's license if the dealer is convicted of a certain crime; providing for a system of registration of a certain firearm with the Secretary; ~~requiring a certain person to register a certain firearm;~~ requiring the Governor to include a certain appropriation in the annual State budget; and generally relating to firearms.

BY repealing and reenacting, without amendments,
      Article – Public Safety
      Section 5–101(a)
      Annotated Code of Maryland
      (2018 Replacement Volume and 2021 Supplement)

BY repealing and reenacting, with amendments,
      Article – Public Safety
      Section 5–101(h) and 5–114
      Annotated Code of Maryland
      (2018 Replacement Volume and 2021 Supplement)

BY adding to
      Article – Public Safety
      Section 5–701 through ~~5–705~~ 5–706 to be under the new subtitle "Subtitle 7. Untraceable Firearms"
      Annotated Code of Maryland
      (2018 Replacement Volume and 2021 Supplement)

   SECTION 1. BE IT ENACTED BY THE GENERAL ASSEMBLY OF MARYLAND, That the Laws of Maryland read as follows:

## Article – Public Safety

5–101.



DEFENDANT'S EXHIBIT
H

(a)       In this subtitle the following words have the meanings indicated.

(h)       (1)       "Firearm" means:

(i)       a weapon that expels, is designed to expel, or may readily be converted to expel a projectile by the action of an explosive; **[**or**]**

(ii)       the frame or receiver of such a weapon**; OR**

**(III)   AN UNFINISHED FRAME OR RECEIVER, AS DEFINED IN §
5–701 OF THIS TITLE**.

(2)       "Firearm" includes a starter gun.

5–114.

(a)       (1)       The Secretary shall suspend a dealer's license if the licensee:

(i)       is under indictment for a crime of violence; **[**or**]**

(ii)       is arrested for a violation of this subtitle that prohibits the purchase or possession of a regulated firearm**; OR**

**(III)   IS CHARGED WITH A CRIME UNDER SUBTITLE 7 OF THIS
TITLE**.

(2)       (i)       The Secretary may suspend a dealer's license if the licensee is not in compliance with the record keeping and reporting requirements of § 5–145 of this subtitle.

(ii)       The Secretary may lift a suspension under this paragraph after the licensee provides evidence that the record keeping violation has been corrected.

(b)       The Secretary shall revoke a dealer's license if:

(1)       it is discovered that false information has been supplied or false statements have been made in an application required by this subtitle; or

(2)       the licensee:

(i)       is convicted of a disqualifying crime;

(ii)       is convicted of a violation classified as a common law crime and receives a term of imprisonment of more than 2 years;

(iii)    is a fugitive from justice;

(iv)    is a habitual drunkard;

(v)    is addicted to a controlled dangerous substance or is a habitual user;

(vi)    has spent more than 30 consecutive days in a medical institution for treatment of a mental disorder, unless the licensee produces a physician's certificate, issued after the last institutionalization and certifying that the licensee is capable of possessing a regulated firearm without undue danger to the licensee or to another;

(vii)    has knowingly or willfully manufactured, offered to sell, or sold a handgun not on the handgun roster in violation of § 5–406 of this title; **[**or**]**

(viii)    has knowingly or willfully participated in a straw purchase of a regulated firearm**; OR**

(IX)    IS CONVICTED OF A CRIME UNDER SUBTITLE 7 OF THIS TITLE.

(c)    If the Secretary suspends or revokes a dealer's license, the Secretary shall notify the licensee in writing of the suspension or revocation.

(d)    A person whose dealer's license is suspended or revoked may not engage in the business of selling, renting, or transferring regulated firearms, unless the suspension or revocation has been subsequently withdrawn by the Secretary or overruled by a court in accordance with § 5–116 of this subtitle.

## SUBTITLE 7. UNTRACEABLE FIREARMS.

**5–701.**

(A)    IN THIS SUBTITLE THE FOLLOWING WORDS HAVE THE MEANINGS INDICATED.

(B)    "ANTIQUE FIREARM" HAS THE MEANING STATED IN § 4–201 OF THE CRIMINAL LAW ARTICLE.

(C)    "FEDERALLY LICENSED FIREARMS DEALER" MEANS A PERSON LICENSED BY THE FEDERAL BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES TO DEAL IN FIREARMS.

(D)   "FEDERALLY LICENSED FIREARMS IMPORTER" MEANS A PERSON LICENSED BY THE FEDERAL BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES TO IMPORT FIREARMS.

(E)   "FEDERALLY LICENSED FIREARMS MANUFACTURER" MEANS A PERSON LICENSED BY THE FEDERAL BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES TO MANUFACTURE FIREARMS.

(F)   "FIREARM" HAS THE MEANING STATED IN § 5–101 OF THIS TITLE.

(G)   "SECRETARY" MEANS THE SECRETARY OF STATE POLICE OR THE SECRETARY'S DESIGNEE.

(H)   "UNFINISHED FRAME OR RECEIVER" MEANS A FORGED, CAST, PRINTED, EXTRUDED, OR MACHINED BODY OR SIMILAR ARTICLE THAT:

~~(1)~~   HAS REACHED A STAGE IN MANUFACTURE WHERE IT MAY READILY BE COMPLETED, ASSEMBLED, OR CONVERTED TO BE USED AS THE FRAME OR RECEIVER OF A FUNCTIONAL FIREARM~~; OR~~

~~(2)   IS MARKETED OR SOLD TO THE PUBLIC TO BECOME OR BE USED AS THE FRAME OR RECEIVER OF A FUNCTIONAL FIREARM ONCE COMPLETED, ASSEMBLED, OR CONVERTED~~.

**5–702.**

THIS SUBTITLE DOES NOT APPLY TO:

(1)   A FIREARM THAT:

(I)   WAS MANUFACTURED BEFORE <u>OCTOBER 22,</u> 1968; OR

(II)   IS AN ANTIQUE FIREARM;

(2)   A SALE, AN OFFER TO SELL, A TRANSFER, OR A DELIVERY OF A FIREARM OR AN UNFINISHED FRAME OR RECEIVER TO, OR POSSESSION OF A FIREARM OR UNFINISHED FRAME OR RECEIVER BY:

(I)   A FEDERALLY LICENSED FIREARMS DEALER;

(II)   A FEDERALLY LICENSED FIREARMS MANUFACTURER; OR

(III)   A FEDERALLY LICENSED FIREARMS IMPORTER; OR

(3)     A TRANSFER OR SURRENDER OF A FIREARM OR AN UNFINISHED FRAME OR RECEIVER TO A LAW ENFORCEMENT AGENCY.

5–703.

(A)     (1)     A PERSON MAY NOT PURCHASE, RECEIVE, SELL, OFFER TO SELL, OR TRANSFER AN UNFINISHED FRAME OR RECEIVER UNLESS IT IS REQUIRED BY FEDERAL LAW TO BE, AND HAS BEEN, IMPRINTED WITH A SERIAL NUMBER BY A FEDERALLY LICENSED FIREARMS MANUFACTURER OR FEDERALLY LICENSED FIREARMS IMPORTER IN COMPLIANCE WITH ALL FEDERAL LAWS AND REGULATIONS APPLICABLE TO THE MANUFACTURE AND IMPORT OF FIREARMS.

(2)     EXCEPT AS PROVIDED IN PARAGRAPH (1) OF THIS SUBSECTION, A PERSON MAY NOT SELL, OFFER TO SELL, OR TRANSFER A FIREARM UNLESS IT IS IMPRINTED WITH A SERIAL NUMBER AS DESCRIBED UNDER SUBSECTION (B) OF THIS SECTION.

(B)     (1)     THIS SUBSECTION DOES NOT APPLY TO:

(I)     POSSESSION OF A FIREARM UNLESS A PERSON KNEW OR REASONABLY SHOULD HAVE KNOWN THAT THE FIREARM WAS NOT IMPRINTED WITH A SERIAL NUMBER AS DESCRIBED UNDER THIS SUBSECTION;

(II)     POSSESSION OF A FIREARM THAT DOES NOT COMPLY WITH THE MARKING REQUIREMENTS DESCRIBED UNDER THIS SUBSECTION BY A PERSON WHO RECEIVED THE FIREARM THROUGH INHERITANCE, AND IS NOT OTHERWISE PROHIBITED FROM POSSESSING THE FIREARM, FOR A PERIOD NOT EXCEEDING 30 DAYS AFTER INHERITING THE FIREARM; OR

(III)     POSSESSION OF AN UNFINISHED FRAME OR RECEIVER BY A PERSON THAT MADE OR MANUFACTURED THE UNFINISHED FRAME OR RECEIVER, WITHOUT THE USE OF ANY PREFABRICATED PARTS, AND WHO IS NOT OTHERWISE PROHIBITED FROM POSSESSING THE UNFINISHED FRAME OR RECEIVER, FOR A PERIOD NOT EXCEEDING 30 DAYS AFTER THE PERSON MADE OR MANUFACTURED THE UNFINISHED FRAME OR RECEIVER.

(2)     ON OR AFTER ~~JANUARY~~ MARCH 1, 2023, A PERSON MAY NOT POSSESS A FIREARM UNLESS:

~~(1)~~ (I)     THE FIREARM IS REQUIRED BY FEDERAL LAW TO BE, AND HAS BEEN, IMPRINTED BY A FEDERALLY LICENSED FIREARMS MANUFACTURER, ~~OR~~ FEDERALLY LICENSED FIREARMS IMPORTER, OR OTHER FEDERAL LICENSEE AUTHORIZED TO PROVIDE MARKING SERVICES, WITH A SERIAL NUMBER IN

COMPLIANCE WITH ALL FEDERAL LAWS AND REGULATIONS APPLICABLE TO THE MANUFACTURE AND IMPORT OF FIREARMS; OR

(2)      (II)      THE FIREARM:

1.      HAS BEEN IMPRINTED BY A FEDERALLY LICENSED FIREARMS DEALER, FEDERAL FIREARMS MANUFACTURER, OR OTHER FEDERAL LICENSEE AUTHORIZED TO PROVIDE MARKING SERVICES, WITH ~~THE FIRST THREE AND LAST FIVE DIGITS OF THE LICENSEE'S FEDERAL FIREARMS LICENSE NUMBER, FOLLOWED BY A HYPHEN, AND THEN FOLLOWED BY ANOTHER NUMBER~~:

A.      THE ZIP CODE OF THE CURRENT ~~LEGAL~~ OWNER OR PERSON THAT MADE, COMPLETED, OR INITIALLY ASSEMBLED THE FIREARM;

B.      THE INITIALS OF THE CURRENT ~~LEGAL~~ OWNER OR PERSON THAT MADE, COMPLETED, OR INITIALLY ASSEMBLED THE FIREARM; AND

C.      A NUMBER THAT DOES NOT MATCH A NUMBER USED BY THE CURRENT ~~LEGAL~~ OWNER ON ANOTHER FIREARM OR BY THE PERSON WHO MADE, COMPLETED, OR INITIALLY ASSEMBLED THE FIREARM ON ANY OTHER FIREARM THAT THE PERSON HAS MADE, COMPLETED, OR INITIALLY ASSEMBLED; AND

2.      HAS BEEN REGISTERED WITH THE SECRETARY.

(C)      (1)      A PERSON WHO VIOLATES SUBSECTION (A) OF THIS SECTION IS GUILTY OF A MISDEMEANOR AND SUBJECT TO IMPRISONMENT NOT EXCEEDING 5 YEARS OR A FINE NOT EXCEEDING $10,000 OR BOTH.

(2)      A PERSON WHO VIOLATES SUBSECTION (B) OF THIS SECTION IS GUILTY OF A MISDEMEANOR AND SUBJECT TO IMPRISONMENT NOT EXCEEDING 2 YEARS OR A FINE NOT EXCEEDING $10,000 OR BOTH.

(3)      EACH VIOLATION OF THIS SECTION IS A SEPARATE CRIME.

(D)      A FEDERALLY LICENSED FIREARMS DEALER OR OTHER FEDERAL LICENSEE AUTHORIZED TO PROVIDE MARKING SERVICES WHO IMPRINTS A FIREARM UNDER SUBSECTION ~~(B)(2)~~ (B)(2)(II) OF THIS SECTION SHALL~~:~~

(1)      IMPRINT THE FIREARM IN COMPLIANCE WITH ALL FEDERAL LAWS AND REGULATIONS APPLICABLE TO AFFIXING SERIAL NUMBERS TO FIREARMS, INCLUDING:

(I) (1)          MINIMUM SIZE AND DEPTH REQUIREMENTS; AND

(II) (2)          REQUIREMENTS THAT THE NUMBERS NOT BE READILY SUSCEPTIBLE TO BEING OBLITERATED, ALTERED, OR REMOVED; AND.

(2)      RETAIN      RECORDS      FOR      ALL      FIREARMS      IMPRINTED      IN ACCORDANCE WITH ALL FEDERAL LAWS AND REGULATIONS APPLICABLE TO THE SALE OF A FIREARM.

5–704.

(A)      A  PERSON  WHO  MAKES,  COMPLETES,  OR  INITIALLY  ASSEMBLES  A FIREARM, OR THE CURRENT LEGAL OWNER OF THE FIREARM, SHALL REGISTER THE FIREARM WITH THE SECRETARY.

(B)      THE SECRETARY SHALL MAINTAIN A SYSTEM TO REGISTER FIREARMS IMPRINTED WITH SERIAL NUMBERS UNDER § 5–703(B)(2)(II) OF THIS SUBTITLE.

(C) (B)          REGISTRATION DATA PROVIDED FOR REGISTRATION IS NOT OPEN TO PUBLIC INSPECTION.

(D)  (1)      EXCEPT  AS  PROVIDED  IN  PARAGRAPH  (2)  OF  THIS  SUBSECTION, INFORMATION  OR  EVIDENCE  OBTAINED  FROM  A  REGISTRATION  APPLICATION  OR RECORDS  REQUIRED  TO  BE  SUBMITTED  TO  REGISTER  A  FIREARM  UNDER  THIS SECTION MAY NOT BE USED, DIRECTLY OR INDIRECTLY, AS EVIDENCE AGAINST THE PERSON APPLYING TO REGISTER THE FIREARM IN A CRIMINAL PROCEEDING FOR A VIOLATION OF LAW THAT OCCURRED BEFORE OR AT THE TIME THE PERSON APPLIED TO  REGISTER  THE  FIREARM  OR  PROVIDE  RECORDS  REQUIRED  TO  REGISTER  THE FIREARM.

(2)      INFORMATION      DESCRIBED      IN      PARAGRAPH      (1)      OF      THIS SUBSECTION  MAY  BE  USED  AS  EVIDENCE  IN  A  PROSECUTION  RELATING  TO PROVIDING FALSE INFORMATION.

(E) (C)          FOR EACH FISCAL YEAR, THE GOVERNOR SHALL INCLUDE IN THE ANNUAL  STATE  BUDGET  AN  APPROPRIATION  OF  AT  LEAST  $150,000  TO  FUND REGISTRATION ACTIVITIES CONDUCTED BY THE SECRETARY UNDER THIS SECTION.

(A)      A  PERSON  WHO  VIOLATES  THIS  SUBTITLE  IS  GUILTY  OF  A MISDEMEANOR  AND  ON  CONVICTION  IS  SUBJECT  TO  IMPRISONMENT  NOT EXCEEDING 3 YEARS OR A FINE NOT EXCEEDING $10,000 OR BOTH.

(B)      EACH VIOLATION OF THIS SUBTITLE IS A SEPARATE CRIME.

**5–705.**

THE SECRETARY MAY ADOPT REGULATIONS TO CARRY OUT THE PROVISIONS OF THIS SUBTITLE.

**5–706.**

NOTHING IN THIS SUBTITLE MAY BE CONSTRUED IN A MANNER THAT ABRIDGES OR OTHERWISE LIMITS A PERSON'S RIGHT AGAINST SELF–INCRIMINATION UNDER THE UNITED STATES CONSTITUTION OR THE MARYLAND DECLARATION OF RIGHTS.

SECTION 2. AND BE IT FURTHER ENACTED, That, if any provision of this Act or the application thereof to any person or circumstance is held invalid for any reason in a court of competent jurisdiction, the invalidity does not affect other provisions or any other application of this Act that can be given effect without the invalid provision or application, and for this purpose the provisions of this Act are declared severable.

SECTION 3. AND BE IT FURTHER ENACTED, That this Act shall be construed in a manner that is consistent with proposed federal rule 2021R–05, updating parts 447, 478, and 479 of the Code of Federal Regulations, published in the Federal Register (Volume 86, No. 97) on May 21, 2021. If the proposed federal rule is modified at the time of adoption, this Act shall be construed in a manner that is consistent with those modifications.

SECTION 3. 4. AND BE IT FURTHER ENACTED, That this Act shall take effect June 1, 2022.

**Enacted under Article II, § 17(b) of the Maryland Constitution, April 9, 2022.**

Chapter 18

**(House Bill 425)**

AN ACT concerning

**Public Safety – Untraceable Firearms**

FOR the purpose of altering a certain definition of "firearm" to include a certain unfinished frame or receiver; prohibiting a person from purchasing, receiving, selling, offering to sell, or transferring an unfinished frame or ~~receiver, or~~ _receiver; prohibiting a person from selling, offering to sell, or transferring a certain firearm; prohibiting a person from_ possessing a firearm on or after a certain date, unless it is required by federal law to be, and has been, imprinted with a certain number in a certain manner; requiring the Secretary of State Police to suspend a certain dealer's license if the dealer is charged with a certain crime; requiring the Secretary to revoke a certain dealer's license if the dealer is convicted of a certain crime; _providing for a system of registration of a certain firearm with the Secretary; requiring the Governor to include a certain appropriation in the annual State budget;_ and generally relating to firearms.

BY repealing and reenacting, without amendments,
        Article – Public Safety
        Section 5–101(a)
        Annotated Code of Maryland
        (2018 Replacement Volume and 2021 Supplement)

BY repealing and reenacting, with amendments,
        Article – Public Safety
        Section 5–101(h) and 5–114
        Annotated Code of Maryland
        (2018 Replacement Volume and 2021 Supplement)

BY adding to
        Article – Public Safety
        Section 5–701 through ~~5–705~~ _5–706_ to be under the new subtitle "Subtitle 7. Untraceable Firearms"
        Annotated Code of Maryland
        (2018 Replacement Volume and 2021 Supplement)

    SECTION 1. BE IT ENACTED BY THE GENERAL ASSEMBLY OF MARYLAND, That the Laws of Maryland read as follows:

**Article – Public Safety**

5–101.



DEFENDANT'S
EXHIBIT

I

(a)      In this subtitle the following words have the meanings indicated.

(h)      (1)      "Firearm" means:

(i)      a weapon that expels, is designed to expel, or may readily be converted to expel a projectile by the action of an explosive; **[**or**]**

(ii)      the frame or receiver of such a weapon**; OR**

**(III)   AN UNFINISHED FRAME OR RECEIVER, AS DEFINED IN § 5–701 OF THIS TITLE**.

(2)      "Firearm" includes a starter gun.

5–114.

(a)      (1)      The Secretary shall suspend a dealer's license if the licensee:

(i)      is under indictment for a crime of violence; **[**or**]**

(ii)      is arrested for a violation of this subtitle that prohibits the purchase or possession of a regulated firearm**; OR**

**(III)   IS CHARGED WITH A CRIME UNDER SUBTITLE 7 OF THIS TITLE**.

(2)      (i)      The Secretary may suspend a dealer's license if the licensee is not in compliance with the record keeping and reporting requirements of § 5–145 of this subtitle.

(ii)      The Secretary may lift a suspension under this paragraph after the licensee provides evidence that the record keeping violation has been corrected.

(b)      The Secretary shall revoke a dealer's license if:

(1)      it is discovered that false information has been supplied or false statements have been made in an application required by this subtitle; or

(2)      the licensee:

(i)      is convicted of a disqualifying crime;

(ii)      is convicted of a violation classified as a common law crime and receives a term of imprisonment of more than 2 years;

LAWRENCE J. HOGAN, JR., Governor                    Ch. 18

(iii)    is a fugitive from justice;

(iv)    is a habitual drunkard;

(v)    is addicted to a controlled dangerous substance or is a habitual user;

(vi)    has spent more than 30 consecutive days in a medical institution for treatment of a mental disorder, unless the licensee produces a physician's certificate, issued after the last institutionalization and certifying that the licensee is capable of possessing a regulated firearm without undue danger to the licensee or to another;

(vii)    has knowingly or willfully manufactured, offered to sell, or sold a handgun not on the handgun roster in violation of § 5–406 of this title; **[**or**]**

(viii)    has knowingly or willfully participated in a straw purchase of a regulated firearm**; OR**

(IX)    IS CONVICTED OF A CRIME UNDER SUBTITLE 7 OF THIS TITLE.

(c)    If the Secretary suspends or revokes a dealer's license, the Secretary shall notify the licensee in writing of the suspension or revocation.

(d)    A person whose dealer's license is suspended or revoked may not engage in the business of selling, renting, or transferring regulated firearms, unless the suspension or revocation has been subsequently withdrawn by the Secretary or overruled by a court in accordance with § 5–116 of this subtitle.

## SUBTITLE 7. UNTRACEABLE FIREARMS.

**5–701.**

(A)    IN THIS SUBTITLE THE FOLLOWING WORDS HAVE THE MEANINGS INDICATED.

(B)    "ANTIQUE FIREARM" HAS THE MEANING STATED IN § 4–201 OF THE CRIMINAL LAW ARTICLE.

(C)    "FEDERALLY LICENSED FIREARMS DEALER" MEANS A PERSON LICENSED BY THE FEDERAL BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES TO DEAL IN FIREARMS.

(D)   "FEDERALLY LICENSED FIREARMS IMPORTER" MEANS A PERSON LICENSED BY THE FEDERAL BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES TO IMPORT FIREARMS.

(E)   "FEDERALLY LICENSED FIREARMS MANUFACTURER" MEANS A PERSON LICENSED BY THE FEDERAL BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES TO MANUFACTURE FIREARMS.

(F)   "FIREARM" HAS THE MEANING STATED IN § 5–101 OF THIS TITLE.

(G)   "SECRETARY" MEANS THE SECRETARY OF STATE POLICE OR THE SECRETARY'S DESIGNEE.

(H)   "UNFINISHED FRAME OR RECEIVER" MEANS A FORGED, CAST, PRINTED, EXTRUDED, OR MACHINED BODY OR SIMILAR ARTICLE THAT~~:~~

~~(1)~~   HAS REACHED A STAGE IN MANUFACTURE WHERE IT MAY READILY BE COMPLETED, ASSEMBLED, OR CONVERTED TO BE USED AS THE FRAME OR RECEIVER OF A FUNCTIONAL FIREARM~~; OR~~

~~(2)   IS MARKETED OR SOLD TO THE PUBLIC TO BECOME OR BE USED AS THE FRAME OR RECEIVER OF A FUNCTIONAL FIREARM ONCE COMPLETED, ASSEMBLED, OR CONVERTED~~.

**5–702.**

THIS SUBTITLE DOES NOT APPLY TO:

(1)   A FIREARM THAT:

(I)   WAS MANUFACTURED BEFORE <u>OCTOBER 22,</u> 1968; OR

(II)   IS AN ANTIQUE FIREARM;

(2)   A SALE, AN OFFER TO SELL, A TRANSFER, OR A DELIVERY OF A FIREARM OR AN UNFINISHED FRAME OR RECEIVER TO, OR POSSESSION OF A FIREARM OR UNFINISHED FRAME OR RECEIVER BY:

(I)   A FEDERALLY LICENSED FIREARMS DEALER;

(II)   A FEDERALLY LICENSED FIREARMS MANUFACTURER; OR

(III)   A FEDERALLY LICENSED FIREARMS IMPORTER; OR

LAWRENCE J. HOGAN, JR., Governor                    Ch. 18

(3)    A TRANSFER OR SURRENDER OF A FIREARM OR AN UNFINISHED FRAME OR RECEIVER TO A LAW ENFORCEMENT AGENCY.

5–703.

(A)    *(1)*    A PERSON MAY NOT PURCHASE, RECEIVE, SELL, OFFER TO SELL, OR TRANSFER AN UNFINISHED FRAME OR RECEIVER UNLESS IT IS REQUIRED BY FEDERAL LAW TO BE, AND HAS BEEN, IMPRINTED WITH A SERIAL NUMBER BY A FEDERALLY LICENSED FIREARMS MANUFACTURER OR FEDERALLY LICENSED FIREARMS IMPORTER IN COMPLIANCE WITH ALL FEDERAL LAWS AND REGULATIONS APPLICABLE TO THE MANUFACTURE AND IMPORT OF FIREARMS.

*(2)    EXCEPT AS PROVIDED IN PARAGRAPH (1) OF THIS SUBSECTION, A PERSON MAY NOT SELL, OFFER TO SELL, OR TRANSFER A FIREARM UNLESS IT IS IMPRINTED WITH A SERIAL NUMBER AS DESCRIBED UNDER SUBSECTION (B) OF THIS SECTION.*

(B)    *(1)    THIS SUBSECTION DOES NOT APPLY TO:*

*(I)    POSSESSION OF A FIREARM UNLESS A PERSON KNEW OR REASONABLY SHOULD HAVE KNOWN THAT THE FIREARM WAS NOT IMPRINTED WITH A SERIAL NUMBER AS DESCRIBED UNDER THIS SUBSECTION;*

*(II)    POSSESSION OF A FIREARM THAT DOES NOT COMPLY WITH THE MARKING REQUIREMENTS DESCRIBED UNDER THIS SUBSECTION BY A PERSON WHO RECEIVED THE FIREARM THROUGH INHERITANCE, AND IS NOT OTHERWISE PROHIBITED FROM POSSESSING THE FIREARM, FOR A PERIOD NOT EXCEEDING 30 DAYS AFTER INHERITING THE FIREARM; OR*

*(III)    POSSESSION OF AN UNFINISHED FRAME OR RECEIVER BY A PERSON THAT MADE OR MANUFACTURED THE UNFINISHED FRAME OR RECEIVER, WITHOUT THE USE OF ANY PREFABRICATED PARTS, AND WHO IS NOT OTHERWISE PROHIBITED FROM POSSESSING THE UNFINISHED FRAME OR RECEIVER, FOR A PERIOD NOT EXCEEDING 30 DAYS AFTER THE PERSON MADE OR MANUFACTURED THE UNFINISHED FRAME OR RECEIVER.*

*(2)*    ON OR AFTER ~~JANUARY~~ *MARCH* 1, 2023, A PERSON MAY NOT POSSESS A FIREARM UNLESS:

~~(1)~~ *(I)*    THE FIREARM IS REQUIRED BY FEDERAL LAW TO BE, AND HAS BEEN, IMPRINTED BY A FEDERALLY LICENSED FIREARMS MANUFACTURER OR FEDERALLY LICENSED FIREARMS IMPORTER WITH A SERIAL NUMBER IN COMPLIANCE WITH ALL FEDERAL LAWS AND REGULATIONS APPLICABLE TO THE MANUFACTURE AND IMPORT OF FIREARMS; OR

– 5 –

~~(2)~~   *(II)*   THE FIREARM*:*

      *1.*   HAS BEEN IMPRINTED BY A FEDERALLY LICENSED FIREARMS DEALER, *FEDERAL FIREARMS MANUFACTURER,* OR OTHER FEDERAL LICENSEE AUTHORIZED TO PROVIDE MARKING SERVICES, WITH ~~THE FIRST THREE AND LAST FIVE DIGITS OF THE LICENSEE'S FEDERAL FIREARMS LICENSE NUMBER, FOLLOWED BY A HYPHEN, AND THEN FOLLOWED BY ANOTHER NUMBER~~*:*

      *A.*   *THE ZIP CODE OF THE CURRENT OWNER OR PERSON THAT MADE, COMPLETED, OR INITIALLY ASSEMBLED THE FIREARM;*

      *B.*   *THE INITIALS OF THE CURRENT OWNER OR PERSON THAT MADE, COMPLETED, OR INITIALLY ASSEMBLED THE FIREARM; AND*

      *C.*   *A NUMBER THAT DOES NOT MATCH A NUMBER USED BY THE CURRENT OWNER ON ANOTHER FIREARM OR BY THE PERSON WHO MADE, COMPLETED, OR INITIALLY ASSEMBLED THE FIREARM ON ANY OTHER FIREARM THAT THE PERSON HAS MADE, COMPLETED, OR INITIALLY ASSEMBLED; AND*

      *2.*   *HAS BEEN REGISTERED WITH THE SECRETARY.*

(C)   *(1)*   *A PERSON WHO VIOLATES SUBSECTION (A) OF THIS SECTION IS GUILTY OF A MISDEMEANOR AND SUBJECT TO IMPRISONMENT NOT EXCEEDING 5 YEARS OR A FINE NOT EXCEEDING $10,000 OR BOTH.*

      *(2)*   *A PERSON WHO VIOLATES SUBSECTION (B) OF THIS SECTION IS GUILTY OF A MISDEMEANOR AND SUBJECT TO IMPRISONMENT NOT EXCEEDING 2 YEARS OR A FINE NOT EXCEEDING $10,000 OR BOTH.*

      *(3)*   *EACH VIOLATION OF THIS SECTION IS A SEPARATE CRIME.*

*(D)*   A FEDERALLY LICENSED FIREARMS DEALER OR OTHER FEDERAL LICENSEE AUTHORIZED TO PROVIDE MARKING SERVICES WHO IMPRINTS A FIREARM UNDER SUBSECTION ~~(B)(2)~~ *(B)(2)(II)* OF THIS SECTION SHALL*:*

      ~~(1)~~   IMPRINT THE FIREARM IN COMPLIANCE WITH ALL FEDERAL LAWS AND REGULATIONS APPLICABLE TO AFFIXING SERIAL NUMBERS TO FIREARMS, INCLUDING:

      ~~(I)~~ *(1)*   MINIMUM SIZE AND DEPTH REQUIREMENTS; AND

~~(II)~~ *(2)*        REQUIREMENTS THAT THE NUMBERS NOT BE READILY SUSCEPTIBLE TO BEING OBLITERATED, ALTERED, OR REMOVED~~; AND~~.

~~(2)   RETAIN RECORDS FOR ALL FIREARMS IMPRINTED IN ACCORDANCE WITH ALL FEDERAL LAWS AND REGULATIONS APPLICABLE TO THE SALE OF A FIREARM.~~

5–704.

~~(A)   A PERSON WHO VIOLATES THIS SUBTITLE IS GUILTY OF A MISDEMEANOR AND ON CONVICTION IS SUBJECT TO IMPRISONMENT NOT EXCEEDING 3 YEARS OR A FINE NOT EXCEEDING $10,000 OR BOTH.~~

~~(B)   EACH VIOLATION OF THIS SUBTITLE IS A SEPARATE CRIME.~~

*(A)   THE SECRETARY SHALL MAINTAIN A SYSTEM TO REGISTER FIREARMS IMPRINTED WITH SERIAL NUMBERS UNDER § 5–703(B)(2)(II) OF THIS SUBTITLE.*

*(B)   REGISTRATION DATA PROVIDED FOR REGISTRATION IS NOT OPEN TO PUBLIC INSPECTION.*

*(C)   FOR EACH FISCAL YEAR, THE GOVERNOR SHALL INCLUDE IN THE ANNUAL STATE BUDGET AN APPROPRIATION OF AT LEAST $150,000 TO FUND REGISTRATION ACTIVITIES CONDUCTED BY THE SECRETARY UNDER THIS SECTION.*

5–705.

THE SECRETARY MAY ADOPT REGULATIONS TO CARRY OUT THE PROVISIONS OF THIS SUBTITLE.

*5–706.*

*NOTHING IN THIS SUBTITLE MAY BE CONSTRUED IN A MANNER THAT ABRIDGES OR OTHERWISE LIMITS A PERSON'S RIGHT AGAINST SELF–INCRIMINATION UNDER THE UNITED STATES CONSTITUTION OR THE MARYLAND DECLARATION OF RIGHTS.*

SECTION 2. AND BE IT FURTHER ENACTED, That, if any provision of this Act or the application thereof to any person or circumstance is held invalid for any reason in a court of competent jurisdiction, the invalidity does not affect other provisions or any other application of this Act that can be given effect without the invalid provision or application, and for this purpose the provisions of this Act are declared severable.

_SECTION 3. AND BE IT FURTHER ENACTED, That this Act shall be construed in a manner that is consistent with proposed federal rule 2021R–05, updating parts 447, 478, and 479 of the Code of Federal Regulations, published in the Federal Register (Volume 86, No. 97) on May 21, 2021. If the proposed federal rule is modified at the time of adoption, this Act shall be construed in a manner that is consistent with those modifications._

SECTION 3̶.̶ _4._ AND BE IT FURTHER ENACTED, That this Act shall take effect June 1, 2022.

**Enacted under Article II, § 17(b) of the Maryland Constitution, April 9, 2022.**

# Montgomery County
## Office of Intergovernmental Relations

**ROCKVILLE:  240-777-6550**                    **ANNAPOLIS:  240-777-8270**

**SB 387**                                                  **DATE:  February 16, 2022**

**SPONSOR:  The President (By Request - Office of the Attorney General) and
Senator Lee**

**ASSIGNED TO:  Judicial Proceedings**

**CONTACT PERSON:  Sara Morningstar (Sara. Morningstar@montgomerycountymd.gov)**

**POSITION:  SUPPORT**

### Public Safety – Untraceable Firearms

Gun violence in the United States is a public health issue that cannot be ignored any longer. The alarming rise in "ghost guns" or untraceable firearms confiscated by Maryland law enforcement, aligned with the reported national surge of legal gun purchases made during the pandemic, requires that 2022 be the year for Maryland to adopt legislation to ban ghost guns.

Effective June 1, 2022, SB 387 will ban the purchase, sale and transfer of an unfinished frame or receiver if it does not have a serial number imprinted by a licensed manufacturer. Marylanders who already own these handmade firearms will have until January 1, 2023, to take them to a federally-licensed firearms dealer to have a serial number and manufacturing information engraved on the weapon.  Failure to comply with the law will result in a misdemeanor punishable by up to three years in jail and a fine of up to $10,000.  The ban will not apply to guns manufactured before 1968 or to antique firearms.

The danger of these deadly weapons is that they can be easily assembled from components bought online with no required background check, have no serial numbers, and are, therefore, untraceable.  These fully functional firearms are often difficult to identify as guns due to their shape or configuration and can evade metal detectors or x-ray machines creating a potential threat to public safety.  Tragically, last month's shooting at Magruder High School involved a 17-year-old using a 9 mm ghost gun purchased online to shoot and seriously harm a fellow student inside the school.  And last summer at a recreation center in Germantown, a ghost gun was used by a 14-year-old to fatally shoot a 20-year-old. While it's not fully known how many ghost guns are used in crimes, Montgomery County Department of Police reports that the number is rising.  In 2021, 70 ghost guns were recovered from crime scenes in the County – up from 16 ghost guns in 2019 and 56 ghost guns in 2020.

With increasing incidents of gun violence in Maryland, Montgomery County supports stricter gun safety laws to include untraceable and undetectable firearms. We would urge the Committee adopt a favorable report on SB 387.



DEFENDANT'S
EXHIBIT

**J**

# Montgomery County
## Office of Intergovernmental Relations

---

**ROCKVILLE:  240-777-6550**                          **ANNAPOLIS:  240-777-8270**

---

**HB 425**                                          **DATE:  February 9, 2022**

**SPONSOR:  The Speaker (By Request – Office of the Attorney General) and
                    Delegate Lopez**

**ASSIGNED TO:  Judiciary**

**CONTACT PERSON:  Sara Morningstar   (Sara.Morningstar@montgomerycountymd.gov)**

**POSITION:  SUPPORT**

---

### Public Safety – Untraceable Firearms

Gun violence in the United States is a public health issue that cannot be ignored any longer. The alarming rise in "ghost guns" or untraceable firearms confiscated by Maryland law enforcement, aligned with the reported national surge of legal gun purchases made during the pandemic, requires that 2022 be the year for Maryland to adopt legislation to ban ghost guns.

Effective June 1, 2022, HB 425 will ban the purchase, sale, and transfer of an unfinished frame or receiver if it does not have a serial number imprinted by a licensed manufacturer. Marylanders who already own these handmade firearms will have until January 1, 2023 to take them to a federally-licensed firearms dealer to have a serial number and manufacturing information engraved on the weapon.  Failure to comply with the law will result in a misdemeanor punishable by up to three years in jail and a fine of up to $10,000.  The ban will not apply to guns manufactured before 1968 or to antique firearms.

The danger of these deadly weapons is that they can be easily assembled from components bought online with no required background check, have no serial numbers, and are, therefore, untraceable.  These fully functional firearms are often difficult to identify as guns due to their shape or configuration and can evade metal detectors or x-ray machines creating a potential threat to public safety.  Tragically, last month's shooting at Magruder High School involved a 17-year-old using a 9 mm ghost gun purchased online to shoot and seriously harm a fellow student inside the school.  And last summer at a recreation center in Germantown, a ghost gun was used by a 14-year-old to fatally shoot a 20-year-old.  While it's not fully known how many ghost guns are used in crimes, Montgomery County Department of Police reports that the number is rising.  In 2021, 70 ghost guns were recovered from crime scenes in the County- up from 16 ghost guns in 2019 and 56 ghost guns in 2020.

With increasing incidents of gun violence in Maryland, Montgomery County supports stricter gun safety laws to include untraceable and undetectable firearms.  We urge the Committee to adopt a favorable report on HB 425.

DEFENDANT'S EXHIBIT

K



## VICTIM SERVICES ADVISORY BOARD

February 16, 2022

The Honorable William C. Smith, Jr.
Chair, Senate Judicial Proceedings Committee
2 East, Miller Senate Office Building
Annapolis, Maryland 21401

Re:   Support  - SB387 - Public Safety - Untraceable Firearms

Dear Chairman Smith:

Senate Bill 387 addresses the need to monitor and control the use of  "do-it-yourself" (DIY) or "ghost guns" by extending the definition of regulated firearms to include certain unfinished frames or receivers. Additionally, the bill requires that all firearms are marked with a unique serial number and that individuals possessing such firearms maintain a certain log.  Penalties are imposed for violations in the manufacture, possession, sale, and transfer of these firearms.

The Montgomery County Victim Services Advisory Board (VSAB) advises the County Council and County Executive on assisting victims and their family members who experience violent crimes including domestic violence, sexual assault and homicide.  Montgomery County experienced 35 homicides in 2021, the most in one year for the past 32 years.  (https://wjla.com/news/local/montgomery-county-murder-homicide-deadliest-year-record-germantown-fatal-shooting-circle-gate-drive-seneca-valley, Dec. 24, 2021).  Montgomery County is reporting more serious domestic violence crimes than ever before. (https://wtop.com/montgomery-county, Oct. 13, 2021). The county's inability to track weapons used in such violence puts victims at significantly greater risk.

Too many - almost a half dozen - ghost guns have been found in Montgomery County schools this year already.  (https://www.nbcwashington.com/news/local/dc-gun-violence/new-legislation-would-ban-ghost-guns-in-maryland/2942514, Jan. 20, 2022).  County ghost gun seizures increased fivefold in two years, from 16 in 2019 to 70 in 2021.  (https://bethesdamagazine.com/bethesda-beat/government/advocates-officials-focus-on-ghost-gun-crackdown-after-magruder-shooting/, Jan. 26, 2022). More than 12,000 ghost gun kits were shipped to Maryland between 2016 and 2019, and the Bureau of Alcohol, Tobacco and Firearms (ATF) reported 117 ghost guns recovered in the state in 2019. (https://wjla.com/news/local/ghost-guns-ban-maryland-rally-moms-students-demand-action-everytown-for-gun-safety-brian-frosh-attorney-general-tuesday-lawyers-mall-annapolis-senator-will-smith, Jan. 24, 2022). The state regulation of these dangerous firearms is long overdue.

VSAB asks the committee to issue a favorable report on Senate Bill 387.

Sincerely,

Amos Hicks III
VSAB Member

**DEFENDANT'S EXHIBIT**

**L**

### Department of Health and Human Services

# Witness Signup

| Name | Organization | Position | Testimony | Committee |
|------|-------------|----------|-----------|-----------|
| Adams, William | | UNF | Oppose SB0387.pdf | JPR |
| Adamson, Jeff | | UNF | Adamson SB387Testimony.pdf | JPR |
| Ali, Saqib | | FAV | Oral Testimony | JPR |
| Amsbaugh, Brent | | UNF | SB0387 Testimony.pdf | JPR |
| Andraka, Nicholas | | UNF | Oral Testimony Senate Bill 387.pdf | JPR |
| Apple, Chris | | FAV | Oral Testimony SB0387_Chris_Apple_FAV.pdf | JPR |
| Aziz, Malik | Chief of Prince George's County Police Department | FAV | Oral Testimony | JPR |
| BAILEY, JOSHUA | | UNF | Oral Testimony Letter to MD Senate.pdf | JPR |
| Bailey, Michael | | UNF | No Testimony | JPR |
| Balazek, John | Self | UNF | Oral Testimony | JPR |
| Barbieri, Nicholas | | UNF | No Testimony | JPR |
| Bartlett, Olivia | DoTheMostGood | FAV | SB0387-FAV-DTMG-2-16-22.pdf | JPR |
| Bartlett, Olivia | DoTheMostGood | FAV | SB0387-FAV-DTMG-3-23-22.pdf | JUD |
| Beller, Joel | Baltimore County Government | FAV | BaltimoreCounty_FAV_SB0387.pdf | JPR |
| Beller, Joel | Baltimore County Government | FAV | BaltimoreCounty_FAV_SB0387.pdf | JUD |
| Benjamin, Peter | Marylanders to Prevent Gun Violence | FAV | Oral Testimony | JPR |
| Bledsoe, Janice | Baltimore City State's Attorney Office | FWA | Oral Testimony | JPR |
| Boston, Frank | | UNF | Oral Testimony | JPR |
| Brown, Anthony G. | House of Representatives | FAV | Oral Testimony | JPR |
| Brown, Michael | | UNF | SB0387_brownmj_unf.pdf | JPR |
| Burke, Michael | Maryland Shall Issue | UNF | Oral Testimony MFB - Testimony on HB 485 and SB 387.pdf | JPR |
| Caine, Brian | | UNF | SB0387_Brian_Caine_unf.pdf | JPR |
| Carlin-Weber, Daniel | | UNF | Oral Testimony DC-W_SB387_UNF.pdf | JPR |
| Carrington, Darrell | Carrington & Associates, LLC | FAV | Carrington 2022 PGC - SB 387 - Public Safety - Unt | JUD |

DEFENDANT'S EXHIBIT

**M**

1/5

| Name | Organization | Position | Testimony | Committee |
|------|-------------|----------|-----------|-----------|
| Ceresi, Austin | | UNF | SB0387 Testimony.pdf | JPR |
| Cockrum, Chris | Accuforge | UNF | SB0387_Testimony_Accuforge_20220215.pdf | JPR |
| Collins, Michael | Baltimore City State's Attorney's Office | FWA | SB387 Amedment.BCSAO.pdf | JPR |
| Conway, Mark | | FAV | Oral Testimony | JPR |
| Cyphers, Moira | Compass Government Relations | FAV | Oral Testimony Giffords Testimony in Support of SB 387.pdf | JPR |
| Davis, Scott | | UNF | WRITTEN TESTIMONY SCOTT GREGORY DAVIS UNFAVORABLE | JPR |
| Davis, Sherrie-Lynn | | UNF | Written testimony of Sherrie-Lynn H Davis unfavora | JPR |
| DeTello, Jessica | | UNF | SB387_Jessica_DeTello.pdf | JPR |
| DeTello, Lydia | | UNF | Oral Testimony SB387_Lydia_DeTello.pdf | JPR |
| DeTello, Nicholas | | UNF | Oral Testimony SB387_Nicholas_DeTello.pdf | JPR |
| Doherty, Mike | Maryland State Rifle & Pistol Association | UNF | MSRPA Opposes SB387-2022.pdf | JPR |
| Dolan, John | | UNF | SB387_JohnDolan_unf.pdf | JPR |
| Dubovsky, Stephen | | UNF | No Testimony | JPR |
| Dummitt, Ashley | | UNF | Oral Testimony HB425_SB387 Testimony.pdf | JPR |
| Egan, Ashley | UULM-MD | FAV | SB 387 -Support-UULM-MD Jan Bird, MD.docx - Google | JPR |
| Egan, Ashley | UULM-MD | FAV | SB 387 -Support-UULM-MD Jan Bird, MD jud.docx - Go | JUD |
| Elrich, Marc | Montgomery County Government | FAV | Oral Testimony | JPR |
| Fedorko, Joel | | UNF | sb387.pdf | JPR |
| Frey, Leslie | Montgomery County | FAV | VSAB Support Ltr Ghost Guns Senate 2022.pdf | JPR |
| Frosh, Brian | Office of the Attorney General | FAV | Oral Testimony 2022-02-16 SB 387 (Support).pdf | JPR |
| Frosh, Brian | Office of the Attorney General | FAV | 2022-03-23 SB 387 (Cross-over Support).pdf | JUD |
| Frosh, Brian | Attorney General of Maryland | FAV | No Testimony | JUD |
| Fry, Donald | Greater Baltimore Committee | FAV | SB0387 - 2.16.22 -- Public Safety - Untraceable Fi | JPR |
| Gentry, Patrick | | UNF | Oral Testimony As a gun owner, I enjoy the building and engineeri | JPR |
| Gibson, Rich | Howard County State's Attorney's Office | FWA | SB 0387_Howard Co State's Attorney_FWA 2.14.22.pdf | JPR |
| Goode, Willow | The League of Women Voters Maryland | FAV | SB387-Public Safety-Untraceable Firearms .pdf | JPR |

| Name | Organization | Position | Testimony | Committee |
|------|--------------|----------|-----------|-----------|
| Grose, James | | UNF | Oral Testimony | JPR |
| Gross, Kenneth | | UNF | SB387 Testimony 2022.pdf | JPR |
| GUNDLING, JOHN | | UNF | MD Senate JPC Opposing Testimony SB387.pdf | JPR |
| Hall, Dillon | | UNF | SB387_HB425 DH Testimony.pdf | JPR |
| Harman, David | | UNF | Letter written in Opposition to Senate Bill 387.pd | JPR |
| Hayes, Justin | Comptroller of Maryland | FAV | 2-16-2022 - SB387 - Public Safety - Untraceable Fi | JPR |
| Herren, Karen | | FAV | Oral Testimony (Final)Ghost Guns 2022 SB387.pdf | JPR |
| Hewitt, Scott | | UNF | grassley_to_justice_dept.guncrimeinitiative.pdf Senate Judicial Proceedings Committee, Testimony i | JPR |
| Hinkle, Russell | | UNF | RJH SB387 UNF.pdf | JPR |
| Hodge, Daryl | | UNF | Oral Testimony Ghost Gun Testimony.pdf | JPR |
| Hollywood, Nicole | | FAV | Oral Testimony 2.16 MD Mom Testimony.pdf | JPR |
| Hudson, Lee | Delaware-Maryland Synod, ELCA | FAV | sb387, ghost guns, 2022.pdf | JUD |
| Johnston, Stephen | | UNF | SB387 UNFAVORABLE - Stephen Johnston.pdf | JPR |
| Josselyn, John | 2A Maryland | UNF | Oral Testimony SB0387_Testimony_Unfavorable_2-16-22.pdf | JPR |
| Kasemeyer, Pam | | FAV | SB0387_FAV_City of Rockville_Public Safety - Untra | JPR |
| Kasuba, Thomas | | UNF | Oral Testimony Kasuba_OPPOSE_SB0387.pdf Kasuba2_OPPOSE_SB0387.pdf | JPR |
| Kohler, Gene | | UNF | SB 387 Gene Kohler.pdf | JPR |
| Koravos, JoAnne | Montgomery County Women's Democratic Club | FAV | WDC Testimony SB0387_2022.pdf | JPR |
| Kraska, MJ | Maryland Catholic Conference | FAV | MD Catholic Conference_FAV_SB0387.pdf | JPR |
| Kraska, MJ | Maryland Catholic Conference | FAV | MD Catholic Conference_FAV_SB0387.pdf | JUD |
| Krone, Christine | | FAV | No Testimony | JPR |
| Kryger, William | | UNF | SB0387 Unfavorable Position.pdf | JPR |
| Lee, Susan | | FAV | Oral Testimony SB387_FAV_Lee_2022.pdf | JPR |
| Levy, Samuel | Everytown for Gun Safety | FAV | MD SB 387 Testimony.pdf | JPR |
| Lieberman, Jim | CIF | FAV | SB 387 ghost gun testimony 2-15- 22 ..pdf | JPR |
| Lipko, Seth | | UNF | No Testimony | JPR |

| Name | Organization | Position | Testimony | Committee |
|------|--------------|----------|-----------|-----------|
| Love, William | | UNF | No Testimony | JPR |
| Lowe, Mary Pat | Moms Demand Action | FAV | Oral Testimony | JPR |
| McAdam, Hunter | | UNF | _SB387_htm_unf.pdf | JPR |
| McCann Jr, William B | | UNF | SB 387 McCann Unfav.pdf | JPR |
| McCarthy, John | Montgomery County State's Attorney's Office | FAV | Oral Testimony | JPR |
| McGuire, James | | UNF | Oral Testimony mcguire_opposed_sb-0387.pdf | JPR |
| Mehu, Natasha | Mayor's Office of Government Relations | FAV | SB0387-JPR-FAV.pdf | JPR |
| Mehu, Natasha | Mayor's Office of Government Relations | FAV | SB0387-JUD-FAV.pdf | JUD |
| Menendez, Daniel | | UNF | RE_ HB425_SB387 (4).pdf | JPR |
| Mooney, Karla | TWAW / DC Project / MSI | UNF | Oral Testimony Testimony SB 0387_HB 0425 Untraceable Firearms.pd | JPR |
| Morningstar, Sara | Montgomery County Government | FAV | SB 387 - MoCo_Morningstar_FAV (GA 22).pdf | JPR |
| Morris, Laura | Moms Demand Action | FAV | Oral Testimony | JPR |
| Munson II, Jon | | UNF | SB_327_JonCMunsonII_UNFAVORABLE.pdf | JPR |
| Novotny, Art | | UNF | Art_Novotny_UNF_SB387.pdf | JPR |
| Novotny, Katie | | UNF | Oral Testimony Katie_Novotny_UNF_SB387.pdf | JPR |
| Paylor, Perry | State's Attorney's Office for Prince George's County | FAV | Oral Testimony | JPR |
| Pennak, Mark | Maryland Shall Issue, Inc. | UNF | Oral Testimony MSI Testimony on HB 425 and SB 387 Final.final.pdf | JPR |
| Peterson, Matt | | FAV | SB 387 - Ghost Guns.pdf | JPR |
| Phelps, Ken | Maryland Episcopal Public Policy Network | FAV | 2022 SB 0387 - FAVORABLE.pdf | JPR |
| Phelps, Ken | Maryland Episcopal Public Policy Network | FAV | 2022 SB 0387 - FAVORABLE.pdf | JUD |
| Pica, John | Pica & Associates, LLC | UNF | NSFF SB 387 - Untraceable Firearms - Oppose.pdf | JPR |
| Plante, Cecilia | Maryland Legislative Coalition | FAV | SB0387_Untraceable_Firearms_MLC_FAV.pdf | JPR |
| Plante, Cecilia | Maryland Legislative Coalition | FAV | SB0387_Untraceable_Firearms_MLC_FAV.pdf | JUD |
| President, President | | FAV | Oral Testimony | JPR |
| President, President | | FAV | Oral Testimony | JUD |

| Name | Organization | Position | Testimony | Committee |
|------|-------------|----------|-----------|-----------|
| Reid, Denise | Moms Demand Action | FAV | Oral Testimony | JPR |
| Sanchez, Osiris | | UNF | SB0387_Osiris Sanchez_UNF.pdf | JPR |
| Schardt , Tanya | Brady | FAV | Brady.SB387.Support.pdf | JPR |
| Scott, Brandon | Mayor, Baltimore City Administration | FAV | Oral Testimony | JPR |
| Shapiro, Melanie | Maryland Network Against Domestic Violence | FAV | Oral Testimony SB 387_MNADV_FAV.pdf | JPR |
| Shapiro, Melanie | Maryland Network Against Domestic Violence | FAV | SB 387_MNADV_FAV_JUD.pdf | JUD |
| Sharpless, Bradford | | UNF | SB 387, Untraceable Firearms, 2022, Sharpless.pdf | JPR |
| Spiker, D.J. | National Rifle Association | UNF | Oral Testimony | JPR |
| Stramella, Scott | | UNF | SB387 Opposition.pdf | JPR |
| Sugar, Earle | | UNF | SB0387_Earle Sugar_UNF.pdf | JPR |
| Testimony, All | | N/A | Merged Testimony as of 2-16-2022 at 1006 AM | JPR |
| Toscano, Christopher | | UNF | TOSCANO_ Written Testimony on SB0387 Untaceable Fi | JPR |
| Upman, Patrick | | UNF | SB387.pdf | JPR |
| Veith, Danielle | Maryland Moms Demand Action | FAV | Oral Testimony | JPR |
| Williams, Krystal | MARYLAND OFFICE OF THE PUBLIC DEFENDER | UNF | No Testimony | JPR |
| Williams, Peggy | | UNF | No Testimony | JPR |
| Wojtysiak, Theodore | | UNF | SB387.pdf | JPR |
| Worley , Richard | Baltimore Police Department | FAV | Oral Testimony SB 387 BPD Support.pdf | JPR |
| Yiannakis, Christin | | UNF | No Testimony | JPR |
| Yontef-McGrath, Amy | Maryland Moms Demand Action and Students Demand Action | FAV | Oral Testimony | JPR |

# Witness Signup

| Name | Organization | Position | Testimony | Committee |
|------|--------------|----------|-----------|-----------|
| Abrams, Stephan | Brady | FAV | Oral Testimony | JUD |
| Adamson, Jeff | | UNF | Adamson SB387_HB425Testimony.pdf | JUD |
| Anders, Neal | Maryland Shall Issue | UNF | No Testimony | JUD |
| Andraka, Nicholas | | UNF | House Bill 425.pdf | JUD |
| Aziz, Malik | Chief of Prince George's County Police Department | FAV | Oral Testimony | JUD |
| Bagwell, Ashlie | | FAV | 2022 JCRC HB 425 Public Safety Untraceable Firearm | JUD |
| BAILEY, JOSHUA | | UNF | Oral Testimony Letter to MD House.pdf | JUD |
| Bartlett, Olivia | DoTheMostGood | FAV | HB0425-FAV-DTMG-2-9-22.pdf | JUD |
| Beller, Joel | Baltimore County Government | FAV | BaltimoreCounty_FAV_HB0425.pdf | JUD |
| Bledsoe, Janice | Baltimore City State's Attorney Office | FWA | Oral Testimony | JUD |
| Bowman, Robert | | UNF | Oral Testimony | JUD |
| Braveboy, Aisha | Prince George's County State's Attorney | FAV | Oral Testimony HB425 Written Testimony (A. Braveboy).pdf | JUD |
| Caine, Brian | | UNF | hb0425_opposition.pdf | JUD |
| Carlin-Weber, Daniel | | UNF | DC-W_HB425_UNF.pdf | JUD |
| Chamblee, Andrea | Moms Demand Action | FAV | Oral Testimony | JUD |
| Cheakalos, Paul | | UNF | No Testimony | JUD |
| Colburn, Ashley | None | UNF | HB0425_Written Testimony of Ashley Colburn.pdf | JUD |
| Crisafulli, Matthew | Worcester County Sheriffs Office | UNF | HB 425 Crisafulli.pdf | JUD |
| Davis, Scott | | UNF | WRITTEN TESTIMONY OF SCOTT G. DAVIS IN OPPOSITION | JUD |
| DeTello, Lydia | | UNF | Lydia DeTello.pdf | JUD |
| DeTello, Nicholas | | UNF | Oral Testimony HB0425_Nicholas_DeTello.pdf | JUD |
| Ditraglia, Frank | | UNF | No Testimony | JUD |
| Dudley, Kara | | FAV | Oral Testimony | JUD |
| Egan, Ashley | UULM-MD | FAV | HB 425 -Support-UULM-MD Jan Bird, MD.docx - Google | JUD |

DEFENDANTS
EXHIBIT
N

| Name | Organization | Position | Testimony | Committee |
|---|---|---|---|---|
| Elbourn, James | | UNF | No Testimony | JUD |
| Elrich, Marc | Montgomery County Government | FAV | Oral Testimony | JUD |
| Ferguson, Jesse | | UNF | Oral Testimony | JUD |
| Fink, Nelda | | UNF | No Testimony | JUD |
| Fry, Donald | Greater Baltimore Committee | FAV | HB0425 - 2.9.22 -- Public Safety - Untraceable Fir | JUD |
| Gahler, Sheriff Jeff | Harford County Sheriff's Office | UNF | Oral Testimony HB425 Untraceable Firearms.pdf | JUD |
| Gay, Morris | | UNF | Oral Testimony HB425- Opposed.pdf | JUD |
| Gay, Timothy | | UNF | New PDF document.pdf | JUD |
| Gentry, Patrick | | UNF | As a gun owner, I enjoy the building and engineeri | JUD |
| Gibson, Rich | Howard County State's Attorney's Office | FWA | Oral Testimony HB 0425_Howard Co SAO_fav with amendments_Untracea | JUD |
| Gross, Kenneth | | UNF | HB0425 Testimony 2022.pdf | JUD |
| Hall, Dillon | | UNF | SB387_HB425 DH Testimony.pdf | JUD |
| Harrison , Michael | Baltimore Police Department | FAV | Oral Testimony HB 441 BPD Support.pdf | JUD |
| Hayes, Justin | Comptroller of Maryland | FAV | 2-9-2022 Final - HB425 Public Safety - Untraceabl | JUD |
| Herren, Karen | | FAV | Oral Testimony (Final)Ghost Guns 2022 HB425.pdf | JUD |
| Hershon, Edward | Hershon Legal, LLC | UNF | Oral Testimony | JUD |
| Hill, Robert | Montgomery County State's Attorney's Office and Maryland State's Attorney's Association | FAV | Oral Testimony | JUD |
| Hines Jr, John | | UNF | Oral Testimony | JUD |
| Hollywood, Nicole | | FAV | Oral Testimony | JUD |
| Johnston, Stephen | | UNF | HB425 UNFAVORABLE - Stephen Johnston.pdf | JUD |
| Josselyn, John | 2A Maryland | UNF | Oral Testimony HB0425_Testimony_Unfavorable_2-7-22.pdf | JUD |
| Joyce, Kevin | | UNF | HB425.pdf | JUD |
| Kasemeyer, Pam | | FAV | No Testimony | JUD |
| Kasemeyer, Pam | City of Rockville | FAV | City of Rockville - FAV | JUD |
| Kasuba, Thomas | | UNF | Oral Testimony KASUBA_OPPOSE_HB0425.pdf | JUD |
| Kemerer, Hannibal | Office of Attorney General | FAV | Oral Testimony 2022-02-09 HB 425 (Support).pdf | JUD |

| Name | Organization | Position | Testimony | Committee |
|------|-------------|----------|-----------|-----------|
| Klein, Michelle | | UNF | No Testimony | JUD |
| Kraska, MJ | Maryland Catholic Conference | FAV | MD Catholic Conference_FAV_HB0425.pdf | JUD |
| Ladd, Melissa | | FAV | Oral Testimony ML HB 425 Testimony.docx.pdf | JUD |
| Landau, Mindy | Brady United Against Gun Violence | FAV | Oral Testimony GG Test imony2-9-22.pdf | JUD |
| Lerol, Travis | Travis Lerol | UNF | Oral Testimony HB425.pdf | JUD |
| Levy, Samuel | Everytown for Gun Safety | FAV | Oral Testimony | JUD |
| Lewis, Mike | Maryland Chiefs & Sheriffs Associations | UNF | Oral Testimony PUBLIC SAFETY - UNTRACEABLE FIREARMS - HOUSE BILL | JUD |
| Lieberman, Jim | CIF | FAV | HR 425 ghost gun testimony 830 am 2-6-22 for filin | JUD |
| Long, Lauren | | UNF | Please do not pass this bill.pdf | JUD |
| Lopez, Lesley | | FAV | Oral Testimony HB 425 Sponsor Testimony.pdf | JUD |
| Love, William | | UNF | No Testimony | JUD |
| Lowman, Lisa | Moms Demand Action-Maryland Chapter | FAV | Oral Testimony | JUD |
| Mansfield, Andrea | Maryland Chiefs & Sheriffs Associations | INFO | MCPA-HB425.pdf | JUD |
| Martínez, Ana | | FAV | Oral Testimony | JUD |
| McCann Jr, William B | | UNF | Oral Testimony McCann TESTIMONY HB425 + SB387 2022-02-07.pdf | JUD |
| McCarthy, John | Montgomery County State's Attorney's Office | FAV | Mccarthy HB425.pdf | JUD |
| McGettigan, James | | UNF | Oral Testimony HB0425.pdf | JUD |
| Mehu, Natasha | Mayor's Office of Government Relations | FAV | HB0425-JUD-FAV.pdf | JUD |
| Menendez, Daniel | | UNF | Oral Testimony RE_ HB425_SB387 (1).pdf | JUD |
| Milano, Leslie | Montgomery County Women's Democratic Club | FAV | Oral Testimony | JUD |
| Mooney, Karla | TWAW / DC Project / MSI | UNF | Testimony HB 0425 Untraceable Firearms.pdf | JUD |
| Morch, Giselle | Marylanders to Prevent Gun Violence | FAV | Oral Testimony | JUD |
| Morningstar, Sara | Montgomery County Government | FAV | HB 425 - MoCo_Morningstar_FAV (GA 22).pdf | JUD |
| Novotny, Art | | UNF | Art_Novotny_UNF_HB425.pdf | JUD |
| Novotny, Katie | | UNF | Oral Testimony Katie_Novotny_UNF_HB425.pdf | JUD |
| PARRISH, GEORGE | | UNF | No Testimony | JUD |

| Name | Organization | Position | Testimony | Committee |
|------|-------------|----------|-----------|-----------|
| Paylor, Perry | State's Attorney's Office for Prince George's County | FAV | Oral Testimony | JUD |
| Pennak, Mark | Maryland Shall Issue, Inc. | UNF | Oral Testimony MSI Testimony on HB 425 and SB 387 Final3.pdf | JUD |
| Peterson, Matt | | FAV | HB 425 - Ghost Guns.pdf | JUD |
| Phelps, Ken | Maryland Episcopal Public Policy Network | FAV | 2022 HB 0425 - FAVORABLE.pdf | JUD |
| Pilling, Ronald | Jesse Klump Memorial Fund, Inc. | FAV | hb0425 written testimony feb 7 2022.pdf | JUD |
| Pucino, David | Giffords | FAV | Oral Testimony | JUD |
| regan, charles | | UNF | 2022 testimony on home built guns.pdf | JUD |
| riley, joseph | Maryland State's Attorneys Association | FAV | Oral Testimony | JUD |
| Santos, Trevor | National Shooting Sports Foundation | UNF | Oral Testimony MD_2022_ HB 425 - Untraceable Firearms - Oppose.pd | JUD |
| Scarborough, Brenda | | UNF | HB0425 Oppose.pdf | JUD |
| Schardt , Tanya | Brady | FAV | HB0425.Brady.pdf | JUD |
| Schipper, Daniel | | UNF | Bill HB0425.pdf | JUD |
| Scott, Brandon | Mayor, Baltimore City Administration | FAV | Oral Testimony | JUD |
| Shapiro, Melanie | Maryland Network Against Domestic Violence | FAV | Oral Testimony HB 425_MNADV_FAV.pdf | JUD |
| Sharpless, Bradford | | UNF | No Testimony | JUD |
| Simonson, Grace | | FAV | Oral Testimony | JUD |
| Speaker, Speaker | | FAV | Oral Testimony | JUD |
| Stramella, Scott | | UNF | HB425 Opposition.pdf | JUD |
| Sugar, Earle | | UNF | Earle_Sugar_Opposed_HB0425_2022 Revision 1.pdf | JUD |
| Tchantchou, Kevine | Lith Home LLC | INFO | No Testimony | JUD |
| Toscano, Christopher | | UNF | TOSCANO_ Written Testimony on HB0425 Untaceable Fi | JUD |
| Van Hollen, Chris | US Senator | FAV | Senator Van Hollen - FAV | JUD |
| Williams, Peggy | | UNF | No Testimony | JUD |
| Wolcott, Clinton | | FAV | Oral Testimony | JUD |
| Yu, Alfred | | UNF | Oral Testimony HB425-SB387 testimony - Yu.pdf | JUD |

| Name | Organization | Position | Testimony | Committee |
|------|-------------|----------|-----------|-----------|
| Ziegelbauer, Joe | | FAV | Oral Testimony | JUD |

# SENATE JUDICIAL PROCEEDINGS COMMITTEE

### WILLIAM C. SMITH, JR., CHAIR · COMMITTEE REPORT SYSTEM
### DEPARTMENT OF LEGISLATIVE SERVICES · 2022 MARYLAND GENERAL ASSEMBLY

# FLOOR REPORT
### Senate Bill 387

### Public Safety - Untraceable Firearms

**SPONSORS:**  The President (By Request - Office of the Attorney General) and Senator Lee

**COMMITTEE RECOMMENDATION:**       **Favorable with Amendments (9)**

**SHORT SUMMARY:**

As amended, this bill, with specified exceptions, (1) prohibits a person from purchasing, receiving, selling, offering to sell, or transferring an "unfinished frame or receiver" unless it is required by federal law to be, and has been, imprinted with a serial number, as specified; (2) prohibits a person from selling, offering to sell, or transferring a firearm lacking a specified serial number; and (3) beginning <u>March 1, 2023</u>, prohibits a person from possessing a firearm unless the firearm is imprinted with specified information. The bill also (1) requires registration of specified firearms with the Secretary of State Police; (2) establishes procedures for registration; (3) establishes penalties for violations of the bill's provisions relating to untraceable firearms; and (4) expands the definition of a "firearm" to include an unfinished frame or receiver. The bill takes effect June 1, 2022.

**COMMITTEE AMENDMENTS:**       **There are nine (9) committee amendments**

<u>AMENDMENT  NO.  1</u>:      is technical.

<u>AMENDMENT  NO.  2</u>:      alters the bill's exceptions.

<u>AMENDMENT  NO.  3</u>:      alters the definition of an "unfinished frame or receiver".

<u>AMENDMENT  NO.  4</u>:      establishes a mens rea requirement for possession offenses under the bill.

<u>AMENDMENT  NO.  5</u>:      alters marking requirements for firearms, as specified.



DEFENDANT'S
EXHIBIT

O

AMENDMENT  NO.  6:     alters the date after which a person may be subject to the bill's requirements relating to possession of specified firearms.

AMENDMENT  NO.  7:     establishes a prohibition on sale, offers for sale, and transfers of specified firearms, alters the bill's penalty provisions, and strikes record–keeping language.

AMENDMENT  NO.  8:     establishes a requirement that a certain person register a firearm with the Secretary of State Police, provides for that registration, and requires an annual appropriation, as specified.

AMENDMENT  NO.  9:     provides for the construction of the bill.

## SUMMARY OF BILL:

### *Untraceable Firearms*

A person is prohibited from purchasing, receiving, selling, offering to sell, or transferring an unfinished frame or receiver unless it is required by federal law to be, and has been, imprinted with a serial number by a federally licensed firearms manufacturer or federally licensed firearms importer in compliance with all federal laws and regulations applicable to the manufacture and import of firearms.

Beginning March 1, 2023, a person may not possess a firearm unless:

- the firearm is required by federal law to be, and has been, imprinted by a federally licensed firearms manufacturer or federally licensed firearms importer with a serial number in compliance with all federal laws and regulations applicable to the manufacture and import of firearms; or
- the firearm has been imprinted by a federally licensed firearms dealer, or other federal licensee authorized to provide marking services, as specified.

A federally licensed firearms dealer, or other federal licensee authorized to provide marking services, who imprints a firearm under the bill's provisions must (1) imprint the firearm in compliance with all federal laws and regulations applicable to affixing serial numbers to firearms, as specified.

A violator of the bill's provisions relating to the purchase, receipt, sale, offer for sale, and transfer of unfinished frames or receivers, as well as those provisions relating to the sale, offer for sale, or transfer of a firearm lacking marking or serialization or which are not

registered in accordance with the bill's provisions are guilty of a misdemeanor and subject to maximum penalties of imprisonment not exceeding 5 years and/or a $10,000 fine.

A violator of the bill's provisions relating to the possession of a firearm lacking marking or serialization or which are not registered in accordance with the bill's provisions are guilty of a misdemeanor and subject to maximum penalties of imprisonment not exceeding 2 years and/or a $10,000 fine.

The provisions relating to untraceable firearms do not apply to (1) a firearm that was manufactured before 1968 or is an antique firearm; (2) a sale, an offer to sell, a transfer, or a delivery of a firearm or an unfinished frame or receiver to, or possession of a firearm or unfinished frame or receiver by, a federally licensed firearms dealer, a federally licensed firearms manufacturer, or a federally licensed firearms importer; or (3) a transfer or surrender of a firearm or an unfinished frame or receiver to a law enforcement agency.

The provisions relating to possession of a firearm that is not marked or serialized or registered in accordance with the bill's provisions do not apply to a person unless the person knows or reasonably should have known that the firearm is not imprinted with a serial number, as specified.

A person who makes, completes, or initially assembles a firearm or the current legal owner of a firearm that is not imprinted with a serial number must register the firearm with the Secretary of State Police. The Secretary is required to maintain a system to register firearms, as specified. Registration data provided for registration under the bill is not open to public inspection. Moreover, information or evidence obtained from a registration application or records required to be submitted to register a firearm under the bill may not be used against the person applying to register the firearm in a criminal proceeding for a violation of law that occurred before or at the time the person applied to register the firearm or provide records required to register the firearm. However, this information may be sued as evidence in a prosecution relating to providing false information.

Each year, the Governor is required to include an appropriation in the annual State budget of at least $150,000 to fund registration activities conducted by the Secretary under the bill's provisions.

The Secretary of State Police may adopt regulations to carry out these provisions.

The bill's amendments provide that the bill is to be construed in a manner that is consistent with proposed federal rules regarding privately made firearms. If the proposed federal rules are modified at the time of their adoption, the bill is required to be construed in a manner that is consistent with those modifications.

"Unfinished frame or receiver" means a forged, cast, printed, extruded, or machined body or similar article that has reached a stage in manufacture where it may readily be completed, assembled, or converted to be used as the frame or receiver of a functional firearm.

*Federal Firearms Licensed Dealers*

The Secretary of State Police must suspend a dealer's license if the licensee is charged with a crime under the bill's provisions relating to untraceable firearms. The Secretary must revoke a dealer's license if the licensee is convicted of a crime under the same provisions.

**BACKGROUND:**

According to the U.S. Department of Justice, between 2016 and 2020, more than 23,000 ghost guns were recovered by law enforcement from potential crime scenes, including 325 in connection with homicides and attempted homicides. In November 2020, the Baltimore Sun reported that between 2016 and 2019, more than 12,000 build kits were shipped to Maryland, with total sales of the kits exceeding $1.0 million. The Baltimore Sun further reported that the Baltimore City Police Department recovered 126 privately made firearms in 2020 compared to 29 recovered in 2019, and that nearly one-quarter of such firearms recovered were from individuals under the age of 21.

Eight states (California, Connecticut, Hawaii, Nevada, New Jersey, New York, Rhode Island, and Washington) and the District of Columbia have enacted laws regulating privately made firearms to varying degrees. California and Connecticut have enacted laws that require privately made firearms to be registered and marked with a serial number obtained from a governmental agency within each state. Nevada and New Jersey require serialization of unfinished frames and receivers by federally licensed firearms manufacturers and importers. The District of Columbia passed legislation in 2020 to ban build kits and specifically the possession of unfinished frames and receivers and untraceable firearms.

Some cities and local jurisdictions have also started to implement laws to address privately made firearms. In August 2021, San Diego became the first city in California to prohibit the sale of unserialized frames and receivers, and San Francisco passed similar legislation shortly thereafter. In Maryland, Montgomery County passed legislation in April 2021 to restrict the access of privately made firearms to minors and in places of public assembly within the county.

**FISCAL IMPACT:**

**State Effect:**  As drafted, a potential minimal increase in general fund revenues and expenditures due to the bill's penalty provisions was expected. It is unknown at this time what impact, if any, the bill's amendments will have on State finances.

**Local Effect:**  As drafted, a potential minimal increase in local revenues and expenditures due to the bill's penalty provisions was expected. It is unknown at this time what, if any, impact the bill's amendments will have on local finances.

**Small Business Effect:** Minimal.

**ADDITIONAL  INFORMATION:**

**Prior Introductions:**  None.

**Cross File:** Designated  HB 425 (The Speaker)(By Request - Office of the Attorney General) and Delegate Lopez - Judiciary.

**COUNSEL:  Lancaster**

**SB 387**

# Department of Legislative Services
Maryland General Assembly
2022 Session

## FISCAL AND POLICY NOTE
### Third Reader - Revised

| | |
|---|---|
| Senate Bill 387 | (The President)(By Request - Office of the Attorney General) and Senator Lee |
| Judicial Proceedings | Judiciary |

---

## Public Safety - Untraceable Firearms

---

This bill, with specified exceptions, (1) requires the Secretary of State Police to maintain a system to register firearms imprinted with serial numbers, as specified, and (2) prohibits a person from purchasing, receiving, selling, offering to sell, or transferring an "unfinished frame or receiver" or a firearm unless imprinted with specified information. The Governor must include at least $150,000 in the annual State budget to fund registration activities conducted by the Secretary under the bill. The bill also (1) requires the Secretary to suspend or revoke a dealer's license under specified conditions relating to untraceable firearms; (2) establishes penalties for violations of specified provisions of the bill; and (3) expands the definition of a "firearm" to include an unfinished frame or receiver. The bill must be construed in a manner that is consistent with a specified proposed federal rule regarding privately made firearms. If the proposed federal rule is modified at the time of adoption, the bill must be construed in a manner that is consistent with those modifications. Provisions of the bill are severable. **The bill takes effect June 1, 2022.**

---

## Fiscal Summary

**State Effect:** No effect in FY 2022. General fund expenditures increase by at least $150,000 annually beginning in FY 2024 due to the mandated appropriation; although discretionary, this analysis assumes funding is also provided in FY 2023. Potential minimal increase in general fund revenues and expenditures due to the bill's penalty provisions. **This bill establishes a mandated appropriation beginning in FY 2024.**

| (in dollars) | FY 2023 | FY 2024 | FY 2025 | FY 2026 | FY 2027 |
|---|---|---|---|---|---|
| Revenues | $0 | $0 | $0 | $0 | $0 |
| GF Expenditure | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 |
| Net Effect | ($150,000) | ($150,000) | ($150,000) | ($150,000) | ($150,000) |

Note:() = decrease; GF = general funds; FF = federal funds; SF = special funds; - = indeterminate increase; (-) = indeterminate decrease



DEFENDANT'S
EXHIBIT

**P**

**Local Effect:**  Potential minimal increase in local revenues and expenditures due to the bill's penalty provisions.

**Small Business Effect:**  Minimal.

---

# Analysis

**Bill Summary:**

*Untraceable Firearms*

A person is prohibited from purchasing, receiving, selling, offering to sell, or transferring an *unfinished frame or receiver* unless it is required by federal law to be, and has been, imprinted with a serial number by a federally licensed firearms manufacturer or federally licensed firearms importer in compliance with all federal laws and regulations applicable to the manufacture and import of firearms. Except as otherwise authorized, a person may not sell, offer to sell, or transfer a *firearm* unless it is imprinted with a specified serial number.

A violator of the provisions relating to required imprinting is guilty of a misdemeanor and on conviction is subject to imprisonment for up to five years and/or a fine of up to $10,000. Each violation is a separate crime.

Beginning March 1, 2023, a person may not possess a firearm unless:

- the firearm has been registered with the Secretary of State Police; and
- (1) the firearm is required by federal law to be, and has been, imprinted by a federally licensed firearms manufacturer or federally licensed firearms importer, or other federal licensee authorized to provide marking services, with a serial number in compliance with all federal laws and regulations applicable to the manufacture and import of firearms or (2) the firearm has been imprinted by a federally licensed firearms dealer, federal firearms manufacturer, or other federal licensee authorized to provide marking services with specified information.

The prohibition that begins March 1, 2023, does not apply to:

- possession of a firearm unless a person knew or reasonably should have known that the firearm was not imprinted with a serial number, as specified;

- possession of a firearm that does not comply with the marking requirements by a person who received the firearm through inheritance, and is not otherwise prohibited from possessing the firearm, for up to 30 days after inheriting the firearm; or
- possession of an unfinished frame or receiver by a person that made or manufactured the unfinished frame or receiver, without the use of any prefabricated parts, and who is not otherwise prohibited from possessing the unfinished frame or receiver for up to 30 days after the person made or manufactured the unfinished frame or receiver.

A violator of the prohibition that begins March 1, 2023, is guilty of a misdemeanor and on conviction is subject to imprisonment for up to two years and/or a fine of up to $10,000. Each violation is a separate crime.

A federally licensed firearms dealer or other federal licensee authorized to provide marking services who imprints a firearm under the bill's provisions must imprint the firearm in compliance with all federal laws and regulations applicable to affixing serial numbers to firearms, as specified.

The provisions relating to untraceable firearms do not apply to (1) a firearm that was manufactured before October 22, 1968, or is an antique firearm; (2) a sale, an offer to sell, a transfer, or a delivery of a firearm or an unfinished frame or receiver to, or possession of a firearm or unfinished frame or receiver by, a federally licensed firearms dealer, a federally licensed firearms manufacturer, or a federally licensed firearms importer; or (3) a transfer or surrender of a firearm or an unfinished frame or receiver to a law enforcement agency.

Nothing in the bill may be construed in a manner that abridges or otherwise limits a person's right against self-incrimination under the U.S. Constitution or the Maryland Declaration of Rights.

Registration data provided for registration of a firearm under the bill's provisions is not open to public inspection.

The Secretary of State Police may adopt regulations to carry out these provisions.

"Unfinished frame or receiver" means a forged, cast, printed, extruded, or machined body or similar article that has reached a stage in manufacture where it may readily be completed, assembled, or converted to be used as the frame or receiver of a functional firearm.

*Federal Firearms Licensed Dealers*

The Secretary of State Police must suspend a dealer's license if the licensee is charged with a crime under the bill's provisions relating to untraceable firearms. The Secretary must revoke a dealer's license if the licensee is convicted of a crime under the same provisions.

**Current Law:**  Generally, State law prohibits a person from manufacturing for distribution or sale a handgun that is not included on the handgun roster in the State. However, law enforcement may not be aware of firearms manufactured within a person's home for personal use until the firearm is used or transferred. The federal Undetectable Firearms Act prohibits a person from manufacturing, importing, selling, shipping, delivering, possessing, transferring, or receiving any firearm that is not as detectable by a walk-through metal detection as a security exemplar containing 3.7 ounces of steel, or any firearm with major components that do not generate an accurate image before standard airport imaging technology. The federal prohibition was first enacted in 1988 and was renewed for 10 years in December 2013.

**Background:**  According to the U.S. Department of Justice, between 2016 and 2020, more than 23,000 ghost guns were recovered by law enforcement from potential crime scenes, including 325 in connection with homicides and attempted homicides. In November 2020, the *Baltimore Sun* reported that between 2016 and 2019, more than 12,000 build kits were shipped to Maryland, with total sales of the kits exceeding $1.0 million. The *Baltimore Sun* further reported that the Baltimore City Police Department recovered 126 privately made firearms in 2020 compared to 29 recovered in 2019, and that nearly one-quarter of such firearms recovered were from individuals under the age of 21.

Eight states (California, Connecticut, Hawaii, Nevada, New Jersey, New York, Rhode Island, and Washington) and the District of Columbia have enacted laws regulating privately made firearms to varying degrees. California and Connecticut have enacted laws that require privately made firearms to be registered and marked with a serial number obtained from a governmental agency within each state. Nevada and New Jersey require serialization of unfinished frames and receivers by federally licensed firearms manufacturers and importers. The District of Columbia passed legislation in 2020 to ban build kits and specifically the possession of unfinished frames and receivers and untraceable firearms.

Some cities and local jurisdictions have also started to implement laws to address privately made firearms. In August 2021, San Diego became the first city in California to prohibit the sale of unserialized frames and receivers, and San Francisco passed similar legislation shortly thereafter. In Maryland, Montgomery County passed legislation in April 2021 to restrict the access of privately made firearms to minors and in places of public assembly within the county.

**State Expenditures:**  The bill requires the Governor to include in the annual State budget an appropriation of at least $150,000 to fund registration activities conducted by the Secretary of State Police under the bill. Accordingly, general fund expenditures increase by at least $150,000 annually beginning in fiscal 2024 due to the mandated appropriation. Because the Department of State Police (DSP) is expected to incur costs in fiscal 2023 (as discussed below), this estimate assumes that $150,000 in general funds is also provided in fiscal 2023; however, funding in that year is discretionary.

DSP operates a licensing portal to handle registration requirements relating to firearms. In order to track the new registration requirements under the bill, DSP needs to revise the licensing portal at a cost of $150,000 in fiscal 2023 only. As noted above, although funding is discretionary in fiscal 2023, this analysis assumes that funding is provided in that year so that DSP can upgrade the licensing portal. This analysis further assumes that the mandated funding in subsequent years is used for other DSP registration-related functions resulting from the bill.

---

## Additional Information

**Prior Introductions:**  None.

**Designated Cross File:**  HB 425 (The Speaker)(By Request - Office of the Attorney General) and Delegate Lopez - Judiciary.

**Information Source(s):**  Maryland State Commission on Criminal Sentencing Policy; Judiciary (Administrative Office of the Courts); Office of the Public Defender; Maryland State's Attorneys' Association; Department of Public Safety and Correctional Services; Department of State Police; U.S. Department of Justice; *Baltimore Sun*; Department of Legislative Services

**Fiscal Note History:**  First Reader - February 7, 2022
fnu2/lgc                        Third Reader - March 21, 2022
                                        Revised - Amendment(s) - March 21, 2022

---

Analysis by:  Shirleen M. E. Pilgrim                Direct Inquiries to:
                                                                (410) 946-5510
                                                                (301) 970-5510

**HB 425**

# Department of Legislative Services
Maryland General Assembly
2022 Session

### FISCAL AND POLICY NOTE
**Enrolled - Revised**

| | |
|---|---|
| House Bill 425 | (The Speaker)(By Request - Office of the Attorney General) and Delegate Lopez |
| Judiciary | Judicial Proceedings |

---

## Public Safety - Untraceable Firearms

---

This bill, with specified exceptions, (1) requires the Secretary of State Police to maintain a system to register firearms imprinted with serial numbers, as specified, and (2) prohibits a person from purchasing, receiving, selling, offering to sell, or transferring an "unfinished frame or receiver" or a firearm unless imprinted with specified information. The Governor must include at least $150,000 in the annual State budget to fund registration activities conducted by the Secretary under the bill. The bill also (1) requires the Secretary to suspend or revoke a dealer's license under specified conditions relating to untraceable firearms; (2) establishes penalties for violations of specified provisions of the bill; and (3) expands the definition of a "firearm" to include an unfinished frame or receiver. The bill must be construed in a manner that is consistent with a specified proposed federal rule regarding privately made firearms. If the proposed federal rule is modified at the time of adoption, the bill must be construed in a manner that is consistent with those modifications. Provisions of the bill are severable. **The bill takes effect June 1, 2022.**

---

## Fiscal Summary

**State Effect:** No effect in FY 2022. General fund expenditures increase by at least $150,000 annually beginning in FY 2024 due to the mandated appropriation; although discretionary, this analysis assumes funding is also provided in FY 2023. Potential minimal increase in general fund revenues and expenditures due to the bill's penalty provisions. **This bill establishes a mandated appropriation beginning in FY 2024.**

| (in dollars) | FY 2023 | FY 2024 | FY 2025 | FY 2026 | FY 2027 |
|---|---|---|---|---|---|
| Revenues | $0 | $0 | $0 | $0 | $0 |
| GF Expenditure | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 |
| Net Effect | ($150,000) | ($150,000) | ($150,000) | ($150,000) | ($150,000) |

Note:() = decrease; GF = general funds; FF = federal funds; SF = special funds; - = indeterminate increase; (-) = indeterminate decrease



DEFENDANT'S
EXHIBIT

**Q**

**Local Effect:**  Potential minimal increase in local revenues and expenditures due to the bill's penalty provisions.

**Small Business Effect:**  Minimal.

---

# Analysis

**Bill Summary:**

*Untraceable Firearms*

A person is prohibited from purchasing, receiving, selling, offering to sell, or transferring an *unfinished frame or receiver* unless it is required by federal law to be, and has been, imprinted with a serial number by a federally licensed firearms manufacturer or federally licensed firearms importer in compliance with all federal laws and regulations applicable to the manufacture and import of firearms. Except as otherwise authorized, a person may not sell, offer to sell, or transfer a *firearm* unless it is imprinted with a specified serial number.

A violator of the provisions relating to required imprinting is guilty of a misdemeanor and on conviction is subject to imprisonment for up to five years and/or a fine of up to $10,000. Each violation is a separate crime.

Beginning March 1, 2023, a person may not possess a firearm unless:

- the firearm has been registered with the Secretary of State Police; and
- (1) the firearm is required by federal law to be, and has been, imprinted by a federally licensed firearms manufacturer or federally licensed firearms importer with a serial number in compliance with all federal laws and regulations applicable to the manufacture and import of firearms or (2) the firearm has been imprinted by a federally licensed firearms dealer, federal firearms manufacturer, or other federal licensee authorized to provide marking services with specified information.

The prohibition that begins March 1, 2023, does not apply to:

- possession of a firearm unless a person knew or reasonably should have known that the firearm was not imprinted with a serial number, as specified;
- possession of a firearm that does not comply with the marking requirements by a person who received the firearm through inheritance, and is not otherwise prohibited from possessing the firearm, for up to 30 days after inheriting the firearm; or

- possession of an unfinished frame or receiver by a person that made or manufactured the unfinished frame or receiver, without the use of any prefabricated parts, and who is not otherwise prohibited from possessing the unfinished frame or receiver for up to 30 days after the person made or manufactured the unfinished frame or receiver.

A violator of the prohibition that begins March 1, 2023, is guilty of a misdemeanor and on conviction is subject to imprisonment for up to two years and/or a fine of up to $10,000. Each violation is a separate crime.

A federally licensed firearms dealer or other federal licensee authorized to provide marking services who imprints a firearm under the bill's provisions must imprint the firearm in compliance with all federal laws and regulations applicable to affixing serial numbers to firearms, as specified.

The provisions relating to untraceable firearms do not apply to (1) a firearm that was manufactured before October 22, 1968, or is an antique firearm; (2) a sale, an offer to sell, a transfer, or a delivery of a firearm or an unfinished frame or receiver to, or possession of a firearm or unfinished frame or receiver by, a federally licensed firearms dealer, a federally licensed firearms manufacturer, or a federally licensed firearms importer; or (3) a transfer or surrender of a firearm or an unfinished frame or receiver to a law enforcement agency.

Nothing in the bill may be construed in a manner that abridges or otherwise limits a person's right against self-incrimination under the U.S. Constitution or the Maryland Declaration of Rights.

Registration data provided for registration of a firearm under the bill's provisions is not open to public inspection.

The Secretary of State Police may adopt regulations to carry out these provisions.

"Unfinished frame or receiver" means a forged, cast, printed, extruded, or machined body or similar article that has reached a stage in manufacture where it may readily be completed, assembled, or converted to be used as the frame or receiver of a functional firearm.

*Federal Firearms Licensed Dealers*

The Secretary of State Police must suspend a dealer's license if the licensee is charged with a crime under the bill's provisions relating to untraceable firearms. The Secretary must revoke a dealer's license if the licensee is convicted of a crime under the same provisions.

**Current Law:**  Generally, State law prohibits a person from manufacturing for distribution or sale a handgun that is not included on the handgun roster in the State. However, law

enforcement may not be aware of firearms manufactured within a person's home for personal use until the firearm is used or transferred. The federal Undetectable Firearms Act prohibits a person from manufacturing, importing, selling, shipping, delivering, possessing, transferring, or receiving any firearm that is not as detectable by a walk-through metal detection as a security exemplar containing 3.7 ounces of steel, or any firearm with major components that do not generate an accurate image before standard airport imaging technology. The federal prohibition was first enacted in 1988 and was renewed for 10 years in December 2013.

**Background:**  According to the U.S. Department of Justice, between 2016 and 2020, more than 23,000 ghost guns were recovered by law enforcement from potential crime scenes, including 325 in connection with homicides and attempted homicides. In November 2020, the *Baltimore Sun* reported that between 2016 and 2019, more than 12,000 build kits were shipped to Maryland, with total sales of the kits exceeding $1.0 million. The *Baltimore Sun* further reported that the Baltimore City Police Department recovered 126 privately made firearms in 2020 compared to 29 recovered in 2019, and that nearly one-quarter of such firearms recovered were from individuals under the age of 21.

Eight states (California, Connecticut, Hawaii, Nevada, New Jersey, New York, Rhode Island, and Washington) and the District of Columbia have enacted laws regulating privately made firearms to varying degrees. California and Connecticut have enacted laws that require privately made firearms to be registered and marked with a serial number obtained from a governmental agency within each state. Nevada and New Jersey require serialization of unfinished frames and receivers by federally licensed firearms manufacturers and importers. The District of Columbia passed legislation in 2020 to ban build kits and specifically the possession of unfinished frames and receivers and untraceable firearms.

Some cities and local jurisdictions have also started to implement laws to address privately made firearms. In August 2021, San Diego became the first city in California to prohibit the sale of unserialized frames and receivers, and San Francisco passed similar legislation shortly thereafter. In Maryland, Montgomery County passed legislation in April 2021 to restrict the access of privately made firearms to minors and in places of public assembly within the county.

**State Expenditures:**  The bill requires the Governor to include in the annual State budget an appropriation of at least $150,000 to fund registration activities conducted by the Secretary of State Police under the bill. Accordingly, general fund expenditures increase by at least $150,000 annually beginning in fiscal 2024 due to the mandated appropriation. Because the Department of State Police (DSP) is expected to incur costs in fiscal 2023 (as discussed below), this estimate assumes that $150,000 in general funds is also provided in fiscal 2023; however, funding in that year is discretionary.

DSP operates a licensing portal to handle registration requirements relating to firearms. In order to track the new registration requirements under the bill, DSP needs to revise the licensing portal at a cost of $150,000 in fiscal 2023 only. As noted above, although funding is discretionary in fiscal 2023, this analysis assumes that funding is provided in that year so that DSP can upgrade the licensing portal. This analysis further assumes that the mandated funding in subsequent years is used for other DSP registration-related functions resulting from the bill.

---

## Additional Information

**Prior Introductions:** None.

**Designated Cross File:** SB 387 (The President)(By Request - Office of the Attorney General) and Senator Lee - Judicial Proceedings.

**Information Source(s):** Maryland State Commission on Criminal Sentencing Policy; Judiciary (Administrative Office of the Courts); Office of the Public Defender; Maryland State's Attorneys' Association; Department of Public Safety and Correctional Services; Department of State Police; U.S. Department of Justice; *Baltimore Sun*; Department of Legislative Services

**Fiscal Note History:** First Reader - February 7, 2022
fnu2/lgc                                   Third Reader - March 15, 2022
                                                Enrolled - April 7, 2022
                                                      Revised - Amendment(s) - April 7, 2022

---

Analysis by:  Shirleen M. E. Pilgrim            Direct Inquiries to:
                                                            (410) 946-5510
                                                            (301) 970-5510