STAYED

# U.S. District Court
# District of Maryland (Greenbelt)
# CIVIL DOCKET FOR CASE #: 8:21-cv-01736-TDC

Maryland Shall Issue, Inc. et al v. Montgomery County, Maryland

Assigned to: Judge Theodore D. Chuang

Case in other court: Circuit Court for Montgomery County, Maryland, 485899V

Cause: 28:1441 Notice of Removal

Date Filed: 07/12/2021
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Maryland Shall Issue, Inc.**                represented by   **Mark William Pennak**
                                                              Law Offices of Mark W. Pennak
                                                              7416 Ridgewood Ave
                                                              Chevy Chase, MD 20815
                                                              301 873 3671
                                                              Fax: 301 718 9315
                                                              Email: m.pennak@me.com
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Engage Armament LLC**                      represented by   **Mark William Pennak**
                                                              (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Andrew Raymond**                           represented by   **Mark William Pennak**
                                                              (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Carlos Rabanales**                         represented by   **Mark William Pennak**
                                                              (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Brandon Ferrell**                          represented by   **Mark William Pennak**
                                                              (See above for address)
                                                              *LEAD ATTORNEY*

FILED
CLERK OF COURT
CLERK'S OFFICE
MONTGOMERY CO. MD.
2022 FEB 18 PM 3:05

**EXHIBIT
1 (Part E)**

*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Deryck Weaver**                    represented by  **Mark William Pennak**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Joshua Edgar**                     represented by  **Mark William Pennak**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**I.C.E. Firearms & Defensive**      represented by  **Mark William Pennak**
**Training, LLC**                                    (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ronald David**                     represented by  **Mark William Pennak**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Nancy David**                      represented by  **Mark William Pennak**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Montgomery County, Maryland**      represented by  **Edward Barry Lattner**
                                                     Office of the County Attorney for
                                                     Montgomery County MD
                                                     101 Monroe St Third Fl
                                                     Rockville, MD 20850-2580
                                                     12407776735
                                                     Fax: 12407776705
                                                     Email:
                                                     Edward.Lattner@MontgomeryCountyMD.gov
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

**Patricia Lisehora Kane**
Office of the Montgomery County Attorney
101 Monroe St 3rd Fl
Rockville, MD 20850
12407776743
Fax: 12407776706
Email:
patricia.kane@montgomerycountymd.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sean Charles O Hara**
Office of the County Attorney
101 Monroe Street, Third Floor
Rockville, MD 20850
240-777-6700
Fax: 240-777-6705
Email:
sean.ohara@montgomerycountymd.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Email All Attorneys
Email All Attorneys and Additional Recipients

| Date Filed | # | Docket Text |
|---|---|---|
| 07/12/2021 | 1 | NOTICE OF REMOVAL from Circuit Court for Montgomery County, Maryland, case number 485899V. ( Filing fee $ 402 receipt number 0416-9373391), filed by Montgomery County, Maryland. (Attachments: # 1 Civil Cover Sheet Civil Cover Sheet & Attachment, # 2 Attachment DE 1-State Court Complaint, # 3 Attachment DE 2-State Court Information Sheet, # 4 Attachment DE 3-State Court Scheduling Order, # 5 Attachment DE 4-State Court Notice of New Case Number, # 6 Attachment DE 5-State Court Summons, # 7 Attachment DE 6-State Court Notice of Pending Events, # 8 Attachment DE 7-State Court Plts' Emergency Motion for Ptl. Summary Judgment, # 9 Attachment DE 8-State Court Aff of Svc on Brian Frosh, # 10 Attachment DE 9-State Court Aff of Svc on Montgomery County, # 11 Attachment DE 10-State Court Notice of Hrg Date)(O Hara, Sean) (Entered: 07/12/2021) |
| 07/12/2021 | 2 | NOTICE of Appearance by Patricia Lisehora Kane on behalf of Montgomery County, Maryland (Kane, Patricia) (Entered: 07/12/2021) |
| 07/12/2021 | 3 | NOTICE of Appearance by Edward Barry Lattner on behalf of Montgomery County, Maryland (Lattner, Edward) (Entered: 07/12/2021) |
| 07/12/2021 | 4 | NOTICE of Appearance by Sean Charles O Hara on behalf of Montgomery County, Maryland (O Hara, Sean) (Entered: 07/12/2021) |

| 07/12/2021 | 5 | Local Rule 103.3 Disclosure Statement by Montgomery County, Maryland (O Hara, Sean) (Entered: 07/12/2021) |
| 07/12/2021 | 6 | Local Rule 103.5 Compliance (Attachments: # 1 Attachment Certified Copy of State Court Record)(O Hara, Sean) (Entered: 07/12/2021) |
| 07/12/2021 | 7 | STATE COURT COMPLAINT against Montgomery County, Maryland, filed by Deryck Weaver, Engage Armament LLC, Carlos Rabanales, Brandon Ferrell, Ronald David, I.C.E. Firearms & Defensive Training, LLC, Maryland Shall Issue, Inc., Nancy David, Joshua Edgar, Andrew Raymond.(heps, Deputy Clerk) (Entered: 07/13/2021) |
| 07/12/2021 | 8 | STATE COURT Plaintiff's Motion for Partial Summary Judgment by Nancy David, Ronald David, Joshua Edgar, Engage Armament LLC, Brandon Ferrell, I.C.E. Firearms & Defensive Training, LLC, Maryland Shall Issue, Inc., Carlos Rabanales, Andrew Raymond, Deryck Weaver(heps, Deputy Clerk) (Entered: 07/13/2021) |
| 07/12/2021 | | THE ABOVE DOCUMENTS (7-8) ARE COPIES OF ORIGINAL PAPERS FILED IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY. (heps, Deputy Clerk) (Entered: 07/13/2021) |
| 07/13/2021 | 9 | Standing Order Concerning Removal re 1 Notice of Removal,,, filed by Montgomery County, Maryland. Signed by Judge Theodore D. Chuang on 7/13/2021. (heps, Deputy Clerk) (Entered: 07/13/2021) |
| 07/13/2021 | 10 | RESPONSE re 9 Standing Order Concerning Removal filed by Montgomery County, Maryland.(O Hara, Sean) (Entered: 07/13/2021) |
| 07/19/2021 | 11 | CASE MANAGEMENT ORDER. Signed by Judge Theodore D. Chuang on 7/19/2021. (heps, Deputy Clerk) (Entered: 07/19/2021) |
| 07/19/2021 | 12 | PAPERLESS ORDER denying without prejudice 8 State Court Emergency Motion for Partial Summary Judgment. The Case Management Order states that "[n]o motions may be filed without first seeking a pre-motion conference with the Court." Case Management Order § II.A.1, ECF No. 11. Plaintiffs have not sought a pre-motion conference with the Court. Plaintiffs are directed to file a Notice of Intent to File a Motion pursuant to section II.A.2 of the Case Management Order by July 28, 2021. Parties are reminded that responses to the Notice of Intent are not permitted. A pre-motion conference is scheduled for August 2, 2021 at 2:00 p.m. To join the call at the scheduled time (1) Dial 1-888-557-8511. (2) Enter access code 3008173, followed by the # key. You will then be placed on hold until Chambers dials into the call, at which point you will be prompted to enter a security code. (3) When prompted, enter security code 08020200 followed by the # key. The call will be recorded, so please do not use speakerphones as they compromise sound quality. Also, we ask that parties not remain on the conference line after the Judge has left the call, to ensure that the line is free for other calls that may be on the Judges calendar. In addition to the proposed motion, the parties should be prepared to address whether they consent, pursuant to 28 U.S.C. § 636(c), to have all further proceedings before a Magistrate Judge and whether they wish to |

|  |  | participate in a mediation session with a Magistrate Judge, whether before, during, or after discovery. Parties are expected to consult with their clients and confer with each other on these issues in advance of the Pre-Motion Conference and, if possible, present joint views to the Court. Signed by Judge Theodore D. Chuang on 7/19/2021. (egms, Chambers) (Entered: 07/19/2021) |
|---|---|---|
| 07/19/2021 | 13 | Correspondence re: Notice of Intent to File Cross Motion for Summary Judgment and Motion to Dismiss (Lattner, Edward) (Entered: 07/19/2021) |
| 07/21/2021 | 14 | Request for Conference (Pennak, Mark) (Entered: 07/21/2021) |
| 07/23/2021 | 15 | Second Request for Conference (Pennak, Mark) (Entered: 07/23/2021) |
| 08/02/2021 | 16 | Case Management Conference held on 8/2/2021 before Judge Theodore D. Chuang.(Court Reporter: FTR Recording\2B) (ds2s, Deputy Clerk) (Entered: 08/02/2021) |
| 08/02/2021 | 17 | ORDER granting Plaintiffs leave to file proposed Motion to Sever and Remand. Signed by Judge Theodore D. Chuang on 8/2/2021. (jf3s, Deputy Clerk) (Entered: 08/03/2021) |
| 08/04/2021 | 18 | MOTION to Remand to State Court by Nancy David, Ronald David, Joshua Edgar, Engage Armament LLC, Brandon Ferrell, I.C.E. Firearms & Defensive Training, LLC, Maryland Shall Issue, Inc.(Pennak, Mark) (Entered: 08/04/2021) |
| 08/18/2021 | 19 | RESPONSE in Opposition re 18 MOTION to Remand to State Court *Opposition to Motion to Sever and Remand* filed by Montgomery County, Maryland. (Attachments: # 1 Text of Proposed Order Proposed Order Denying Motion to Sever and Remand)(O Hara, Sean) (Entered: 08/18/2021) |
| 08/22/2021 | 20 | REPLY to Response to Motion re 18 MOTION to Remand to State Court filed by Nancy David, Ronald David, Joshua Edgar, Engage Armament LLC, Brandon Ferrell, I.C.E. Firearms & Defensive Training, LLC, Maryland Shall Issue, Inc., Carlos Rabanales, Andrew Raymond, Deryck Weaver.(Pennak, Mark) (Entered: 08/22/2021) |
| 08/22/2021 | 21 | REPLY to Response to Motion re 18 MOTION to Remand to State Court *CORRECTED* filed by Nancy David, Ronald David, Joshua Edgar, Engage Armament LLC, Brandon Ferrell, I.C.E. Firearms & Defensive Training, LLC, Maryland Shall Issue, Inc., Carlos Rabanales, Andrew Raymond, Deryck Weaver.(Pennak, Mark) (Entered: 08/22/2021) |
| 02/07/2022 | 22 | MEMORANDUM OPINION. Signed by Judge Theodore D. Chuang on 2/7/2022. (mg3s, Deputy Clerk) (Entered: 02/08/2022) |
| 02/07/2022 | 23 | ORDER granting in part and denying in part 18 Motion to Remand to State Court; directing parties to file a Joint Status Report every 90 days to report on the progress of the state court proceeding; within 14 days of the resolution of Counts 1, 2, and 3 in the state court proceeding, the parties shall file a Joint Status Report. Signed by Judge Theodore D. Chuang on 2/7/2022. (mg3s, Deputy Clerk) (Entered: 02/08/2022) |

# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

MARYLAND SHALL ISSUE, INC.,
ENGAGE ARMAMENT, LLC,
ANDREW RAYMOND,
CARLOS RABANELES,
BRANDON FERRELL,
DERYCK WEAVER,
JOSHUA EDGAR,
I.C.E. FIREARMS & DEFENSIVE
TRAINING, LLC,
RONALD DAVID and
NANCY DAVID,

       Plaintiffs,

       v.

MONTGOMERY COUNTY, MARYLAND,

       Defendant.

Civil Action No. TDC-21-1736

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is hereby ORDERED that:

1. Plaintiffs' Motion to Sever and Remand All State Law Claims and to Hold in Abeyance, ECF No. 18, is GRANTED IN PART and DENIED IN PART.

2. Counts 1, 2, and 3 of Plaintiffs' Complaint are severed and remanded to the Circuit Court for Montgomery County, Maryland.

3. This action is STAYED, and Count 4 is held in abeyance pending the resolution of Counts 1, 2, and 3 in the state court proceeding.

2022 FEB 18  PM 3: 04
FILED
CLERK OF COURT
CLERK'S OFFICE
MONTGOMERY CO. MD.

4. The parties shall file a Joint Status Report every **90 days** to report on the progress of the state court proceeding.

5. Within **14 days** of the resolution of Counts 1, 2, and 3 in the state court proceeding, the parties shall file a Joint Status Report reporting on that resolution and requesting either that the stay be lifted or that this case be dismissed.

Date: February 7, 2022



THEODORE D. CHUANG
United States District Judge

I hereby attest and certify that the foregoing document is a full, true and correct copy of the original on file in my office and in my legal custody.

M. STAVLAS
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND

By _____ Deputy

2



# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
### OFFICE OF THE CLERK

Catherine M. Stavlas, Clerk of Court
Elizabeth B. Snowden, Chief Deputy
David E. Ciambruschini, Chief Deputy

Reply to Southern Division Address

February 8, 2022

Circuit Court for Montgomery County
50 Maryland Ave
Rockville, MD 20850

     RE:   Maryland Shall Issue, Inc. et al v. Montgomery County, Maryland
           Civil Action No. 21-cv-01736-TDC
           485899V

Dear Clerk:

     On February 7, 2022, the Honorable Theodore D. Chuang signed an order remanding the above-entitled case to your Court. Enclosed is a certified copy of the order, together with a certified copy of the docket entries. We have discontinued our previous practice of sending the state court original papers which were filed in this Court. Should you need certified copies of any papers you may contact the Deputy Clerk below.

     Kindly acknowledge receipt of the enclosed on the duplicate copy of this letter.

     Thank you for your cooperation in this matter.

                                Sincerely,

                                Catherine M. Stavlas, Clerk

               By:      M. Giron
                      Deputy Clerk

Enclosures

ACKNOWLEDGED RECEIPT THIS    DAY OF    20

Remand Letter to Court (Rev. 9/4/2001)



2022 FEB 18  PM 3: 04
FILED
CLERK OF COURT
CLERK'S OFFICE
MONTGOMERY CO. MD.

---

Northern Division • 4228 U.S. Courthouse • 101 W. Lombard Street • Baltimore, Maryland 21201 • 410-962-2600
Southern Division • 200 U.S. Courthouse • 6500 Cherrywood Lane • Greenbelt, Maryland 20770 • 301-344-0660

**Visit the U.S. District Court's Website at www.mdd.uscourts.gov**

## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | | |
|---|---|---|
| MARYLAND SHALL ISSUE, INC., *et al.* | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil No. 485899V |
| | * | |
| MONTGOMERY COUNTY, MD | * | |
| | * | |
| Defendant | * | |

## ENTRY OF APPEARANCE

Please enter the appearance of Patricia Lisehora Kane, Edward B. Lattner, Sean C. O'Hara as

counsel for Defendant, Montgomery County, Maryland, in the above-captioned case.

Respectfully submitted,

JOHN P. MARKOVS
ACTING COUNTY ATTORNEY

/s/ *Patricia Lisehora Kane*
Patricia Lisehora Kane, Chief
Litigation Division
CPF ID# 8011010189
patricia.kane@montgomerycountymd.gov

/s/ *Edward B. Lattner*
Edward B. Lattner, Chief
Government Operations Division
CPF ID# 861230000
edward.lattner@montgomerycountymd.gov

/s/ *Sean C. O'Hara*
Sean C. O'Hara
Associate County Attorney
CPF ID# 1212120337
sean.ohara@montgomerycountymd.gov

Attorneys for Defendant
101 Monroe Street, Third Floor
Rockville, Maryland 20850
(240) 777-6700

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 9th day of February 2022, a copy of the foregoing, was served through MDEC to:

Mark Pennak, Esquire
Maryland Shall Issue, Inc.
9613 Harford Road, Suite C1015
Parkville, MD 21234

/s/ *Sean C. O'Hara*
Sean C. O'Hara
Associate County Attorney

2

**IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND**

**MARYLAND SHALL ISSUE, INC.**
**9613 Harford Rd., Ste C #1015**
**Baltimore, Maryland 21234-2150**
*et al.,*
*Plaintiffs*                                        Case No. 485899-V

v.

**MONTGOMERY COUNTY**
**MARYLAND,**

*Defendant.*

### NOTICE OF APPEARANCE

Notice is hereby given of the electronic appearance through the MDEC system of the undersigned as counsel for all the plaintiffs in the above-captioned matter.

Respectfully submitted,

MARK W. PENNAK
MARYLAND SHALL ISSUE, INC.
9613 Harford Rd, Ste C #1015
Baltimore, MD 21234-21502
mpennak@marylandshallissue.org
Phone: (301) 873-3671
MD Atty No. 1905150005
*Counsel for Plaintiffs*

1

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on February 8, 2022, a copy of the foregoing Notice of Appearance was served on the following counsel for defendant Montgomery County via the MDEC e-filing system and via email:

Edward Barry Lattner      Edward.Lattner@MontgomeryCountyMD.gov

Patricia Lisehora Kane      patricia.kane@montgomerycountymd.gov

Sean Charles O Hara      sean.ohara@montgomerycountymd.gov,

Mark W. Pennak

Counsel for Planitiffs

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | | |
|---|---|---|
| MARYLAND SHALL ISSUE, INC., *et al.* | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil No. 485899V |
| | * | |
| MONTGOMERY COUNTY, MD | * | |
| | * | |
| Defendant | * | |

## NOTICE OF FILING OF NOTICE OF REMOVAL

TO:    Clerk of the Circuit Court for
       Montgomery County, Maryland
       50 Maryland Avenue
       Rockville, Maryland 20850

       Please note the removal of this action by Defendant, Montgomery County, Maryland, to the

United States District Court for the District of Maryland. A copy of the Notice of Removal is attached.

The filing of a notice of removal in the Office of the Clerk of the United States District Court for the

District of Maryland effects removal of the above-entitled action pursuant to 28 U.S.C. § 1446(d).

                                        Respectfully submitted,

                                        MARC P. HANSEN
                                        COUNTY ATTORNEY

                                        Patricia Lisehora Kane, Chief
                                        Litigation Division
                                        CPF ID# 8011010189
                                        patricia.kane@montgomerycountymd.gov

                                        Edward B. Lattner, Chief
                                        Government Operations Division
                                        CPF ID# 861230000
                                        edward.lattner@montgomerycountymd.gov

**FILED**

**JUL 1 3 2021**

Clerk of the Circuit Court
Montgomery County, Md.

**FILED BY EMAIL**

12

Sean C. O'Hara
Associate County Attorney
CPF ID# 1212120337
sean.ohara@montgomerycountymd.gov

Attorneys for Defendant
101 Monroe Street, Third Floor
Rockville, Maryland 20850
(240) 777-6700

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 12th day of July 2021, a copy of the foregoing, was electronically filed with notice to:

Mark Pennak, Esquire
Maryland Shall Issue, Inc.
9613 Harford Road, Suite C1015
Parkville, MD 21234

Sean C. O'Hara
Associate County Attorney

2

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

MARYLAND SHALL ISSUE, INC., *et al.*     *

      Plaintiffs,                              *

v.                                       *     Civil No. 8:21-cv-01736

MONTGOMERY COUNTY, MD                    *

      Defendant                             *

## NOTICE OF REMOVAL

Montgomery County, Maryland, by its undersigned counsel and pursuant to the Federal Rules of Civil Procedure and 28 U.S.C. §§ 1441 and 1446, submits this Notice of Removal and in support thereof states:

1.    Plaintiffs Maryland Shall Issue, Inc., Engage Armament, LLC, Andrew Raymond, Carlos Rabanales, Brandon Ferrell, Deryck Weaver, Joshua Edgar, Ice Firearms & Defensive Training, LLC, Ronald David, and Nancy David (collectively "Plaintiffs"), commenced a civil action in the Circuit Court for Montgomery County, Civil Case No. 485899V by filing a Complaint on or about May 28, 2021.

2.    Defendant Montgomery County, Maryland was served with the Complaint on June 10, 2021.

3.    This Court has original federal jurisdiction over this matter pursuant to 28 U.S.C. § 1331, in that Plaintiffs are alleging a violation of their rights under federal law.  Specifically, Plaintiffs allege violation of their rights under the First Amendment to the United States Constitution, the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and Plaintiffs further seek declaratory, injunctive, and monetary relief under 42 U.S.C. § 1983 and attorneys' fees under 42 U.S.C. § 1988.

4.      Copies of all process, pleadings, documents and orders which have been served upon the Defendant are attached hereto. Pursuant to Local Rule 103.5, within thirty (30) days of the filing of this Notice of Removal, Defendants will file true and legible copies of all other documents then on file in the state court, together with a certification from counsel that all filings made in the Circuit Court for Montgomery County, Civil Case No. 485899V, have been filed in the United States District Court.

5.      This Notice of Removal has been filed within thirty (30) days of the filing of the Complaint asserting federal causes of action.

6.      Montgomery County, Maryland is the sole defendant and the consent of other defendants is unnecessary.

7.      Pursuant to the requirement of 28 U.S.C. § 1446(d), counsel for Defendant shall, promptly after the filing of this Notice of Removal, give written notice to all adverse parties and shall file a copy of this Notice with the Clerk of the Circuit Court for Montgomery County.

WHEREFORE, for the foregoing reasons, Defendant, Montgomery County, Maryland in the above-captioned action requests that this action now pending in the Circuit Court for Montgomery County be removed to the United States District Court for the District of Maryland.

Respectfully submitted,

MARC P. HANSEN
COUNTY ATTORNEY

_____/s/_____
Patricia Lisehora Kane, Chief
Litigation Division
Federal Bar No. 13621
patricia.kane@montgomerycountymd.gov

/s/
Edward B. Lattner, Chief
Government Operations Division
Federal Bar No. 03871
edward.lattner@montgomerycountymd.gov


/s/
Sean C. O'Hara
Associate County Attorney
Federal Bar No. 20725
sean.ohara@montgomerycountymd.gov
Attorneys for Defendant
101 Monroe Street, Third Floor
Rockville, Maryland 20850
(240) 777-6700

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 12th day of July 2021, a copy of the foregoing, was

electronically filed with notice to:

Mark Pennak, Esquire
Maryland Shall Issue, Inc.
9613 Harford Road, Suite C1015
Parkville, MD 21234

/s/
Sean C. O'Hara
Associate County Attorney

Page 3 of 3

In the Circuit Court for Montgomery County Maryland

Maryland Shall Issue Case No. 485899V
et al.

VS

Montgomery County, MD

## REQUEST FOR CERTIFIED /EXEMPLIFIED COPY

I, the undersigned, request that the court issue ___1___ certified/exemplified
copy/copies of:  entire Court record

Signature

Print Name:  THERESA HAMPL

Address :  Ofc of the County Atty.
101 Monroe St 3rd FL

Phone NO:  240-777-6754

**RECEIVED**

JUN 25 2021

Clerk of the Circuit Court
Montgomery County, Md.



IN THE RECORDS OF THE CIRCUIT COURT
FOR MONTGOMERY COUNTY, STATE OF MARYLAND,
AMONG OTHER PROCEEDINGS
IS THE FOLLOWING, TO WIT:

# STATE OF MARYLAND

# COUNTY OF MONTGOMERY, to wit:

I HEREBY CERTIFY that the foregoing is a full, true and correct copy of
ENTIRE RECORD IN

No. 485899-V, truly taken and copied from the record of proceedings
in the Circuit Court for Montgomery County, Maryland, in the foregoing case.

NOTE: A raised seal authenticates each document herein.

In Testimony Whereof, I have hereunto subscribed my name
and affixed the seal of the Circuit Court for Montgomery
County this 25th day of June, A.D. 2021.

_Karen A. Bushell_

Karen A. Bushell
*Clerk of the Circuit Court for Montgomery County*

C1V00002 20091208



### Circuit Court for Montgomery County, Maryland
### Office of the Assignment Commissioner
50 Maryland Avenue, Room 1003
Rockville, Maryland 20850
(240) 777-9000

June 24, 2021

# Notice of Hearing Date
( 437 )

Case# 485899-V       MARYLAND SHALL ISSUE INC, ET AL vs. MONTGOMERY COUNTY MARYLAND

This is to notify you that the above entitled case has been set for the events indicated.

| Event Date | Time | Description | Length |
|---|---|---|---|
| 07/15/2021 | 10:00 AM | PARTIAL SUMMARY JUDGMENT (#7) | 30 Minutes |

This proceeding is subject to a 30 minute time limit under Maryland Rule 16-201.  If this is the first time this matter has been scheduled, it may be rescheduled by a letter of agreement within 15 days of the date of this notice.  A Motion for Postponement is required for all other requests.
**Please consult the monitors on the lobby level for your courtroom assignment.**
Handicap parking for the Montgomery County Circuit Court is located along Maryland Avenue near its intersection with Courthouse Square.

**Please direct all inquiries to the Assignment Office.**

Possession and use of cell phones, computers, other electronic devices, and cameras may be limited or prohibited in designated areas of the court facility.  The use of any camera, cell phone, or any electronic device for taking, recording, or transmitting photographs, videos, or other visual images is prohibited in the court facility at all times, unless the court expressly grants permission in a specific instance.

Addressee Checklist          (HEARING.NOTICES )  06/24/2021 00:14:09

Case# 485899-V      MARYLAND SHALL ISSUE INC, ET AL vs. MONTGOMERY COUNTY MARYLA

MONTGOMERY COUNTY MARYLAND
101 MONROE STREET
ROCKVILLE MD 20850


MARK W PENNAK, ESQ
MARYLAND SHALL ISSUE, INC.
STE C #1015
9613 HARFORD RD
PARKVILLE MD 21234

**MONTGOMERY COUNTY SHERIFF'S OFFICE**
**RECORD OF SERVICE**

**To Be Served: MONTGOMERY COUNTY MARYLAND**     **Case Number: 485899V Jrd:0001**
                                                  **CP ID: 3111558**

Address ID: 823812          Address Type BUS              **PRA:** 276
Address: **101 MONROE ST FLR 3**               **Bailiwick:** 8 - 08 Civil Section
         **ROCKVILLE, MD  20850**              **Deputy:** An Active Officer is not assigned.

Plaintiff: MARYLAND SHALL ISSUE INC

CaseType: CIVIL                                **Court Type:** CIRCUIT
County/State: Montgomery County, MD
Received Date: 06/04/2021                 **Expiration Date:** 08/01/2021

Paper Type: SUMMONS (FEE)
SUM, NEW CASE SUM, NEW CASE #, ADM NTC, SCHED ORD-TRK II, BLK CIV-NON-DOM CASE INFO,
VERIFIED COMPLAINT OF DECL & EQ RLF, DECL OF PLN D CARLIN-WEBER, A RAYMOND, C RABANALES,
B FERRELL, D WEAVER, J EDGAR, R DAVID, N DAVID, EXS A-B & CIV-NON-DOM CASE INFO

| | | | SERVICE ATTEMPTS | | |
|---|---|---|---|---|---|
| Addr ID | # | Date/Time | Attempt By | Reason | Reason Description |
| 823812 | 1 | 06/10/2021 1105 | 6279 | S | |

Deputy ID/Name: 6279          IBARRA, SANMI D - MCSO

Disposition: SERVED
Served To Name: MONTGOMERY COUNTY MARYLAND
Served To Desc: A/S REBECCA RIECK RACE: W SEX: F HGT: 5'02 WGT: 200 AGE: 50'S
              ADMIN AID

True Test Copy: _Daren M. Poplin_          EJS Entry Date: 06/15/2021

EJS Entry By: GARCIA, LARITZA

2021 JUN 17 AM 9: 31
FILED
CLERK OF COURT
CLERKS OFFICE

| Case Number: 485899V Jrd:0001 | CP ID: 3111558 | Page 1 of 1 |
|---|---|---|
| | | Print Time: 06/15/2021 1242 |

9

## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

### WRIT OF SUMMONS
(248)

Case No: **485899-V**

TO:
**MONTGOMERY COUNTY MARYLAND**
**101 MONROE STREET**
**ROCKVILLE MD 20850**

(Service Address)
**MARC P HANSEN**
**COUNTY ATTORNEY**
**MONTGOMERY COUNTY MD**
**101 MONROE STREET 3RD FLOOR**
**ROCKVILLE MARYLAND 20850**

You are hereby summoned to file a <u>written</u> response by pleading or motion in this court to the attached complaint filed by:

**MARYLAND SHALL ISSUE INC**

within **30** days after service of this summons upon you.

Witness, the Honorable Chief Judge of the Sixth Judicial Circuit of Maryland.

TO THE PERSON SUMMONED:

1. Failure to respond within the time allowed may result in a default judgment or the granting of the relief sought against you.

2. If you have been served with a Scheduling Order, your appearance is required pursuant to the Scheduling Order, regardless of the date your response is due.

3. If you have questions, you should see an attorney immediately. If you need help finding an attorney, you may contact the Bar Association of Montgomery County's Lawyer Referral Service online at www.barmont.org or by calling (301) 279-9100.

Date Issued: **06/02/2021**

'21 JUN 4 AM 9:38:40



*Karen a Bushell*

Karen A. Bushell
CLERK of the Circuit Court
Montgomery County, Maryland
50 Maryland Avenue
Rockville, MD 20850-2393

NOTE:

1. This summons is effective for service only if served within 60 days after the date it is issued.

2. Proof of service shall set out the name of the person served, the date, and the particular place and manner of service. If service is not made, please state the reason(s).

3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.

4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).

### RETURN

[  ] Served _____ on _____ at _____
          (Whom)                              (Date)                    (City/State/Country)

[  ] Summons and [  ] Show Cause Order and [  ] Complaint/Petition/Motion Served

[  ] Unserved _____    _____
             (Date)           (Reason)

_____    [  ] Sheriff
  (Signature)

**IN CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND**

| | |
|---|---|
| MARYLAND SHALL ISSUE, INC., ET AL., | Case No.: 485899-V |
| Plaintiffs, | |
| vs. | NOTICE OF SERVICE ON THE MARYLAND ATTORNEY GENERAL |
| MONTGOMERY COUNTY, MARYLAND, | |
| Defendant. | |

Pursuant to MD Code, Courts and Judicial Proceedings, § 3-405, undersigned counsel for plaintiffs certifies that on June 16, 2018, a copy of this Notice and a complete copy of the Verified Complaint with all its attachments were served on the Attorney General, *via* certified U.S. mail, by sending such copies to:

> The Honorable Brian E. Frosh
> Attorney General
> 200 St. Paul Place
> Baltimore, MD 21202

On June 16, 2021, a courtesy copy of the complaint and this Notice was also emailed to the Attorney General at oag@oag.state.md.us.

Respectfully submitted,

MARK W. PENNAK
Maryland Shall Issue, Inc.
9613 Harford Rd, Ste, C #1015
Baltimore, MD 21234-21502
mpennak@marylandshallissue.org
Phone: (301) 873-3671
MD Atty No. 1905150005

**FILED**

JUN 1 6 2021

Clerk of the Circuit Court
Montgomery County, Md.

NOTICE OF SERVICE ON THE MARYLAND ATTORNEY GENERAL - 1



1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on June 16, 2021, the foregoing NOTICE OF SERVICE ON THE

3

MARYLAND ATTORNEY GENERAL was served by hand on defendant Montgomery County

4

5

by delivering this filing by hand to:

6

7          Marc P. Hansen, Esq.
           County Attorney,
8          Montgomery County, MD
           101 Monroe Street, 3rd floor
9          Rockville, Maryland 20850

10

11

12

13

                                        MARK W. PENNAK
14                                      Maryland Shall Issue, Inc.
                                        9613 Harford Rd, Ste, C #1015
15                                      Baltimore, MD 21234-21502
                                        mpennak@marylandshallissue.org
16                                      Phone: (301) 873-3671
                                        MD Atty No. 1905150005
17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF SERVICE ON THE MARYLAND ATTORNEY GENERAL  - 2

**IN CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND**

| | |
|---|---|
| **MARYLAND SHALL ISSUE, INC., et al.,** | **Case No.: 485899-V** |
| *Plaintiffs,* | |
| | **PLAINTIFFS' EMERGENCY MOTION** |
| vs. | **FOR PARTIAL SUMMARY JUDGMENT** |
| | |
| **MONTGOMERY COUNTY, MARYLAND,** | **EXPEDITED HEARING REQUESTED** |
| *Defendant.* | |

Pursuant to MD Rule 2-311, MD Rule 2-501 and MD Rule 2-602, plaintiffs respectfully move this Court for an order granting partial summary judgment on Counts I, II, and IV of the Verified Complaint and enter declaratory and injunctive relief on those Counts on the merits. On these three Counts, there is no genuine dispute as to any material fact and plaintiffs are entitled to judgment as a matter of law. This motion is supported by the declarations of each of the plaintiffs filed with the Verified Complaint, the supplemental declarations of each of the plaintiffs attached to this Motion and a short excerpt of a pleading filed by the Department of Justice *State of California v. BATF*, No. 20-cv-6761 (N.D. Cal.). Plaintiffs request that the Court take judicial notice of that federal litigation. See Supporting Memorandum at note 2.

Pursuant to MD Code, Courts and Judicial Proceedings, § 3-409(e), plaintiffs respectfully request "a speedy hearing" on the motion and that the Court "advance it on the calendar" to be heard and decided as soon as possible, preferably prior to July 16, 2021, the effective date of the County ordinance, Bill 4-21, challenged in this case. Partial summary judgment is appropriate because Bill 4-21: (1) is not a local law within the meaning of Article XI–E, § 3 of the Maryland Constitution, as alleged in Count I of the Complaint and is thus *ultra vires*; (2) violates the Express Powers Act, MD Code, Local Government, §10-206, in that it is inconsistent with and/or

PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL SUMMARY JUDGMENT
EXPEDITED HEARING REQUESTED - 1

**FILED**

JUN 1 6 2021

Clerk of the Circuit Court
Montgomery County, Md.

1   preempted by Maryland general law, as alleged in Count II; and (3) is so vague that it violates the

2   Due Process Clause of the Fourteenth Amendment and Article 24 of the Maryland Declaration of

3   Rights, as alleged in Count IV. Plaintiffs, at this time, do not seek summary judgment on the

4   Takings claim set forth in Count III. There are no disputed issues of fact concerning Counts I, II

5   and IV and plaintiffs are entitled to the requested relief as a matter of law. Plaintiffs respectfully

6   suggest that the Court apply MD Rule 2-602 and hold that there is no just reason for delay and

7   enter final judgment granting declaratory and equitable relief on Counts I and II and final judgment

8   as to liability on Count IV.

9                                    **CONCLUSION**

10          For the foregoing reasons and for the reasons set forth in the accompanying supporting

11   memorandum of law, the motion for partial summary judgment should be granted. Plaintiffs

12   respectfully request an emergency hearing and a decision on this motion prior to July 16, 2021,

13   the effective date of Bill 4-21, or as soon thereafter as possible.

14                                          Respectfully submitted,

15

16

17                                          MARK W. PENNAK
                                            Maryland Shall Issue, Inc.
18                                          9613 Harford Rd
                                            Ste C #1015
19                                          Baltimore, MD 21234-21502
                                            mpennak@marylandshallissue.org
20                                          Phone: (301) 873-3671
                                            MD Atty No. 1905150005
21
                                            *Counsel for Plaintiffs*
22          Dated:  June 16, 2021

23
     PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL SUMMARY JUDGMENT
24   EXPEDITED HEARING REQUESTED - 2

**EXHIBITS**

1. Supplemental Declaration of Daniel Carlin Weber

2. Supplemental Declaration of Plaintiff Andrew Raymond

3. Supplemental Declaration of Plaintiff Carlos Rabanales

4. Supplemental Declaration of Plaintiff Brandon Ferrell

5. Supplemental Declaration of Plaintiff Joshua Edgar

6. Supplemental Declaration of Plaintiff Ronald David

7. Supplemental Declaration of Plaintiff Nancy David

8. Excerpts from Federal Defendants' Notice Of Motion And Motion To Dismiss Plaintiffs' Complaint For Declaratory And Injunctive Relief, filed in *State of California v. BATF*, No. 20-cv-6761 (N.D. Cal.) (Nov. 30, 2020).

IN CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | |
|---|---|
| MARYLAND SHALL ISSUE, INC., ET AL, | Case No.: 485899-V |
| Plaintiffs, | |
| vs. | SUPPLEMENTAL DECLARATION OF DANIEL CARLIN-WEBER |
| MONTGOMERY COUNTY, MARYLAND, | |
| Defendant. | |

COMES NOW, the declarant, DANIEL CARLIN-WEBER, and hereby solemnly declares under penalties of perjury and upon personal knowledge that the contents of the following declaration are true:

1. My name is DANIEL CARLIN-WEBER and I am the Chairman of the Board of Directors of MARYLAND SHALL ISSUE, INC., a named plaintiff in the above captioned matter. I execute this declaration on behalf of MARYLAND SHALL ISSUE, INC. I am an adult over the age of 18, a Maryland resident and I am fully competent to give sworn testimony in this matter.

2. I have read and otherwise reviewed the allegations of the Complaint in this matter. I hereby adopt and declare that the factual allegations in the complaint that relate or refer to MARYLAND SHALL ISSUE, INC., are true.

Dated this day of JUNE 13, 2021:

_____
DANIEL CARLIN-WEBER
Chairman of the Board of Directors, Maryland Shall
Issue, Inc.

FILED

JUN 16 2021

Clerk of the Circuit Court
Montgomery County, Md.

SUPPLEMENTAL DECLARATION OF DANIEL CARLIN-WEBER - 1

IN CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | |
|---|---|
| MARYLAND SHALL ISSUE, INC., ET AL, | Case No.: 485899-V |
|     Plaintiffs, | |
| vs. | SUPPLEMENTAL DECLARATION OF |
| MONTGOMERY COUNTY, MARYLAND, | PLAINTIFF ANDREW RAYMOND |
|     Defendant | |

COMES NOW, the declarant, ANDREW RAYMOND, and hereby solemnly declares under penalties of perjury and upon personal knowledge that the contents of the following declaration are true:

1. My name is ANDREW RAYMOND and I am a named plaintiff in the above captioned matter and the co-owner of ENGAGE ARMAMENT LLC, which is also a named plaintiff in this matter. I execute this declaration on behalf of myself and of ENGAGE ARMAMENT LLC. I am an adult over the age of 18, a Maryland resident and I am fully competent to give sworn testimony in this matter.

2. I I have read and otherwise reviewed the allegations of the Complaint in this matter. I solemnly affirm under the penalties of perjury that the contents of the complaint that relate or refer to myself and ENGAGE ARMAMENT LLC, are true.

Dated this day of JUNE 13, 2021:

ANDREW RAYMOND

**FILED**

JUN 16 2021

Clerk of the Circuit Court
Montgomery County, Md.

SUPPLEMENTAL DECLARATION OF PLAINTIFF ANDREW RAYMOND – 1

IN CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | |
|---|---|
| MARYLAND SHALL ISSUE, INC., ET AL, | Case No.: |
| Plaintiffs, | |
| vs. | SUPPLEMENTAL DECLARATION OF PLAINTIFF CARLOS RABANALES |
| MONTGOMERY COUNTY, MARYLAND, | |
| Defendant | |

COMES NOW, the declarant, CARLOS RABANALES, and hereby solemnly declares under penalties of perjury and upon personal knowledge that the contents of the following declaration are true:

　　　1. My name is CARLOS RABANALES and I am a named plaintiff in the above captioned matter and the co-owner of ENGAGE ARMAMENT LLC, which is also a named plaintiff in this matter. I am an adult over the age of 18, a Maryland resident and I am fully competent to give sworn testimony in this matter. I execute this declaration on behalf of myself and of ENGAGE ARMAMENT LLC.

　　　2. I have read and otherwise reviewed the allegations of the Complaint in this matter. I solemnly affirm under the penalties of perjury that the contents of the complaint that relate or refer to myself and ENGAGE ARMAMENT LLC, are true.

　　　Dated this day of JUNE 13, 2021.

　　　　　　　　　　　　　　　CARLOS RABANALES

**FILED**

JUN 1 6 2021

Clerk of the Circuit Court
Montgomery County, Md.

SUPPLEMENTAL DECLARATION OF PLAINTIFF CARLOS RABANALES - 1

IN CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

MARYLAND SHALL ISSUE, INC., ET AL,

    Plaintiffs,

vs.

MONTGOMERY COUNTY, MARYLAND,

    Defendant

Case No.: 485899-V

SUPPLEMENTAL DECLARATION OF
PLAINTIFF BRANDON FERRELL

COMES NOW, the declarant, BRANDON FERRELL, and hereby solemnly declares under penalties of perjury and upon personal knowledge that the contents of the following declaration are true:

    1. My name is BRANDON FERRELL and I am a named plaintiff in the above captioned matter. I am an adult over the age of 18, a Maryland resident and I am fully competent to give sworn testimony in this matter.

    2. I have read and otherwise reviewed the allegations of the Complaint in this matter. I solemnly affirm under the penalties of perjury that the contents of the complaint that relate or refer to myself are true.

    Dated this day of JUNE 13, 2021:

_____

BRANDON FERRELL

**FILED**

JUN 16 2021

Clerk of the Circuit Court
Montgomery County, Md.

SUPPLEMENTAL DECLARATION OF PLAINTIFF BRANDON FERRELL - 1

1
2
3 IN CIRCUIT COURT FOR MONTGOMERY COUNTY,
4 MARYLAND
5
6 MARYLAND SHALL ISSUE, INC., ET AL., Case No.: 485899-V
7 Plaintiffs,
8 vs.
9 MONTGOMERY COUNTY, MARYLAND, SUPPLEMENTAL DECLARATION OF
PLAINTIFF DERYCK WEAVER
10 Defendant
11
12
13 COMES NOW, the declarant, DERYCK WEAVER, and hereby
14 solemnly declares under penalties of perjury and upon personal
15 knowledge that the contents of the following declaration are
16 true:
17 1. My name is DERYCK WEAVER and I am a named plaintiff
18 in the above captioned matter. I am an adult over the age of 18, a
19 Maryland resident and I am fully competent to give sworn
20 testimony in this matter.
21 2. I have read and otherwise reviewed the allegations of the
22 Complaint in this matter. I solemnly affirm under the penalties
23 of perjury that the contents of the complaint that relate or refer
24 to myself are true.
25 Dated this day of JUNE 13, 2021:
26
27 DERYCK WEAVER
28
SUPPLEMENTAL DECLARATION OF PLAINTIFF DERYCK
WEAVER - 1

**FILED**

JUN 16 2021

Clerk of the Circuit Court
Montgomery County, Md.

1
2
3     IN CIRCUIT COURT FOR MONTGOMERY COUNTY,
4                         MARYLAND
5
6     MARYLAND SHALL ISSUE, INC., ET AL.,   Case No.: 485899-V
7     Plaintiffs,
8     vs.
9     MONTGOMERY COUNTY, MARYLAND,    SUPPLEMENTAL DECLARATION OF
                                              PLAINTIFF JOSHUA EDGAR
10    Defendant
11
12
13    COMES NOW, the declarant, JOSHUA EDGAR, and hereby
14    solemnly declares under penalties of perjury and upon personal
15    knowledge that the contents of the following declaration are
16    true:
17    1. My name is JOSHUA EDGAR and I am a named plaintiff in
18    the above captioned matter. I am an adult over the age of 18, a
19    Maryland resident and I am fully competent to give sworn
20    testimony in this matter.
21    2. I have read and otherwise reviewed the allegations of the
22    Complaint in this matter.  I solemnly affirm under the penalties
23    of perjury that the contents of the complaint that relate or refer
24    to myself are true.
25    Dated this day of JUNE 13, 2021:
26
27    JOSHUA EDGAR
28

      SUPPLEMENTAL DECLARATION OF PLAINTIFF JOSHUA
      EDGAR - 1

**FILED**

JUN 16 2021

Clerk of the Circuit Court
Montgomery County, Md.

1

2

3                    IN CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

4

5     MARYLAND SHALL ISSUE, INC., ET AL,          Case No.: 485899-V

6          Plaintiffs,

7     vs.                                          SUPPLEMENTAL DECLARATION OF
                                                   PLAINTIFF RONALD DAVID
8     MONTGOMERY COUNTY, MARYLAND,

9          Defendant

10            COMES NOW, the declarant, RONALD DAVID, and hereby solemnly declares under penalties

11    of perjury and upon personal knowledge that the contents of the following declaration are true:

12            1. My name is RONALD DAVID and I am a named plaintiff in the above captioned matter, and

13    the owner of I.C.E. FIREARMS & DEFENSIVE TRAINING, LLC, which is also a named plaintiff in this matter.  I

14    execute this declaration on behalf of myself and on behalf of I.C.E. FIREARMS & DEFENSIVE TRAINING, LLC.

15    I am an adult over the age of 18, a Maryland resident and I am fully competent to give sworn testimony in this

16    matter.

17            2. I have read and otherwise reviewed the allegations of the Complaint in this matter. I solemnly

18    affirm under the penalties of perjury that the contents of the complaint that relate or refer to myself and to I.C.E.

19    FIREARMS & DEFENSIVE TRAINING, LLC, are true.

20            Dated this day of JUNE 13, 2021:

21

22                                                 RONALD DAVID

23

24                                                          **FILED**

25                                                          JUN 1 6 2021

26                                                 Clerk of the Circuit Court
                                                   Montgomery County, Md.
27

28

      SUPPLEMENTAL DECLARATION OF PLAINTIFF RONALD DAVID - 1

IN CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

MARYLAND SHALL ISSUE, INC., ET AL,            Case No.: 485899-V

          Plaintiffs,

vs.                                           SUPPLEMENTAL DECLARATION OF
                                              PLAINTIFF NANCY DAVID
MONTGOMERY COUNTY, MARYLAND,

          Defendant

COMES NOW, the declarant, NANCY DAVID, and hereby solemnly declares under penalties of perjury and upon personal knowledge that the contents of the following declaration are true:

1. My name is NANCY DAVID and I am a named plaintiff in the above captioned matter. I am an adult over the age of 18, a Maryland resident and I am fully competent to give sworn testimony in this matter.

2. I have read and otherwise reviewed the allegations of the Complaint in this matter. I solemnly affirm under the penalties of perjury that the contents of the complaint that relate or refer to myself are true.

Dated this day of JUNE 13, 2021.

_____
NANCY DAVID

**FILED**

JUN 16 2021

Clerk of the Circuit Court
Montgomery County, Md.

SUPPLEMENTAL DECLARATION OF PLAINTIFF NANCY DAVID - 1

1   JEFFREY BOSSERT CLARK
    Acting Assistant Attorney General
2
    LESLEY FARBY
3   Assistant Branch Director

4   ERIC J. SOSKIN (PA Bar # 200663)
    Senior Trial Counsel
5   United States Department of Justice
    Civil Division
6   Federal Programs Branch

7       1100 L Street NW, Room 12002
        Washington, DC 20005
8       Telephone: (202) 353-0533
        FAX: (202) 616-8470
9       Eric.Soskin@usdoj.gov

10  Attorneys for Defendants

11              UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13               SAN FRANCISCO DIVISION

14
    STATE OF CALIFORNIA,                    )   Case No. 3:20-cv-06761-EMC
15                          et al.          )
            Plaintiffs,                     )   **FEDERAL DEFENDANTS' NOTICE OF**
16                                          )   **MOTION AND MOTION TO DISMISS**
        v.                                  )   **PLAINTIFFS' COMPLAINT FOR**
17                                          )   **DECLARATORY AND INJUNCTIVE RELIEF;**
    BUREAU OF ALCOHOL, TOBACCO,             )   **[PROPOSED] ORDER**
18  FIREARMS, and EXPLOSIVES ("ATF"),       )
                          et al.,           )   Noting Date: January 14, 2021
19                                          )   Time:  1:30 p.m.
            Defendants.                     )   Place: Courtroom 5, 17th Floor
20  _____

21

22

23

24

25

26

27

28

1   under the standard for an agency change-of-position as described in *State Farm*, 463 U.S. 56.  As to the

2   merits, ATF does not agree that its position has changed (or that its position is flawed in any other way),

3   *see infra* Part V.D.1, but the Court need not reach this issue because the statute of limitations in Section

4   2401(a) bars this claim.  Plaintiffs assert that "around 2006, ATF . . . chang[ed] course], without providing

5   any justification for the switch," and "concluded that 80% receivers with fire-control cavity area[s] [that

6   are] completely solid and unmachined do not qualify as firearms under the GCA."  Compl. ¶ 66; *see id.*

7   ¶¶ 136-37 (challenging "post-2006 approach").  If the Court credits Plaintiffs' theory, nearly fifteen years

8   have passed since the agency established this purported policy, and thus, the allegation "plainly cannot

9   provide the foundation for an APA claim, because it occurred . . . years before" Plaintiffs filed their claims.

10  *Hage*, 810 F.3d 720.

11          **C.  Plaintiffs' Claims Should Be Dismissed Because ATF's Interpretation Of The**
               **Statute And Classification Letters Satisfy The Standards Of The APA.**

12          Congress has defined "firearm" with specificity as, *inter alia*, "(A) any weapon . . . which will or

13  is designed to or may readily be converted to expel a projectile by the action of an explosive," or "(B) the

14  frame or receiver of any such weapon."  In doing so, Congress changed the prior definition to explicitly

15  exclude "'any part or parts' of a firearm," other than a receiver.  *See* S. Rep. 89-1866 at 14; S. Rep. 90-

16  1097.  A receiver blank may not "readily be converted to expel a projectile by the action of an explosive,"

17  is not "designed to . . . expel a projectile" in and of itself, and is not itself a "receiver."  It is therefore not

18  a "firearm" within the meaning of the statute.

19          **1.  The Statute Unambiguously Excludes Receiver Blanks From Subparagraph (A)**
               **Of The Statutory Definition Of A Firearm.**

20

21          "When confronted with an argument that an agency's interpretation of a statute that it administers

22  is wrong, we employ the familiar *Chevron* two-step test."  *City and County of San Francisco v. USCIS*,

23  944 F.3d 773, 790 (9th Cir. 2019).  "When a court reviews an agency's construction of the statute which

24  it administers," the first question is "whether Congress has directly spoken" to the interpretive issue at

25  hand.  *Chevron, USA v. NRDC*, 467 U.S. 837, 842 (1984).  "If the intent of Congress is clear, that is the

26  end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed

27  intent of Congress."  *Id.* at 842-43.  "[I]f the statute is silent or ambiguous . . ., the question . . . is whether

28  the agency's answer is based on a permissible construction of the statute."  *Id.* at 843.  At this step, the

1   agency's interpretation is "entitled to respect based on [ATF's] specialized expertise," *P.W. Arms, Inc. v.*

2   *United States*, 2016 WL 9526687 at *6 (W.D. Wash. 2016), as well as "whether the rationale given for

3   [ATF's] decision was persuasive." *Springfield, Inc. v. Buckles*, 116 F. Supp. 2d 85, 89 (D.D.C. 2000).

4        A statutory term bears "its commonly understood meaning at the time [Congress adopted the term],

5   as evidenced by contemporary sources" to that adoption. *S.F.*, 944 F.3d at 793. Courts and agencies carry

6   out this analysis particularly "with reference to its dictionary definition at the time the statute was

7   enacted." *United States v. Carona*, 660 F.3d 360, 367 (9th Cir. 2011); *see S.F.*, 944 F.3d at 793. The

8   statutory definition has two key terms, the first of which, "convert," means to "change from one form or

9   use to another." Webster's New World Dictionary of the American Language 311 (2d ed. 1970)

10   ("Webster's 1970"). There appears to be no dispute that a receiver blank must be "change[d] from one

11   form . . . to another" before it can "expel a projectile by the force of an explosive." 18 U.S.C. § 921(a)(3).

12        The plain meaning of the term "readily" in 1968 demonstrates that a receiver blank may not

13   "readily be converted" to expel a projectile by the force of an explosive. Dictionary definitions are

14   virtually unanimous in the definition of the word. "Readily" means something that can be done "without

15   delay" and "quickly," or "without difficulty." READILY, Webster's 1970 at 1182; *see also* READILY,

16   Funk & Wagnall's Standard College Dictionary 1121 (1973) ("In a ready manner, promptly, easily").

17   This definition is consistent with that found in a major unabridged dictionary issued in 1966, the same

18   year the new definition appeared in proposed amendments to the FFA: "promptly; quickly; easily."

19   READILY, Random House Dictionary of the English Language, Unabridged 1195 (1966). Although

20   leading legal dictionaries of the time do not separately define "readily," one such source defined "readily

21   accessible" as "available for immediate use," suggesting that the word "readily" did not bear a different

22   legal meaning than in ordinary usage. Ballentine's Law Dictionary 1058 (3d ed. 1969).[13]

23        A receiver blank cannot "readily" be "converted to expel a projectile by the action of an explosive"

24   within the meaning of these definitions. An unfinished receiver that has not yet had "machining of any

25   kind performed in the area of the trigger/hammer (fire-control) recess (or cavity)," *see* ATF Firearms

26

---

27   [13] The meaning of "readily" remained stable over time. The thirty-year-old, but then-current, version of
the Oxford English Dictionary ("OED") defined "readily" as "[p]romptly, in respect of the time of action;
28   quickly, without delay; also, without difficulty, with ease or facility." READILY, 2., 8 OED 195 (1933)
(1978 printing). Two hundred years earlier, Samuel Johnson defined "readily" likewise, as "Expeditely,
with little hinderance or delay." Johnson, A Dictionary of the English Language (1755).

1  Technology Branch Technical Bulletin 14-01 ("Bulletin 14-01"), filed in *Calif. Rifle and Pistol Ass'n v.*

2  *ATF*, Case No. 1:14-cv-01211, ECF No. 24 at 285 (E.D. Cal. Jan. 9, 2015),[14] requires that numerous steps

3  be performed simply to yield a receiver, that then in turn must be assembled with other parts into a device

4  that can expel a projectile by the action of an explosive.  These milling and metalworking steps—each of

5  which require skills, tools, and time—include: 1) "milling out of fire-control cavity"; 2) "drilling of

6  selector-lever hole"; 3) "cutting of trigger slot"; 4) "drilling of trigger pin hole; and 5) "drilling of hammer

7  pin hole."  Compl. Ex. 9.  Importantly, ATF will treat any "indexing"—the inclusion, in the receiver blank,

8  of visual or physical indicators regarding the two-dimensional or three-dimensional parameters of the

9  machining that must be conducted—as rendering the receiver blank a firearm.  *See* Compl. Ex. 12; Ex.

10  13; Shawn J. Nelson, *Unfinished Lower Receivers*, 63 U.S. Attorney's Bulletin No. 6 at 44-49 (Nov. 2015)

11  ("Nelson, *Unfinished Receivers*"), *available at*: https://go.usa.gov/x7pP3.  This prevents the makers of

12  receiver blanks from annotating the blank to instruct the purchaser as to the precise measurements needed,

13  in three dimensions, to "excavate the fire control cavity and drill the holes for the selector pin, the trigger

14  pin, and the hammer pin."  Nelson, *Unfinished Receivers*, at 47.  The need to conduct these machining

15  steps from scratch, without indexing, and "carefully" means a working gun cannot be produced "without

16  difficulty."  *Id.*  And the work to excavate the cavities and drill holes in a solid, unmachined substrate

17  requires care rather than speed to avoid doing so raggedly or in the wrong area.  *See id.*  Therefore, the

18  receiver cannot be completed "without delay," even leaving aside the further assembly with many other

19  parts needed to have a weapon that can expel a bullet by explosive action.  A receiver blank therefore may

20  not "readily be converted" into a firearm.[15]

21      Judicial constructions of the statute contemporaneous to 1968 reinforce the conclusion that

22  Congress has "directly spoken to the issue" of whether a receiver blank is a firearm.  *Chevron*, 467 U.S.

23  842.  "For example, shortly after Congress adopted the definition of "firearm," the Second Circuit rejected

24

---

25  [14] The Court may take judicial notice of this document, a guide that assists ATF Special Agents and others
    in analyzing receiver blanks, as a filed court record.  *See Rupert*, 68 F. Supp. 3d at 1154.

26  [15] Nor is a receiver blank "designed to . . . expel a projectile by the action of an explosive." 18 U.S.C.
    921(a)(3)(A).  To the contrary, it is "designed to" be a receiver, which, although a key component of a

27  firearm that expels a projectile through explosive action, is not itself the firearm.  A receiver itself may
    not permissibly be interpreted to satisfy subparagraph (A) of the statutory definition of "firearm" because

28  that would "render an entire subparagraph meaningless," *i.e.*, subsection (B), Congress's specific inclusion
    of "receiver" as an alternative meaning of "firearm."  *Nat'l Ass'n of Mfrs. v. DoD*, 138 S. Ct. 617, 632
    (2018); *see Gorospe v. C.I.R.*, 451 F.3d 966, 970 (9th Cir. 2006) (applying canon of surplusage).

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2021, the foregoing **PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED** and **MEMORANDUM IN SUPPORT** of that motion, was served by hand on defendant Montgomery County by delivering a copy of these filings by hand to:

Marc P. Hansen, Esq.
County Attorney,
Montgomery County, MD
101 Monroe Street, 3rd floor
Rockville, Maryland 20850

MARK W. PENNAK
Maryland Shall Issue, Inc.
9613 Harford Rd, Ste, C #1015
Baltimore, MD 21234-21502
mpennak@marylandshallissue.org
Phone: (301) 873-3671

MD Atty No. 1905150005

Dated: June 16, 2021

IN CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

**MARYLAND SHALL ISSUE, INC., et al.,**     |     Case No.: 485899-V

*Plaintiffs,*

vs.

**MONTGOMERY COUNTY, MARYLAND,**

*Defendant.*

---

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED

MARK W. PENNAK

Maryland Shall Issue, Inc.

9613 Harford Rd

Ste C #1015

Baltimore, MD 21234-21502

mpennak@marylandshallissue.org

Phone: (301) 873-3671

MD Atty No. 1905150005

*Counsel for Plaintiffs*

**FILED**

JUN 1 6 2021

Clerk of the Circuit Court
Montgomery County, Md.

## TABLE OF CONTENTS

STATEMENT OF THE CASE................................................................................................ 1

INTRODUCTION. ........................................................................................................... 1

II.   STATEMENT OF FACTS. ..................................................................................... 2

III. BILL 4-21. ................................................................................................................ 4

ARGUMENT

 I. SUMMARY JUDGMENT STANDARDS. ............................................................ 4

 II. SO CALLED "GHOST GUNS," A PRIMER. ....................................................... 5

 III. BILL 4-21 IS CONTRARY TO THE EXPRESS POWERS ACT ........................ 7

    A.  Bill 4-21 Is Expressly Preempted By Section 4-209(a). ................................. 9

    B.  Bill 4-21 Is Expressly And Impliedly Preempted Under Other Law. ........... 14

    1. Express Preemption. ..................................................................................... 14

    2. Implied preemption ...................................................................................... 19

    C.  Bill 4-21 Is "Inconsistent" With Other Maryland Statutes. ......................... 21

    D.  Bill 4-21's Regulation Of Minors Conflicts With
       State Law And Is Unconstitutionally Overbroad.......................................... 26

IV.  BILL 4-21 IS NOT A "LOCAL LAW" AND THUS VIOLATES
     ARTICLE XI-A OF THE MARYLAND CONSTITUTION.................................. 31

V.  BILL 4-21 IS SO VAGUE THAT IT VIOLATES DUE PROCESS. .................... 36

  A.  The Due Process Clause of the Fourteenth Amendment And Article 24
     Of the Maryland Declaration of Rights Preclude Enactment Or  Enforcement
     Of Vague Penal Statutes. .............................................................................. 36

  B.  Bill 4-21 Is Unconstitutionally Vague. ........................................................ 38

VI.  PLAINTIFFS HAVE STANDING TO OBTAIN THE RELIEF REQUESTED ................. 46

CONCLUSION.................................................................................................................. 51

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Cases:**

*Allied Vending v. Bowie*, 332 Md. 279, 631 A.2d 77 (1993)......................................................... 19

*Altadis U.S.A., Inc. v. Prince George's County*, 431 Md. 307, 65 A.3d 118 (2013).................... 19

*Ashton v. Brown*, 339 Md. 70, 660 A.2d 447 (1995 ................................................................. 38, 45

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979); ........................................... 46

*Beardsley v. Webb*, 30 F.3d 524 (4th Cir. 1994)......................................................................... 49

*Berry v. Queen*, 469 Md. 674, 233 A.3d 42 (2020) ..................................................................... 13

*Blue v. Prince George's County*, 434 Md. 681, 76 A.3d 1129 (2013)......................................... 13

*Boulden v. Mayor and Com'rs of Town of Elkton*, 311 Md. 411, 535 A.2d 477 (1988)................. 8

*Bowers v. State*, 283 Md. 115, 389 A.2d 341 (1978)). ................................................................ 38

*Caetano v. Massachusetts*, 577 U.S. 411 (2016) ........................................................................ 22

*Christ by Christ v. Md. Dept. of Nat. Res.*, 335 Md. 427, 644 A.2d 34 (1994) ........................... 48

*Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 162 (2012) ....................................... 10

*City of Baltimore v. Sitnick*, 254 Md. 303, 255 A.2d 376 (1969) .................................................. 8

*City of Chicago v. Morales*, 527 U.S. 41 (1999) .................................................................... 38, 39

*City of Los Angeles v. Patel*, 576 U.S. 409 (2015) ..................................................................... 39

*Cole v. Secretary of State*, 249 Md. 425, 240 A.2d 272 (1968)................................................... 31

*Cremins v. County Com'rs of Washington County*, 164 Md.App. 426, 883 A.2d 966 (2005)..... 15

*CSX Transp., Inc. v. Alabama Dept. of Revenue*, 562 U.S. 277 (2011)....................................... 14

*Dasch v. Jackson*, 170 Md. 251, 183 A. 534 (1936)............................................................... 31, 35

*Defense Distributed v. Dept. of State*, 121 F.Supp.3d 680 (W.D. Tex. 2015), *aff'd.*,
838 F.3d 451 (5th Cir. 2016), *cert. denied*, 138 S.Ct. 638 (2018)............................................... 23

*Department of Natural Resources v. France*, 277 Md. 432, 357 A.2d 78 (1976)........................ 15

*Department of Public Safety and Correctional Services v. Beard,*

142 Md.App. 283, 790 A.2d 57 (2002).................................................................................. 15

*District of Columbia v. Heller,* 554 U.S. 570 (2008),.............................................................. 22, 33

*Dombrowski v. Pfister,* 380 U.S. 479 (1965). ...................................................................... 47

*El Bey v. Moorish Science Temple of America, Inc.,* 362 Md. 333, 765 A.2d 132 (2001)........... 48

*Frase v. Barnhart,* 379 Md. 100, 840 A.2d 114 (2003)............................................................ 28

*Fraternal Order of Police v. Montgomery Cty.,* 446 Md. 490, 132 A.3d 311 (2016) ................. 46

*Galloway v. State,* 365 Md. 599, 781 A.2d 851 (2001) ........................................................ *passim*

*Giant of Md. v. State's Attorney,* 274 Md. 158, 334 A.2d 107 (1975)........................................ 14

*Giovani Carandola, Ltd. v. Fox,* 470 F.3d 1074 (4th Cir. 2006)................................................ 36

*Government Employees Ins. Co. and GEICO v. Insurance Com'r.,*

332 Md. 124, 630 A.2d 713 (1993) .................................................................................... 18

*Grayned v. City of Rockford,* 408 U.S. 104, (1972) ............................................................ 36, 45

*Grosvenor v. Supervisor of Assessments of Montgomery Co.,*

271 Md. 232, 315 A.2d 758 (1974) .................................................................................... 12

*Halliday v. Sturm, Ruger & Co., Inc.,* 368 Md. 186, 792 A.2d 1145 (2002); ............................. 20

*In Re Leroy T.,* 285 Md. 508, 403 A.2d 1226 (1979) ......................................................... 38, 45

*In re Wallace W.,* 333 Md. 186, 634 A.2d 53 (1993) ............................................................ 14

*Johnson v. United States,* 576 U.S. 591 (2015) ................................................................... 37

*Johnson v. Wright,* 92 Md.App. 179, 607 A.2d 103 (1992) ...................................................... 50

*Kolender v. Lawson,* 461 U.S. 352 (1983)........................................................................... 36

*Koshko v. Haining,* 398 Md. 404, 921 A.2d 171 (2007)................................................... 23, 28, 29

*Legend Night Club v. Miller,* 637 F.3d 291 (4th Cir. 2011) ..................................................... 49

*Lovell Land, Inc. v. State Highway Admin,* 408 Md. 242, 969 A.2d 284 (2009) ......................... 48

iii

*Maher v. Gagne*, 448 U.S. 122 (1980) ........................................................................... 50

*Maryland Green Party v. State Board of Elections*,

165 Md.App. 113, 884 A.2d 789 (2005) ...................................................................... 50

*Maryland–Nat'l Capital Park and Planning Comm'n v. Washington Nat'l Arena*,

282 Md. 588, 386 A.2d 1216 (1978) ........................................................................... 48

*McDonald v. Chicago*, 561 U.S. 742 (2010). .................................................... 22, 33, 38

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) ......................................... 47

*Montgomery County v. Atlantic Guns, Inc.*, 302 Md. 540, 489 A.2d 1114 (1985). .............. 16, 25

*Mora v. City of Gaithersburg*, 462 F.Supp.2d 675 (2006), *modified on other grounds*,

519 F.3d 216 (4th Cir. 2008). ................................................................................. 9, 32

*Moore v. State*, 84 Md.App. 165, 578 A.2d 304 (1990 ............................................... 20

*NYSRPA v. Corlett*, --- S.Ct. ----, 2021 WL 1602643 (April 26, 2021) ........................ 39

*Okwa v. Harper*, 360 Md. 161, 757 A.2d 118 (2000) .................................................... 4

*Osterweil v. Bartlett*, 92 F.Supp 3d 14 (N.D.N.Y. 2015) ............................................. 50

*Pizza di Joey, LLC v. Mayor of Baltimore*, 470 Md. 308, 235 A.3d 873 (2020) ........................... 47

*Post v. Bregman*, 349 Md. 142, 707 A.2d 806 (1998) .................................................. 48

*Prince George's County v. Fitzhugh*, 308 Md. 384, 519 A.2d 1285 (1987) ................................ 18

*Ramirez v. Commonwealth*, 479 Mass. 331 (2017) ..................................................... 22

*Rehaif v. United States*, 139 S.Ct. 2191 (2019) ......................................................... 39

*Samantar v. Yousuf*, 560 U.S. 305 (2010) .................................................................. 11

*Sessions v. Dimaya*, 138 S.Ct. 1204 (2018) ...................................................... 16, 36, 37

*Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*,

968 F.3d 738 (9th Cir. 2020). ................................................................................... 46

*Smith v. Wade*, 461 U.S. 30 (1983), ......................................................................... 49

iv

*Staples v. United States*, 511 U.S. 600 (1994) ................................................................ 39

*State v. 158 Gaming Devices*, 304 Md. 404, 499 A.2d 940 (1985). ............................................ 14

*State v. Sinclair*, 274 Md. 646, 337 A.2d 703 (1975). .................................................... 14

*Steimel v. Board*, 278 Md. 1, 357 A.2d 386, 388 (1976). ................................ 31, 32, 35

*Talbot Cty. v. Skipper*, 329 Md. 481, 620 A.2d 880 (1993) ........................................... 8

*Troxel v. Granville*, 530 U.S. 57 (2000) ........................................................................ 28

*United States v. Davis*, 139 S. Ct. 2319 (2019). ................................................... 36, 45

*United States v. Grace*, 461 U.S. 171 (1983) ................................................................ 12

*United States v. Stevens*, 559 U.S. 460 (2010), ........................................................... 37

*Uzuegbunam v. Preczewski*, 141 S.Ct. 792 (2021). ....................................................... 49

*Voters Organized for the Integrity of City Elections v. Baltimore City Elections Bd.*,

451 Md. 377, 152 A.3d 827 (2017). ....................................................................... 46, 47

*Welsh v. Boy Scouts of America*, 993 F.2d 1267 (7th Cir.),

*cert. denied*, 510 U.S. 1012 (1993) ............................................................................. 14

*Wheelabrator Baltimore, L.P. v. Mayor and City Council of Baltimore*,

449 F.Supp.3d 549, 560 (D. Md. 2020) ...................................................................... 8

*Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293 (11th Cir. 2017) (en banc). ............ 37

**Statutes and Constitutions:**

18 U.S.C. § 921(a)(3), ................................................................................................. 5

18 U.S.C. § 923 ......................................................................................................... 19

18 U.S.C. § 923(i). ...................................................................................................... 5

1972 Sessions Laws of Maryland, ch. 13 ................................................................... 16

1988 Maryland Laws, ch. 533 ..................................................................................... 20

2003 Maryland Laws, ch. 5 ......................................................................................... 18

2013 Maryland Laws ch. 427 .................................................................................. 20

2021 Maryland Laws, ch. 35 ............................................................................ 18, 21

Article 24 of the Maryland Declaration of Rights .......................................... 2, 36, 37

Article XI-A, Maryland Constitution ...................................................................... 31

Article XI–E, Maryland Constitution. ............................................................... 1, 31

California Penal Code §§ 29180-29184 ................................................................. 35

Due Process Clause of the Fourteenth Amendment ......................................... *passim*

MD Code, Courts and Judicial Proceedings, § 3-402 ............................................. 48

MD Code, Courts and Judicial Proceedings, § 3-409 ............................................. 45

MD Code, Criminal Law, § 4-104(b)(1) ........................................................... 27, 29

MD Code, Criminal Law, § 4-203(b)(5) ................................................................ 24

MD Code, Criminal Law, § 4-203(b)(6) ........................................................... 22, 23

MD Code, Criminal Law, § 4-203(b)(7) ................................................................ 24

MD Code, Criminal Law, § 4-209 ................................................................. *passim*

MD Code, Criminal Law, § 4-303 ......................................................................... 20

MD Code, Local Government, §10-206 ........................................................... 2, 7, 8

MD Code Nat. Resources §10-301.1 ..................................................................... 27

MD Code, Public Safety, § 5-101(h)(1) ................................................................... 5

MD Code, Public Safety, § 5-101(r) ...................................................................... 15

MD Code, Public Safety, § 5-104 ............................................................... 15, 18, 19

MD Code, Public Safety, § 5-106 ......................................................................... 19

MD Code, Public Safety, § 5-107 ......................................................................... 19

MD Code, Public Safety, § 5-108 ......................................................................... 19

MD Code, Public Safety, § 5-111 ......................................................................... 20

vi

MD Code, Public Safety, § 5-117 .................................................................................. 20

MD Code, Public Safety, § 5-118 .................................................................................. 20

MD Code, Public Safety, § 5-120 .................................................................................. 20

MD Code, Public Safety, § 5-123 .................................................................................. 20

MD Code, Public Safety, § 5-124 .................................................................................. 20

MD Code, Public Safety, § 5-125 .................................................................................. 20

MD Code, Public Safety, § 5-128 .................................................................................. 20

MD Code, Public Safety, § 5-129 .................................................................................. 20

MD Code, Public Safety, § 5-133(a) ........................................................................ 15, 18

MD Code, Public Safety, § 5-133(d)(2)(i) ............................................................... 26, 29

MD Code, Public Safety, § 5-134(a) .............................................................................. 15

MD Code, Public Safety, § 5-201 .................................................................................. 21

MD Code, Public Safety, § 5-204.1 ............................................................................... 21

MD Code, Public Safety, § 5-207 ....................................................................... 17, 18, 21

MD Code, Public Safety, § 5-404 .................................................................................. 20

MD Code, Public Safety, §§ 5-201, 204.1, and 5-207 .................................................. 21

**Other Authorities:**

67 Op.Att'y.Gen. 316, 319-20 (1982) ........................................................................... 17

76 Op. Att'y 240, 247 (1991) ......................................................................................... 28

Charles Winthrop Sawyer, FIREARMS IN AMERICAN HISTORY 145 (1910). ..................... 34

Journal of the Maryland Convention July 26 – August 14, 1775 .................................. 34

Mark A. Tallman, GHOST GUNS, Hobbyists, Hackers, and the

Homemade Weapons Revolution, chapter 2 (2020) ...................................................... 34

**Regulations:**

27 C.F.R. § 478.11 ................................................................................................................ 5

27 C.F.R. § 479.102 .............................................................................................................. 5

86 Fed. Reg. 27720-01, 27730, 2021 WL 2012830 (May 21, 2021)................................. 6

COMAR, §§ 29.03.01.42-.57.............................................................................................. 20

**IN CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND**

| | |
|---|---|
| **MARYLAND SHALL ISSUE, INC., et al.,**<br><br>*Plaintiffs,*<br><br>vs.<br><br>**MONTGOMERY COUNTY, MARYLAND,**<br><br>*Defendant.* | **Case No.: 485899-V**<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED** |

Pursuant to Rule 2-311, plaintiffs respectfully submit this memorandum in support of plaintiffs' emergency motion for partial summary judgment on Counts I, II and IV of the Complaint. Plaintiffs request that this Court grant declaratory and equitable relief on these Counts, enjoining defendant, Montgomery County ("County"), from enforcing Bill 4-21, the legality of which is challenged in the Verified Complaint filed by plaintiffs on May 28, 2021. For the reasons set forth below, plaintiffs' motion should be granted.

**STATEMENT OF THE CASE**

**I.    INTRODUCTION.**

On April 16, 2021, the County signed into law Bill 4-21, a copy of which is attached to the Verified Complaint as Exhibit A. Bill 4-21 becomes effective on July 16, 2021. Count I of the Verified Complaint alleges that through the enactment of County ordinance 4-21, the County has exceeded its powers and jurisdiction to criminally regulate the possession and transfer of lawfully owned firearms in a way that is in direct conflict with Article XI–E, § 3 of the Maryland Constitution. Count II of the Verified Complaint alleges that Bill 4-21 is inconsistent with multiple existing Maryland statutes, in violation of Maryland's Express Powers Act, MD Code, Local

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 1

FILED

JUN 1 6 2021

Clerk of the Circuit Court
Montgomery County, Md.

1   Government, §10-206(a),(b). Count III of the Verified Complaint alleges that the restrictions

2   enacted by Bill 4-21 violate the Maryland Takings Clause, Article III § 40, and the Due Process

3   Clause of Article 24 of the Maryland Declaration of Rights by depriving plaintiffs of their vested

4   property rights in the personal property regulated by Bill 4-21. Count IV alleges that the hopelessly

5   vague language adopted by Bill 4-21 violates the Due Process Clause of the Fourteenth

6   Amendment and the Due Process Clause of Article 24 of the Maryland Declaration of Rights.

7   Plaintiffs seek declaratory and injunctive relief on their State Constitutional and statutory law

8   claims. Plaintiffs seek declaratory and equitable relief as well as compensatory damages, nominal

9   damages, and punitive damages under 42 U.S.C. 1983, under Count IV, their federal constitutional

10  claim. In this motion, plaintiffs seek summary judgment awarding declaratory and injunctive relief

11  on Counts I, II, and IV, leaving the Takings Claims of Count III, damages under Count IV and the

12  award of attorney's fees under 42 U.S.C. §1983, to further proceedings in this Court. See Part VI.

13  *infra.*

14  **II.      STATEMENT OF FACTS.**

15          The plaintiffs in this matter are Maryland Shall Issue, Inc. ("MSI"), two Montgomery

16  County businesses, ENGAGE ARMAMENT LLC ("Engage") and I.C.E. FIREARMS &

17  DEFENSIVE TRAINING, LLC ("ICE Firearms"). Engage is a Type I, Type VII, and Type X

18  Federal Firearms Licensee ("FFL") and is thus a federally licensed seller and manufacturer of

19  firearms and explosive devices. See Complaint ¶ 26; https://www.atf.gov/resource-center/types-

20  federal-firearms-licenses-ffls (listing the types of FFLs). Engage is also a registered Maryland

21  Firearms Dealer. (Id.). ICE Firearms provides firearm training to individuals with handguns, rifles

22  and shotguns. (Id. ¶ 32). The named plaintiffs also include the respective owners of these

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 2

1   businesses, two supervisory employees of Engage, a contractor at Engage, and the spouse of the

2   owner of ICE Firearms. With the exception of plaintiff Carlos Rabanales, who lives in Frederick

3   Maryland and commutes to work at Engage, all the individual plaintiffs are residents of

4   Montgomery County. These businesses and individuals are directly regulated by Bill 4-21 and are

5   all aggrieved by the enactment of Bill 4-21. Complaint ¶¶ 24-34. Attached to the Verified

6   Complaint are the sworn verification statements of each of the individual plaintiffs and the

7   authorized representatives of the corporate plaintiffs. The supplemental declarations of each of the

8   plaintiffs are attached to the Motion. The factual allegations concerning each of these plaintiffs

9   may thus be taken as evidence for purposes of this Motion for Summary Judgment.

10          All the individual plaintiffs are also members of MSI. MSI is a Section 501(c)(4), all-

11   volunteer, non-partisan, voluntary membership organization with approximately 2000 members

12   state-wide. Complaint ¶¶ 24-25. MSI is dedicated to the preservation and advancement of gun

13   owners' rights in Maryland. It seeks to educate the community about the right of self-protection,

14   the safe handling of firearms, and the responsibility that goes with carrying a firearm in public.

15   MSI has one or more members who live outside of Montgomery County, but who travel to and/or

16   work within Montgomery County. (Id.). One such member is plaintiff Carlos Rabanales, who lives

17   in Frederick County, Maryland. Complaint ¶ 28. Among the membership of MSI are "qualified

18   instructors" who engage in firearms training, including firearms instruction of minors. Plaintiffs

19   Ronald and Nancy David are such qualified instructors. Complaint ¶¶ 33, 34. MSI filed comments

20   in opposition to Bill 4-21, when it was initially proposed in February of 2021 and MSI and its

21   members are aggrieved by the enactment of Bill 4-21 into law. Complaint ¶ 25 and Exh.B to the

22   Complaint.

23

     MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
24   SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 3

## III.    BILL 4-21.

Bill 4-21 embodies Montgomery County's latest attempt to regulate firearms. As detailed in Complaint (¶¶ 4-7), Bill 4-21 extensively amends the County's "Weapons" ordinance County Code Section 57, to regulate the possession, sale, transfer and transport of firearms, including, but not limited to, so-called "ghost guns." The manner in which Bill 4-21 does so is detailed in the Complaint. Id. ¶¶ 4-7. The legal framework of federal and State statutory law in which Bill 4-21 was enacted is likewise detailed in the Complaint. Id. ¶¶ 8-19. The Maryland Constitutional provisions and State statutory and preemption provisions of Maryland law are set forth in the Complaint. Id. ¶¶ 20-23. These provisions of the Complaint are incorporated herein by reference.

## ARGUMENT

Plaintiffs are entitled to partial summary judgment on Counts I, II and IV of the Verified Complaint. The material facts are established by the declarations of each of the plaintiffs and are attached to the Complaint and those basic facts cannot be reasonably disputed. On those facts, plaintiffs are entitled to summary judgment as a matter of law on each of these Counts, as the illegality of the County's actions on each Count appear on the face of the Complaint.

## I.    SUMMARY JUDGMENT STANDARDS.

Plaintiffs seek partial summary judgment under Rule 2-501 on Counts I, II and IV. The relevant material facts are established by the declaration of each of the plaintiffs attached to the Verified Complaint and cannot be reasonably disputed. Plaintiffs are entitled to summary judgment on each of these Counts as a matter of law. See, e.g., *Okwa v. Harper*, 360 Md. 161, 178, 757 A.2d 118 (2000) (summary judgment "is used to dispose of cases when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law").

  
## II.   SO CALLED "GHOST GUNS," A PRIMER.

Bill 4-21 purports to address so-called "ghost guns," which are defined by Bill 4-21 as a "a firearm, including an unfinished frame or receiver, that lacks a unique serial number engraved or cased in metal alloy on the frame or receiver by a licensed manufacturer, maker or importer under federal law or markings in accordance with 27 C.F.R. § 479.102." In other words, the term "ghost gun" is merely a pejorative, scary name for firearms that are lawfully manufactured by an individual for personal use and thus lack a serial number on the receiver that federally licensed and regulated manufacturers would otherwise engrave pursuant to 18 U.S.C. § 923(i). Such firearms built for personal use have been perfectly legal under federal and Maryland law for the entire history of the United States and remain lawful to this day.

Under Federal law, a "firearm" is defined by 18 U.S.C. § 921(a)(3), to include not only a weapon that will, is designed to, or may readily be converted to expel a projectile, but also the "frame or receiver" of any such weapon. Complaint, ¶9.[1] Essentially the same definition is in MD Code, Public Safety, § 5-101(h)(1). Complaint ¶10. As detailed in the Complaint (¶11), since 1968, the Federal Bureau of Alcohol, Tobacco and Firearms ("ATF") has defined a "receiver" as "[t]hat part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel." See 27 C.F.R. § 478.11; 33 Fed. Reg. 18558 (1968). Under ATF Guidance, an unfinished receiver that

---

[1] Through inadvertence, the paragraphs *numbers* 9, 10 and 11 on pages 7 and 8 of the Complaint were duplicated on pages 9 and 10 in the final Compliant filed on May 28. For clarity, the second set of numbers 9, 10 and 11 will be referred to henceforth as paragraphs 9a, 10a and 11a, as necessary.

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 5

1   has not yet had "machining of any kind performed in the area of the trigger/hammer (fire-control)

2   recess (or cavity)," is not considered to be a receiver and is thus not considered to be a firearm.

3   ATF Firearms Technology Branch Technical Bulletin 14-01.[2] Neither Maryland law nor Bill 4-21

4   defines a "receiver," much less purports an "unfinished receiver," as that term is used in Bill 4-21.

5   Under Federal and Maryland law, if the receiver is insufficiently "finished" it is simply not a

6   receiver at all and thus not a firearm, much less a firearm component. Complaint ¶¶ 8-11.

7        The Department of Justice and the ATF recently published a proposed rule in the Federal

8   Register that further defines a "receiver." See Definition of "Frame or Receiver" and Identification

9   of Firearms, 86 Fed. Reg. 27720-01, 27730, 2021 WL 2012830 (May 21, 2021) (refining the

10  definition of "receiver" by reference to a list of factors to be considered in determining whether an

11  object can be "readily converted" to a firearm within the meaning of Section 921(a)(3)). Nothing

12  in these proposed rules would regulate the possession or manufacture of privately manufactured

13  firearms for personal use. 86 Fed. Reg. at 27725 ("nothing in this rule would restrict persons not

14  otherwise prohibited from possessing firearms from making their own firearms at home without

15  markings solely for personal use (not for sale or distribution) in accordance with Federal, State,

16

17  _____

18

19  [2] Technical Bulletin 14-01 is publically available at https://bit.ly/3vF5qE7. The brief of the ATF
    in the referenced California litigation is publically available through the federal PACER system
20  and the relevant portion of the ATF's brief is attached to this memorandum for the purpose of
    advising the Court of the position of an expert agency (the ATF) on matters relevant to this case.
21  That California litigation has been held in abeyance pending the rulemaking proceedings.
    Complaint ¶ 19, recently instigated by the ATF and the Department of Justice. See Order of May
22  26, 2021 (granting joint stipulation staying the case until ATF issues a final rule). This Court may
    take judicial notice of these official federal documents and court records pursuant to MD Rule 5-
23  201and plaintiffs specifically request that this Court do so.
    MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
24  SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 6

1 │ and local law"). The proposed Rule thus would regulate FFLs, but not regulate private individuals

2 │ who make their own firearms. See 86 Fed. Reg. at 27732.

3 │       Manufacturing an unfinished receiver into a "functional lower receiver" is not a trivial

4 │ process, as pointed out in court filings submitted by the ATF and the Department of Justice. For

5 │ example, in *State of California v. BATF*, No. 20-cv-6761 (N.D. Cal.), the Department of Justice

6 │ and the ATF explained:

7 │     An unfinished receiver that has not yet had "machining of any kind performed in the area
   │     of the trigger/hammer (fire-control) recess (or cavity)," see ATF Firearms Technology

8 │     Branch Technical Bulletin 14-01 ("Bulletin 14-01"), filed in Calif. Rifle and Pistol Ass'n
   │     v. ATF, Case No. 1:14-cv-01211, ECF No. 24 at 285 (E.D. Cal. Jan. 9, 2015), requires that

9 │     numerous steps be performed simply to yield a receiver, that then in turn must be assembled
   │     with other parts into a device that can expel a projectile by the action of an explosive. These

10 │     milling and metalworking steps—each of which require skills, tools, and time—include:
    │     1) "milling out of fire-control cavity"; 2) "drilling of selector-lever hole"; 3) "cutting of

11 │     trigger slot"; 4) "drilling of trigger pin hole; and 5) "drilling of hammer pin hole." Compl.
    │     Ex. 9.

12 │                                   * * * *

13 │     The need to conduct these machining steps from scratch, without indexing, and "carefully"
    │     means a working gun cannot be produced "without difficulty." Id. And the work to

14 │     excavate the cavities and drill holes in a solid, unmachined substrate requires care rather
    │     than speed to avoid doing so raggedly or in the wrong area. See id. Therefore, the receiver

15 │     cannot be completed "without delay," even leaving aside the further assembly with many
    │     other parts needed to have a weapon that can expel a bullet by explosive action. A receiver

16 │     blank therefore may not "readily be converted" into a firearm.

17 │ Federal Defendants' Notice Of Motion And Motion To Dismiss Plaintiffs' Complaint For

18 │ Declaratory And Injunctive Relief, at 16-17 (filed Nov. 30, 2020) (attached to Motion).

19 │ **III.**    **BILL 4-21 IS CONTRARY TO THE EXPRESS POWERS ACT**

20 │       Summary judgment is appropriate on Count II of the Complaint. Complaint ¶¶ 40-50.

21 │ Under the Express Powers Act, MD Code, Local Government, §10-206, Montgomery County laws

22 │ must be "not inconsistent with State law" and the County is barred from enacting laws that are

23 │

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 7

1   "preempted by or in conflict with public general law." As detailed in the Complaint and explained

2   further below, Bill 4-21 is in violation of these limitations for multiple reasons and thus must be

3   struck down. See *Boulden v. Mayor and Com'rs of Town of Elkton*, 311 Md. 411, 415, 535 A.2d

4   477 (1988) ("ordinances which assume directly or indirectly to permit acts or occupations which

5   the State statutes prohibit, or to prohibit acts permitted by statute or Constitution, are under the

6   familiar rule for validity of ordinances uniformly declared to be null and void"); *Talbot Cty. v.*

7   *Skipper*, 329 Md. 481, 487 n.4, 620 A.2d 880 (1993) (preemption by conflict exists if a local

8   ordinance "prohibits an activity which is intended to be permitted by state law, or permits an

9   activity which is intended to be prohibited by state law"); *City of Baltimore v. Sitnick*, 254 Md.

10  303, 317, 255 A.2d 376 (1969) ("a political subdivision may not prohibit what the State by general

11  public law has permitted"). See also *Wheelabrator Baltimore, L.P. v. Mayor and City Council of*

12  *Baltimore*, 449 F.Supp.3d 549, 560 (D. Md. 2020) (summarizing Maryland preemption law).

13          In this respect, the County cannot rely on the limited exceptions to preemption specified in

14  MD Code, Criminal Law, § 4-209(b), to override these provisions of the Express Powers Act.

15  Section 4-209(b) creates exceptions from the broad preemption imposed **by Section 4-209(a)**;

16  nothing in Section 4-209(b) purports to create an exception from limitations on localities imposed

17  by Section 10-206 of the Express Powers Act. Section 10-206 bars any local law that is inconsistent,

18  preempted by or in conflict with some other provision of State law. A locality may regulate under

19  the Section 4-209(b) exception **only** (at most) to the extent that the regulation is not "inconsistent

20  with" or "in conflict" or preempted by some other provisions of existing state law.

21          In enacting Bill 4-21, the County here failed to grasp that Section 4-209(b) is not a "get out

22  jail free" card; Section 4-209(b) does not give the County a free pass for the County to regulate in

23

1    any way it wants. The County still must comply with the Express Powers Act. Here, as the United

2    States District Court for the District of Maryland has recognized, Maryland law, discussed below,

3    makes clear that "the Legislature" has "occup[ied] virtually the entire field of weapons and

4    ammunition regulation," holding further that there can be no doubt that "the exceptions to

5    otherwise blanket preemption [in Section 4-209] are narrow and strictly construable." *Mora v. City*

6    *of Gaithersburg*, 462 F.Supp.2d 675, 689 (2006), *modified on other grounds*, 519 F.3d 216 (4th

7    Cir. 2008). See also 76 Op. Md. Atty Gen. 240, 244-46 (December 17, 1991) (discussing the

8    history of Section 4-209).

9        **A.   Bill 4-21 Is Expressly Preempted By Section 4-209(a).**

10       The provisions of MD Code, Criminal Law, § 4-209, were originally enacted in 1985 by

11   the General Assembly. See 1985 Laws of Maryland, ch. 724. Section 4-209(a) broadly and

12   expressly "preempts the right of a county, municipal corporation, or special taxing district to

13   regulate the purchase, sale, taxation, transfer, manufacture, repair, ownership, possession, and

14   transportation of: (1) a handgun, rifle, or shotgun; and (2) ammunition for and components of a

15   handgun, rifle, or shotgun." Section 4-209(b) then provides a limited list of exceptions to that

16   facially all-encompassing preemption, stating that "[a] county, municipal corporation, or special

17   taxing district may regulate the purchase, sale, transfer, ownership, possession, and transportation

18   of the items listed in subsection (a) of this section: (i) with respect to minors; (ii) with respect to

19   law enforcement officials of the subdivision; and (iii) except as provided in paragraph (2) of this

20   subsection, within 100 yards of or in a park, church, school, public building, and other place of

21   public assembly. See Complaint ¶20 d. As explained below, the County has, by *ipse dixit*, sought

22   to expand its powers far beyond that even remotely permitted by Section 4-209(b).

23

1        Bill 4-21 has effectively rewritten Section 4-209(b) to vastly expand its limited exceptions

2   to the broad preemptions otherwise imposed by Section 4-209(a). Under Bill 4-21:

3        A "place of public assembly" is *a place where the public may assemble, whether the place*
     *is publicly or privately owned, including* a [government owned] park [identified by the
4        Maryland-National Capital Park and Planning Commission]; place of worship; [elementary
     or secondary] school; [public] library; [government-owned or -operated] recreational
5        facility; *hospital; community health center; long-term facility;* or multipurpose exhibition
     facility, such as fairgrounds or a conference center. A place of public assembly includes all
6        property associated with the place, such as a parking lot or grounds of a building.

7   (Brackets indicate those portions of existing Section 57 of the County Code that were deleted by

8   Bill 4-21. Italicized portions are those parts that were added to Section 57 by Bill 4-21). These

9   amendments to Section 57 of the County Code are breathtaking and leave no doubt that the County

10  has vastly overreached. See Complaint ¶¶ 59-61. Through the artifice of broadly defining the

11  statutory terms set out in Section 4-209(b), the County has effectively amended Section 4-209(b).

12  The County has no power to rewrite State law in this matter.

13       As is apparent, prior to the enactment of Bill 4-21, the scope of Section 57 of the County

14  Code was restricted to regulating firearms in a short list of very specific locations. Under Bill 4-

15  21, that list is gone and has been replaced with any location where people "may assemble"

16  regardless of "whether the place is publicly or privately owned." Such a place could include every

17  public or private sidewalk in the County. Under Bill 4-21, these locations where people may

18  assemble "includ[e]"[3] (but are not limited to) a vastly redefined and altered list of places. For

19

20       _____

21

22  [3] See *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 162 (2012) (concluding that use of
     the word "includes" in a definition "is significant because it makes clear that the examples
23  enumerated in the text are intended to be illustrative, not exhaustive"); *Samantar v. Yousuf*, 560
     MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
24  SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 10

1   example, Section 57 formerly listed as a location a "public library." Bill 4-21 strikes out "public"

2   and thus the Bill includes any "library," even a private home library. Similarly, Bill 4-21 now

3   regulates any "recreational facility;" it struck out Section 57's language that limited that reach to

4   a "government-owned or operated" recreational facility and thus Section 57 now arguably

5   regulates a private playground. Bill 4-21 covers any "park;" it deleted Section 57's prior limit on

6   that term as including only "government owned" park that was "identified by the Maryland-

7   National Capital Park and Planning Commission." Bill 4-21 covers a "school;" it deleted Section

8   57's former limitation to "elementary or secondary" school, thereby arguably regulating within

9   100 yards of any "school" of any type, private or public, where any sort of instruction may be

10  given, including instruction to adults. Bill 4-21 newly adds to the Section 57 list a "community

11  health center" and "long-term facility," but provides no definition for either type of facility. It is

12  difficult to imagine a broader sweep of a "place of public assembly" than that enacted by Bill 4-

13  21.

14          This structure of Section 57, as amended by Bill 4-21, is radically different than that present

15  in prior Section 57 and, obviously, vastly different than the language employed in Section 4-209(b).

16  The Bill's definition of a "place of public assembly" must be seen for what it is: an impermissible

17  attempt to evade the preemption provisions of Section 4-209(a) by defining the scope of the

18  exception so as to regulate County-wide. Bill 4-21's definition of a "place of public assembly" as

19  meaning any place where the public "may assemble" whether that be on private or public land,

20

21

22      U.S. 305, 317 n.10 (2010) ("The word 'includes' is usually a term of enlargement, and not of

23      limitation.").

1   literally encompasses every sidewalk, every street, every restaurant, every coffee shop, and every

2   private business in the entire County as all such locales may be places where the public "may"

3   assemble either in the present or in the future. The term "may assemble" certainly includes all

4   public forums, as the term is used in the First Amendment context. See, e.g., *United States v. Grace*,

5   461 U.S. 171, 176 (1983) (noting that "streets, sidewalks, and parks" are traditional public forums).

6   The term even includes private homes in so far as such homes "may" be used by two or more of

7   the public from time to time in the present or in the future to "assemble." In stretching its reach to

8   every "place" within 100 yards of its vastly expanded "place of public assembly," Bill 4-21 literally

9   regulates the totality of Montgomery County, including untold tens of thousands of homes and

10   businesses throughout the County. Indeed, it is difficult to think of any location within the County

11   that is **not** within 100 yards of a sidewalk or street, or other location where people "may assemble."

12        The County's attempt to evade the Section 4-209(a) preemption provisions must be

13   rejected. The limited exceptions to the preemption provisions of Section 4-209(b) must be

14   construed narrowly in light of the underlying broad preemption otherwise imposed by Section 4-

15   209(a). As implemented by the County in Bill 4-21, the exceptions of Section 4-209(b) literally

16   reach County-wide and thus swallow the broad preemption provisions of Section 4-209(a). That

17   result is contrary to general principles of statutory construction. See, e.g., *Grosvenor v. Supervisor*

18   *of Assessments of Montgomery Co.*, 271 Md. 232, 242, 315 A.2d 758 (1974) ("A construction of

19   a statute which produces an unreasonable or illogical result should be avoided wherever it is

20   possible to do so consistent with the statutory language."); *Perdue, Inc. v. State Dept. of*

21   *Assessments and Taxation*, 264 Md. 228, 286 A.2d 165 (1972) ("A court cannot extend the scope

22

23

  MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
24   SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 12

1   of an exemption by giving to the language creating it a forced, strained, and unnatural

2   construction.").

3          Nothing in the actual language of Section 4-209 can be read to allow a County to expand

4   and redefine the exception provisions in the manner it has done here. The proviso in Section 4-

5   209(b) that allows the County to regulate firearms in within a 100 yards of "another place of public

6   assembly" must be read in context. See, e.g., *Berry v. Queen*, 469 Md. 674, 690, 233 A.3d 42

7   (2020) ("In order to interpret a word's specific meaning in a particular statute we look to the

8   context in which the word is used.") (citation omitted); *Blue v. Prince George's County*, 434 Md.

9   681, 689, 76 A.3d 1129 (2013) (same). By its very reference to "100 yards," Section 4-209(b)

10  demonstrates a legislative intent to limit the geographic reach of Section 4-209(b). In context, the

11  exceptions are limited; they do not allow the County to regulate places where people "may"

12  assemble, County-wide. Rather, Section 4-209(b) allows regulation "within 100 yards of or in a

13  park, church, school, public building, and other place of public assembly," thus covering 100 yards

14  of specific, existing locations where people **typically already** assemble in a manner akin to an

15  assembly at a park, church, school or public building. Similarly, Section 4-209's reference to a

16  "public" building strongly indicates that Section 4-209(b) does not allow the County to regulate

17  all property, "whether the place is publicly or privately owned." Nothing in Section 4-209(b)

18  suggests that it authorizes County-wide regulations over public and private property in the manner

19  imposed by Bill 4-21.

20         The rule is that "'when general words in a statute follow the designation of particular things

21  or classes of subjects or persons, the general words will usually be construed to include only those

22  things or persons of the same class or general nature as those specifically mentioned.'" *In re*

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 13

1  *Wallace W.,* 333 Md. 186, 190, 634 A.2d 53 (1993), quoting *Giant of Md. v. State's Attorney,* 274

2  Md. 158, 167, 334 A.2d 107 (1975). This is simply an application of the canon of *ejusdem generis*

3  which is based on "the supposition that if the legislature had intended the general words to be

4  construed in an unrestricted sense, it would not have enumerated the specific things." *State v. 158*

5  *Gaming Devices,* 304 Md. 404, 429 n.12, 499 A.2d 940 (1985). See also *State v. Sinclair,* 274 Md.

6  646, 650, 659, 337 A.2d 703 (1975). The canon of *ejusdem generis* "limits general terms [that]

7  follow specific ones to matters similar to those specified." *CSX Transp., Inc. v. Alabama Dept. of*

8  *Revenue,* 562 U.S. 277, 294 (2011). See also *Welsh v. Boy Scouts of America,* 993 F.2d 1267, 1269

9  (7th Cir.), *cert. denied,* 510 U.S. 1012 (1993) ("The statute in listing several specific physical

10 facilities, sheds light on the meaning of 'other place of exhibition or entertainment.'"). By using

11 the term "and other place of public assembly," Section 4-209 was obviously intended to include

12 "other" places which are akin or similar to the places expressly mentioned in the same statutory

13 sentence, *viz.* a public "park," a "church," a public "school" or a "public building." That

14 understanding of Section 4-209(b) was incorporated in Section 57 of the County Code prior to the

15 enactment of Bill 4-21. The vast reach of Bill 4-21 to all places where the public "may" assemble

16 and the Bill's new, vastly expanded, laundry list of such places are obviously incompatible with

17 these principles.

18          **B.      Bill 4-21 Is Expressly And Impliedly Preempted Under Other Law.**

19                  **1.      Express preemption**

20          Under Maryland law, in cases where two statutes arguably conflict in coverage, the more

21 specific statute controls. See, e.g., *Harvey v. Marshall,* 158 Md.App. 355, 365, 857 A.2d 529

22 (2004) ("'where two enactments—one general, the other specific—appear to cover the same

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 14

1   subject, the specific enactment applies'"), quoting *Department of Public Safety and Correctional*

2   *Services v. Beard*, 142 Md.App. 283, 302, 790 A.2d 57 (2002). See also *Department of Natural*

3   *Resources v. France*, 277 Md. 432, 461, 357 A.2d 78 (1976) (the "general enactment must be taken

4   to affect only such cases within its general language as are not within the provisions of the

5   particular enactment"); *Cremins v. County Com'rs of Washington County*, 164 Md.App. 426, 448,

6   883 A.2d 966 (2005) (same).

7          Such circumstances are present here. Section 4-209(a) broadly preempts county regulation

8   of the "purchase, sale, taxation, transfer, manufacture, repair, ownership, possession, and

9   transportation of: (1) a handgun, rifle, or shotgun; and (2) ammunition for and components of a

10  handgun, rifle, or shotgun," but then, in Section 4-209(b), allows the counties to regulate all these

11  items in narrow circumstances. Yet, allowing the counties to broadly regulate all firearms under

12  Section 4-209(b) would conflict with numerous other, very specific preemption statutes regulating

13  firearms, all of which have been utterly ignored by the County in enacting Bill 4-21.

14         For example, Bill 4-21 purports to ban the possession or transfer or sale of any firearm

15  within 100 yards of its illegally redefined "place of public assembly." Yet, MD Code, Public Safety,

16  § 5-133(a) expressly preempts the County from regulating "the possession of a regulated firearm."

17  Similarly, MD Code, Public Safety, § 5-134(a), preempts a County from regulating "the transfer

18  of a regulated firearm," and MD Code, Public Safety, § 5-104, preempts the County from

19  regulating the "sale of a regulated firearm." There are no exceptions to these specific preemption

20  provisions which, on their face, would preempt county regulation of any "regulated firearm." The

21  term "regulated firearm" is broadly defined in State law, MD Code, Public Safety, § 5-101(r), to

22  include *any* "handgun" as well as other types of weapons.

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 15

1    The County also bans the "transport" of any firearm or a "major component" of a firearm,

2  within 100 yards of its illegally redefined place of public assembly. A "major component" is

3  defined by Bill 4-21 as "the slide or cylinder or the frame or receiver," a definition that obviously

4  includes parts of handguns. Yet, Section 6 of Chapter 13, of the 1972 Sessions Laws of Maryland,

5  preempts County regulation of "wearing, carrying, or transporting of handguns."[4] That preemption

6  includes the "the slide or cylinder or the frame or receiver" of a handgun as they are parts of

7  handguns. Indeed, a "receiver" is considered to be a "firearm" under both Federal and State law

8  and thus Section 6 preempts County regulation of "receivers" as well. This preemption provision

9  is more specific than Section 4-209 as it addresses a very specific type of regulation, *viz.,* the

10  "wearing, carrying, or transporting of handguns."

11    The Court of Appeals broadly enforced those 1972 preemption provisions in *Montgomery*

12  *County v. Atlantic Guns, Inc.;* 302 Md. 540, 489 A.2d 1114 (1985). There, the Court struck down

13  Montgomery County's attempt to regulate the sale of ammunition. Relying on an opinion by the

14  Maryland Attorney General, the Court of Appeals had no difficulty in ruling that "'[i]t is obvious

15  that the local legislative proposals in question would be preempted if they directly restricted

16  possession or sale of handguns. In our view, State law mandates the same result with respect to

17

18    _____

19

20  [4] Section 6 provides:

21      *Be it further enacted,* That all restrictions imposed by the law, ordinances, or regulations
      of the political subdivisions on the wearing, carrying, or transporting of handguns are
      superseded by this Act, and the State of Maryland hereby preempts the right of the political

22      subdivisions to regulate said matters."

23  The text is available at the Maryland State Archives, https://bit.ly/3ix81MV.

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 16

1 | restrictions on handgun ammunition.'" (302 Md. at 548-49, quoting 67 Op.Att'y.Gen. 316, 319-20

2 | (1982)).

3 |     The same logic applies here with respect to Bill 4-21's ban on possession, sale and transport

4 | of handguns within 100 yards of a "place of public assembly," as illegally defined by Bill 4-21.

5 | Bill 4-21 expressly and directly regulates the possession, sale and transport of handguns, the very

6 | subject matter specifically addressed in the 1972 preemption provisions, as construed in *Atlantic*

7 | *Guns*. Bill 4-21 broadly abrogates that specific preemption provision throughout the County by

8 | expansively defining the "place of public assembly" to include any location in which people "may

9 | assemble" and including within that definition vastly expanded locations that are deemed, *ipse*

10 | *dixit*, to be places of "public assembly," including places located on private property. In effect,

11 | Bill 4-21 is no less County-wide than the ammunition regulation at issue in *Atlantic Guns* and it is

12 | no less preempted by the 1972 preemption statute.

13 |     Express preemption is also not limited to regulated firearms. In 2021, the General

14 | Assembly enacted, over the Governor's veto, MD Code, Public Safety, § 5-207(a), which preempts

15 | county regulation of "the transfer of a rifle or shotgun," a category that covers **non**-regulated

16 | firearms. Again, that preemption is more specific as it is directed to a particular type of regulation

17 | over a particular type of firearm, *viz.,* the "transfer" of a "rifle or shotgun." Taken together, these

18 | statutes comprehensively regulate virtually all firearms in Maryland. For example, by preempting

19 | regulation of "transfers" of ordinary long guns, Section 5-207(a) necessarily preempts regulation

20 | of the sale of long guns, as a "sale" is a type of "transfer."

21 |     With enactment of Bill 4-21, the County has effectively nullified the operation of all these

22 | preemption provisions throughout the entirety of Montgomery County. At a minimum, the

23 |

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 17

1    presence of these other preemption provisions strongly indicates that the exception to preemption

2    contained in Section 4-209(b) must be very narrowly construed. Otherwise, a county could

3    effectively override all these preemption provisions by expansively defining its powers under the

4    exceptions provisions of Section 4-209(b). That is, of course, precisely what the County has done

5    in this case with its enactment of Bill 4-21. The Express Powers Act bars such conduct.

6          Maryland law also makes clear that the courts are to presume that the General Assembly is

7    aware of existing Maryland statutes when it enacts or amends legislation. Thus, "[i]t is an

8    established canon of statutory construction that where the legislature enacts a specific provision

9    subsequent to a general provision, the former controls." *Prince George's County v. Fitzhugh*, 308

10   Md. 384, 390 n.4, 519 A.2d 1285 (1987) (collecting cases). See also *Government Employees Ins.*

11   *Co. and GEICO v. Insurance Com'r.*, 332 Md. 124, 133, 630 A.2d 713 (1993). Here, Section 4-

12   209 was originally enacted in 1985 and amended, in pertinent part, in 2002. MD Acts of 2002

13   ch.26 §2. In contrast, the preemption provisions concerning rifles and shotguns in MD Code,

14   Public Safety, § 5-207(a), were enacted in 2021. The preemption provisions of MD Code, Public

15   Safety, § 5-133(a) (preempting regulation of "the possession of a regulated firearm"), were

16   amended and reenacted in 2003. See 2003 Maryland Laws, ch. 5 §2. MD Code, Public Safety, §

17   5-104 (preempting regulation of a sale of a regulated firearm), and MD Code, Public Safety, § 5-

18   134 (preempting regulation of a transfer of a regulated firearm) were likewise amended and

19   reenacted in 2003 in the same legislation. (Id.). These later amended, specific preemption laws

20   limit the scope of the exception provisions of Section 4-209(b) and are controlling.

21

22

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 18

1

### 2.   Implied preemption

2      Bill 4-21's bans on sale, transfer, transport and mere possession within 100 yards of the

3 County's vastly expanded definition of a "place of public assembly" are also impliedly preempted

4 because it interferes with the comprehensive regulation of firearms otherwise imposed by State

5 law. These comprehensive state law provisions impliedly "occupy the field" and thus preempt

6 County regulation that has the effect of regulating the sale, possession, transfer and transport of

7 firearms, County-wide. See, e.g,, *Altadis U.S.A., Inc. v. Prince George's County*, 431 Md. 307,

8 311-12, 65 A.3d 118 (2013) (collecting cases) (holding that county regulation of the sale of cigars

9 was impliedly preempted by state statutory provisions that regulated the sale of tobacco); *Allied*

10 *Vending v. Bowie*, 332 Md. 279, 631 A.2d 77 (1993) (holding that local ordinances regulating

11 cigarette vending machines were preempted by a state licensing system for such machines).

12      First, Bill 4-21's regulations would effectively regulate the operation of many if not all

13 FFLs and licensed Maryland firearms dealers, such as plaintiff Engage. Complaint ¶ 26 ("The

14 business location of Engage is arguably within 100 yards of a 'place of public assembly' as defined

15 by Bill 4-21"). Such regulation is both expressly and impliedly preempted. As noted, MD Code,

16 Public Safety, § 5-104, expressly preempts the right of any local jurisdiction to regulate the sale

17 of a regulated firearm. Dealers are also comprehensively regulated by Federal and State law. See

18 18 U.S.C. § 923 (establishing a comprehensive regulatory and licensing system for FFLs); MD

19 Code, Public Safety, § 5-106 (requiring a dealer's license issued by the State Police before a person

20 may engage "in the business of selling, renting, or transferring regulated firearms"); MD Code,

21 Public Safety, § 5-107 (specifying the contents of an application for a dealer's license); MD Code,

22 Public Safety, § 5-108 (requiring a background check for a dealer's license); MD Code, Public

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 19

1   Safety, § 5-111 (establishing the terms of a dealer's license). Dealers were further extensively

2   regulated in 2013 with the enactment of the Firearms Safety Act of 2013, 2013 Maryland Laws ch.

3   427 (amending MD Code, Public Safety, §§ 5-110, 5-114, 5-115, 5-146). Dealers are also subject

4   to extensive regulation by the Maryland State Police, including regulations controlling what

5   firearms dealers may sell and where dealers may conduct business. See COMAR, §§

6   29.03.01.42-.57.

7          Second, sales and purchases of firearms by individuals are also heavily regulated. Persons

8   seeking to purchase a regulated firearm must submit an application. MD Code, Public Safety, § 5-

9   117. The contents of that application are controlled by State law. MD Code, Public Safety, § 5-

10  118. State law controls the fees and retention of for such sales, MD Code, Public Safety, § 5-120,

11  and specifies the times and manner in which such sales are completed. MD Code, Public Safety, §

12  5-123. Secondary transactions are heavily regulated, MD Code, Public Safety, § 5-124, as is the

13  identity of the firearm being sold. MD Code, Public Safety, § 5-125. Maryland law controls when

14  the purchase may take place, MD Code, Public Safety, § 5-128, and the number of firearms that

15  may be purchased. MD Code, Public Safety, § 5-129. State law controls the types of weapons that

16  an individual may purchase, possess, transport, transfer or sell. MD Code, Criminal Law, § 4-303.

17  And Maryland law tightly regulates the types of handguns that may be sold by subjecting such

18  sales to regulations published by the Maryland Handgun Roster Board. 1988 Maryland Laws, ch.

19  533, MD Code, Public Safety, § 5-404. See *Halliday v. Sturm, Ruger & Co., Inc.*, 368 Md. 186,

20  204, 792 A.2d 1145 (2002); *Moore v. State*, 84 Md.App. 165, 174, 578 A.2d 304 (1990).

21         Most recently, with the enactment of House Bill 4 over the Governor veto, the General

22  Assembly has also strictly regulated the sales, rentals and transfers of ordinary long guns. See 2021

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 20

1    Maryland Laws, ch. 35. As noted, that 2021 legislation enacted MD Code, Public Safety, § 5-

2    207(a), which "preempts the right of any local jurisdiction to regulate the transfer of a rifle or

3    shotgun." That legislation established extensive regulation over the private sales, rentals and

4    transfers of long guns, including amendments to MD Code, Public Safety, §§ 5-201, 204.1, and 5-

5    207. It also enacted a provision, in Section 2, that made clear that the regulation of transfers

6    imposed by the legislation "does not include the temporary gratuitous exchange of a rifle or

7    shotgun," and expressly exempted sales, rentals, or transfers between "immediate family members"

8    and any sale, rental or transfer involving a FFL or a Maryland firearms dealer.[5] MD Code, Public

9    Safety, § 5-204.1(a)(1)(i),(ii). These express exclusions were for the purpose of leaving such

10   transactions unregulated. In short, the County's attempt to impose County-wide regulation over

11   the sale, transfer, possession and transport of all firearms has been impliedly preempted by this

12   complex and comprehensive system of State law.

13      C.    Bill 4-21 Is "Inconsistent" With Other Maryland Statutes.

14          Even apart from express and implied preemption, the Complaint (¶40) details the multitude

15   of ways in which Bill 4-21 is inconsistent or in conflict with general law. That discussion is

16   incorporated herein by reference. Perhaps the most egregious conflict is the Bill's attempt to bar

17   the mere possession of unserialized firearms manufactured for personal use and otherwise lawfully

18

19   ───────────────

20

21   [5] "Immediate family members is broadly defined to include "a spouse, a parent, a stepparent, a
     grandparent, a stepgrandparent, an aunt, an uncle, a sibling, a stepsibling, a child, a stepchild, a
22   grandchild, a stepgrandchild, a niece, or a nephew, as related by blood or marriage" and "licensee"
     is defined to mean "a person who holds a dealer's license." MD Code, Public Safety, § 5-201(c),
23   (d).
     MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
24   SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 21

1   possessed **in the home**. As noted, Bill 4-21 bans possession of a firearm (any firearm) within 100

2   yards of the County's illegally expanded "place of public assembly." As thus defined, this ban

3   literally extends to literally tens of thousands of homes within 100 yards of Bill 4-21's newly

4   defined and illegally expanded "place of public assembly."

5          That broad coverage of the home was specifically intended by the County. Bill 4-21 retains

6   the prior law's exception from this ban for "possession of a firearm or ammunition" in the home,

7   but then **amends** that prior law to specifically ban possession of "a ghost gun" in the home. This

8   ban on otherwise lawfully possessed firearms in the home is "inconsistent with" MD Code,

9   Criminal Law, § 4-203(b)(6), which expressly permits "the wearing, carrying, or transporting of a

10   handgun by a person on real estate that the person owns or leases or where the person resides...."

11   See Complaint ¶40 j. That provision in Section 4-203(b)(6) is not in any way limited and thus

12   includes unserialized firearms otherwise lawfully possessed by the homeowner. Quite

13   intentionally, State law likewise does not regulate the possession of long guns in the home.

14          The County's ban on the possession of a type of otherwise lawful firearm in the home also

15   raises profound Second Amendment questions under *District of Columbia v. Heller*, 554 U.S. 570

16   (2008), and *McDonald v. Chicago*, 561 U.S. 742, 750 (2010). The Second Amendment "elevates

17   above all other interests the right of law-abiding, responsible citizens to use arms in defense of

18   hearth and home." *Heller*, 554 U.S. at 635. See also *Caetano v. Massachusetts*, 577 U.S. 411

19   (2016) (summarily reversing Massachusetts' highest court for failing to follow the reasoning of

20   *Heller* in sustaining a state ban on stun guns); *Ramirez v. Commonwealth*, 479 Mass. 331, 332,

21   352 (2017) (on remand from *Caetano*, holding that "the absolute prohibition against civilian

22   possession of stun guns under § 131J is in violation of the Second Amendment" and declaring the

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
24   SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 22

1  State's absolute ban to be "facially invalid"); *Defense Distributed v. Dept. of State*, 121 F.Supp.3d

2  680, 699 (W.D. Tex. 2015), *aff'd.*, 838 F.3d 451 (5th Cir. 2016), *cert. denied*, 138 S.Ct. 638 (2018)

3  (sustaining a regulation of 3-D printed guns under the Second Amendment because plaintiffs were

4  "not prohibited from manufacturing their own firearms"). Nothing in the Section 4-209(b)

5  exception provisions permits County regulation of firearm possession in the home. The exception

6  provisions of Section 4-209(b) should be construed narrowly so to avoid these constitutional issues.

7  See, e.g., *Koshko v. Haining*, 398 Md. 404, 425-27, 921 A.2d 171 (2007) (a statute is construed to

8  avoid conflict with the Constitution wherever it is possible to do so, even to the extent of applying

9  a judicial gloss to interpretation that skirts a constitutional confrontation).

10      Another egregious example of overreach is the Bill's regulation of businesses, such as

11  operated by plaintiffs Engage and ICE Firearms. As with homes, the vastly redefined "place of

12  public assembly" extends the County's regulation to literally most, if not all, businesses through

13  the entire County, *viz.*, either they **are** such places or they are **within** 100 yards of such places. Bill

14  4-21 provides that the bans it otherwise imposes do not "apply to the possession of one firearm,

15  and ammunition for the firearm, at a business by either the owner who has a permit to carry the

16  firearm, or one authorized employee of the business who has a permit to carry the firearm." This

17  exception would permit the business owner to possess of **one** firearm, but **only if** the owner has a

18  carry permit. Yet, Bill 4-21's requirement that the owner must have "a permit to carry the firearm"

19  is inconsistent with MD Code, Criminal Law, § 4-203(b)(6), which expressly allows "the wearing,

20  carrying, or transporting of a handgun by a person . . . within the confines of a business

21  establishment that the person owns or leases." Such persons are **not** required to possess or obtain

22  a Maryland carry permit. Bill 4-21's limitation to possession of "one" firearm by the owner is

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 23

1  likewise inconsistent with Section 4-203(b)(6), as that section imposes no limitation on the number

2  of handguns that may be possessed, worn, carried or transported under this provision of Section 4-

3  203(b)(6). See Complaint ¶40 k.

4      Similarly, Bill 4-21 imposes the same, "one gun" and carry permit requirements on

5  authorized employees of a business, providing that the bans it otherwise imposes do not "apply to

6  the possession of one firearm, and ammunition for the firearm, at a business by … one authorized

7  employee of the business who has a permit to carry the firearm." Yet, MD Code, Criminal Law, §

8  4-203(b)(7), expressly permits "the wearing, carrying, or transporting of a handgun by a

9  supervisory employee: (i) in the course of employment; (ii) within the confines of the business

10  establishment in which the supervisory employee is employed; and (iii) when so authorized by the

11  owner or manager of the business establishment." Such authorized employees covered by Section

12  4-203(b)(7) are **not** required to possess or obtain a Maryland carry permit to carry within the

13  business confines of the employer's business. Bill 4-21's limitation to possession of "one" firearm

14  by "one" authorized employee is likewise inconsistent with Section 4-203(b)(7), as that section

15  imposes no limitation on the number of employees or on the number of handguns or ammunition

16  that may be possessed, worn, carried or transported.

17      Bill 4-21's total ban on the "transport" of a "ghost gun" is also inconsistent with MD Code,

18  Criminal Law, § 4-203(b)(5), which expressly permits "the moving by a bona fide gun collector

19  of part or all of the collector's gun collection from place to place for public or private exhibition

20  if each handgun is unloaded and carried in an enclosed case or an enclosed holster." Such transport

21  and carriage of unloaded rifles and shotguns, including unserialized rifles and shotguns, are

22  permitted under Maryland law without restriction. Not by coincidence, all these provisions of

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 24

1   Section 4-203 were enacted in 1972 as part of the legislation that included the preemption

2   provisions applied in *Atlantic Guns*. See *Atlantic Guns*, 302 Md. at 544-45 (discussing these

3   provisions).

4         Indeed, because Bill 4-21 effectively bans (through its vast definition of a "place of public

5   assembly") the sale, transfer, possession or transport of any and all firearms and major components

6   throughout the entire County, the only place that a resident of the County could even possess

7   firearms (any firearm) would be in the home or in one of the other very limited places or

8   circumstances that fall within the other exceptions set forth in Section 57-11(b) of the County Code.

9   One such exception allows the possession of "separate ammunition or an unloaded firearm," but

10  the list of exceptions does not mention or allow the possession of a loaded firearm outside the

11  home, including such possession at a range or while engaging in otherwise lawful hunting. Such a

12  broad ban on loaded firearms is flatly contrary to Section 4-209(d)(2), which provides that "[a]

13  county, municipal corporation, or special taxing district may not prohibit the discharge of firearms

14  at established ranges." Montgomery County has several such ranges, including the Gilbert Indoor

15  Range in Rockville, Maryland, https://bit.ly/3zqfqn1, and the Izaak Walton League-Rockville

16  Chapter range in Germantown, Maryland. https://bit.ly/2Sokwjg. Another such range can be found

17  at the Bethesda-Chevy Chase Chapter of the Izaak Walton League in Poolesville, Maryland.

18  http://bcciwla.org/. And nothing in the text or structure of Section 4-209 suggests that Section 4-

19  209(b) was intended to allow the County to ban hunting with firearms, County-wide.

20

21

22

23

1

2

**D.     Bill 4-21's Regulation Of Minors Conflicts With
State Law And Is Unconstitutionally Overbroad.**

3

The State also closely regulates the access to firearms by minors in ways that are

4

inconsistent with Bill 4-21. Specifically, Bill 4-21 provides that a person "must not give, sell, rent,

5

lend or otherwise transfer to a minor" (defined as a person under the age of 18), "a ghost gun or a

6

major component of a ghost gun," providing further that a person may not even "purchase, sell,

7

transfer, possess, or transfer[6] a ghost gun . . . **in the presence of a minor.**" (Emphasis added).

8

These matters are regulated by State law. Under MD Code, Public Safety, § 5-133(d)(2)(i), a

9

person under the age of 21 may possess and transfer a regulated firearm if he or she is under the

10

supervision of a parent, or another person at least 21 years old, or if participating in marksmanship

11

training under the supervision of a qualified instructors. Such qualified instructors would include

12

plaintiffs Ronald and Nancy David, Complaint ¶¶ 33, 34, and many MSI members, Complaint ¶

13

24. Bill 4-21 also extends its bans to a "slide" or "cylinder" or "barrel" of an unserialized firearm.

14

Under Bill 4-21, parents, instructors and others are criminalized if they give instruction using an

15

unserialized firearm, or merely possess, sell, purchase or transfer such a firearm, or the components

16

of such a firearm, in the mere "presence" of the person under the age of 18. These provisions of

17

18

———————————————

19

20

[6] As it apparent, the language of Bill 4-21 bans "transfer" twice over. Perhaps the County meant
to ban "transport" as well as "transfer," but such a ban on "transport" is not found in this section

21

of Bill 4-21. Even assuming that this dual reference to "transfer" is a "scrivener's error," basic
principles of notice and due process mean that such an error in a *criminal statute* can only be

22

corrected by the legislature itself, and not by a reviewing court. See, e.g, *United States v. X-
Citement Video, Inc.,* 513 U.S. 64, 82 (1994) (Scalia, J., concurring). In any event, the error makes

23

no difference to the result sought here.

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 26

1  Bill 4-21 are "inconsistent" with Section 5-133(d)(2)(i) within the meaning of the Express Powers

2  Act, as they prohibit conduct that is expressly permitted by State law.

3       Similarly, MD Code, Criminal Law, § 4-104(b)(1), expressly permits a minor child under

4  the age of 16 to have access to any firearm if that access "is supervised by an individual at least 18

5  years old" or if the minor child under the age of 16 has a certificate of firearm and hunter safety

6  issued under § 10-301.1 of the Natural Resources Article. See Complaint ¶ 17. In conflict with

7  these provisions, County law, as amended by Bill 4-21, provides that a person must not store or

8  leave "a ghost gun . . . or a major component of a ghost gun in a location that the person knows or

9  should know is accessible to a minor." No exception is made for access supervised by a parent or

10 for access by a minor who possesses a hunter safety certificate. Indeed, under the County's law,

11 no person under the age of 18 may have **any** access to **any** firearm, or a "major component" of a

12 firearm, unless it is under the supervision of a parent, guardian or an instructor over 18. Such a ban

13 effectively kills youth hunting expressly promoted by State law. Maryland law accords "a 1-year

14 gratis hunting license to a Maryland resident under the age of 16 years who has successfully

15 completed a hunter safety course," MD Code Nat. Resources §10-301.l(f)(l). Once again, County

16 law prohibits conduct expressly permitted by State law.

17      The County's ban on the "purchase, sell, transfer, possess, or transfer a ghost gun . . . in

18 the presence of a minor" also goes too far under the text of Section 4-209. Subsection 4-209(b)

19 allows a locality to "regulate the purchase, sale, transfer, ownership, possession, and transportation

20 of the items listed in subsection (a) of this section: (i) with respect to minors." That language

21 cannot be reasonably read to permit the County to regulate activities **of adults** (including parents)

22 in the mere "**presence**" of a minor. Rather, these "minor" provisions of Section 4-209(b) are best

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 27

1  understood to allow localities regulate **unsupervised** access **by minors.** The Attorney General has

2  construed Section 4-209(b) in precisely this manner. See 76 Op. Att'y 240, 247 (1991) (opining

3  that Section 4-209(b) allows local regulation "dealing with minors' *access* to firearms")

4  (Emphasis added). As the Attorney General also notes, the legislative history of Section 4-209(b)

5  is consistent with that limited reading. See id. at 245 (noting that the Governor Hughes wanted to

6  preserve local regulations that made it unlawful for "a person under 21 *to* purchase, trade, acquire

7  or possess certain weapons except under certain circumstances," as well as a county law that

8  related to "the *transfer* of weapons *to* minors"). (Emphasis added). In regulating adult activities in

9  the mere **presence** of minors, Bill 4-21 once again goes too far and is thus contrary to the

10  preemption provisions of Section 4-209(a).

11          Indeed, by regulating what an adult parent may do in the "presence" of his or her child,

12  Bill 4-21 imposes an unconstitutional restraint on the rights of parents to parent their children. In

13  *Troxel v. Granville*, 530 U.S. 57, 64 (2000), Justice O'Connor, speaking for a plurality of the

14  Supreme Court, summarized a long line of holdings, stating that parents have fundamental liberty

15  interest protected by the Constitution "in the care, custody, and control of their children." In *Frase*

16  *v. Barnhart*, 379 Md. 100, 124, 840 A.2d 114 (2003), the Court of Appeals applied *Toxel* broadly,

17  stating "[a]lthough *Troxel* happened to involve a visitation dispute, there is nothing in any of the

18  Opinions announcing or concurring in the judgment to suggest that the Constitutional proscription

19  against State interference with a fit parent's right to make basic decisions for his/her child is limited

20  to issues of visitation, and, indeed, the cases relied on by the various Justices involved other areas

21  of interference as well." In *Koshko v. Haining*, 398 Md. 404, 422-27, 921 A.2d 171 (2007), the

22  Court of Appeals applied *Troxel* and construed a Maryland statute in such a way as "to save the

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 28

1    statute from invalidation" facially, but then invalidated the statute on an as-applied basis on the

2    particular facts presented in that case. As *Koshko* states, parents "are invested with the fundamental

3    right . . . to direct and control the upbringing of their children." *Koshko*, 398 Md. at 422-23.

4    　　These constitutional considerations apply here. Parents of minor children, such a plaintiffs

5    Raymond and Weaver (Complaint ¶¶ 27, 30), have a constitutional right, recognized in *Troxel*,

6    *Frase* and *Koshko*, to direct and control the upbringing of their children. That right includes the

7    right to teach their children about firearms, including the right to instruct in the assembly of firearm

8    components and otherwise possess firearms in the presence of their children. Under *Troxel*, *Frase*

9    and *Koshko*, the County simply may not constitutionally bar a minor's access to firearms or to

10   "major components" of firearms when such access is supervised by a parent or by another person

11   authorized by a parent. Parents have every right, recognized by MD Code, Criminal Law, § 4-

12   104(b)(1), to give their children access if "the child's access to a firearm is supervised by an

13   individual at least 18 years old." Similarly, parents have every right, recognized by MD Code,

14   Public Safety, § 5-133(d)(2)(i), to allow instructors, such as plaintiffs Edgar, ICE Firearms, and

15   Ronald and Nancy David (Complaint ¶¶ 30-34), to instruct children in the use of firearms. The

16   constitutional rights of parents "to direct and control the upbringing of their children," *Koshko*,

17   398 Md. at 422-23, mandate a narrow interpretation of the County's authority to enact ordinances

18   under Section 4-209(b). As in *Koshko*, this Court should construe the scope of Section 4-209(b) to

19   save it from facial invalidity and invalidate its application in Bill 4-21.

20   　　The County's unconstitutional overreach is especially evident with respect to "major

21   components," which Bill 4-21 defines to include a slide, a cylinder or a barrel of ordinary firearms.

22   Bill 4-21 provides that a "person must not give, sell, rent, lend, or otherwise transfer to a minor" a

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 29

1    "major component of a ghost gun." Yet, the slide, cylinder and a barrel are not firearms and are

2    not required to be serialized under Federal law. Such components are also common both to

3    unserialized "ghost guns" and ordinary serialized guns, including firearms legally manufactured

4    by federally licensed manufacturer and lawfully purchased from a FFL and a licensed Maryland

5    firearms dealer. For these specific items, the Bill's special treatment of ghost gun "components"

6    is nonsensical, as it wrongly assumes that "ghost gun" components are somehow different than

7    **non**-ghost gun components. That is only true with respect to actual **receivers,** as only receivers

8    are firearms under Federal and State law, Complaint ¶¶ 9, 10, and only receivers are required to

9    be serialized under Federal and State law. Complaint ¶ 11.

10         Similarly nonsensical and unconstitutional is Bill 4-21's regulation of "unfinished

11    receivers," which Bill 4-21 includes within its definition of a "ghost gun." While Section 4-209(b)

12    allows the County to regulate "components" of firearms with respect to minors, it does not allow

13    the County to regulate **non**-components of firearms, such as "unfinished receivers." Certainly,

14    nothing in Section 4-209(b) allows the County to regulate access to components when access is

15    supervised by a parent. As explained, to the extent that an "unfinished receiver" is not yet an actual

16    "receiver," is not a firearm or even a "component" of a firearm. It is simply a chunk of metal or

17    plastic. Bill 4-21 would thus criminalize adult possession of, and minor access to, pieces of metal

18    or plastic. The total bans imposed by Bill 4-21 on such "unfinished receivers" with respect to

19    minors thus is both legal nonsense and unconstitutional under *Troxel*. As discussed *infra*, for these

20    same reasons, Bill 4-21's ban on "unfinished receivers" is also both an oxymoron and hopelessly

21    vague.

22

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 30

IV.    **BILL 4-21 IS NOT A "LOCAL LAW" AND THUS VIOLATES ARTICLE XI-A OF THE MARYLAND CONSTITUTION.**

Summary judgment is also appropriate under Count I of the Complaint. Complaint ¶¶ 36-39. Montgomery County has chartered home rule under Article XI-A of the Maryland Constitution and, under that provision, the County is only empowered to enact "local laws." Section 4 of Article XI-A of the Maryland Constitution states that "[a]ny law so drawn as to apply to two or more of the geographical subdivisions of this State shall not be deemed a Local Law, within the meaning of this Act." See also Article XI–E, § 6, of the Maryland Constitution provides that "[a]ll charter provisions, or amendments thereto, adopted under the provisions of this Article, shall be subject to all applicable laws enacted by the General Assembly."

Under Maryland law, a general law "deals with the general public welfare, a subject which is of significant interest not just to any one county, but rather to more than one geographical subdivision, or even to the entire state." *Steimel v. Board*, 278 Md. 1, 5, 357 A.2d 386 (1976). Thus, "some statutes, local in form, have been held to be general laws, since they affect the interest of the whole state." *Cole v. Secretary of State*, 249 Md. 425, 434, 240 A.2d 272 (1968). Similarly, "[a] law may be local in the sense that it operates only within a limited area, but general in so far as it affects the rights of persons without the area to carry on a business or to do the work incident to a trade, profession, or other calling within the area." *Dasch v. Jackson*, 170 Md. 251, 261, 183 A. 534 (1936).

Bill 4-21 is not a "local law" under these principles. Bill 4-21 was touted as a "ghost gun" bill, but this Bill obviously regulates **all firearms** with its requirement that "a person must not sell, transfer, possess, or transport a ghost gun, undetectable gun, handgun, rifle, or shotgun, or ammunition or major component for these firearms" anywhere within 100 yards of the Bill's vast

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 31

1    and unlawful definition of a "place of public assembly." As the discussion above demonstrates,

2    the reach of this Bill is breathtakingly broad for all these firearms, not just for so-called "ghost

3    guns."

4          It is equally beyond obvious that the regulation of firearms in Maryland is a matter of

5    "significant interest . . . to more than one geographical subdivision, or even to the entire state."

6    *Steimel*, 278 Md. at 5. The numerous preemption provisions and comprehensive State regulatory

7    schemes detailed above cannot be read in any way other than as an embodiment of the General

8    Assembly's recognition that localities should not be enacting regulations that broadly affect the

9    possession, sale, transport or transfer of firearms. As the federal district court in *Mora* stated, "there

10   can be no doubt that the exceptions to otherwise blanket preemption [in Section 4-209] are narrow

11   and strictly construable" and that "State law has so thoroughly and pervasively covered the subject

12   of firearms regulation and the subject so demands uniform state treatment, that any non-specified

13   regulation by local governments is clearly preempted." *Mora*, 462 F. Supp.2d at 690. Stated simply,

14   firearm regulations "affect the interest of the whole state." *Cole*, 249 Md. at 434.

15         A simple example suffices to illustrate the point. As noted, Bill 4-21 bans the "transport,"

16   the sale, the possession and the "transfer" of a "major component" of **any** firearm and defines

17   "major component" to mean "(1) the slide or cylinder or the frame or receiver; and (2) in the case

18   of a rifle or shotgun, the barrel." However, as discussed above, both federal law and Maryland law

19   regulate as firearms only the "receiver" of a firearm. Complaint ¶¶ 9, 10. The other "components"

20   banned by Bill 4-21 are not required to be serialized under either State or Federal law and are not

21   "firearms." Complaint ¶11. The "slide" or "cylinder" or "barrel" of a firearm are unregulated and

22   thus may be (and currently are) possessed, transported, transferred and sold freely within all parts

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 32

1    of Maryland, including Montgomery County, in interstate and intrastate commerce. Yet, Bill 4-21

2    would criminalize all this interstate and intrastate commerce in these items. The only persons who

3    would be allowed even to **possess** these components in Montgomery County would be those few

4    individuals who are excepted under Section 57-11(b) of the County Code, as amended by Bill 4-

5    21, *viz.,* police, security guards and carry permit holders. Under Bill 4-21, not even Federal

6    Firearms Licensees and State firearms dealers (such as Engage) are allowed to possess these

7    components. A typical resident of Montgomery County would be prohibited from purchasing a

8    new or replacement "slide," "cylinder" or "barrel" outside the County and transporting or

9    possessing any of these components in the County.

10        Bill 4-21 also bans the mere possession **in the home** of these otherwise non-regulated

11    components. Section 57-11 of the County Code generally exempts from its regulatory reach the

12    mere possession of an actual "firearm" in "the person's own home." But, as explained, the "slide"

13    or "cylinder" or "barrel" are not "firearms" under State and Federal law. Accordingly, if the

14    homeowner were to disassemble his or her firearm into these "components" or obtain replacement

15    "components" for his firearm, that homeowner would then be guilty of a crime under Bill 4-21 by

16    virtue of the mere possession of these components. Such disassembly is exceedingly common as

17    it is necessary in order to clean an ordinary, lawfully owned pistol that every otherwise qualified

18    American has a Second Amendment right to possess in the home under *Heller* and *McDonald*.

19    Replacement or substitution of parts, including barrels and slides, is likewise common.

20    Criminalizing possession of components is thus legally indefensible, but that result is compelled

21    by the literal language of Bill 4-21. This example demonstrates why the General Assembly is

22    correct in preempting counties from regulating firearms: Localities, perhaps acting out of

23

1    misplaced zeal or ideology, simply lack the detailed knowledge of firearms and the understanding

2    of complex Federal and State firearms law necessary to regulate intelligently.

3              Even if Bill 4-21 could somehow be viewed as limited to "ghost guns," it still would not

4    be a "local law" under the Maryland Constitution. As the foregoing discussion demonstrates, this

5    subject matter is rife with complexity and competing values. Law-abiding citizens have been

6    building their own firearms for personal use for centuries and doing so completely lawfully.

7    Complaint ¶¶ 8, 11a.[7] The Maryland General Assembly has thus struggled repeatedly with

8    competing considerations over the last three legislative sessions, seeking to formulate a state-wide

9    approach to "ghost guns." See Complaint ¶18.

10             There is no doubt that these efforts by the General Assembly will continue and may well

11   change in light of the rulemaking proceedings currently underway by the Department of Justice

12   and the ATF. Id. ¶19. That DOJ/ATF proposal would define "receivers" differently and regulate

13   manufacturers and FFLs, but it also recognizes the right of individuals to build home-made guns

14

15              ───────────────

16

17   [7] See Mark A. Tallman, GHOST GUNS, Hobbyists, Hackers, and the Homemade Weapons
     Revolution, chapter 2 (2020). As historian Charles Winthrop Sawyer explained, "in the smaller
18   shops which formed the great majority—mere cabins on the outskirts of the wilderness—one man
     with or without an apprentice did every part of the work." 1 Charles Winthrop Sawyer,
19   FIREARMS IN AMERICAN HISTORY 145 (1910). Moreover, many gunsmiths worked
     primarily in other trades and built or repaired firearms as a hobby. See James Whisker, THE
20   GUNSMITH'S TRADE 145–63 (1992). During the Revolutionary War, many colonies relied on
     and incentivized people outside of the firearms industry to produce firearms. For example, on
21   August 2, 1775, a Committee appointed by Maryland's Provincial Convention "to enquire into the
     practicability of establishing a manufactory of Arms within this Province" determined that "Arms
22   may be furnished sooner, and at less expense by engaging immediately all Gun Smiths, and others
     concerned in carrying on that business." Journal of the Maryland Convention July 26 – August 14,
23   1775, at 64–65 (William Hand Browne ed. 1892).
     MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
24   SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 34

1     and thus does not seek to regulate individuals in their possession or manufacture of firearms for

2     personal use. The DOJ/ATF proposal does not ban or regulate the continued possession by

3     individuals of previously lawfully constructed firearms in any way. (Id.). If, as seems likely, some

4     version of the DOJ/ATF proposed rule goes into effect, that rule could dramatically affect the

5     availability of "ghost guns" in the marketplace. Such a rule could easily affect the regulatory

6     approaches that the General Assembly might take. Bill 4-21 will undoubtedly conflict with such

7     State-wide legislative approaches.

8         In particular, the Maryland legislature has looked to California, which has developed a

9     system allowing owners to engrave serial numbers on their firearms made for personal use without

10    banning possession or criminalizing owners. See California Penal Code §§ 29180-29184. In 2019,

11    the Maryland House of Delegates ordered research on this approach in a bill (House Bill 740) that

12    passed the House of Delegates. See Complaint ¶¶ 18, 37. Similarly, and most recently, in the 2021

13    legislative session, the House Judiciary Committee reported a bill to the floor that would have

14    accorded existing owners of unserialized firearms a path to retention of these firearms in a manner

15    akin to that adopted by California. Complaint ¶ 18. In stark contrast, Bill 4-21 attempts to broadly

16    criminalize everything about "ghost guns," including their owners. If Montgomery County is

17    allowed to enact Bill 4-21 with impunity, then other counties and other localities may well follow

18    suit, with still different approaches. The result will be a conflicting hodgepodge of local regulations

19    that would ensnare otherwise law-abiding citizens traveling through the State. See *Dasch*, 170 Md.

20    at 261. In light of this history and these practical realities, there can be no doubt that "ghost guns"

21    are a matter of state-wide and national interest. No more is required to invalidate Bill 4-21. *Steimel*,

22    278 Md. at 5; *Cole*, 249 Md. at 434.

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 35

1  **V.    BILL 4-21 IS SO VAGUE THAT IT VIOLATES DUE PROCESS.**

2      Partial summary judgment as to liability is also appropriate on Count IV of the Complaint.

3  See Complaint ¶¶ 51-66. As Count IV details, Bill 4-21 is so impossibly vague in imposing

4  criminal penalties that it violates the Due Process Clause of the Fourteenth Amendment to the

5  United States Constitution and Article 24 of the Maryland Declaration of Rights. While plaintiffs

6  also seek compensatory, nominal and punitive damages and attorney's fees under Count IV,

7  declaratory and injunctive relief is appropriate now. Such relief will likely limit the amount of

8  damages that plaintiffs will otherwise suffer if Bill 4-21 goes into effect.

9      **A.    The Due Process Clause of the Fourteenth Amendment And Article 24**
         **Of the Maryland Declaration of Rights Preclude Enactment Or**
10          **Enforcement Of Vague Penal Statutes.**

11     The Due Process Clause of the Fourteenth Amendment prohibits the enactment or

12 enforcement of vague legislation. *Sessions v. Dimaya*, 138 S.Ct. 1204, 1212 (2018) ("the

13 prohibition of vagueness in criminal statutes…is an 'essential' of due process, required by both

14 'ordinary notions of fair play and the settled rules of law"). A penal statute must "define the

15 criminal offense with sufficient definiteness that ordinary people can understand what conduct is

16 prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."

17 *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). "[A] vague law is no law at all." *United States v.*

18 *Davis*, 139 S. Ct. 2319, 2323 (2019). See also *Grayned v. City of Rockford*, 408 U.S. 104, 108-109

19 (1972) ("A vague law impermissibly delegates basic policy matters to policemen, judges, and

20 juries for resolution on an ad hoc and subjective basis"): *Giovani Carandola, Ltd. v. Fox*, 470 F.3d

21 1074, 1079 (4th Cir. 2006) (recognizing that "[a] statute is impermissibly vague if it either (1) fails

22 to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 36

1  prohibits or (2) authorizes or even encourages arbitrary and discriminatory enforcement" (internal

2  quotations omitted)).

3       Such a statute need not be vague in all possible applications in order to be void for

4  vagueness under the Due Process Clause. *Johnson v. United States*, 576 U.S. 591, 602 (2015) ("our

5  holdings squarely contradict the theory that a vague provision is constitutional merely because

6  there is some conduct that clearly falls within the provision's grasp"). "*Johnson* made clear that

7  our decisions 'squarely contradict the theory that a vague provision is constitutional merely

8  because there is some conduct that clearly falls within the provision's grasp.'" *Dimaya*, 138 S.Ct.

9  at 1214 n.3. A court also "cannot construe a criminal statute on the assumption that the Government

10 will use it responsibly," *United States v. Stevens*, 559 U.S. 460, 480 (2010), and "cannot find clarity

11 in a wholly ambiguous statute simply by relying on the benevolence or good faith of those

12 enforcing it." *Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1322 (11th Cir. 2017) (en banc).

13      Article 24 of the Maryland Declaration of Rights likewise prohibits the enactment or

14 enforcement of vague legislation. *Galloway v. State*, 365 Md. 599, 614, 781 A.2d 851 (2001) ("The

15 void-for vagueness doctrine as applied to the analysis of penal statutes requires that the statute be

16 'sufficiently explicit to inform those who are subject to it what conduct on their part will render

17 them liable to its penalties.'") (citation omitted). Under Article 24, a statute must provide "legally

18 fixed standards and adequate guidelines for police ... and others whose obligation it is to enforce,

19 apply, and administer [it]" and "must eschew arbitrary enforcement in addition to being intelligible

20 to the reasonable person." (Id. at 615). Under this test, a statute must be struck down if it is "'so

21 broad as to be susceptible to irrational and selective patterns of enforcement.'" (Id. at 616, quoting

22

23

1   *Bowers v. State*, 283 Md. 115, 122, 389 A.2d 341 (1978)). See also *Ashton v. Brown*, 339 Md. 70,

2   89, 660 A.2d 447 (1995); *In Re Leroy T.*, 285 Md. 508, 403 A.2d 1226 (1979).

3       Bill 4-21 is a penal statute. A violation of Bill 4-21 is a Class A violation that can result in

4   a criminal fine and up to six months imprisonment for each day in which the violation continues.

5   Complaint ¶7. Bill 4-21 contains no *mens rea* requirement of any type and thus these punishments

6   may be imposed without regard to a defendant's intent or knowledge. Such a law is particularly

7   open to facial attack. For example, in the *City of Chicago v. Morales*, 527 U.S. 41, 54 (1999), the

8   Supreme Court invalidated on vagueness grounds a Chicago ordinance that banned loitering,

9   noting that "the freedom to loiter for innocent purposes is part of the 'liberty' protected by the Due

10  Process Clause." *Morales*, 527 U.S. at 53. The Court found highly significant that the ordinance

11  was a "criminal law that contains no *mens rea* requirement" and concluded "[w]hen vagueness

12  permeates the text of such a law, it is subject to facial attack." Id. at 55.

13      **B.**    **Bill 4-21 Is Unconstitutionally Vague.**

14      Bill 4-21's vague, strict liability provisions are facially invalid for the same reasons

15  Chicago's law was found facially invalid in *Morales*. As explained above, Bill 4-21 affects and

16  chills plaintiffs' Second Amendment right to possess firearms in the home. Under *McDonald*, that

17  Second Amendment right is "fundamental" and thus incorporated against the State under the Due

18  Process Clause of the Fourteenth Amendment. *McDonald*, 561 U.S. at 778 ("the Framers and

19  ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those

20  fundamental rights necessary to our system of ordered liberty"). See *Galloway*, 365 Md. at 616

21  ("If the challenged statute . . . encroaches upon fundamental constitutional rights . . . then the

22

23  MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 38

1    statute should be scrutinized for vagueness on its face.").[8] Bill 4-21 also is contrary to plaintiffs'

2    fundamental Maryland constitutional right to be free of general laws enacted by the County. The

3    Bill encroaches on plaintiffs' right to control the upbringing of their minor children, a fundamental

4    right protected by the Due Process Clause. In a multitude of ways, Bill 4-21 also chills plaintiffs'

5    ability to otherwise enjoy their statutory rights to lawfully possess, transfer, sell and transport

6    firearms in a manner expressly preserved and protected by State law. See also *City of Los Angeles*

7    *v. Patel*, 576 U.S. 409, 415 (2015) (noting that "the Court has allowed such [facial] challenges to

8    proceed under a diverse array of constitutional provisions," including the Due Process Clause, the

9    First Amendment and the Second Amendment and, in *Patel*, allowing a facial challenge to be

10   brought under the Fourth Amendment). At minimum, Bill 4-21 must be struck down as applied to

11   these plaintiffs.

12        As *Morales* stresses, a *mens rea* requirement is especially critical to the question of facial

13   validity under the Due Process Clause. See also *Hill v. Colorado*, 530 U.S. 703, 732 (2000)

14   (stressing the importance of "a scienter requirement" in a vagueness challenge). The Supreme

15   Court has repeatedly stressed the importance of *mens rea* in addressing federal firearms law. See,

16   e.g., *Rehaif v. United States*, 139 S.Ct. 2191, 2196 (2019) (noting "a basic principle that underlies

17   the criminal law, namely, the importance of showing what Blackstone called 'a vicious will'");

18   *Staples v. United States*, 511 U.S. 600, 610-11 (1994) (imposing a *mens rea* requirement for the

19

20   _____

21

22   [8] The Supreme Court recently agreed to decide whether the Second Amendment right to keep and
     bear arms extends outside the home. See *NYSRPA v. Corlett*, --- S.Ct. ---, 2021 WL 1602643
23   (April 26, 2021). Numerous aspects of Bill 4-21 apply outside the home.
     MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
     SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 39

1   illegal possession of a machine gun, noting that "there is a long tradition of widespread lawful gun

2   ownership by private individuals in this country," and explaining that "despite their potential for

3   harm, guns generally can be owned in perfect innocence"). Bill 4-21 has no such *mens rea* or

4   scienter requirement and thus criminalizes conduct and activities regardless of intent or knowledge

5   of a person. Bill 4-21's vagueness, coupled with the total absence of any *mens rea* requirement,

6   renders Bill 4-21 facially invalid.

7          Vagueness permeates nearly all aspects of Bill 4-21. Again, the Bill criminally punishes

8   conduct that takes place within 100 yards of "a place of public assembly," which is defined as "a

9   place where the public may assemble, whether the place is publicly or privately owned." Such

10  places include, but are not limited to, "a park; place of worship; school; library; recreational

11  facility; hospital; community health center; long-term facility; or multipurpose exhibition facility,

12  such as a fairgrounds or conference center." Bill 4-21 includes within these places "all property

13  associated with the place, such as a parking lot or grounds of a building." Virtually all of these

14  provisions are fatally vague.

15         Bill 4-21 does not define "public," and that term could be read to include any person who

16  may be present in Montgomery County for any reason. See https://bit.ly/3iuzjDD (defining "public"

17  to mean "of or relating to people in general"). Most critically, Bill 4-21 does not define "may

18  assemble," but the text of Bill 4-21 makes clear that the term broadly extends to places regardless

19  of "whether the place is publicly or privately owned." The dictionary definition for "assemble"

20  includes "to bring together (as in a particular place or for a particular purpose)" and simply "to

21  meet together." https://bit.ly/3pFvFbm. The primary dictionary definition of "may" is that the term

22  is "used to indicate possibility or probability." https://bit.ly/3iBwyjF. Thus, the term "may

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 40

1  assemble" could be read to include the mere possibility of a meeting of two or more people in any

2  place for any reason, presently or in the future, including for every-day activities such as lunch.

3  By enlarging the ordinance to reach into places where the public "may assemble" and reaching

4  into private property, Bill 4-21 could be read to encompass every public sidewalk, street, Starbucks,

5  restaurant and virtually any private building open to the public in any way in the entire County.

6  Bill 4-21 fails to provide any notice of the actual location of such places and it is impossible to

7  predict or know where two or more members of the "public" "may" possibly meet. These locations

8  could even change in their application from day to day. Plaintiffs are thus left to guess at where

9  two or more members of the "public" "may assemble" on any given day. Fundamentally, the term

10  "may assemble" is "so broad as to be susceptible to irrational and selective patterns of enforcement.'"

11  *Galloway*, 365 Md. at 616.

12      Other locales specified in Bill 4-21 are likewise hopelessly vague. Bill 4-21 bans conduct

13  taking place at or within 100 yards of a "library," but includes no definition of "library." Instead,

14  Bill 4-21 made "library" extremely broad by deleting the statute's former definition of "library"

15  as limited to a "public" library and then extending the reach of "library" even further so as to

16  encompass places regardless of "whether the place is publicly or privately owned." The dictionary

17  definition for a "library" includes not only "a place in which literary, musical, artistic, or reference

18  materials (such as books, manuscripts, recordings, or films) are kept for use but not for sale." but

19  also includes "a collection resembling or suggesting a library" and "a series of related books issued

20  by a publisher" and "a collection of publications on the same subject." https://bit.ly/2U1Z6cd. The

21  term could thus be arguably read to include any collections of publications of any type or size

22  regardless of whether the collection is in the home or private building. Plaintiffs are left to guess

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 41

1  as to meaning of "library" and to further guess at present or future locations of any such "libraries."

2  Again, the term "'library" is "so broad as to be susceptible to irrational and selective patterns of

3  enforcement.'" *Galloway*, 365 Md. at 616.

4        Bill 4-21 bans conduct at or within 100 yards of a "recreational facility" but does not define

5  the term. The bill does, however, make the term extremely broad by deleting the statute's former

6  limitation to a "government-owned or operated" recreational facility and then extending that reach

7  even further to encompass private property. The term "recreational facility" is not found in

8  commonly used dictionaries, see, e.g., https://bit.ly/3vbR90W, and thus it could be arguably read

9  to include a backyard swing set or private playground or other "facility" where "recreation" may

10  take place. In this respect, "facility" simply could mean "something that makes an action, operation,

11  or course of conduct easier" or "something . . . that is built, installed, or established to serve a

12  particular purpose." https://bit.ly/2Telezw. Similarly, Bill 4-21 adds to the statute's preexisting

13  scope to include a "community health center" and "long-term facility," but provides no definition

14  for either type of facility and there are no dictionary definitions for these terms. The term

15  "community health center" might be understood to include a hospital or clinic, but it could just as

16  well might include a private doctor's office. The term "long-term facility" is even vaguer as it does

17  not even inform the reader of nature of the "long-term facility," *viz.*, long-term for what? It could

18  include, for example, a "long term" storage facility. Plaintiffs can only guess as to meaning of

19  these terms and their locations. Again, all these terms are "so broad as to be susceptible to irrational

20  and selective patterns of enforcement.'" *Galloway*, 365 Md. at 616.

21        Bill 4-21 includes within its bans conduct and possession within 100 yards of a "school."

22  Bill 4-21 does not define "school" but it does delete the statute's former limitation to "elementary

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 42

1    or secondary" school and then extends this term's reach even further to encompass public and

2    private property. The dictionary definition of a "school" includes "an establishment offering

3    specialized instruction" such as "a secretarial school" or "driving schools." https://bit.ly/3ziLj12.

4    As thus redefined, Bill 4-21 arguably regulates at or within 100 yards of any "school" of any size

5    and of any type, private or public, including locations where any organization, of any type, may

6    present instruction of any kind, including instruction to adults. The term "school" could even

7    extend to the specialized firearms instruction offered by plaintiffs ICE Firearms and Ronald and

8    Nancy David, Complaint ¶¶ 32-34, as well as to any instruction offered by plaintiff Engage

9    (Complaint ¶ 26), or by plaintiff Weaver (Complaint ¶ 30), or by MSI instructors (Complaint ¶

10   24). Plaintiffs are left to guess as to the meaning of the term and further guess at the locations

11   encompassed by the term. Once again, the term is "so broad as to be susceptible to irrational and

12   selective patterns of enforcement.'" *Galloway*, 365 Md. at 616.

13         Bill 4-21 bans conduct at and within 100 yards of a "park," but the Bill does not define

14   "park." Bill 4-21 deliberately deleted the ordinance's former definition of "park" as including only

15   a "government owned" park that was "identified by the Maryland-National Capital Park and

16   Planning Commission." The Bill extends this term's reach even further to encompass public and

17   private property. The dictionary definition for "park" includes a wide variety of areas, including

18   "a tract of land that often includes lawns, woodland, and pasture attached to a country house and

19   is used as a game preserve and for recreation" or "a space occupied by military vehicles, materials,

20   or animals." https://bit.ly/355pBQa. Plaintiffs are left to guess as to the meaning and locations

21   encompassed within the Bill's new and vague use of "park." Once again, the term is "so broad as

22   to be susceptible to irrational and selective patterns of enforcement.'" *Galloway*, 365 Md. at 616.

23

1    The actual items subject to regulation under Bill 4-21 are likewise hopelessly vague. Bill

2  4-21 defines "ghost gun" to include "an unfinished receiver." Bill 4-21 then purports to ban the

3  sale, rental, lending or the giving of a ghost gun (defined to include an "unfinished receiver") to a

4  minor or affording access to an "unfinished receiver" to a minor. Bill 4-21 also bans the sale,

5  transfer, manufacture, assembly, possession or transport of a ghost gun (again, defined to include

6  an "unfinished receiver"), including banning the mere possession of an unfinished receiver in the

7  home. Yet, Bill 4-21 does not define "unfinished receiver." As noted above, under Federal and

8  Maryland firearms law, an object is either a receiver or not a receiver – there is no such thing in

9  the law as an "unfinished receiver." See ATF Firearms Technology Branch Technical Bulletin 14-

10  01.[9] The term is an oxymoron. Unsurprisingly, there is no dictionary definition for the term.

11  Conceivably, an "unfinished receiver" could even include a "zero percent" receiver, which is just

12  a solid block of aluminum, steel or polymer. Nothing in Federal law, even as proposed in the

13  recently published Department of Justice and ATF rulemaking proceeding, remotely goes that far.

14  Complaint ¶ 19. Plaintiffs can only guess as to the meaning of "unfinished receiver" as used in

15  Bill 4-21.

16    Bill 4-21 broadly bans a "major component" of a firearm and defines the term "major

17  component" to include "the slide or cylinder" and, in the case of a rifle or shotgun, the "barrel."

18  As explained above, none of these "major components" of a firearm (other than a receiver) is

19  actually a "firearm" under Federal or Maryland law. A "slide or cylinder" of a handgun and the

20

21

22

23  [9] See note 2, *supra*.
MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 44

1    "barrel" of a "rifle or shotgun" are lawfully obtained, possessed, transferred and transported in

2    interstate and intrastate commerce without restrictions under Federal and Maryland law. Such

3    "major components," as thus defined by Bill 4-21, can be lawfully used to build a fully serialized

4    firearm for personal use, as only the receiver is required to be serialized under Federal and

5    Maryland law. Complaint ¶ 11. Thus, in defining a "ghost gun" to include these defined

6    "components" and then banning "ghost guns," Bill 4-21 could be applied to criminalize mere

7    possession of a fully serialized firearm because banned "components" were used to build it. Again,

8    Bill 4-21 contains no *mens rea* requirement. Plaintiffs are left to guess as to whether law

9    enforcement would consider such firearms to be illegal under Bill 4-21. Arbitrary or discriminatory

10   selective enforcement is virtually guaranteed.

11           In sum, Bill 4-21 is so vague that it fails "to inform those who are subject to it what conduct

12   on their part will render them liable to its penalties" and "is so broad as to be susceptible to

13   irrational and selective patterns of enforcement." *Galloway,* 356 Md. at 614-16. Bill 4-21

14   "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on

15   an ad hoc and subjective basis." *Grayned,* 408 U.S. at 108-109. See also *Ashton,* 339 Md. at 89

16   (striking down a city ordinance that failed to define "bona fide"); *In Re Leroy T.,* 285 Md. at 512-

17   13 (striking down a city ordinance that failed to define "commonly used"). Faced with such

18   vagueness "the role of courts under our Constitution is not to fashion a new, clearer law to take its

19   place, but to treat the law as a nullity and invite [the legislature] to try again." *Davis,* 139 S.Ct. at

20   2323. Bill 4-21 must be struck down for vagueness.

21

22

23

1   **VI.    PLAINTIFFS HAVE STANDING TO OBTAIN THE RELIEF REQUESTED.**

2         There can be no doubt that plaintiffs have standing to bring this suit. Under Maryland law,

3   standing to seek a declaratory judgment requires only that the plaintiffs satisfy the elements of MD

4   Code, Courts and Judicial Proceedings, § 3-409(a): "(1) An actual controversy exists between

5   contending parties; (2) Antagonistic claims are present between the parties involved which indicate

6   imminent and inevitable litigation; *or* (3) A party asserts a legal relation, status, right, or privilege

7   and this is challenged or denied by an adversary party, who also has or asserts a concrete interest

8   in it." (Emphasis added). Any one of these three categories of harm are sufficient. The Court of

9   Appeals has thus interpreted this language to mean that a plaintiff need only establish that he or

10  she has suffered "some kind of special damage from such wrong differing in character and kind

11  from that suffered by the general public." *Voters Organized for the Integrity of City Elections v.*

12  *Baltimore City Elections Bd.*, 451 Md. 377, 396, 152 A.3d 827 (2017). See also *Fraternal Order*

13  *of Police v. Montgomery Cty.,* 446 Md. 490, 506-07, 132 A.3d 311 (2016) (holding that a police

14  union had standing to challenge the County's use of public funds to defeat a referendum

15  concerning statute on collective bargaining because statute affected the scope of bargaining by the

16  union on behalf of its members).

17         All those elements are easily satisfied here. As detailed in the Complaint (¶¶ 24-34), each

18  of the individual plaintiffs and businesses face "a realistic danger of sustaining a direct injury as a

19  result of the [law's] operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union*, 442

20  U.S. 289, 298 (1979); *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d

21  738, 747-48 (9th Cir. 2020). Each of the individual plaintiffs, including the two businesses, has

22  engaged and intends to engage in conduct arguably regulated by the provisions of Bill 4-21,

23

24  MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
    SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 46

1  including the actual or constructive possession of firearms, major components and "unfinished

2  receivers." At least one of the plaintiffs has a minor child in the household, engages in conduct

3  arguably prohibited by Bill 4-21 in the presence of minors, or may engage in firearm instruction

4  of minors. Complaint ¶¶ 24, 26, 27, 30, 31. MSI in particular is harmed by Bill 4-21 in a way

5  different from the general public as it submitted comments in opposition to Bill 4-21 and those

6  comments were ignored by the County. Indeed, the County even went so far as to exclude those

7  comments a part of the legislative packet made public by the County. Complaint ¶ 25 and Exh. B

8  to the Complaint. That conduct is suggestive of bad faith on the part of the County.

9       Each of the individual plaintiffs and businesses is and will be chilled in the actions they

10  may take by the prospect of enforcement of Bill 4-21's provisions. Each of the individual plaintiffs

11  is hindered or chilled in his or her right to live or work in Montgomery County or to otherwise

12  travel through Montgomery County by the threat of enforcement of the provisions of Bill 4-21.

13  Each of the plaintiffs' businesses likewise is and will be adversely affected in the manner in which

14  they conduct their businesses. Each of the individual plaintiffs and businesses has been harmed

15  and is imminently threatened with future harm by the prospect of enforcement of the

16  unconstitutionally vague provisions of Bill 4-21. Complaint ¶ 65. A declaratory judgment is

17  appropriate if even "one plaintiff" has standing. *Voters Organized for the Integrity of City*

18  *Elections*, 451 Md. at 398.

19       It is also clear that plaintiffs may bring a pre-enforcement action challenging Bill 4-21 as

20  they are not required "to risk criminal prosecution to determine the proper scope of regulation."

21  *Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965). See also *MedImmune, Inc. v. Genentech, Inc.*,

22  549 U.S. 118, 128-29 (2007) (standing does "not require a plaintiff to expose himself to liability

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 47

1    before bringing suit to challenge the basis for the threat—for example, the constitutionality of a

2    law threatened to be enforced"). Maryland law is in full accord. *Pizza di Joey, LLC v. Mayor of*

3    *Baltimore*, 470 Md. 308, 343-44, 235 A.3d 873 (2020) (collecting cases). As Justice Marshall once

4    explained, the inchoate threat of prosecution is like the sword of Damocles in that the value of

5    such a threat "is that it hangs -- not that it drops." *Arnett v. Kennedy*, 416 U.S. 134, 231 (1974)

6    (Marshall, J., dissenting). See *Reno v. ACLU*, 521 U.S. 844, 882 (1997) (same).

7            The purpose of Maryland's Declaratory Judgment Act is "to settle and afford relief from

8    uncertainty and insecurity with respect to rights, status, and other legal relations." MD Code,

9    Courts and Judicial Proceedings, § 3-402. That purpose fits this case perfectly. As a general rule,

10   a declaratory judgment is mandatory, when otherwise properly requested. See, e.g., *Post v.*

11   *Bregman*, 349 Md. 142, 159-60, 707 A.2d 806 (1998) ("when an action for declaratory judgment

12   does clearly lie, as it did in this case, it is ordinarily not permissible for a court to avoid declaring

13   the rights of the parties by entering judgment on another pending count" and "[t]he existence of

14   another remedy, at law or in equity, does not ordinarily defeat a party's right to seek and obtain a

15   declaratory judgment"); *Christ by Christ v. Md. Dept. of Nat. Res.*, 335 Md. 427, 435, 644 A.2d

16   34 (1994) ("Where a controversy is appropriate for resolution by declaratory judgment, however,

17   the trial court must render a declaratory judgment."); *Lovell Land, Inc. v. State Highway Admin.*,

18   408 Md. 242, 256, 969 A.2d 284 (2009) (same).

19           Permanent injunctive relief is also appropriate as plaintiffs are substantially and irreparably

20   harmed by Bill 4-21 in ways that at not compensable through an award of damages. *El Bey v.*

21   *Moorish Science Temple of America, Inc.*, 362 Md. 333, 355, 765 A.2d 132 (2001). As explained

22   above, the prospect of enforcement of the penal provisions of Bill 4-21, with its extremely vague

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 48

1    and otherwise illegal provisions, will chill the lawful activities of plaintiffs, impair their

2    constitutional right to control the upbringing of their children, and to travel and conduct business

3    in Montgomery County. *Maryland–Nat'l Capital Park and Planning Comm'n v. Washington Nat'l*

4    *Arena*, 282 Md. 588, 615, 386 A.2d 1216 (1978) ("irreparable injury is suffered whenever

5    monetary damages are difficult to ascertain or are otherwise inadequate"). See also *Ademiluyi v.*

6    *Egbuonu*, 466 Md. 80, 133-34, 215 A.3d 329 (2019). The public interest is served, as a matter of

7    law, by enjoining the unconstitutional and *ultra vires* actions of the County. See, e.g., *Legend Night*

8    *Club v. Miller*, 637 F.3d 291, 303 (4th Cir. 2011) ("upholding constitutional rights is in the public

9    interest").

10           Plaintiffs expressly reserve the right to seek compensatory damages and equitable relief

11   under Count III (Takings claim). Pursuant to 42 U.S.C. § 1983, plaintiffs likewise reserve the right

12   to seek compensatory, nominal and punitive damages under Count IV, in addition to the

13   declaratory and equitable relief sought in this motion. However, it is unnecessary for this Court to

14   reach damages claims at this juncture. Since Bill 4-21 will not take effect until July 16, 2021,

15   declaratory and equitable relief on Counts I, II, and IV will bear directly on the amount and nature

16   of the damages available under Counts III and IV. If Bill 4-21 is enjoined prior to its effective date,

17   or promptly thereafter, the amount of damages under these Counts will likely be lessened. Swift

18   resolution of this motion thus serves the interests of plaintiffs and the County alike. Plaintiffs have

19   pled a jury and plaintiffs' entitlement to damages under these claims are jury questions that can be

20   resolved at trial, should trial be necessary. As stated in *Smith v. Wade*, 461 U.S. 30, 56 (1983), "a

21   jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's

22   conduct is shown to be motivated by evil motive or intent, *or when it involves reckless or callous*

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 49

1  *indifference to the federally protected rights of others*." (Emphasis added). See also *Beardsley v.*

2  *Webb,* 30 F.3d 524, 531 (4th Cir. 1994) (same). The County has been recklessly and callously

3  indifferent to the Due Process rights of plaintiffs, including the constitutional right of plaintiffs to

4  parent their children. At the least, plaintiffs are entitled to nominal damages on a successful Section

5  1983 claim. *Uzuegbunam v. Preczewski*, 141 S.Ct. 792 (2021). Complaint ¶ 66.

6      Finally, the availability and amount of attorney's fees under 42 U.S.C. § 1988, are collateral

7  matters that likewise can be addressed at a later stage. See, e.g., *Maher v. Gagne,* 448 U.S. 122,

8  132 (1980) (an award of Section 1988 fees is permitted where "the plaintiff prevails on a wholly

9  statutory, non-civil-rights claim pendent to a substantial constitutional claim"); *Osterweil v.*

10  *Bartlett*, 92 F.Supp 3d 14, 23 (N.D.N.Y. 2015) (awarding Section 1988 fees even though the

11  plaintiff prevailed only on question of state statutory interpretation); *Maryland Green Party v.*

12  *State Board of Elections*, 165 Md.App. 113, 125-26, 884 A.2d 789 (2005) (awarding Section 1988

13  fees); *Johnson v. Wright*, 92 Md.App. 179, 181, 607 A.2d 103 (1992) (holding that fees are

14  collateral). Given the potentially dispositive nature of the declaratory and equitable relief sought

15  under Counts I, II and IV, the Court should apply MD Rule 2-602 and hold that there is no just

16  reason for delay and enter final judgment granting declaratory and injunctive relief on Counts I, II

17  and IV. See *Waters v. U.S. Fidelity & Guar. Co.* 328 Md. 700, 616 A.2d 884 (1992).

18

19

20

21

22

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 50

1

**CONCLUSION**

2

For the foregoing reasons, the motion for partial summary judgment should be granted.

3

Plaintiffs respectfully request an emergency hearing and a decision on this motion prior to July 16,

4

2021, the effective date of Bill 4-21.

5

Respectfully submitted,

6

7

MARK W. PENNAK

8

Maryland Shall Issue, Inc.
9613 Harford Rd
Ste C #1015

9

Baltimore, MD 21234-21502
mpennak@marylandshallissue.org

10

Phone: (301) 873-3671
MD Atty No. 1905150005

11

12

*Counsel for Plaintiffs*

13

14

15

16

17

18

19

20

21

22

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 51

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2021, the foregoing **PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED** and **MEMORANDUM IN SUPPORT** of that motion, was served by hand on defendant Montgomery County by delivering a copy of these filings by hand to:

    Marc P. Hansen, Esq.
    County Attorney,
    Montgomery County, MD
    101 Monroe Street, 3rd floor
    Rockville, Maryland 20850

                                 *Mark W. Pennak*

                             MARK W. PENNAK
                             Maryland Shall Issue, Inc.
                             9613 Harford Rd, Ste, C #1015
                             Baltimore, MD 21234-21502
                             mpennak@marylandshallissue.org
                             Phone: (301) 873-3671

                             MD Atty No. 1905150005

Dated: June 16, 2021



### Circuit Court for Montgomery County, Maryland
### Office of the Assignment Commissioner
50 Maryland Avenue, Room 1003
Rockville, Maryland 20850
(240) 777-9000

June 3, 2021

## Notice of Pending Events
( 884 )

Case# 485899-V          MARYLAND SHALL ISSUE INC, ET AL vs. MONTGOMERY COUNTY MARYLAND

Having entered your appearance, please be advised that the following events have been previously scheduled in this case:

| Event Date | Time | Description | Length |
|---|---|---|---|
| 11/12/2021 | 10:30 AM | STATUS/PRETRIAL HRG. | |

**Please consult the monitors on the lobby level for your courtroom assignment.**
Handicap parking for the Montgomery County Circuit Court is located along Maryland Avenue near its intersection with Courthouse Square.

**Please direct all inquiries to the Assignment Office.**

Possession and use of cell phones, computers, other electronic devices, and cameras may be limited or prohibited in designated areas of the court facility. The use of any camera, cell phone, or any electronic device for taking, recording, or transmitting photographs, videos, or other visual images is prohibited in the court facility at all times, unless the court expressly grants permission in a specific instance.



**FILED**

JUN 0 3 2021

Clerk of the Circuit Court
Montgomery County, Md.

(HEARING.NOTICES )06/03/2021 00:15:06

6

Addressee Checklist          (HEARING.NOTICES  ) 06/03/2021 00:15:06

Case# 485899-V        MARYLAND SHALL ISSUE INC, ET AL vs. MONTGOMERY COUNTY MARYLA

MARK W PENNAK, ESQ
MARYLAND SHALL ISSUE, INC.
STE C #1015
9613 HARFORD RD
PARKVILLE MD 21234

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

## WRIT OF SUMMONS
(248)

### Case No: **485899-V**

TO:

(Service Address)

You are hereby summoned to file a <u>written</u> response by pleading or motion in this court to the attached complaint filed by:

**MARYLAND SHALL ISSUE INC**

within **30** days after service of this summons upon you.

Witness, the Honorable Chief Judge of the Sixth Judicial Circuit of Maryland.

TO THE PERSON SUMMONED:

1. Failure to respond within the time allowed may result in a default judgment or the granting of the relief sought against you.

2. If you have been served with a Scheduling Order, your appearance is required pursuant to the Scheduling Order, regardless of the date your response is due.

3. If you have questions, you should see an attorney immediately. If you need help finding an attorney, you may contact the Bar Association of Montgomery County's Lawyer Referral Service online at www.barmont.org or by calling (301) 279-9100.

Date Issued: **06/02/2021**



*Karen A Bushell*

Karen A. Bushell
CLERK of the Circuit Court
Montgomery County, Maryland
50 Maryland Avenue
Rockville, MD 20850-2393

NOTE:

1. This summons is effective for service only if served within 60 days after the date it is issued.

2. Proof of service shall set out the name of the person served, the date, and the particular place and manner of service. If service is not made, please state the reason(s).

3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.

4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).

### RETURN

[ ] Served _____ on _____ at _____
           (Whom)                      (Date)        (City/State/Country)

[ ] Summons and [ ] Show Cause Order and [ ] Complaint/Petition/Motion Served

[ ] Unserved _____ _____
           (Date)       (Reason)

_____ [ ] Sheriff
(Signature)

SUM1KRP 20150219                                                 SUM1KRP 06/02/2021 13:13:07

FILED COPY

06/02/2021 13:13:07   Addressee Check Sheet - 485899-V                    Page 01

MONTGOMERY COUNTY MARYLAND
101 MONROE STREET
ROCKVILLE MD 20850

Agent for MONTGOMERY COUNTY MARYLAND:
MARC P HANSEN
COUNTY ATTORNEY
MONTGOMERY COUNTY MD
101 MONROE STREET 3RD FLOOR
ROCKVILLE MARYLAND 20850

SUM1KRF



**Karen A. Bushell**
Clerk of the Circuit Court for Montgomery County, Maryland
50 Maryland Avenue
Rockville, Maryland 20850-2397

June 2, 2021

RE:  Notice of New Case Number for
     MARYLAND SHALL ISSUE INC, ET AL vs MONTGOMERY COUNTY MARYLAND
     Reference Case#: N/A
     Case Type: VIOLATION

                              (836)

Dear Sir/Madam:

     Please be advised that the above referenced case was received on
May 28, 2021, in the office of the Clerk for Montgomery County.
This matter has been assigned case number **485899-V**_____.  Please
include this case number on all future papers to be filed in this case.


                         Sincerely,



                         _Karen a Bushell_____
                         Clerk of the Circuit Court
                         for Montgomery County,
                         Maryland

NEWCASE 06/03/2021 13:20:07

4

06/02/2021 13:20:07  Addressee Check Sheet - 485899-V                    Page 01

MARYLAND SHALL ISSUE INC                JOSHUA EDGAR
9613 HARFORD RD STE C #1015             8416 FLOWER HILL TER
PARKVILLE MD 21234-2150                 GAITHERSBURG MD 20879

ENGAGE ARMAMENT LLC                     ICE FIREARMS & DEFENSIVE TRAINING LLC
701 E GUDE DR STE #101                  24129 PECAN GROVE LANE
ROCKVILLE MD 20850                      GAITHERSBURG MD 20882

ANDREW RAYMOND                          RONALD DAVID
14819 POPLAR HILL RD                    24129 PECAN GROVE LANE
GERMANTOWN MD 20874                     GAITHERSBURG MD 20882

CARLOS RABANALES                        NANCY DAVID
7727 GREEN VALLEY RD                    24129 PECAN GROVE LANE
FREDERICK MD 21701                      GAITHERSBURG MD 20882

BRANDON FERRELL                         MONTGOMERY COUNTY MARYLAND
40 MOUNTAIN LAUREL CT                   101 MONROE STREET
GAITHERSBURG MD 20879                   ROCKVILLE MD 20850

DERYCK WEAVER                           MARK W PENNAK, ESQ
8712 LOWELL STREET                      MARYLAND SHALL ISSUE, INC.
BETHESDA MD 20817                       STE C #1015
                                        9613 HARFORD RD
                                        PARKVILLE MD 21234

NEWCASE

## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

**MARYLAND SHALL ISSUE INC, ET AL**
Plaintiff

v.                                                          Case No. **485899-V**

**MONTGOMERY COUNTY MARYLAND**
Defendant

### Scheduling Order - Track II
(181)
COMPLAINT FILED ON: 05/28/2021

THIS ORDER IS YOUR OFFICIAL NOTICE OF CASE DEADLINES AND HEARINGS REQUIRING APPEARANCES. FAILURE TO APPEAR AT HEARINGS OR COMPLY WITH ALL REQUIREMENTS MAY RESULT IN DISMISSAL, DEFAULT JUDGMENT, EXCLUSION OF WITNESSES AND/OR EXHIBITS, ASSESSMENTS OF COSTS AND EXPENSES, INCLUDING ATTORNEY FEES, OR OTHER SANCTIONS.

**EVENT:    [ATTENDANCE REQUIRED AT EVENTS]**                                        **DEADLINE:**

| | |
|---|---|
| *DEADLINE: MOTION FOR ALTERNATIVE SERVICE FILED* | *09/27/2021* |
| *DEADLINE: DISCOVERY COMPLETED* | *10/18/2021* |
| *DEADLINE: PRETRIAL STATEMENT DUE* | *10/27/2021* |
| *DEADLINE: DISPOSITIVE MOTIONS FILED* | *11/12/2021* |

**STATUS/PRETRIAL HEARING, 11/12/2021 10:30 AM ATTENDANCE REQUIRED**
*DEADLINE: PLEADING AMENDMENT TO BE DETERMINED AT PRETRIAL.*

**TRIAL COUNSEL SHALL APPEAR** AT THE STATUS/PRETRIAL HEARING, ACCOMPANIED BY OR WITH TELEPHONE ACCESS TO THE INDIVIDUAL(S) WITH AUTHORITY TO SETTLE THE CASE. TRIAL COUNSEL SHALL SUBMIT A WRITTEN PRETRIAL STATEMENT THAT 1) DESCRIBES THE NATURE OF THE CASE; 2) SETS FORTH CLAIMS AND/OR DEFENSES; 3) DETAILS STIPULATIONS; AND 4) IDENTIFIES WITNESSES AND EXHIBITS. MOTIONS FILED IN TRACK II ACTIONS SHALL NOT EXCEED 15 PAGES INCLUDING ANY MEMORANDUM OF LAW AND OPPOSITION/REPLY MOTIONS SHALL NOT EXCEED 10 PAGES WITHOUT LEAVE OF THE COURT.

THE TRIAL DATE SHALL BE SET AT THE STATUS/PRETRIAL HEARING BETWEEN THE DATES NOTED BELOW. COUNSEL ARE ENCOURAGED TO CLEAR DATES WITH ONE ANOTHER AND THE ASSIGNMENT OFFICE PRIOR TO THE CASE BEING CALLED. [TRIAL DATE BETWEEN: 12/02/2021 AND 02/23/2022.]

ANY MODIFICATIONS OF THIS SCHEDULING ORDER MUST BE REQUESTED BY WRITTEN MOTION FILED IN ADVANCE OF THE DEADLINES OR HEARING DATES SOUGHT TO BE MODIFIED, PROVIDING GOOD CAUSE TO JUSTIFY ANY MODIFICATION THEREOF.

Possession and use of cell phones, computers, other electronic devices, and cameras may be limited or prohibited in designated areas of the court facility. The use of any camera, cell phone, or any electronic device for taking, recording, or transmitting photographs, videos, or other visual images is prohibited in the court facility at all times, unless the court expressly grants permission in a specific instance.

Robert A. Greenberg
**Robert A. Greenberg**
**Circuit Administrative Judge**

**ENTERED**

JUN 02 2021 MB

Clerk of the Circuit Court
Montgomery County, Md

IF TRACK INFORMATION DOES NOT CORRESPOND TO ASSIGNED TRACK, COUNSEL FOR THE DEFENDANT SHALL NOTIFY THE DCM COORDINATOR AT (240) 777-9358. **QUESTIONS?** Please see the Court's GUIDE TO DCM ORDERS and www.montgomerycountymd.gov/circuitcourtDCM.

06/02/2021 13:19:52   Addressee Check Sheet - 485899-V                    Page 01

MONTGOMERY COUNTY MARYLAND
101 MONROE STREET
ROCKVILLE MD 20850

MARK W PENNAK, ESQ
MARYLAND SHALL ISSUE, INC.
STE C #1015
9613 HARFORD RD
PARKVILLE MD 21234

CIVSCHD2

## Circuit Court for Montgomery County, Maryland
### 50 Maryland Avenue
### Rockville, Maryland 20850

ADMINISTRATIVE NOTICE

You have received the attached notice and/or Order of the Court from the Circuit Court for Montgomery County.

Due to the COVID-19 pandemic, many court proceedings are being held remotely. This means it is possible that your court appearance may be by telephone or videoconference.

If you are represented by an attorney, please contact him or her to determine whether you need to personally appear in court.

If you are not represented by an attorney, please contact the Montgomery County Circuit Court Assignment Office at 240-777-9000 to determine whether your personal appearance is required at the courthouse on the day(s) in question. Please be sure the Court is provided with an email address and/or telephone number where you can be reached.

Robert A. Greenberg,
County Administrative Judge

IN THE CIRCUIT COURT FOR Montgomery County, Maryland
                                                            (City or County)

## CIVIL - NON-DOMESTIC CASE INFORMATION REPORT

### DIRECTIONS

*Plaintiff*: This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Judge of the Court of Appeals pursuant to Rule 2-111(a).

*Defendant*: You must file an Information Report as required by Rule 2-323(h).

### *THIS INFORMATION REPORT CANNOT BE ACCEPTED AS A PLEADING*

FORM FILED BY: ☒PLAINTIFF   ☐DEFENDANT      CASE NUMBER _____
                                                                      (Clerk to insert)

CASE NAME: Maryland Shall Issue, Inc., et al.    vs.   Montgomery County, Maryland
                              Plaintiff                                              Defendant

PARTY'S NAME: Maryland Shall Issue, Inc.                PHONE: 410-849-9197

PARTY'S ADDRESS: 9613 Harford Rd Ste C #1015 Baltimore, MD 21234-2150

PARTY'S E-MAIL: info@marylandshallissue.org

**If represented by an attorney:**

PARTY'S ATTORNEY'S NAME: Mark W. Pennak          PHONE: 301 873 3671

PARTY'S ATTORNEY'S ADDRESS: 9613 Harford Rd Ste C #1015 Baltimore, MD 21234-2150

PARTY'S ATTORNEY'S E-MAIL: mpennak@marylandshallissue.org

JURY DEMAND? ☒Yes ☐No

RELATED CASE PENDING? ☐Yes ☒No  If yes, Case #(s), if known: _____

ANTICIPATED LENGTH OF TRIAL?:  __8__ hours _____ days

### PLEADING TYPE

New Case: ☒Original     ☐Administrative Appeal   ☐ Appeal
Existing Case: ☐Post-Judgment   ☐Amendment
*If filing in an existing case, skip Case Category/ Subcategory section - go to Relief section.*

### IF NEW CASE: CASE CATEGORY/ SUBCATEGORY (*Check one box.*)

**TORTS**
- ☐ Asbestos
- ☐ Assault and Battery
- ☐ Business and Commercial
- ☐ Conspiracy
- ☐ Conversion
- ☐ Defamation
- ☐ False Arrest/Imprisonment
- ☐ Fraud
- ☐ Lead Paint - DOB of Youngest Plt: _____
- ☐ Loss of Consortium
- ☐ Malicious Prosecution
- ☐ Malpractice-Medical
- ☐ Malpractice-Professional
- ☐ Misrepresentation
- ☐ Motor Tort
- ☐ Negligence
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability
- ☐ Specific Performance
- ☐ Toxic Tort
- ☐ Trespass
- ☐ Wrongful Death

**CONTRACT**
- ☐ Asbestos
- ☐ Breach
- ☐ Business and Commercial
- ☐ Confessed Judgment (Cont'd)
- ☐ Construction
- ☐ Debt
- ☐ Fraud

**[Government/Property column]**
- ☐ Government
- ☐ Insurance
- ☐ Product Liability

**PROPERTY**
- ☐ Adverse Possession
- ☐ Breach of Lease
- ☐ Detinue
- ☐ Distress/Distrain
- ☐ Ejectment
- ☐ Forcible Entry/Detainer
- ☐ Foreclosure
  - ☐ Commercial
  - ☐ Residential
  - ☐ Currency or Vehicle
  - ☐ Deed of Trust
  - ☐ Land Installments
  - ☐ Lien
  - ☐ Mortgage
  - ☐ Right of Redemption
  - ☐ Statement Condo
- ☐ Forfeiture of Property / Personal Item
- ☐ Fraudulent Conveyance
- ☐ Landlord-Tenant
- ☐ Lis Pendens
- ☐ Mechanic's Lien
- ☐ Ownership
- ☐ Partition/Sale in Lieu
- ☐ Quiet Title
- ☐ Rent Escrow
- ☐ Return of Seized Property
- ☐ Right of Redemption
- ☐ Tenant Holding Over

**PUBLIC LAW**
- ☐ Attorney Grievance
- ☐ Bond Forfeiture Remission
- ☒ Civil Rights
- ☐ County/Mncpl Code/Ord
- ☐ Election Law
- ☐ Eminent Domain/Condemn.
- ☐ Environment
- ☐ Error Coram Nobis
- ☐ Habeas Corpus
- ☐ Mandamus
- ☐ Prisoner Rights
- ☐ Public Info. Act Records
- ☐ Quarantine/Isolation
- ☐ Writ of Certiorari

**EMPLOYMENT**
- ☐ ADA
- ☐ Conspiracy
- ☐ EEO/HR
- ☐ FLSA
- ☐ FMLA
- ☐ Workers' Compensation
- ☐ Wrongful Termination

**INDEPENDENT PROCEEDINGS**
- ☐ Assumption of Jurisdiction
- ☐ Authorized Sale
- ☐ Attorney Appointment
- ☐ Body Attachment Issuance
- ☐ Commission Issuance

**[right column]**
- ☐ Constructive Trust
- ☐ Contempt
- ☐ Deposition Notice
- ☐ Dist Ct Mtn Appeal
- ☐ Financial
- ☐ Grand Jury/Petit Jury
- ☐ Miscellaneous
- ☐ Perpetuate Testimony/Evidence
- ☐ Prod. of Documents Req.
- ☐ Receivership
- ☐ Sentence Transfer
- ☐ Set Aside Deed
- ☐ Special Adm. - Atty
- ☐ Subpoena Issue/Quash
- ☐ Trust Established
- ☐ Trustee Substitution/Removal
- ☐ Witness Appearance-Compel

**PEACE ORDER**
- ☐ Peace Order

**EQUITY**
- ☐ Declaratory Judgment
- ☐ Equitable Relief
- ☐ Injunctive Relief
- ☐ Mandamus

**OTHER**
- ☐ Accounting
- ☐ Friendly Suit
- ☐ Grantor in Possession
- ☐ Maryland Insurance Administration
- ☐ Miscellaneous
- ☐ Specific Transaction
- ☐ Structured Settlements

CC-DCM-002 (Rev. 04/2017)          Page 1 of 3

[Left margin vertical text: 2021 MAY 28  PM 3: 16]

## IF NEW OR EXISTING CASE: RELIEF (Check All that Apply)

- ☐ Abatement
- ☐ Administrative Action
- ☐ Appointment of Receiver
- ☐ Arbitration
- ☐ Asset Determination
- ☒ Attachment b/f Judgment
- ☐ Cease & Desist Order
- ☐ Condemn Bldg
- ☐ Contempt
- ☐ Court Costs/Fees
- ☒ Damages-Compensatory
- ☐ Damages-Punitive

- ☐ Earnings Withholding
- ☐ Enrollment
- ☐ Expungement
- ☐ Findings of Fact
- ☐ Foreclosure
- ☒ Injunction
- ☐ Judgment-Affidavit
- ☒ Judgment-Attorney Fees
- ☐ Judgment-Confessed
- ☐ Judgment-Consent
- ☒ Judgment-Declaratory
- ☐ Judgment-Default

- ☐ Judgment-Interest
- ☐ Judgment-Summary
- ☐ Liability
- ☐ Oral Examination
- ☐ Order
- ☐ Ownership of Property
- ☐ Partition of Property
- ☐ Peace Order
- ☐ Possession
- ☐ Production of Records
- ☐ Quarantine/Isolation Order
- ☐ Reinstatement of Employment

- ☐ Return of Property
- ☐ Sale of Property
- ☐ Specific Performance
- ☐ Writ-Error Coram Nobis
- ☐ Writ-Execution
- ☐ Writ-Garnish Property
- ☐ Writ-Garnish Wages
- ☐ Writ-Habeas Corpus
- ☐ Writ-Mandamus
- ☐ Writ-Possession

*If you indicated Liability above*, mark one of the following. This information is not an admission and may not be used for any purpose other than Track Assignment.

☐Liability is conceded.  ☐Liability is not conceded, but is not seriously in dispute. ☐Liability is seriously in dispute.

## MONETARY DAMAGES (Do not include Attorney's Fees, Interest, or Court Costs)

☐ Under $10,000      ☒ $10,000 - $30,000      ☐ $30,000 - $100,000      ☐ Over $100,000

☐ Medical Bills $_____      ☐ Wage Loss $_____      ☐ Property Damages $_____

## ALTERNATIVE DISPUTE RESOLUTION INFORMATION

Is this case appropriate for referral to an ADR process under Md. Rule 17-101? (Check all that apply)

| | | | | |
|---|---|---|---|---|
| A. Mediation | ☐Yes ☒No | | C. Settlement Conference | ☐Yes ☒No |
| B. Arbitration | ☐Yes ☒No | | D. Neutral Evaluation | ☐Yes ☒No |

## SPECIAL REQUIREMENTS

☐ If a Spoken Language Interpreter is needed, **check here and attach form CC-DC-041**

☐ If you require an accommodation for a disability under the Americans with Disabilities Act, **check here and attach form CC-DC-049**

## ESTIMATED LENGTH OF TRIAL

*With the exception of Baltimore County and Baltimore City, please fill in the estimated LENGTH OF TRIAL.*       ***(Case will be tracked accordingly)***

- ☐ 1/2 day of trial or less
- ☒ 1 day of trial time
- ☐ 2 days of trial time

- ☐ 3 days of trial time
- ☐ More than 3 days of trial time

## BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM

*For all jurisdictions, if Business and Technology track designation under Md. Rule 16-308 is requested, attach a duplicate copy of complaint and check one of the tracks below.*

- ☐ **Expedited**- Trial within 7 months of Defendant's response
- ☐ **Standard** - Trial within 18 months of Defendant's response

EMERGENCY RELIEF REQUESTED

## COMPLEX SCIENCE AND/OR TECHNOLOGICAL CASE MANAGEMENT PROGRAM (ASTAR)

*FOR PURPOSES OF POSSIBLE SPECIAL ASSIGNMENT TO ASTAR RESOURCES JUDGES under Md. Rule 16-302, attach a duplicate copy of complaint and check whether assignment to an ASTAR is requested.*

☐ **Expedited** - Trial within 7 months of          ☐ **Standard** - Trial within 18 months of
Defendant's response                                                Defendant's response

**IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE CITY, OR BALTIMORE COUNTY, PLEASE FILL OUT THE APPROPRIATE BOX BELOW.**

### CIRCUIT COURT FOR BALTIMORE CITY (CHECK ONLY ONE)

| | | |
|---|---|---|
| ☐ | Expedited | Trial 60 to 120 days from notice. Non-jury matters. |
| ☐ | Civil-Short | Trial 210 days from first answer. |
| ☐ | Civil-Standard | Trial 360 days from first answer. |
| ☐ | Custom | Scheduling order entered by individual judge. |
| ☐ | Asbestos | Special scheduling order. |
| ☐ | Lead Paint | Fill in: Birth Date of youngest plaintiff_____. |
| ☐ | Tax Sale Foreclosures | Special scheduling order. |
| ☐ | Mortgage Foreclosures | No scheduling order. |

### CIRCUIT COURT FOR BALTIMORE COUNTY

| | | |
|---|---|---|
| ☐ | Expedited (Trial Date-90 days) | Attachment Before Judgment, Declaratory Judgment (Simple), Administrative Appeals, District Court Appeals and Jury Trial Prayers, Guardianship, Injunction, Mandamus. |
| ☐ | Standard (Trial Date-240 days) | Condemnation, Confessed Judgments (Vacated), Contract, Employment Related Cases, Fraud and Misrepresentation, International Tort, Motor Tort, Other Personal Injury, Workers' Compensation Cases. |
| ☐ | Extended Standard (Trial Date-345 days) | Asbestos, Lender Liability, Professional Malpractice, Serious Motor Tort or Personal Injury Cases (medical expenses and wage loss of $100,000, expert and out-of-state witnesses (parties), and trial of five or more days), State Insolvency. |
| ☐ | Complex (Trial Date-450 days) | Class Actions, Designated Toxic Tort, Major Construction Contracts, Major Product Liabilities, Other Complex Cases. |

May 28, 2021
**Date**

9613 Harford Rd Ste C #1015
**Address**

Baltimore                    MD        21234-2150
**City                      State     Zip Code**

_____
Signature of Counsel / Party

Mark W. Pennak
**Printed Name**

**CC-DCM-002** (Rev. 04/2017)                              Page 3 of 3

# IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

**MARYLAND SHALL ISSUE, INC.**
9613 Harford Rd., Ste C #1015
Baltimore, Maryland 21234-2150

**ENGAGE ARMAMENT LLC**
701 E. Gude Dr., Ste 101,
Rockville, Maryland 20850

**ANDREW RAYMOND**                     Case No.:
14819 Poplar Hill Rd
Darnestown MD 20874

**CARLOS RABANALES**
7727 Green Valley Rd,
Frederick, Maryland 21701          **JURY DEMANDED**

**BRANDON FERRELL**
40 Mountain Laurel Court
Gaithersburg, Maryland 20879

**DERYCK WEAVER**
8712 Lowell Street
Bethesda, Maryland 20817

**JOSHUA EDGAR**
8416 Flower Hill Terr.
Gaithersburg Maryland 20879

**I.C.E. FIREARMS & DEFENSIVE**
 **TRAINING, LLC,**
24129 Pecan Grove Lane
Gaithersburg, Maryland 20882

**RONALD DAVID**
24129 Pecan Grove Lane
Gaithersburg, Maryland 20882

**NANCY DAVID**
24129 Pecan Grove Lane
Gaithersburg, Maryland 20882

  *Plaintiffs,*

Case: 485899
NEW CASE
CV CLERK FEE-          80.00
MD LEGAL SERV          55.00
RTF-NEW CASE           30.00
TOTAL                 165.00
Rec# M001     Rcpt # 63795
KAB      HR   Blk # 2017
May 28, 2021        03:11 PM

1

v.

**MONTGOMERY COUNTY,**
**MARYLAND**
**101 Monroe Street**
**Rockville, Maryland 20850**

*Defendant.*

**SERVE:**
**Marc P. Hansen, Esq.**
**County Attorney,**
**Montgomery County, MD**
**101 Monroe Street, 3rd floor**
**Rockville, Maryland 20850**

*Service Agent for Defendant.*

---

**VERIFIED COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF**
**AND FOR COMPENSATORY DAMAGES, NOMINAL DAMAGES, PUNITIVE**
**DAMAGES AND ATTORNEY'S FEES**

COME NOW, the Plaintiffs, through counsel, and sue the Defendant, and for cause state as follows:

**INTRODUCTION**

1.      On April 16, 2021, the Defendant, Montgomery County, Maryland ("the County") signed into law Bill 4-21, a copy of which is attached to this complaint as Exhibit A. Bill 4-21 becomes effective on July 16, 2021. Through the enactment of County ordinance 4-21, the County has unlawfully exceeded its powers and jurisdiction to criminally regulate the possession and transfer of lawfully owned firearms in a way that is in direct conflict with Article XI–E, § 3 of the Maryland Constitution and in a manner that is inconsistent with multiple existing Maryland statutes. The

2

restrictions enacted by Bill 4-21 violate the Maryland Takings Clause, Article III § 40 and the Due Process Clause of Article 24 of the Maryland Declaration of Rights by depriving plaintiffs of their vested property rights in the personal property regulated by Bill 4-21. The ban on the mere possession or dissemination of computer code imposed by Bill 4-21 violates the First Amendment to the United States Constitution. The hopelessly vague language adopted by Bill 4-21 violates the Due Process Clause of the Fourteenth Amendment and the Due Process Clause of Article 24 of the Maryland Declaration of Rights. Pursuant to 42 U.S.C. § 1983, Plaintiffs seek declaratory and injunctive relief and compensatory damages, including nominal damages, for the violations of their Federal constitutional rights, as alleged below. Plaintiffs further seek an award of attorneys' fees under 42 U.S.C. § 1988, in an amount to be determined, for the violations of their Federal constitutional rights, as alleged below. Plaintiffs seek declaratory and injunctive relief on their State Constitutional and statutory law claims.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter pursuant to MD Code, Courts and Judicial Proceedings, § 1-501, and MD Code, Courts and Judicial Proceedings, § 3-403, as this complaint seeks prospective declaratory and injunctive relief damages, attorneys' fees pursuant to 42 U.S.C. § 1988, and other relief afforded by 42 U.S.C. § 1983. This complaint raises both state law claims as well as claims arising under the United States Constitution. This declaratory judgment action is brought pursuant to MD Code, Courts and Judicial Proceedings § 3-406, and MD Code, Courts and Judicial Proceedings, § 3-409, for the purpose of determining questions of actual controversy between the parties and terminating uncertainty and controversy giving rise to this proceeding. Plaintiffs request a speedy hearing of this action in accordance with MD Code, Courts and Judicial Proceedings, § 3-409(e).

3

3.      Venue is properly in this Court in this matter pursuant to MD Code, Courts and Judicial Proceedings, § 6-201, as the defendant resides, carries on a regular business and maintains its principal offices in Montgomery County, Maryland. Montgomery County is named as a defendant and is a necessary party to this action under MD Code, Courts and Judicial Proceedings, § 3-405(b).

## MONTGOMERY COUNTY BILL 4-21

4.      In relevant part, Bill 4-21 amends several sections of Chapter 57 of the Montgomery County Code ("County Code"). Specifically, Bill 4-21 amends Section 57-1, to broaden the definition of a "gun or firearm" to include "**a ghost gun**" and, in addition, to provide the following new definitions (additions enacted by Bill 4-21 are **bolded**, portions of existing law that are deleted by Bill 4-21 are in *brackets and italics*):

a. A "**3D printing process**" is defined as "**a process of making a three-dimensional, solid object using a computer code or program, including any process in which material is joined or solidified under computer control to create a three-dimensional object;**"

b. A "ghost gun" is defined as "**a firearm, including an unfinished frame or receiver, that lacks a unique serial number engraved or cased in metal alloy on the frame or receiver by a licensed manufacturer, maker or importer under federal law or markings in accordance with 27 C.F.R. § 479.102. It does not include a firearm that has been rendered permanently inoperable, or a firearm that is not required to have a serial number in accordance with the Federal Gun Control Act of 1968;**"

c. The term "**Undetectable gun**" is defined as:

(A) a firearm that, after the removal of all its parts other than a major component, is not detectable by walk-through metal detectors commonly used at airports or other public buildings;

4

(B) a major component that, if subjected to inspection by the types of detection devices

commonly used at airports or other public buildings for security screening, would not generate

an image that accurately depicts the shape of the component; or

C) a firearm manufactured wholly of plastic, fiberglass, or through a 3D printing process.

      d. A "Major component" is defined as "with respect to a firearm: (1) the slide or cylinder

or the frame or receiver; and (2) in the case of a rifle or shotgun, the barrel;"

      e. A "Place of public assembly" is defined as **a place where the public may assemble,**

**whether the place is publicly or privately owned, including** a *[government owned]* park *[identified*

*by the Maryland-National Capital Park and Planning Commission]*; place of worship; [elementary

or secondary] school; *[public]* library; *[government-owned or -operated]* recreational facility;

**hospital; community health center; long-term facility;** or multipurpose exhibition facility, such as

a fairgrounds or conference center. A place of public assembly includes all property associated with

the place, such as a parking lot or grounds of a building.

     5.    Bill 4-21 amends Section 57-7 of the County Code to provide (new additions in bold):

  **(c) A person must not give, sell, rent, lend, or otherwise transfer to a minor:**

      **(1) a ghost gun or major component of a ghost gun;**

      **(2) an undetectable gun or major component of an undetectable gun;**

      **or**

      **(3) a computer code or program to make a gun through a 3D printing**

      **process.**

  **(d) A person must not purchase, sell, transfer, possess, or transfer a ghost gun, including**

  **a gun through a 3D printing process, in the presence of a minor.**

  **(e) A person must not store or leave a ghost gun, an undetectable gun, or a**

**major component of a ghost gun or an undetectable gun, in a location**

**that the person knows or should know is accessible to a minor.**

6.    Bill 4-21 also amends 57-11 of the County Code to provide (new provisions added by Bill 4-21 are in **bold**, portions deleted by Bill 4-21 are in *brackets* and *italics*):

(a) [A] **In or within 100 yards of a place of public assembly, a** person must not:

(1) sell, transfer, possess, or transport **a ghost gun, undetectable gun,** handgun, rifle, or shotgun, or ammunition **or major component** for these firearms*[, in or within 100 yards of a place of public assembly]*; **or**

(2) **sell, transfer, possess, transport a firearm created through a 3D printing process.**

(b) This section does not:

* * * *;

(3) apply to the possession of a firearm or ammunition, **other than a ghost gun or an undetectable gun,** in the person's own home;

(4) apply to the possession of one firearm, and ammunition for the firearm, at a business by either the owner **who has a permit to carry the firearm,** or one authorized employee of the business **who has a permit to carry the firearm;**

(5) apply to the possession of a handgun by a person who has received a permit to carry the handgun under State law; or

(A) transported in an enclosed case or in a locked firearms rack on a motor vehicle, **unless the firearm is a ghost gun or an undetectable gun;** or

6

\* \* \* \*

7.      Bill 4-21 leaves unaltered the penalties for a violation of Chapter 57 of the County

Code. Under Section 57-15 of the County Code, with an exception for violations of Section 5-8 not

applicable here: "Any violation of this Chapter or a condition of an approval certificate issued under

this Chapter is a Class A violation to which the maximum penalties for a Class A violation apply."

Under Section 1-19 of the County Code, the maximum penalties applicable for a violation of the

offenses created by Bill 4-21 are criminal penalties of a $1,000 fine and 6 months in jail. Under

Section 1-20(c) of the County Code, "[e]ach day any violation of County law continues is a separate

offense."

## STATE AND FEDERAL FIREARMS LAW

8.      Under Federal law, a person may legally manufacture a firearm for his own personal

use. See 18 U.S.C. § 922(a). See *Defense Distributed v. Department of State*, 838 F.3d 451 (5th Cir.

2016). Under Maryland law, a person is likewise permitted to manufacture a firearm for her own

personal use. Firearms manufactured for personal use are not required to be serialized or engraved

with a serial number under Federal law or Maryland law.

9.      Under Federal law, 18 U.S.C. § 921(a)(3), "[t]he term "firearm" means (A) any

weapon (including a starter gun) which will or is designed to or may readily be converted to expel a

projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm

muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique

firearm."

10.     Similarly, under Maryland law, MD Code, Public Safety, § 5-101(h)(1), a "firearm"

is defined as "(i) a weapon that expels, is designed to expel, or may readily be converted to expel a

projectile by the action of an explosive; or (ii) the frame or receiver of such a weapon." Maryland law

does not define "frame or receiver." Maryland law does not define or regulate the possession, sale or transfer of "major components" for firearms. Fully finished receivers are commonly sold with serial numbers already engraved in compliance with Federal law and such fully finished receivers may be lawfully assembled by law-abiding persons for personal use by obtaining other components that lawfully available and sold throughout the United States.

11.     Since 1968, the Federal Bureau of Alcohol, Tobacco and Firearms ("ATF") has defined a "receiver" as "[t]hat part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel." See 27 C.F.R. § 478.11; 33 Fed. Reg. 18558 (1968). Under ATF Guidance, an unfinished receiver that has not yet had "machining of any kind performed in the area of the trigger/hammer (fire-control) recess (or cavity)," is not considered to be a receiver and is thus not considered to be a firearm. ATF Firearms Technology Branch Technical Bulletin 14-01. Such firearms are sometimes informally called "80% receivers," depending on the extent to which milling has already occurred. While Bill 4-21 purports to regulate "major components" of firearms and defines major components to mean "(1) the slide or cylinder or the frame or receiver; and (2) in the case of a rifle or shotgun, the barrel," Bill 4-21 does not attempt to define "frame or receiver." Federal law does not require the manufacturer place any serial number on the slide or cylinder, or barrel, but rather requires that "an individual serial number" be placed on the "frame or receiver." 27 C.F.R. § 478.92(a)(1)(i). See also 27 C.F.R. § 479.102. Maryland law does not regulate the placement of serial numbers. A receiver that has been serialized by a federally regulated firearms manufacturer is treated as a "firearm" under Federal law and is thus subject to the fully panoply of Federal regulation, including the performance of a background check otherwise required by Federal law.

8

9.      Persons otherwise prohibited from owning firearms are still legally barred from the manufacture, transfer, or possession of modern firearms or modern ammunition, regardless of the method of manufacture. Such possession, actual or constructive, is a violation of 18 U.S.C. § 922(g), which is punishable by up to 10 years imprisonment under Federal law. See 18 U.S.C. § 924(a)(2). Possession of a firearm by a prohibited person is likewise a serious crime under Maryland law. See MD Code, Public Safety, § 5-101(g)(3), § 5-133(b)(1), § 5-205(b)(1).

10.      Under current Federal law, it is unlawful to "manufacture, import, sell, ship, deliver, possess, transfer, or receive" any firearm that is not "detectable" by a "Security Exemplar" or any "major component" of which does not show up accurately on airport x-ray machines. 18 U.S.C. § 922(p). A knowing violation of that prohibition is a Federal felony, punishable by five years of imprisonment and a fine. See 18 U.S.C. § 924(f). For these purposes, Federal law provides that "the term "Security Exemplar" means an object, to be fabricated at the direction of the Attorney General, that is-- (i) constructed of, during the 12-month period beginning on the date of the enactment of this subsection, 3.7 ounces of material type 17-4 PH stainless steel in a shape resembling a handgun; and (ii) suitable for testing and calibrating metal detectors." 18 U.S.C. § 922(p)(2)(C).

11.      Law-abiding Americans, including hobbyists, have lawfully manufactured firearms for personal use since before the Revolutionary War and that practice continues up to the present day. While there is no definitive count of such personal-use firearms, the total number of such firearms manufactured for personal use is undoubtedly in the hundreds of thousands and are in common use within the United States and Maryland. Such firearms manufactured for personal use include rifles and pistols and all such firearms successfully manufactured for personal use may be used for legitimate lawful purposes, including self-defense in the home. The Second Amendment to the United States Constitution guarantees a right to use firearms "for the core lawful purpose of self-defense."

9

*District of Columbia v. Heller*, 554 U.S. 570, 630 (2008). The Second Amendment protects arms that are "typically possessed by law-abiding citizens for lawful purposes." (Id. at 625).

12.    Under MD Code, Criminal Law, § 4-203(b)(3), Maryland law expressly permits a person to transport a handgun "on the person or in a vehicle while the person is transporting the handgun to or from the place of legal purchase or sale, or to or from a bona fide repair shop, or between bona fide residences of the person, or between the bona fide residence and place of business of the person, if the business is operated and owned substantially by the person if each handgun is unloaded and carried in an enclosed case or an enclosed holster." Such transport and carriage of long guns, such as rifles and shotguns, are permitted under Maryland law without restriction.

13.    Under MD Code, Criminal Law, § 4-203(b)(5), Maryland law expressly permits "the moving by a bona fide gun collector of part or all of the collector's gun collection from place to place for public or private exhibition if each handgun is unloaded and carried in an enclosed case or an enclosed holster." Such transport and carriage of long guns, such as rifles and shotguns, are permitted under Maryland law without restriction.

14.    Under MD Code, Criminal Law, § 4-203(b)(6), Maryland law expressly permits "the wearing, carrying, or transporting of a handgun by a person on real estate that the person owns or leases or where the person resides or within the confines of a business establishment that the person owns or leases." Such persons are not required to possess or obtain a Maryland carry permit under MD Code, Public Safety, § 5-306. There is no limitation on the number of handguns or types of ammunition that may be possessed, worn, carried or transported under this provision of Section 4-203(b)(6). Such transport, wear and carriage of rifles and shotguns in a person's residence or business are permitted under Maryland law without restriction.

10

15.     Under MD Code, Criminal Law, § 4-203(b)(7), Maryland law expressly permits "the wearing, carrying, or transporting of a handgun by a supervisory employee: (i) in the course of employment; (ii) within the confines of the business establishment in which the supervisory employee is employed; and (iii) when so authorized by the owner or manager of the business establishment." Such persons are not required to possess or obtain a Maryland carry permit under MD Code, Public Safety, § 5-306. There is no limitation on the number of handguns or ammunition that may be possessed, worn, carried or transported under this provision of Section 4-203(b)(7). There is no limitation on the number of supervisory employees whom the employer may authorize to carry a firearm under this section. Such transport, wear and carriage of rifles and shotguns by business employees are permitted under Maryland law without restriction.

16.     Under MD Code, Public Safety, § 5-133(d)(2)(i), a person under the age of 21 may temporarily transfer and possess a regulated firearm, including a handgun, if the person is "1. under the supervision of another who is at least 21 years old and who is not prohibited by State or Federal law from possessing a firearm; and 2. acting with the permission of the parent or legal guardian of the transferee or person in possession." Under MD Code, Public Safety, § 5-133(d)(2)(iv), a person under the age of 21 may temporarily transfer or possess a regulated firearm, including a handgun, if the person is "1. participating in marksmanship training of a recognized organization; and 2. under the supervision of a qualified instructor."

17. MD Code, Criminal Law, § 4-104, expressly permits a minor child under the age of 16 to have access to any firearm if that access "is supervised by an individual at least 18 years old" or if the minor child under the age of 16 has a certificate of firearm and hunter safety issued under § 10-301.1 of the Natural Resources Article. By necessary implication, access to a firearm by a minor child between the ages of 16 and 18 is permitted by Section 4-104 without restriction.

11

18.     The regulation of unserialized firearms is a matter of significant state-wide and national interest. In the 2021 General Assembly, ghost guns were addressed in three bills. Two bills, House Bill 638 and Senate Bill 624, would have imposed extensive regulation on the possession and transfer of ghost guns, but would have also afforded a path for existing owners to retain possession of their existing, unserialized firearms that they had lawfully manufactured for personal use. One bill, House Bill 1291, would have banned unserialized firearms manufactured for personal use completely. Similar legislation was proposed in the 2020 General Assembly session, with House Bill 910 and Senate Bill 958, and in the 2019 General Assembly session, with House Bill 740 and Senate Bill 882. House Bill 740 passed the House of Delegates in 2019, and it instructed the Maryland State Police to "develop a plan for a system in the State for the registration of firearms not imprinted with a serial number issued by a federally licensed firearms manufacturer or importer and submit a report describing the system . . . ." In the 2021 Session, provisions of House Bill 638 were incorporated into other legislation that had passed the Senate (Senate Bill 190), and that bill, as amended, passed the House Judiciary Committee and was reported to the floor of the House of Delegates, where it was further amended. That bill ultimately did not pass the House.

19. On May 7, 2021, the Attorney General announced that the Department of Justice, the Bureau of Alcohol, Tobacco and Firearms, would engage in new rule-making proceedings for the purpose of regulating the manufacture and transfer of "ghost guns." See Press Release, Justice Department Proposes New Regulation to Update Firearm Definitions Proposed Rule Seeks to Close "Ghost Gun" Loophole (available at https://bit.ly/3wceMr3). These proposed regulations have been published in the Federal Register. 86 Fed. Reg. 27720-10 (May 21, 2021). The proposed regulations would regulate manufacturers and dealers but would not limit or regulate the possession of unserialized firearms lawfully built by individuals for their own personal use. These proposed

12

regulations do not limit or regulate the sale or possession of receivers that are otherwise serialized in accordance with existing Federal law.

## MARYLAND CONSTITUTIONAL AND STATUTORY PREEMPTION PROVISIONS

20.     Maryland law contains several preemption statutes that broadly preempt local jurisdictions from regulating firearms:

a. MD Code, Public Safety, § 5-104, provides that "[t]his subtitle supersedes any restriction that a local jurisdiction in the State imposes on a sale of a regulated firearm, and the State preempts the right of any local jurisdiction to regulate the sale of a regulated firearm."

b. MD Code, Public Safety, § 5-134(a), provides that "[t]his section supersedes any restriction that a local jurisdiction in the State imposes on the transfer by a private party of a regulated firearm, and the State preempts the right of any local jurisdiction to regulate the transfer of a regulated firearm."

c. MD Code, Public Safety, § 5-207(a), enacted into law in 2021 as part of House Bill 4, provides that "[t]his section supersedes any restriction that a local jurisdiction in the State imposes on the transfer by a private party of a rifle or shotgun, and the State preempts the right of any local jurisdiction to regulate the transfer of a rifle or shotgun."

d. MD Code, Criminal Law, § 4-209, provides:

(a) Except as otherwise provided in this section, the State preempts the right of a county, municipal corporation, or special taxing district to regulate the purchase, sale, taxation, transfer, manufacture, repair, ownership, possession, and transportation of:

(1) a handgun, rifle, or shotgun; and
(2) ammunition for and components of a handgun, rifle, or shotgun.

Exceptions

13

(b)(1) A county, municipal corporation, or special taxing district may regulate the purchase, sale, transfer, ownership, possession, and transportation of the items listed in subsection (a) of this section:

(i) with respect to minors;
(ii) with respect to law enforcement officials of the subdivision; and
(iii) except as provided in paragraph (2) of this subsection, within 100 yards of or in a park, church, school, public building, and other place of public assembly.

(2) A county, municipal corporation, or special taxing district may not prohibit the teaching of or training in firearms safety, or other educational or sporting use of the items listed in subsection (a) of this section.

For purposes of these preemption provisions, a "regulated firearm" includes any handgun. MD Code, Public Safety, § 5-101(r)(1). For purposes of these preemption provisions, the terms "handgun," "rifle," and "shotgun" are defined in MD Code, Criminal Law, § 4-201.

21. Section 6 of Chapter 13, of the 1972 Sessions Laws of Maryland provides: "That all restrictions imposed by the law, ordinances, or regulations of the political subdivisions on the wearing, carrying, or transporting of handguns are superseded by this Act, and the State of Maryland hereby preempts the right of the political subdivisions to regulate said matters." https://bit.ly/2SvsRkJ. This provision has been held to preclude the County from regulating the sale of ammunition in the County. See *Montgomery County v. Atlantic Guns, Inc.*, 302 Md. 540, 489 A.2d 1114 (1985).

22. Montgomery County has chartered home rule under Article XI-A of the Maryland Constitution and, under that provision, the County is empowered to enact "local laws." Section 4 of Article XI-A of the Maryland Constitution states that "[a]ny law so drawn as to apply to two or more of the geographical subdivisions of this State shall not be deemed a Local Law, within the meaning of this Act." Article XI–E, § 6, of the Maryland Constitution provides that "[a]ll charter provisions, or amendments thereto, adopted under the provisions of this Article, shall be subject to all applicable laws enacted by the General Assembly." Under these provisions, Montgomery County is not

14

empowered to enact "general laws." Under Maryland law, a general law "deals with the general public welfare, a subject which is of significant interest not just to any one county, but rather to more than one geographical subdivision, or even to the entire state." *Steimel v. Board*, 278 Md. 1, 5, 357 A.2d 386, 388 (1976). Thus, "some statutes, local in form, have been held to be general laws, since they affect the interest of the whole state." *Cole v. Secretary of State*, 249 Md. 425, 434, 240 A.2d 272, 278 (1968). Similarly, "[a] law may be local in the sense that it operates only within a limited area, but general in so far as it affects the rights of persons without the area to carry on a business or to do the work incident to a trade, profession, or other calling within the area." *Dasch v. Jackson*, 170 Md. 251, 261, 183 A. 534, 538 (1936).

23.     Under the Maryland Express Powers Act, MD Code, Local Government, § 10-202(a), a "[a] county may enact local laws and may repeal or amend any local law enacted by the General Assembly on any matter covered by the express powers in this title." However, MD Code, Local Government, §10-206(a), provides that a county may pass an ordinance, resolution, or bylaw only if such laws are "not inconsistent with State law." Similarly, MD Code, Local Government, §10-206(b), provides that "[a] county may exercise the powers provided under this title only to the extent that the powers are not preempted by or in conflict with public general law." Under binding precedent, a local law is inconsistent with State law when the local law prohibits an activity which is permitted by State law, or permits an activity prohibited by state law. See *City of Baltimore v. Sitnick*, 254 Md. 303, 317, 255 A.2d 376, 382 (1969) ("a political subdivision may not prohibit what the State by general public law has permitted").

15

**PARTIES**

**Plaintiffs:**

24      Plaintiff Maryland Shall Issue, Inc. ("MSI") is a Maryland corporation, located at 9613 Harford Rd., Ste C #1015, Baltimore, MD 21234-2150. MSI is an Internal Revenue Service certified Section 501(c)(4), non-profit membership organization with approximately 2000 members statewide. MSI is an all-volunteer, non-partisan organization dedicated to the preservation and advancement of gun owners' rights in Maryland. It seeks to educate the community about the right of self-protection, the safe handling of firearms, and the responsibility that goes with carrying a firearm in public. The purposes of MSI include promoting the exercise of the right to keep and bear arms; and education, research, and legal action focusing on the constitutional right to privately own, possess and carry firearms. MSI has one or more members who live and/or work in Montgomery County, and who possess "ghost guns" in their homes and/or in their businesses and engage in other conduct regulated by Bill 4-21. MSI has one or more members who live outside of Montgomery County but who travel to and/or work within Montgomery County. Each of the individual plaintiffs identified below are members of MSI. Among the membership of MSI are "qualified instructors" who engage in firearms training, including firearms instruction of minors.

25      MSI filed extensive comments with Montgomery County, objecting to Bill 4-21 prior to its enactment. A true and correct copy of those comments are attached to this Complaint as Exhibit B. These comments were ignored by the County in enacting Bill 4-21 and omitted as part of the legislative packet made public by the County. As a participant in this process, MSI has a specialized interest in the subject matter addressed by Bill 4-21. The Bill, as enacted, burdens the ability of MSI members to keep and bear arms within Montgomery County, including firearms that are otherwise lawful in Maryland, but nonetheless are banned or restricted by Bill 4-21. MSI is thus aggrieved by

16

the passage of Bill 4-21. MSI has representational standing to sue on behalf its members who live in Montgomery County or who travel through Montgomery County or who otherwise are adversely affected by the County's unlawful actions.

26.     Plaintiff ENGAGE ARMAMENT LLC ("Engage"), is a Maryland corporation, and is located at 701 E. Gude Dr., Ste 101, Rockville, MD 20850, within Montgomery County. Pursuant to 18 U.S.C. § 923, Engage is a Type I and Type VII and Type X Federally licensed dealer and manufacturer of firearms and explosive devices at its current location. See 27 C.F.R. § 478.41 *et seq.* Pursuant to MD Code, Public Safety, § 5-106, Engage is a Maryland State licensed firearms dealer and is thus authorized by State law to engage "in the business of selling, renting or transferring regulated firearms." As part of its business, Engage manufactures firearm components, including receivers, and then assembles such components into finished firearms which it then sells, all in full compliance with Federal and State law. Engage is a dealer for machines and computer code for the manufacture of firearms by individuals for personal use. It regularly demonstrates such computer code to potential purchasers. From time to time, Engage stocks and sells unserialized items, which are not receivers under Federal law, but which can be lawfully machined and built into firearms by the purchaser for personal use. These otherwise lawful items are banned as "ghost guns" by Bill 4-21. As part of its business, Engage may transfer firearms in the presence of a minor who is accompanied by a parent. The business location of Engage is arguably within 100 yards of a "place of public assembly" as defined by Bill 4-21.

27.     Plaintiff Andrew Raymond is an individual co-owner of Engage, and resides in Montgomery County, Maryland. His residence in Darnestown, Maryland is within 100 yards of a public street. Plaintiff Raymond regularly conducts the business activities of Engage. He is the father of two minor children who reside with him at his residence in Montgomery County. He assembles

17

firearms in the presence of his children in his residence. He possesses in his home computer code which may be used to manufacture firearms within the meaning of Bill 4-21. He possesses one or more ghost guns at his residence and at his place of employment at Engage. As co-owner of Engage, he has authorized more than one supervisory employee at Engage to wear and carry loaded firearms within the business confines of Engage for their self-protection and for the protection of the business. At Engage, he possesses more than one firearm for the protection of himself and his business. He possesses computer code of the type regulated by Bill 4-21

28.     Plaintiff Carlos Rabanales is an individual co-owner of Engage. He resides in Frederick County, Maryland and regularly conducts the business activities of Engage. As co-owner of Engage, he has authorized more than one supervisory employee at Engage to carry firearms within the business confines of Engage for their self-protection and for the protection of the business. At Engage, he possesses more than one firearm for the protection of himself and his business. He may transport unserialized firearm parts and components to and from Engage as part of the business of Engage.

29.     Plaintiff Brandon Ferrell, is an individual supervisory employee of Engage, and resides in Montgomery County, Maryland. His residence in Gaithersburg is arguably within 100 yards of a place of public assembly, as defined by Bill 4-21. Pursuant to MD Code, Criminal Law, 4-203(b)(7), he is considered to be a supervisory employee at Engage and wears and carries a fully loaded handgun in the course of his employment at Engage, "within the confines of a business establishment" as "authorized" by the owners of Engage. He possesses one or more "ghost guns" at his residence and at his place of employment at Engage. He possesses computer code of the type regulated by Bill 4-21. Pursuant to MD Code, Criminal Law, 4-203(b)(7), he wears and carries a fully

18

Firearms is arguably located within 100 yards of a "place of public assembly" as that term is defined in Bill 4-21. ICE Firearms provides instruction in the safe use of firearms.

33.     Plaintiff Ronald David is the owner and operator of ICE Firearms. He resides in Gaithersburg, Maryland and his home is arguably within 100 yards of a "place of public assembly" as that term is defined by Bill 4-21. He possesses computer code of the type regulated by Bill 4-21. He likewise possesses one or more receivers as defined and banned by Bill 4-21 as a "ghost gun." He is a "qualified handgun instructor" within the meaning of MD Code, Public Safety, § 5-101(q), and a National Rifle Association-certified Training Counselor in every shooting discipline.

34.     Plaintiff Nancy David resides in Gaithersburg, Maryland and her home is arguably within 100 yards of a "place of public assembly" as that term is defined by Bill 4-21. She possesses computer code of the type regulated by Bill 4-21. She is a "qualified handgun instructor" within the meaning of MD Code, Public Safety, § 5-101(q). She does not possess a Maryland carry permit.

**Defendant:**

35.     The Defendant is Montgomery County, Maryland, with its principal place and seat located in Rockville, Maryland. Montgomery County is a "person" for purposes of the relief sought by this suit within the meaning of MD Code, Courts and Judicial Proceedings, § 3-401.

### COUNT I – VIOLATIONS OF THE MARYLAND CONSTITUTION

36.     The Plaintiffs reallege and incorporate herein by reference all the foregoing allegations of this complaint.

37.     Bill 4-21 regulates "matters of significant interest to the entire state." *Cole v. Secretary of State*, 249 Md. 425, 434, 240 A.2d 272, 278 (1968). The General Assembly has repeatedly debated and introduced legislation, in both the House of Delegates and in the Senate, attempting to address the subject matters regulated by Bill 4-21. One such bill, House Bill 740, passed the House of

20

Delegates in 2019. This legislative activity is strong evidence that the matter is of general interest, thereby demonstrating that Bill 4-21 is not a local law within the meaning of Article XI–E, § 3 of the Maryland Constitution and is thus *ultra vires*. See *Allied Vending, Inc. v. City of Bowie*, 332 Md. 279, 631 A.2d 77 (1993).

38.    Bill 4-21 has redefined the "place of public assembly" to include "a place where the public may assemble, whether the place is publicly or privately owned, including a park; place of worship; school; library; recreational facility; hospital; community health center; long-term facility; or multipurpose exhibition facility, such as a fairgrounds or conference center." Such "place of public assembly includes all property associated with the place, such as a parking lot or grounds of a building."

39. Bill 4-21's definition of a "place of public assembly arguably encompasses every sidewalk, every restaurant, every coffee shop, and every private business in the entire County as all such locales may be places where the public "may" assemble either in the present or in the future. The term may even include private homes in so far as such homes "may" be used by two or more of the public from time to time in the present or in the future to "assemble." Bill 4-21 regulates the totality of Montgomery County. It would be, as a practical matter, impossible for any person to travel through Montgomery County without passing through an area within 100 yards of such locales now regulated by Bill 4-21. Allowing county governments to expand their regulatory powers in this manner will create a nightmarish hodgepodge of local laws that vary from county to county, from city to city and from town to town, all of which could impose criminal penalties of the sort imposed by Montgomery County under Bill 4-21. Bill 4-21 directly and adversely affects the rights of non-residents of Montgomery County "to carry on a business or to do the work incident to a trade, profession, or other calling within the area." *Dasch v. Jackson*, 170 Md. 251, 261, 183 A. 534, 538

21

(1936). By regulating and criminalizing conduct that takes place within 100 yards of such locations, Montgomery County has exceeded its authority beyond that allowed by MD Code, Criminal Law, § 4-209. Through the enactment of Bill 4-21, the County has effectively nullified the preemption provisions of Section 4-209 as well as the preemption provisions of MD Code, Public Safety, § 5-134(a), MD Code, Public Safety, § 5-207(a). Bill 4-21 is not a local law within the meaning of Article XI–E, § 3 of the Maryland Constitution and is thus *ultra vires.*

## COUNT II – VIOLATION OF THE EXPRESS POWERS ACT

40.   Plaintiffs reallege and incorporate herein by reference all the foregoing allegations of this complaint.

41.   Under the Express Powers Act, MD Code, Local Government, §10-206, Montgomery County laws must be "not inconsistent with State law" and the County is barred from enacting laws that are "preempted by or in conflict with public general law."

42.   Bill 4-21 violates these provisions of the Express Powers Act in multiple ways:

*a.* MD Code, Criminal Law, § 4-209(a) preempts the County regulation of the "purchase, sale, taxation, transfer, manufacture, repair, ownership, possession, and transportation" of all firearms, but allows the County to regulate such matters "within 100 yards of or in a park, church, school, public building, and other place of public assembly." By redefining a "place of public assembly" to include all places where the public "may assemble" at the present or at some unspecified date in the future and expressly including ordinary private property within that definition, the County has vastly and illegally expanded the scope of its authority provided by Section 4-209 beyond the bounds permitted by the language of Section 4-209. To the extent Bill 4-21 purports to apply to these expanded areas, it is expressly preempted by the preemption provisions of Section 4-209(a).

22

*b.* Bill 4-21 bans the "transfer" of all firearms within 100 yards of the County's illegally redefined "place of public assembly." In so far as Bill 4-21's ban on such transfers includes regulated firearms and to the extent Bill 4-21 purports to apply to expanded areas beyond those areas permitted by Section 4-209, that ban is separately preempted by MD Code, Public Safety, § 5-134(a), which provides that "[t]his section supersedes any restriction that a local jurisdiction in the State imposes on the transfer by a private party of a regulated firearm, and the State preempts the right of any local jurisdiction to regulate the transfer of a regulated firearm."

*c.* Bill 4-21 bans the "sale" of all firearms within 100 yards of the County's illegally redefined "place of public assembly." In so far as Bill 4-21's ban on such sales includes rifles and shotguns, and to the extent Bill 4-21 purports to apply to expanded areas beyond those areas permitted by Section 4-209, that ban is preempted by MD Code, Public Safety, § 5-207(a), which provides that "[t]his section supersedes any restriction that a local jurisdiction in the State imposes on the transfer by a private party of a rifle or shotgun, and the State preempts the right of any local jurisdiction to regulate the transfer of a rifle or shotgun."

*d.* Bill 4-21 expressly precludes any person, including a parent, from giving, lending or otherwise transferring to a minor a "ghost gun or a major component of a ghost gun." In so far as this provision regulates the temporary transfer of a regulated firearm, it illegally bans an activity that is expressly permitted by MD Code, Public Safety, § 5-133(d), which allows a minor to transfer and possess a regulated firearm under the active supervision of an adult with a parent's permission. Such transfers often include instruction in the use of firearms. To the extent that Bill 4-21 burdens such instruction, Bill 4-21 is preempted by MD Code, Criminal Law, § 4-209(b)(2), which provides that "[a] county, municipal corporation, or special taxing district may not prohibit the teaching of or training in firearms safety, or other educational or sporting use of the items listed in subsection (a) of

23

this section." These provisions fully apply to instruction in the use of unserialized regulated firearms lawfully manufactured for personal use.

    *e.* Bill 4-21 expressly precludes any person, including a parent, from giving, lending or otherwise transferring to a minor a "ghost gun or a major component of a ghost gun," including the slide of a handgun or a barrel of a rifle. MD Code, Criminal Law, § 4-104, expressly permits a minor child under the age of 16 to have access to any firearm if that access "is supervised by an individual at least 18 years old" or if the minor child under the age of 16 has a certificate of firearm and hunter safety issued under § 10-301.1 of the Natural Resources Article. By necessary implication, access to a firearm by a minor child between the ages of 16 and 18 is likewise permitted by Section 4-104 without any restriction. These provisions fully apply to the transfer of unserialized firearms lawfully manufactured by an individual for personal use. Bill 4-21's ban on lending, giving, or transferring a ghost gun to a minor is inconsistent with these provisions.

    *f.* Bill 4-21 provides that a "person must not store or leave a ghost gun, an undetectable gun, or a major component of a ghost gun or an undetectable gun, in a location that the person knows or should know is accessible to a minor." MD Code, Criminal Law, § 4-104, expressly permits a minor child under the age of 16 to have access to any firearm if that access "is supervised by an individual at least 18 years old" or if the minor child under the age of 16 has a certificate of firearm and hunter safety issued under § 10-301.1 of the Natural Resources Article. By necessary implication, access to a firearm by a minor child between the ages of 16 and 18 is permitted by Section 4-104 without restriction. In so far as these provisions limit access to a ghost guns or components of ghost guns to a minor in a manner that Section 4-104 permits, Bill 4-21 is inconsistent with Section 4-104.

    *g.* Bill 4-21 expressly bans the transport, in a vehicle and otherwise, of a "ghost gun," within 100 yards of the County's illegally expanded "place of public assembly." This ban on transport

24

1    is inconsistent with MD Code, Criminal Law, § 4-203(b)(3), which provides that a person is permitted

2    to transport a handgun "on the person or in a vehicle while the person is transporting the handgun to

3    or from the place of legal purchase or sale, or to or from a bona fide repair shop, or between bona fide

4    residences of the person, or between the bona fide residence and place of business of the person, if

5    the business is operated and owned substantially by the person if each handgun is unloaded and carried

6    in an enclosed case or an enclosed holster." Transport of unloaded rifles and shotguns, including

7    unserialized rifles and shotguns, is permitted under Maryland law without restriction.

8

9         *h*. Bill 4-21 expressly bans the "transport," in a vehicle and/or otherwise, of a "ghost

10    gun" within 100 yards of the County's illegally expanded "place of public assembly." This ban is

11    inconsistent with MD Code, Criminal Law, § 4-203(b)(5), which expressly permits "the moving by a

12    bona fide gun collector of part or all of the collector's gun collection from place to place for public or

13    private exhibition if each handgun is unloaded and carried in an enclosed case or an enclosed holster."

14    Such transport and carriage of unloaded rifles and shotguns, including unserialized rifles and

15    shotguns, are permitted under Maryland law without restriction.

16

17         *i*. Bill 4-21 expressly bans the sale, transfer, possession or transport of a firearm,

18    including a "ghost gun" or a "major component" of any firearm, within 100 yards of the County's

19    illegally expanded "place of public assembly." These bans are inconsistent with and preempted by §

20    6 of Ch. 13, of Session Laws of 1972 of Maryland, which expressly preempts all local law restrictions

21    on the wearing, carrying, or transporting of handguns in the following language:

22    "SEC. 6. Be it further enacted, That all restrictions imposed by the law, ordinances, or regulations of

23    the political subdivisions on the wearing, carrying, or transporting of handguns are superseded by this

24    Act, and the State of Maryland hereby preempts the right of the political subdivisions to regulate said

25

matters." See *Montgomery County v. Atlantic Guns, Inc.*, 302 Md. 540, 543-44, 489 A.2d 1114, 1115-16 (1985).

      *j.* Bill 4-21expressly bans the mere possession in the home of a "ghost gun" if the home is within 100 yards of the County's illegally expanded "place of public assembly." As thus defined, this ban on home possession will extend to thousands of homes within 100 yards of Bill 4-21's newly defined and illegally expanded "place of public assembly." This ban on home possession is inconsistent with MD Code, Criminal Law, § 4-203(b)(6), which expressly permits "the wearing, carrying, or transporting of a handgun by a person on real estate that the person owns or leases or where the person resides…." Home possession of unserialized handguns, rifles and shotguns lawfully manufactured for personal use is permitted under Maryland law without restriction.

      *k.* Bill 4-21 bans possession of a firearm or ammunition by a business, if the business is within 100 yards of the County's illegally expanded "place of public assembly." However, Bill 4-21 provides that the bans otherwise imposed by Section 57-11 of the County Code do not "apply to the possession of one firearm, and ammunition for the firearm, at a business by either the owner who has a permit to carry the firearm, or one authorized employee of the business who has a permit to carry the firearm." The requirement that the owner must have "a permit to carry the firearm" is inconsistent with MD Code, Criminal Law, § 4-203(b)(6), which permits "the wearing, carrying, or transporting of a handgun by a person . . . within the confines of a business establishment that the person owns or leases." Such persons are not required to possess or obtain a Maryland carry permit. Bill 4-21's limitation to possession of "one" firearm by the owner is likewise inconsistent with Section 4-203(b)(6), as that section imposes no limitation on the number of handguns that may be possessed, worn, carried or transported under this provision of Section 4-203(b)(6). Transport, wear, carriage

and possession of rifles and shotguns, including unserialized rifles and shotguns, in a person's business are permitted under Maryland law without restriction.

*l.* Bill 4-21 bans possession of a firearm or ammunition, if the business is within 100 yards of the County's illegally expanded "place of public assembly." However, Bill 4-21 provides that the bans otherwise imposed by Section 57-11 of the County Code do not "apply to the possession of one firearm, and ammunition for the firearm, at a business by ... one authorized employee of the business who has a permit to carry the firearm." The requirement that the "authorized employee" must have "a permit to carry the firearm" is inconsistent with MD Code, Criminal Law, § 4-203(b)(7), which expressly permits "the wearing, carrying, or transporting of a handgun by a supervisory employee: (i) in the course of employment; (ii) within the confines of the business establishment in which the supervisory employee is employed; and (iii) when so authorized by the owner or manager of the business establishment." Such authorized persons covered by Section 4-203(b)(7) are not required to possess or obtain a Maryland carry permit to carry within the business confines of the employer's business. Bill 4-21's limitation to possession of "one" firearm by "one" authorized employee is likewise inconsistent with Section 4-203(b)(7), as that section imposes no limitation on the number of handguns or ammunition that may be possessed, worn, carried or transported under this provision of Section 4-203(b)(7), and imposes no limitation on the number of employees who may be "authorized" by the employer under Section 4-203(b)(7). Transport, wear, carriage and possession of rifles and shotguns, including unserialized rifles and shotguns, by business employees are permitted under Maryland law without restriction.

*m.* Bill 4-21 defines "ghost gun" to include "an unfinished receiver." Section 4-209 permits the County to regulate "ammunition for and components of a handgun, rifle, or shotgun," but it does not empower the County to redefine such "components" to include an "unfinished receiver."

27

1    loaded handgun in the course of his employment at Engage, "within the confines of a business

2    establishment" as "authorized" by the owners of Engage. He does not possess a wear and carry permit.

3
4        30.    Plaintiff Deryck Weaver, is an individual supervisory employee of Engage, and

5    resides in Bethesda, Maryland. His residence is arguably within 100 yards of a "place of public

6    assembly" as that term is defined in Bill 4-21. He is the father of one minor child who lives with him

7    at his residence. He is a qualified handgun instructor within the meaning of MD Code, Public Safety,

8    §5-101(q), as well as a National Rifle Association-certified handgun instructor and National Rifle

9    Association-certified Chief Range Safety Officer. He possesses within his home one or more "ghost

10
11   guns," including a rifle and a pistol "ghost gun." From time to time, he assembles a firearm in the

12   presence of his minor child for the purposes of instruction. Pursuant to MD Code, Criminal Law, 4-

13   203(b)(7), he wears and carries a fully loaded handgun in the course of his employment at Engage,

14   "within the confines of a business establishment" as "authorized" by the owners of Engage. He does

15
16   not possess a wear and carry permit.

17       31.    Plaintiff Joshua Edgar works as a contractor at Engage, and resides in Gaithersburg,

18   Maryland. His residence is arguably within 100 yards of a place of public assembly as that term is

19   defined in Bill 4-21. He possesses within his home one or more "ghost guns," including a rifle and a

20   pistol "ghost gun." From time to time, he assembles a firearm in the presence of a minor child for

21
22   purposes of instruction. He does not possess a wear and carry permit.

23       32.    Plaintiff I.C.E. FIREARMS & DEFENSIVE TRAINING, LLC, ("ICE Firearms") is

24   a Maryland corporation located at 24129 Pecan Grove Lane, Gaithersburg, Maryland. ICE Firearms

25   provides firearm training to individuals with handguns, rifles and shotguns. ICE Firearms possesses

26   computer code of the type regulated by Bill 4-21. ICE Firearms likewise possesses parts of firearms

27   that are banned by Bill 4-21, including "unfinished receivers" arguably banned by Bill 4-21. ICE

28                                                19

An unfinished frame or receiver that is not a "firearm" under Federal law is not a firearm under Maryland law and thus an "unfinished receiver" is fully legal in under Maryland law if such a receiver is sufficiently "unfinished" as to not constitute a "firearm." By defining a "ghost gun" to include any "unfinished receiver," Bill 4-21 has gone beyond the scope allowed for local regulation by Section 4-209 and is thus preempted by Section 4-209 and inconsistent with existing Maryland law.

## COUNT III – VIOLATION OF THE MARYLAND TAKINGS CLAUSE AND
## DUE PROCESS CLAUSE

43.     Plaintiffs reallege and incorporate herein by reference all the foregoing allegations of this complaint. This Count arises under the Maryland Takings Clause, Article III, §40 of the Maryland Constitution, and the Due Process Clause, Article 24 of the Maryland Declaration of Rights.

44.     Personal property interests of Maryland residents are protected by both the Maryland Takings Clause, Article III, §40 of the Maryland Constitution, and the Due Process Clause, Article 24 of the Maryland Declaration of Rights. These provisions are interpreted *in pari materia* with the Fifth Amendment of the United States Constitution, fully encompass personal property and may afford more protection than the Fifth Amendment. *Dua v. Comcast Cable*, 370 Md. 604, 805 A.2d 1061, 1070-72 (2002).

45. Maryland's Taking Clause and Due Process Clause are violated "[w]henever a property owner is deprived of the beneficial use of his property or restraints are imposed that materially affect the property's value, without legal process or compensation." *Serio v. Baltimore County*, 384 Md. 373, 863 A.2d 952, 967 (2004).

46. Maryland's Taking Clause and Due Process Clause govern retrospective laws. "Retrospective statutes are those 'acts which operate on transactions which have occurred or rights

28

and obligations which existed before passage of the act." *Muskin v. State Dept. of Assessments and Taxation*, 422 Md. 544, 30 A.3d 962, 969 (2011).

47. Under the Maryland's Taking Clause and Due Process Clause, "[n]o matter how 'rational' under particular circumstances, the State is constitutionally precluded from abolishing a vested property right or taking one person's property and giving it to someone else." *Dua v. Comcast Cable of Maryland, Inc.*, 370 Md. 604, 623, 805 A.2d 1061 (2002).

48. The property adversely affected by the provisions of Bill 4-21 constitute protected personal property within the meaning of the Maryland Takings Clause and Due Process Clause as the term property for these purposes "embraces 'everything which has exchangeable value or goes to make up a man's wealth." *Dodds v. Shamer*, 339 Md. 540, 663 A.2d 1318, 1322 (1995). The personal property regulated by Bill 4-21 has exchangeable value. Plaintiffs have vested property rights in the continued possession and use of the property regulated by Bill 4-21.

49. Bill 4-21 is a retrospective ordinance as it will deprive the plaintiffs of the beneficial use and possession of their lawful vested property rights and property that was lawfully acquired and possessed prior to the County's enactment of Bill 4-21. The restraints and bans that are imposed by Bill 4-21 materially affect the value of this previously lawfully acquired and possessed property, all without legal process or compensation.

50. Bill 4-21 violates Maryland Takings Clause, Article III, §40, and the Due Process Clause, Article 24 of the Maryland Declaration of Rights. Under Maryland law, a court may enjoin a statute that violates Article 40 "unless and until condemnation proceedings in accordance with law be had, and just compensation awarded and paid for tendered." *Department of Natural Resources v. Welsh*, 308 Md. 54, 65, 521 A.2d 313, 318 (1986). Plaintiffs are entitled to declaratory and equitable relief for the unconstitutional taking of their vested property rights by Bill 4-21.

29

**COUNT IV – THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT**

**AND ARTICLE 24 OF THE MARYLAND DECLARATION OF RIGHTS**

51. Plaintiffs reallege and incorporate herein by reference all the foregoing allegations of this complaint. This Count for violations of the Due Process Clause of the Fourteenth Amendment to the United States Constitution is brought pursuant to and arises under 42 U.S.C. § 1983. For purposes of this Count, defendant Montgomery County has acted under "color of state law" within the meaning of Section 1983 in enacting Bill 4-21. This Count also arises under Article 24 of the Maryland Declaration of Rights.

52. The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." Article 24 of the Maryland Declaration of Rights provides that "[t]hat no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

53. The Due Process Clause of the Fourteenth Amendment prohibits the enactment or enforcement of vague legislation. *Sessions v. Dimaya*, 138 S.Ct. 1204, 1212 (2018) ("the prohibition of vagueness in criminal statutes…is an 'essential' of due process, required by both 'ordinary notions of fair play and the settled rules of law'"). A penal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). "[A] vague law is no law at all." *United States v. Davis*, 139 S. Ct. 2319, 2323 (2019).

30

54. Such a statute need not be vague in all possible applications in order to be void for vagueness. *Johnson v. United States*, 576 U.S. 591, 602 (2015) ("our holdings squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp"). "*Johnson* made clear that our decisions 'squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp.'" *Dimaya*, 138 S.Ct. at 1214 n.3. A court "cannot construe a criminal statute on the assumption that the Government will use it responsibly," *United States v. Stevens*, 559 U.S. 460, 480 (2010), and "cannot find clarity in a wholly ambiguous statute simply by relying on the benevolence or good faith of those enforcing it." *Wollschlaeger v. Governor, Fla.*, 848F.3d 1293, 1322 (11th Cir. 2017) (en banc).

55. Article 24 of the Maryland Declaration of Rights prohibits the enactment or enforcement of vague legislation. *Galloway v. State*, 365 Md. 599, 614, 781 A.2d 851 (2001) ("The void-for-vagueness doctrine as applied to the analysis of penal statutes requires that the statute be "sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties."). Under Article 24, a statute must provide "legally fixed standards and adequate guidelines for police ... and others whose obligation it is to enforce, apply, and administer [it]" and "must eschew arbitrary enforcement in addition to being intelligible to the reasonable person." (Id. at 615).

56. Bill 4-21 is a penal statute as a violation of Bill 4-21 is a Class A violation that can result in a criminal fine and up to six months imprisonment for each day in which the violation continues. Bill 4-21 contains no *mens rea* requirement of any type and thus these punishments may be imposed without regard to the defendant's intent or knowledge. Under the Due Process Clause of the Fourteenth Amendment, plaintiffs may bring a pre-enforcement action challenging Bill 4-21 as they are not required "to risk criminal prosecution to determine the proper scope of regulation."

31

*Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965). Maryland law is in accord for purposes of allowing a pre-enforcement action arising under Article 24 of the Maryland Declaration of Rights. *Pizza di Joey, LLC v. Mayor of Baltimore*, 470 Md. 308, 343-44, 235 A.3d 873 (2020) (collecting cases).

57. Bill 4-21 criminally punishes conduct that takes place within 100 yards of "a place of public assembly," which is defined as "a place where the public may assemble, whether the place is publicly or privately owned." Such places include, but are not limited to, "a park; place of worship; school; library; recreational facility; hospital; community health center; long-term facility; or multipurpose exhibition facility, such as a fairgrounds or conference center." Bill 4-21 includes within these places "all property associated with the place, such as a parking lot or grounds of a building."

58. Bill 4-21 does not define "public," and that term could arguably be read to include any person who may be present in Montgomery County for any reason. Bill 4-21 does not define "may assemble," and thus that term could be read to include a meeting of two or more people in one place for any reason, including for every-day activities such as lunch. By enlarging the ordinance to reach into places where the public "may" assemble," Bill 4-21 may be arguably read to encompass any location where it is possible for two or more members of the public to meet, either in the present or sometime in the undefined future. Bill 4-21 fails to provide any notice of the actual location of such places and it is impossible to predict or know where two or more members of the "public" "may" meet. These terms could change in their application from day to day. Plaintiffs are thus left to guess at where two or more members of "public" "may assemble."

59. Bill 4-21 bans conduct taking place within 100 yards of a "library," but includes no definition of "library." Bill 4-21 deleted the statute's former definition of "library" as limited to a "public" library and expressly covers places regardless of "whether the place is publicly or privately owned." The term "library" could thus be arguably read to include any "library" of any type or size.

regardless of whether the library is in the home or private building if, at any time in the present or the future, two or more members of the undefined public "may" assemble in that library. Plaintiffs are left to guess as to the locations of such "libraries."

60. Bill 4-21 does not define "recreational facility," but it does delete the statute's former limitation to "government-owned or operated" recreational facility and thus the term "recreational facility" could be arguably read to include a backyard swing set or private playground or other place where "recreation" may take place. Bill 4-21 adds to statute's preexisting scope to include a "community health center" and "long-term facility," but provides no definition for either type of facility. Bill 4-21 does not define "school," but does delete the statute's former limitation to "elementary or secondary" school, thereby arguably regulating within 100 yards of any "school" of any size and of any type, private or public, including locations where any organization, of any type, may present instruction of any kind. Plaintiffs are left to guess as to the locations encompassed within the vague use of these terms.

61. Bill 4-21 does not define "park" but it does delete the ordinance's former definition of "park" as including only a "government owned" park that was "identified by the Maryland-National Capital Park and Planning Commission." The term "park" thus could be arguably read to include any grassy spot, a commercial "park" or a tract of private land attached to a country house if it possible for two or more members of the public to "assemble" in that privately owned "park." Plaintiffs are left to guess as to the locations encompassed within the vague use of "park."

62. Bill 4-21 defines "ghost gun" to include "an unfinished receiver." Bill 4-21 then purports to ban the sale, rental, lending or the giving of an "unfinished receiver" to a minor or affording access to an "unfinished receiver" to a minor. Bill 4-21 also bans, within 100 yards of a "place of public assembly," as illegally expanded by Bill 4-21, the sale, transfer, manufacture, assembly, possession

33

or transport of an unfinished receiver, including possession of an unfinished receiver in the home. Bill 4-21 does not define "unfinished receiver." An unfinished receiver that is not a "receiver" under Federal law is not a receiver under Maryland law and thus there is no definition for "unfinished receiver" that could be applied to Bill 4-21. Plaintiffs are left to guess as to the meaning of "unfinished receiver" as used in Bill 4-21.

63. Bill 4-21 defines "major component" of a firearm to include "the slide or cylinder" and, in the case of a rifle or shotgun, the "barrel." Bill 4-21 then purports, to ban the sale, rental, lending or the giving of a "major component" of a ghost gun to a minor or affording access to a "major component" to a minor. Bill 4-21 also bans, within 100 yards of its illegally defined place of "public assembly," the sale, transfer, possession, or transport of a "major component." A "major component" of a firearm, as defined by Bill 4-21, is not a firearm under Federal or Maryland law and a "major component" as thus defined can be lawfully obtained, transferred and transported without restrictions under Federal and Maryland law. A "major component," as thus defined by Bill 4-21, can be lawfully used to build a fully *serialized* firearm for personal use. There is no practical way to distinguish a "major component" that can be used to build *a non-serialized* firearm from a major component that can be used to build *a serialized* firearm. Bill 4-21 thus arguably can be read as banning the building of *any serialized* firearm, including a firearm that is not a "ghost gun" under the Bill 4-21's own definition of a "ghost gun." Bill 4-21 is self-contradictory, vague and leaves enforcement of this provision to the arbitrary and discriminatory discretion of law enforcement officials.

64. Bill 4-21's regulation of places where two or more members of the "public" "may" assemble in the present or unknowable future provides no reasonable notice of the actual locations that are criminally regulated by Bill 4-21. Bill 4-21's use of vague and undefined terms deprives ordinary people, including plaintiffs, of the ability to understand what conduct is prohibited and what

34

conduct is not. Bill 4-21's use of vague terms, including its reach into the home and other private property, permits and encourages arbitrary and discriminatory enforcement of its provisions in the sanctity of the home and other places protected by the Fourth Amendment of the United States Constitution. Bill 4-21 provides no standards for enforcement by law enforcement personnel or by other officials of the County who may be charged with its enforcement. Rather, Bill 4-21 hands off "to unelected prosecutors and judges," the duty of defining criminal behavior thorough *ad hoc* discretionary enforcement decisions. *Davis*, 139 S.Ct. at 2323. Bill 4-21 is accordingly void for vagueness under the Due Process Clause of the Fourteenth Amendment and Article 24 of the Maryland Declaration of Rights, both facially and as applied to one or more of the individual plaintiffs.

65. Each of the plaintiffs has engaged and intends to engage in conduct arguably regulated by the unconstitutionally vague provisions of Bill 4-21, including the actual or constructive possession of firearms, major components and "unfinished receivers." Each of the plaintiffs is and has been chilled in the actions they may take by the prospect of enforcement of Bill 4-21's unconstitutionally vague provisions. Each of the plaintiffs and MSI's members are hindered or chilled in their right to live or work in Montgomery County or to otherwise travel through Montgomery County by the threat of arbitrary or discriminatory enforcement of the unconstitutionally vague provisions of Bill 4-21. Each of the plaintiffs has been harmed and is imminently threatened with future harm by the prospect of enforcement of the unconstitutionally vague provisions of Bill 4-21.

66. Pursuant to 42 U.S.C. § 1983, plaintiffs are entitled to declaratory and equitable relief and compensatory damages, including nominal damages, for the foregoing violations of their Due Process rights under the Fourteenth Amendment. *Uzuegbunam v. Preczewski*, 141 S.Ct. 792 (2021). The County's wholesale and utter disregard of Plaintiffs' Due Process rights is so reckless or callously

35

indifferent to the federally protected rights of plaintiffs as to warrant the imposition of further sanctions to achieve punishment or deterrence. Accordingly, punitive damages are appropriate and may be awarded by the trier of fact. *Smith v. Wade*, 461 U.S. 30 (1983). Plaintiffs are likewise entitled to reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, for the foregoing violations of their Due Process rights under the Fourteenth Amendment. Plaintiffs are entitled to declaratory and equitable relief for their claims arising under Article 24 of the Maryland Declaration of Rights.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request:

A. That this Court issue a declaratory judgment that Bill 4-21 is not a local law and is thus unconstitutional under Article XI–E, § 3 of the Maryland Constitution, as more fully set forth in Count I above;

B. That this Court issue a declaratory judgment that Bill 4-21 violates the Express Powers Act, MD Code, Local Government, § 10-206, in that it is inconsistent with, and/or preempted by Maryland statutes, as more fully set forth in Count II, above;

C. That this Court issue a declaratory judgment that Bill 4-21 violates the Maryland Takings Clause, Article III § 40, and the Due Process Clause of Article 24 of the Maryland Declaration of Rights, in so far as it deprives plaintiffs and MSI members of the beneficial use of their lawfully acquired, vested property rights, as more fully set forth in Count III above, enjoin enforcement of Bill 4-21 until compensation is paid, calculate the amount of compensation due, and order the County to pay such compensation;

D. That this Court issue a declaratory judgment that Bill 4-21 is void for vagueness under the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights, as more fully set forth in Count IV above;

36

E. That this Court find that all plaintiffs have been and/or will be irreparably harmed by the conduct of defendant challenged in Counts I, II, III and IV and enter a preliminary and permanent injunction barring the County from enforcing Bill 4-21 against plaintiffs and the members of MSI;

F. That this Court award plaintiffs compensatory and punitive damages for the County's violations of the plaintiffs' Fourteenth Amendment constitutional rights, including without limitation, nominal damages, as authorized by 42 U.S.C. § 1983;

G. That this Court award attorney's fees and costs against defendant, as authorized by 42 U.S.C. § 1988;

H. That this Court award the plaintiffs such other and further relief as in law and justice they may be entitled to receive, including punitive damages.

## JURY DEMAND

COME NOW the Plaintiffs, by and through counsel, demand a trial by jury as to all issues triable by jury in this matter.

Respectfully submitted,

MARK W. PENNAK
Maryland Shall Issue, Inc.
9613 Harford Rd
Ste C #1015
Baltimore, MD 21234-21502
mpennak@marylandshallissue.org
Phone: (301) 873-3671
MD Atty No. 1905150005

*Counsel for Plaintiffs*

FILED

MAY 2 8 2021

Clerk of the Circuit Court
Montgomery County, Md.

37

IN CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

MARYLAND SHALL ISSUE, INC., ET AL,                    Case No.:

        Plaintiffs,

vs.                                                                               DECLARATION OF
                                                                                       DANIEL CARLIN-WEBER
MONTGOMERY COUNTY, MARYLAND,

        Defendant.

COMES NOW, the declarant, DANIEL CARLIN-WEBER, and hereby solemnly declares under penalties of perjury and upon personal knowledge that the contents of the following declaration are true:

    1. My name is DANIEL CARLIN-WEBER and I am the Chairman of the Board of Directors of MARYLAND SHALL ISSUE, INC., a named plaintiff in the above captioned matter.  I execute this declaration on behalf of MARYLAND SHALL ISSUE, INC.

    2. I have read and otherwise reviewed the allegations of the Complaint in this matter.  I hereby adopt and declare that the factual allegations in the complaint that relate or refer to MARYLAND SHALL ISSUE, INC., are true and correct to the best of my knowledge and belief.

    Dated this day of MAY 27, 2021:

                                   _____
                                 DANIEL CARLIN-WEBER
                                 Chairman of the Board of Directors, Maryland Shall
                                 Issue, Inc.

DECLARATION OF DANIEL CARLIN-WEBER - 1

IN CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | |
|---|---|
| MARYLAND SHALL ISSUE, INC., ET AL, | Case No.: |
| Plaintiffs, | |
| vs. | DECLARATION OF |
| MONTGOMERY COUNTY, MARYLAND, | PLAINTIFF ANDREW RAYMOND |
| Defendant | |

COMES NOW, the declarant, ANDREW RAYMOND, and hereby solemnly declares under penalties of perjury and upon personal knowledge that the contents of the following declaration are true:

1. My name is ANDREW RAYMOND and I am a named plaintiff in the above captioned matter and the co-owner of ENGAGE ARMAMENT LLC, which is also a named plaintiff in this matter. I execute this declaration on behalf of myself and of ENGAGE ARMAMENT LLC.

2. I have read and otherwise reviewed the allegations of the Complaint in this matter. I hereby adopt and declare that the factual allegations in the complaint that relate or refer to myself and ENGAGE ARMAMENT LLC, are true and correct to the best of my knowledge and belief.

Dated this day of MAY 27, 2021.

_____
ANDREW RAYMOND

DECLARATION OF PLAINTIFF ANDREW RAYMOND - 1

IN CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

MARYLAND SHALL ISSUE, INC., ET AL,

Plaintiffs,

vs.

MONTGOMERY COUNTY, MARYLAND,

Defendant

Case No.:

DECLARATION OF
PLAINTIFF CARLOS RABANALES

COMES NOW, the declarant, CARLOS RABANALES, and hereby solemnly declares under penalties of perjury and upon personal knowledge that the contents of the following declaration are true:

1. My name is CARLOS RABANALES and I am a named plaintiff in the above captioned matter and the co-owner of ENGAGE ARMAMENT LLC, which is also a named plaintiff in this matter. I execute this declaration on behalf of myself and of ENGAGE ARMAMENT LLC.

2. I have read and otherwise reviewed the allegations of the Complaint in this matter. I hereby adopt and declare that the factual allegations in the complaint that relate or refer to myself and ENGAGE ARMAMENT LLC, are true and correct to the best of my knowledge and belief.

Dated this day of MAY 27, 2021:

CARLOS RABANALES

DECLARATION OF PLAINTIFF CARLOS RABANALES - 1

IN CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

MARYLAND SHALL ISSUE, INC., ET AL,

       Plaintiffs,

vs.

MONTGOMERY COUNTY, MARYLAND,

       Defendant

Case No.:

DECLARATION OF
PLAINTIFF BRANDON FERRELL

COMES NOW, the declarant, BRANDON FERRELL, and hereby solemnly declares under penalties of perjury and upon personal knowledge that the contents of the following declaration are true:

1. My name is BRANDON FERRELL and I am a named plaintiff in the above captioned matter.

2. I have read and otherwise reviewed the allegations of the Complaint in this matter.  I hereby adopt and declare that the factual allegations in the complaint that relate or refer to myself are true and correct to the best of my knowledge and belief.

Dated this day of MAY 27, 2021:

BRANDON FERRELL

DECLARATION OF PLAINTIFF BRANDON FERRELL - 1

IN CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

MARYLAND SHALL ISSUE, INC., ET AL,

Plaintiffs,

vs.

MONTGOMERY COUNTY, MARYLAND,

Defendant

Case No.:

DECLARATION OF
PLAINTIFF DERYCK WEAVER

COMES NOW, the declarant, DERYCK WEAVER, and hereby solemnly declares under penalties of perjury and upon personal knowledge that the contents of the following declaration are true:

1. My name is DERYCK WEAVER and I am a named plaintiff in the above captioned matter.

2. I have read and otherwise reviewed the allegations of the Complaint in this matter. I hereby adopt and declare that the factual allegations in the complaint that relate or refer to myself are true and correct to the best of my knowledge and belief.

Dated this day of MAY 27, 2021:

_____
DERYCK WEAVER

DECLARATION OF PLAINTIFF DERYCK WEAVER - 1

IN CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

MARYLAND SHALL ISSUE, INC., ET AL,               Case No.:

        Plaintiffs,

vs.                                              DECLARATION OF
                                                 PLAINTIFF JOSHUA EDGAR
MONTGOMERY COUNTY, MARYLAND,

        Defendant

        COMES NOW, the declarant, JOSHUA EDGAR, and hereby solemnly declares under penalties of perjury and upon personal knowledge that the contents of the following declaration are true:

        1. My name is JOSHUA EDGAR and I am a named plaintiff in the above captioned matter.

        2. I have read and otherwise reviewed the allegations of the Complaint in this matter. I hereby adopt and declare that the factual allegations in the complaint that relate or refer to myself are true and correct to the best of my knowledge and belief.

        Dated this day of MAY 27, 2021:

                               JOSHUA EDGAR

DECLARATION OF PLAINTIFF JOSHUA EDGAR - 1

IN CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

MARYLAND SHALL ISSUE, INC., ET AL,                Case No.:

    Plaintiffs,

vs.                                                DECLARATION OF
                                                   PLAINTIFF RONALD DAVID
MONTGOMERY COUNTY, MARYLAND,

    Defendant

COMES NOW, the declarant, RONALD DAVID, and hereby solemnly declares under penalties of perjury and upon personal knowledge that the contents of the following declaration are true:

1. My name is RONALD DAVID and I am a named plaintiff in the above captioned matter, and the owner of I.C.E. FIREARMS & DEFENSIVE TRAINING, LLC, which is also a named plaintiff in this matter. I execute this declaration on behalf of myself and on behalf of I.C.E. FIREARMS & DEFENSIVE TRAINING, LLC.

2. I have read and otherwise reviewed the allegations of the Complaint in this matter. I hereby adopt and declare that the factual allegations in the complaint that relate or refer to myself and to I.C.E. FIREARMS & DEFENSIVE TRAINING, LLC, are true and correct to the best of my knowledge and belief.

Dated this day of MAY 27, 2021:

RONALD DAVID

DECLARATION OF PLAINTIFF RONALD DAVID - 1

1

2                          IN CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

3

4    MARYLAND SHALL ISSUE, INC., ET AL,              Case No.:

5              Plaintiffs,

6    vs.                                             DECLARATION OF
                                                     PLAINTIFF NANCY DAVID
7    MONTGOMERY COUNTY, MARYLAND,

8              Defendant

9

10            COMES NOW, the declarant, NANCY DAVID, and hereby solemnly declares under penalties of

     perjury and upon personal knowledge that the contents of the following declaration are true:
11

12            1. My name is NANCY DAVID and I am a named plaintiff in the above captioned matter.

13            2. I have read and otherwise reviewed the allegations of the Complaint in this matter.  I hereby

     adopt and declare that the factual allegations in the complaint that relate or refer to myself are true and correct to the
14
     best of my knowledge and belief.
15
              Dated this day of MAY 27, 2021:
16

17

18                                                  NANCY DAVID

19

20

21

22

23

24

25

26

27

28

     DECLARATION OF PLAINTIFF NANCY DAVID  - 1

1  **Sec. 1. Sections 57-1, 57-7, and 57-11 are amended, and Section 57-16 is**
2  **added, as follows:**

3  **57-1. Definitions.**

4  In this Chapter, the following words and phrases have the following meanings:

5  *3D printing process*: a process of making a three-dimensional, solid
6  object using a computer code or program, including any process in
7  which material is joined or solidified under computer control to create a
8  three-dimensional object.

9  &ast;  &ast;  &ast;

10  *Gun* or *firearm*: Any rifle, shotgun, revolver, pistol, ghost gun,
11  undetectable gun, air gun, air rifle or any similar mechanism by
12  whatever name known which is designed to expel a projectile through a
13  gun barrel by the action of any explosive, gas, compressed air, spring or
14  elastic.

15  (1) The term "antique firearm" means (a) any firearm (including any
16    firearm with a matchlock, flintlock, percussion cap, or similar
17    type of ignition system) manufactured in or before 1898; and (b)
18    any replica of any firearm described in subparagraph (a) if such
19    replica (i) is not designed or redesigned or using rimfire or
20    conventional centerfire fixed ammunition, or (ii) uses rimfire or
21    conventional centerfire fixed ammunition which is no longer
22    manufactured in the United States and which is not readily
23    available in the ordinary channels of commercial trade.

24  (2) "Ghost gun" means a firearm, including an unfinished frame or
25    receiver, that lacks a unique serial number engraved or cased in
26    metal alloy on the frame or receiver by a licensed manufacturer,
27    maker or importer under federal law or markings in accordance

- 2 -

| | | |
|---|---|---|
| 28 | | with 27 C.F.R. § 479.102. It does not include a firearm that has |
| 29 | | been rendered permanently inoperable, or a firearm that is not |
| 30 | | required to have a serial number in accordance with the Federal |
| 31 | | Gun Control Act of 1968. |
| 32 | (3) | "Handgun" means any pistol, revolver or other firearm capable of |
| 33 | | being concealed on the person, including a short-barreled shotgun |
| 34 | | and a short-barreled rifle as these terms are defined below. |
| 35 | | "Handgun" does not include a shotgun, rifle, or antique firearm. |
| 36 | [(3)] (4) | "Rifle" means a weapon designed or redesigned, made or |
| 37 | | remade, and intended to be fired from the shoulder and designed |
| 38 | | or redesigned and made or remade to use the energy of the |
| 39 | | explosive in a fixed metallic cartridge to fire only a single |
| 40 | | projectile through a rifled bore for each single pull of the trigger. |
| 41 | [(4)] (5) | The term "short-barreled rifle" means a rifle having one |
| 42 | | (1) or more barrels less than sixteen (16) inches in length and any |
| 43 | | weapon made from a rifle (whether by alternation, modification |
| 44 | | or otherwise) if such weapon, as modified, has an overall length |
| 45 | | of less than twenty-six (26) inches. |
| 46 | [(5)] (6) | The term "short-barreled shotgun" means a shotgun having |
| 47 | | one (1) or more barrels less than eighteen (18) inches in length |
| 48 | | and any weapon made from a shotgun (whether by alteration, |
| 49 | | modification or otherwise) if such weapon as modified has an |
| 50 | | overall length of less than twenty-six (26) inches. |
| 51 | [(6)] (7) | "Shotgun" means a weapon designed or redesigned, made |
| 52 | | or remade, and intended to be fired from the shoulder and |
| 53 | | designed or redesigned and made or remade to use the energy of |
| 54 | | the explosive in a fixed shotgun shell to fire through a smooth |

- 3 -

55   bore either a number of ball shot or a single projectile for each

56   single pull of the trigger.

57   (8)   "Undetectable gun" means:

58       (A)   a firearm that, after the removal of all its parts other than a

59          major component, is not detectable by walk-through metal

60          detectors commonly used at airports or other public

61          buildings;

62       (B)   a major component that, if subjected to inspection by the

63          types of detection devices commonly used at airports or

64          other public buildings for security screening, would not

65          generate an image that accurately depicts the shape of the

66          component; or

67       (C)   a firearm manufactured wholly of plastic, fiberglass, or

68          through a 3D printing process.

69             *      *      *

70   *Major component* means, with respect to a firearm:

71   (1)   the slide or cylinder or the frame or receiver; and

72   (2)   in the case of a rifle or shotgun, the barrel.

73   *Minor*: An individual younger than 18 years old.

74             *      *      *

75   *Place of public assembly*: A "place of public assembly" is a place where

76   the public may assemble, whether the place is publicly or privately

77   owned, including a [government owned] park [identified by the

78   Maryland-National Capital Park and Planning Commission]; place of

79   worship; [elementary or secondary] school; [public] library;

80   [government-owned or -operated] recreational facility; hospital;

81   community health center; long-term facility; or multipurpose exhibition

82      facility, such as fairgrounds or a conference center.  A place of public

83      assembly includes all property associated with the place, such as a

84      parking lot or grounds of a building.

85            *     *     *

**86  57-7. Access to guns by minors.**

87    (a)    A person must not give, sell, rent, lend, or otherwise transfer any rifle or

88            shotgun or any ammunition or major component for these guns in the

89            County to a minor.  This subsection does not apply when the transferor

90            is at least 18 years old and is the parent, guardian, or instructor of the

91            minor, or in connection with a regularly conducted or supervised

92            program of marksmanship or marksmanship training.

93    (b)    An owner, employee, or agent of a gun shop must not allow a minor to,

94            and a minor must not, enter the gun shop unless the minor is

95            accompanied by a parent or other legal guardian at all times when the

96            minor is in the gun shop.

97    <u>(c)</u>    <u>A person must not give, sell, rent, lend, or otherwise transfer to a minor:</u>

98          <u>(1)</u>    <u>a ghost gun or major component of a ghost gun;</u>

99          <u>(2)</u>    <u>an undetectable gun or major component of an undetectable gun;</u>

100              <u>or</u>

101          <u>(3)</u>    <u>a computer code or program to make a gun through a 3D printing</u>

102              <u>process.</u>

103    <u>(d)</u>    <u>A person must not [[manufacture or assemble]] purchase, sell, transfer,</u>

104            <u>possess, or transfer a ghost gun, including [[making]] a gun created</u>

105            <u>through a 3D printing process, in the presence of a minor.</u>

106    <u>(e)</u>    <u>A person must not store or leave a ghost gun, an undetectable gun, or a</u>

107            <u>major component of a ghost gun or an undetectable gun, in a location</u>

108            <u>that the person knows or should know is accessible to a minor.</u>

| 109 | | | [(c)] (f) | This section must be construed as broadly as possible within the |
| 110 | | | | limits of State law to protect minors. |

**57-11. Firearms in or near places of public assembly.**

| 112 | (a) | | [A] In or within 100 yards of a place of public assembly, a person must |
| 113 | | | not: |
| 114 | | (1) | sell, transfer, [[manufacture, assemble,]] possess, or transport a |
| 115 | | | ghost gun, undetectable gun, handgun, rifle, or shotgun, or |
| 116 | | | ammunition or major component for these firearms[, in or within |
| 117 | | | 100 yards of a place of public assembly]; or |
| 118 | | (2) | sell, transfer, possess, or transport[[, or use a computer code to |
| 119 | | | create,]] a firearm created through a 3D printing process. |

| 120 | -(b) | | This section does not: |
| 121 | | (1) | prohibit the teaching of firearms safety or other educational or |
| 122 | | | sporting use in the areas described in subsection (a); |
| 123 | | (2) | apply to a law enforcement officer, or a security guard licensed to |
| 124 | | | carry the firearm; |
| 125 | | (3) | apply to the possession of a firearm or ammunition, other than a |
| 126 | | | ghost gun or an undetectable gun, in the person's own home; |
| 127 | | (4) | apply to the possession of one firearm, and ammunition for the |
| 128 | | | firearm, at a business by either the owner who has a permit to |
| 129 | | | carry the firearm, or one authorized employee of the business |
| 130 | | | who has a permit to carry the firearm; |
| 131 | | (5) | apply to the possession of a handgun by a person who has |
| 132 | | | received a permit to carry the handgun under State law; or |
| 133 | | ((6) | apply to separate ammunition or an unloaded firearm: |

| | | (A) | transported in an enclosed case or in a locked firearms rack on a motor vehicle, unless the firearm is a ghost gun or an undetectable gun; or |

134                 (A) transported in an enclosed case or in a locked firearms rack

135                      on a motor vehicle, unless the firearm is a ghost gun or an

136                      undetectable gun; or

137                 (B) being surrendered in connection with a gun turn-in or

138                      similar program approved by a law enforcement agency.

139                               \*     \*     \*

140 **57-15. Penalty.**

141         Any violation of this Chapter or a condition of an approval certificate issued

142 under this Chapter is a Class A violation to which the maximum penalties for a Class

143 A violation apply. Any violation of Section 57-8 is a Class A civil violation.

144 **57-16. Reporting requirement.**

145        (a) The County Police Department must submit a report annually to the

146             County Executive and the County Council regarding the availability and

147             use of ghost guns and undetectable guns in the County.

148        (b) The report must include the number of ghost guns and undetectable

149             guns recovered by the Department during the prior year.

150        (c) Each report must be available to the public on the Police Department's

151             website.

BILL NO. 4-21

*Approved*:

4/7/2021

Tom Hucker, President, County Council                         Date

*Approved*:

4/16/2021

Marc Elrich, County Executive                                      Date

*This is a correct copy of Council action.*

4/16/2021

Selena Mendy Singleton, Esq., Clerk of the Council        Date

- 8 -

EXHIBIT B



**MARYLAND SHALL ISSUE®**
SELF DEFENSE IS A CIVIL RIGHT

**President**
Mark W. Pennak

February 9, 2021

## WRITTEN TESTIMONY OF MARK W. PENNAK, PRESIDENT, MSI, IN OPPOSITION TO BILL 4-21 (Corrected)

I am the President of Maryland Shall Issue ("MSI"). Maryland Shall Issue is an all-volunteer, non-partisan organization dedicated to the preservation and advancement of gun owners' rights in Maryland. It seeks to educate the community about the right of self-protection, the safe handling of firearms, and the responsibility that goes with carrying a firearm in public. I am also an attorney and an active member of the Bar of the District of Columbia and the Bar of Maryland. I recently retired from the United States Department of Justice, where I practiced law for 33 years in the Courts of Appeals of the United States and in the Supreme Court of the United States. I am an expert in Maryland firearms Law, federal firearms law and the law of self-defense. I am also a Maryland State Police certified handgun instructor for the Maryland Wear and Carry Permit and the Maryland Handgun Qualification License and a certified NRA instructor in rifle, pistol and personal protection in the home, personal protection outside the home, muzzle loading as well as a range safety officer. I write in OPPOSITION TO BILL 4-21. For the reasons set forth below, this bill is preempted by State law and, if enacted, would be violative of the First Amendment and the Second Amendment of the Constitution. The Council would be well-advised to stay its hand and allow the General Assembly take the lead in these matters.

**The Bill Is Preempted:**

State law, MD Code, Criminal Law, § 4-209, broadly preempts "the right of a county, municipal corporation, or special taxing district to regulate the purchase, sale, taxation, transfer, manufacture, repair, ownership, possession, and transportation of: (1) a handgun, rifle, or shotgun; and (2) ammunition for and components of a handgun, rifle, or shotgun." The statute provides, as an exception, that the locality may regulate these subject matters '(i) with respect to minors; (ii) with respect to law enforcement officials of the subdivision; and (iii) except as provided in paragraph (2) of this subsection, within 100 yards of or in a park, church, school, public building, and other place of public assembly."

This bill violates Section 4-209 in multiple ways. First, and perhaps most egregiously, the bill defines a place of public assembly to include "a place where the public may assemble, whether the place is publicly or privately owned." The bill thus defines public "assembly" as a privately or publicly owned place where people "may assemble" and is thus utterly circular. It includes places where persons "may" assemble, not merely places where people do assemble or even regularly assemble.

It could thus include any place, private or public, that people "may" assemble in the unknowable future.

Such an extraordinarily broad, circular definition is no definition at all. It is so vague as to violate the Due Process Clause of the Fourteenth Amendment. See *Giovani Carandola, Ltd. v. Fox*, 470 F.3d 1074, 1079 (4th Cir. 2006) (recognizing that "[a] statute is impermissibly vague if it either (1) fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits or (2) authorizes or even encourages arbitrary and discriminatory enforcement" (internal quotations omitted). See also *Grayned v. City of Rockford*, 408 U.S. 104, 108-109, (1972) ("A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis"). This body has an obligation to define regulatory prohibitions, not make them so vague as to ensnare the innocent or lead to arbitrary enforcement, especially where the law affects Constitutional rights. *City of Chicago v. Morales*, 527 U.S. 41, 54 (1999). A statute will be deemed unconstitutionally vague if it (1) "fails to give ordinary people fair notice of the conduct it punishes," or (2) is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). The definition of place of public assembly fails that test.

Even more fundamentally, the bill's definition of place of public assembly is in conflict with Section 4-209. The proviso in Section 4-209 that allows the County to regulate firearms in within a 100 yards of "another place of public assembly" must read in context. See, e.g., *Berry v. Queen*, 469 Md. 674, 690, 233 A.3d 42 (2020) ("In order to interpret a word's specific meaning in a particular statute we look to the context in which the word is used.") (citation omitted). That proviso does not allow the County to regulate places where people "may" assemble, it allows regulation of a place within 100 yards **another** place of public assembly," thus covering specific, existing locations where people typically already assemble.

The rule is that "'when general words in a statute follow the designation of particular things or classes of subjects or persons, the general words will usually be construed to include only those things or persons of the same class or general nature as those specifically mentioned.'" *In re Wallace W.*, 333 Md. 186, 190, 634 A.2d 53 (1993), quoting *Giant of Md. v. State's Attorney*, 274 Md. 158, 167, 334 A.2d 107, 113 (1975). This is simply an application of the canon of *ejusdem generis* which is based on "the supposition that if the legislature had intended the general words to be construed in an unrestricted sense, it would not have enumerated the specific things." *State v. 158 Gaming Devices*, 304 Md. 404, 429 n. 12, 499 A.2d 940 (1985). See also *State v. Sinclair*, 274 Md. 646, 650, 659, 337 A.2d 703 (1975). As the Supreme Court has also noted, the canon of *ejusdem generis* "limits general terms [that] follow specific ones to matters similar to those specified." *CSX Transp., Inc. v. Alabama Dept. of Revenue*, 562 U.S. 277, 294 (2011).

Here, by using the term "another place of public assembly," the statute was obviously intended to include "another" place which is akin or similar to the places expressly mentioned in the same statutory sentence, viz. a "park," a "church," a "school" or a "public building." Privately owned businesses or private property in

general are not like any of these specific places. Read literally, the bill's definition of a "place of public assembly" dramatically expands the area subject to local regulation to include any place within 100 yards of a private business or private property that "may" be used as place of assembly as well as to any place within 100 yards of a park, school, church or a public building. A place of public assembly as defined by this bill could cover a private business or a private home used as a place for a book club to meet, or a private property used to host any sort of event, no matter how small or limited in scope. It intrudes into private homes and businesses in a wholly unprecedented way. That is a vast overreach of legislative power by the County. It will not go unchallenged.

Even if the definition of "another place of public assembly" is limited to private businesses, the term is unbelievably broad. Given the number of private businesses in the County, such application would expand the exception to a huge portion of the County, including literally thousands of private homes within a 100 yards of a business. This sweep into private homes is not saved by Section 57-11, as this bill amends Section 57-11 to directly regulate the mere possession of "a ghost gun or undetectable gun" in the person's own home. The Section 4-209 exception for "another" place of public assembly simply cannot be reasonably read to allow such all-encompassing regulation of private possession in one's own home.  This is particularly so given that State law expressly permits home possession of firearms, including handguns. MD Code, Criminal Law, § 4-203(b)(6) (providing that a person may wear, carry or transport a handgun "on real estate that the person owns or leases"). Nothing in Section 4-209 allows the County to regulate home possession of firearms. For these reasons alone, the bill's definition of "public assembly" will not survive judicial review. See *Montgomery County v. Atlantic Guns, Inc.*, 302 Md. 540, 489 A.2d 1114 (1985).

The bill conflicts with State law in other ways. The bill amends Section 57-11 to regulate possession of a firearm and ammunition at a business, providing that such owner may possess a firearm only if the owner "has a permit to carry the firearm." It similarly allows an authorized employee of the business to possess a firearm only if the employee "has a permit to carry the firearm." These amendments (requiring the owner and the employee to have a permit) bring the bill into direct conflict with State law. Specifically, MD Code, Criminal Law, § 4-203(b), expressly provides that a person need not have a permit to transport a handgun between the residence "and the place of business of the person" if the business is owned substantially by that person (Section 4-203(b)(3)), and further provides that a person may, without a permit, wear and carry a handgun "within the confines of a business establishment that the person owns or leases" (Section 4-203(b)(6)). Section 4-203(b)(7) extends the same right to wear and carry a handgun, without a permit, to an authorized supervisory employee within the confines of the business. These State law provisions are also not limited to "one" firearm, much less to ammunition for that one firearm, as required by this bill. These provisions of State law bar the County from regulating possession of firearms by business owners and employees.

Specifically, under the Express Powers Act, counties in Maryland have no power to pass legislation that is inconsistent with State law. See MD Code, Local

Government, §10-206(a) (providing that a county may pass an ordinance, resolution, or bylaw that is "not inconsistent with State law"). Thus, "[a] county may exercise the powers provided under this title only to the extent that the powers are not preempted by or in conflict with public general law." (Id. at §10-206(b)). It is thus well established that a local law is preempted by conflict when the local law prohibits an activity which is permitted by State law, or permits an activity prohibited by state law.  See *City of Baltimore v. Sitnick*, 254 Md. 303, 317, 255 A.2d 376 (1969) ("a political subdivision may not prohibit what the State by general public law has permitted"). The bill obviously fails that test. Nothing in Section 4-209 allows the County to enact regulations that actually and directly ban conduct expressly permitted by State law. This County has already been rebuffed in its attempt to regulate ammunition by the Maryland Court of Appeals. See *Montgomery County v. Atlantic Guns, Inc.*, 302 Md. 540, 489 A.2d 1114 (1985). The limited exception for regulation allowed in Section 4-209 cannot be construed to allow the County to directly contravene State law in this manner. See, e.g., *Allied Vending, Inc. v. City of Bowie*, 332 Md. 279, 297-98, 631 A.2d 77 (1993) ("state law may pre-empt local law in one of three ways: 1) pre-emption by conflict, 2) express pre-emption, or 3) implied pre-emption").

This bill also seeks to outlaw so called "ghost guns" to the extent possible and in so doing violates existing State law. For example, the bill bans the mere possession or transport of any firearm (including a ghost gun) within 100 yards of a place of public assembly.  As noted, the bill expressly amends Section 57-11 to make clear that this ban applies to ghost guns in the home. As explained above, the County may not ban the possession of any firearms in the home as State law expressly permits such possession. MD Code, Public Safety, §4-203(b)(6). That includes ghost gun possessions in the home. The County may not regulate home possession of any firearm. Period. Full stop.

The bill also provides that a person "must not" "sell, transfer, possess, transport, or use a computer code to create, a firearm through a 3D printing process." That language is a grammatical mess. Does the bill ban the mere sale or possession of such code or does it ban such a sale or possession only when it is used "to create a firearm." If it bans the former, then the bill is blatantly unconstitutional under the First Amendment and Second Amendment, as discussed below, and preempted, as discussed above. If it bans only the latter, then the bill is nonsense, as it is hard to envision a "transport" or "sale" of code that "creates" a gun. Such poor draftsmanship is intolerable in a bill that would attach penalties for a Class A violation. *Sessions v. Dimaya*, 138 S.Ct. 1204, 1212 (2018) ("the prohibition of vagueness in criminal statutes…is 'essential' of due process required by both 'ordinary notions of fair play and the settled rules of law") (citation omitted). See also *Myers v. State*, 248 Md. App. 422, 437, 241 A.3d 997 (2020) ("The United States Supreme Court has stated that 'a vague law is no law at all.'"), quoting *United States v. Davis*, 139 S. Ct. 2319, 2323 (2019).

The bill also bans "access" by a minor to any "major component" of a ghost gun and defines a major component to include "the slide or cylinder or the frame or receiver" or the barrel in the case of a rifle or shotgun. That limitation is inconsistent with

current State law that regulates access by a minor under the age of 16 to a loaded "firearm," not merely access to an unloaded component of a firearm. MD Code, Criminal Law, § 4-104. Current State law allows such access to an entire firearm, including a loaded firearm, if the child under the age of 16 has a hunter safety certificate. (Id.). The statute also expressly permits such access if supervised "by an individual at least 18 years old." (Id.). Once again, the bill improperly prohibits an activity permitted by State law.

Similarly, the bill provides that a person "must not" sell, lend or otherwise transfer a ghost gun to a minor and bans the manufacture or assembly of "a gun" (any gun) in the mere presence of a minor, including in the home, by a parent or firearms instructor or other adult. These bans are directly contrary to State law, which provides that a minor (or any person under 21) may "transfer" and possess a regulated firearm (including a handgun) if that person is under the supervision of a person over 21 or being trained by an instructor. MD Code, Public Safety, § 5-133(d). Such firearms instruction by an adult also frequently includes cleaning firearms, which is a process that necessarily includes disassembly and assembly of a firearm. Yet, this bill would ban these activities expressly permitted by State law. Indeed, Section 4-209(b)(2) flatly prohibits the County from banning firearms training, including the training of minors. That is exactly what this bill does by banning the assembly of any firearm in the mere "presence" of a minor and by banning the use of a ghost gun in the training or supervised access expressly allowed by Section 5-133(d).

**The Bill Violates The First Amendment:**

The bill amends Section 57-11 to ban the mere possession, transport, sale or transfer of computer software. Yet, there is no doubt that computer "software" or a "computer program" is fully protected by the First Amendment. See, e.g., *Junger v. Daley*, 209 F.3d 481, 482 (6th Cir. 2000) ("Because computer source code is an expressive means for the exchange of information and ideas about computer programming, we hold that it is protected by the First Amendment."); *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 449 (2d Cir. 2001) ("[C]omputer code, and computer programs constructed from code can merit First Amendment protection."). Banning computer programs is thus akin to banning a book and banning distribution of computer code is thus akin to banning the distribution of a book. Legally, if passed, the bill would turn County law enforcement officers into censors and the County government into a bunch of book burners.

The ban imposed by the bill is a purely "content-based" prior restraint on a First Amendment activities. See *Reed v. Town of Gilbert*, 135 S.Ct. 2218 (2015). It is well-established that prior restraints to speech are "the most serious and least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). Under *Reed*, a facially content-neutral law will still be categorized as content-based if it "cannot be "justified without reference to the content of the regulated speech,'" or ... adopted by the government 'because of disagreement with the message [the speech] conveys.'" 135 S.Ct. at 2227, quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Here, there is nothing remotely facially neutral

about the bans imposed by this bill. The bans are based on the County's "disagreement with the message." Such a prior restraint on the message cannot stand. See *Defense Distributed v. Dept. of State*, 838 F.3d 451, 468-70 (5th Cir. 2016), c*ert. denied* 138 S.Ct. 638 (2018) (Jones, J. dissenting on other grounds) (reaching the merits of the First Amendment claim not considered by the majority and noting that the government's restriction on the export of 3-D printing code was content-based and thus must be analyzed under strict scrutiny).

Moreover, every American has a First Amendment right to receive information. Although the First Amendment refers only to the right to speak, courts have long recognized that the Amendment also protects the right to receive the speech of others. See *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765 (1978) (stating that the "First Amendment ... afford[s] the public access to discussion, debate, and the dissemination of information and ideas"); *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748 (1976) (ban on advertising of prescription drug prices overturned); *Bigelow v. Virginia*, 421 U.S. 809, (1975) (ban on abortion advertising invalid); *Lamont v. Postmaster General*, 381 U.S. 301, (1965) (a postal regulation limiting the importation of Communist publications overturned); *Martin v. City of Struthers*, 319 U.S. 141 (1943) (ordinance prohibiting door-to-door solicitation invalid as to distribution of leaflets announcing a religious meeting). Every person in Maryland has a constitutional right to receive, purchase or otherwise obtain the very computer software or programs that the bill would ban.

**The Bill Is Unconstitutional Under The Second Amendment:**

As noted, the bill would ban mere possession of a "ghost gun" within 100 yards of broad and vague definition of a place of public assembly, including banning possession in the home. This bill is thus a gun ban, pure and simple. Such a gun ban violates the Second Amendment right of owners to possess firearms under *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. Chicago*, 561 U.S. 742, 750 (2010). Even under the least demanding test ("intermediate scrutiny"), if the State can accomplish its legitimate objectives without a ban (a naked desire to penalize gun owners is not legitimate), then the State must use that alternative. *McCullen v. Coakley*, 134 S. Ct. 2518, 2534 (2014). Stated differently, under intermediate scrutiny, the State has the burden to demonstrate that its law does not "burden substantially more [protected conduct] than is necessary to further the government's legitimate interest." Id. at 2535, quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 796 (1989). See also *NY State Rifle & Pistol Ass'n. v. Cuomo*, 804 F.3d 242, 264 (2d Cir. 2015), cert. denied, 136 S.Ct. 2486 (2016) (striking down a 7 round load limit in a firearm magazine because the limit was "untethered from the stated rationale"). See also *Reynolds v. Middleton*, 779 F.3d 222, 232 (4th Cir. 2015) (holding that, under the intermediate scrutiny test as construed in *McCullen*, the government must "prove that it actually tried other methods to address the problem"). (Emphasis in original).

The test for "strict scrutiny" is even more demanding as, under that test, the State must prove both a "compelling need" and that it used the "least" restrictive alternative in addressing that need. See *United States v. Playboy Entm't. Grp., Inc.*,

529 U.S. 803, 813 (2000). More generally, the constitutionality of gun laws must be analyzed under the "text, history and tradition" test that was actually used in *Heller* and *McDonald.* See, e.g., *Heller v. District of Columbia*, 670 F.3d 1244, 1269 (D.C. Cir. 2016) (Kavanaugh, J., dissenting) ("In my view, *Heller* and *McDonald* leave little doubt that courts are to assess gun bans and regulations based on text, history, and tradition, not by a balancing test such as strict or intermediate scrutiny."). There is no "text, history or tradition" that could possibly support the types of bans imposed by this bill.

The manufacture of a homemade firearm or the use of a 3-D printer to create a homemade gun or gun component does not make that gun illegal in the slightest under long-standing federal law and state law. Under federal law, a person may legally manufacture a firearm for his own personal use. See 18 U.S.C. § 922(a). However, "it is illegal to transfer such weapons in any way." *Defense Distributed v. United States*, 838 F.3d 451, 454 (5th Cir. 2016). This manufacture "involves starting with an '80% lower receiver,' which is simply an unfinished piece of metal that looks quite a bit like a lower receiver but is not legally considered one and may therefore be bought and sold freely. It requires additional milling and other work to turn into a functional lower receiver." (Id).

Manufacturing an "80% lower" into a "functional lower receiver" is not a trivial process. It takes machine tools, expertise and hours of time. Miscues are common and, when made, essentially convert the "80% lower" into scrap metal. Individuals who undertake this process are overwhelmingly hobbyists, not criminals. Even after the receiver is successfully made, the owner would still have to purchase the additional parts, such as a barrel, the trigger, slide and all the internal parts to complete the assembly. All these additional parts are expensive. With the cost of the tools to mill the receiver, plus the cost of the parts, a final assembled homemade gun costs more to make than it would to actually buy an identical gun from a dealer. This bill would ban the hobby and penalize the hobbyist for the continued possession of any gun (within a 100 yards of a place of public assembly) that the hobbyist constructed prior to the enactment of the law. That result likely includes literally thousands of law-abiding people in Montgomery County.

Banning manufacture or the mere possession of any gun made by a 3-D printer, cannot be justified under any of these tests applicable to the Second Amendment. The bills' ban on the use of computers is akin to the argument that the Second Amendment protects only muskets that were used during the Revolutionary War, a contention that the Court in *Heller* rejected as "bordering on the frivolous." *Heller*, 554 U.S. at 582. Indeed, almost all firearms are manufactured using computer software. The County simply may not ban the possession of these types of arms. See *Defense Distributed v. Dept. of State*, 121 F.Supp.3d 680, 699 (W.D. Tex. 2015), *aff'd*, 838 F.3d 451 (5th Cir. 2016), *cert. denied*, 138 S.Ct. 638 (2018) (sustaining a regulation of 3-D printed guns under the Second Amendment because plaintiffs were "not prohibited from manufacturing their own firearms" and were "not prohibited from acquiring the computer files at issue").

Heller held that guns in "common use" by law abiding persons are prima facie protected arms under the Second Amendment. *Heller*, 554 U.S. at 627. Homemade guns easily satisfy this requirement as there are literally tens of thousands of such guns made over many years throughout the United States. Guns for personal use have been made at home for centuries, even before the Revolutionary War. The Council simply may not disregard that reality. See *Caetano v. Massachusetts*, 136 S.Ct.1027 (2016) (summarily reversing Massachusetts' highest court for failing to follow the reasoning of Heller in sustaining a state ban on stun guns); *Ramirez v. Commonwealth*, 479 Mass. 331, 332, 352 (2017) (on remand from *Caetano*, holding that "the absolute prohibition against civilian possession of stun guns under § 131J is in violation of the Second Amendment" and declaring the State's absolute ban to be "facially invalid"). Homemade guns are at least as much "in common use" as stun guns at issue in Caetano.

Here, the supposed evil that this bill purports to address is guns without serial numbers because such guns are not "traceable." Yet, tracing runs out after identification of the gun's first purchaser and firearms may be sold and resold many times in their lifetime. Criminals, who may not possess firearms at all, will not be deterred by the bill as possession of a firearm by a prohibited person is already a 10-year federal felony, 18 U.S.C. § 922(g), and a serious crime under existing State law, MD Code, Public Safety, § 5-101(g)(3), § 5-133(b)(1), § 5-205(b)(1). The few crimes that are solved by tracing guns left at a crime scene are only a small fraction of guns used in crimes because very few guns are actually traced by the ATF. See David B. Kopel, Clueless: The Misuse of BATF Firearms Tracing Data. http://www.davekopel.org/2A/LawRev/CluelessBATFtracing.htm. See also Police Departments Fail to Regularly Trace Crime Guns. https://www.thetrace.org/2018/12/police-departments-gun-trace-atf/. The ATF itself has cautioned against any use of trace data, noting that "[t]he firearms selected [for tracing] do not constitute a random sample and should not be considered representative of the larger universe of all firearms used by criminals, or any subset of that universe." Bureau of Alcohol, Tobacco, Firearms and Explosives. Firearms Trace Data, 2016: Maryland, https://www.atf.gov/docs/163521-mdatfwebsite15pdf/download. As the ATF further notes, "[n]ot all firearms used in crime are traced and not all firearms traced are used in crime," stating further that "[f]irearms are normally traced to the first retail seller, and sources reported for firearms traced do not necessarily represent the sources or methods by which firearms in general are acquired for use in crime."

But, if the concern is truly that these guns lack a serial number (rather than a desire to penalize gun owners), then that concern can be addressed without banning homemade guns. Specifically, there are alternatives to bans. For example, a new law passed in California (which is ranked by the Giffords Law Center as having the most restrictive gun laws in the nation) provides that a new resident to the state shall apply to the Department of Justice for a unique serial number within 60 days of arrival for any firearm the resident wishes to possess in the state that the resident previously self-manufactured or self-assembled or a firearm the resident owns, that does not have a unique serial number or other mark of identification. As of July 1, 2018, prior to manufacturing or assembling a new firearm, a person is

required to apply to California for a unique serial number. The gun owner is then simply required to engrave that number onto the receiver and report back to California that he or she has done so. As of January 1, 2019, owners of existing guns were required to apply for such serial numbers and perform this engraving. See California Penal Code §§ 29180-29184.

In short, assembly of new homemade guns and existing possession is permitted as long as this serial number is obtained, engraved and reported. California Penal Code §29180. In this way, the owner is identified and the gun is fully "traceable" and thus no longer a so-called "ghost gun." As this law indicates, there is no reason to take the extreme step of flatly banning homemade guns or converting existing owners into criminals. Under *Heller*, the County may not simply reject this alternative simply because a general ban is more convenient or cheaper. Gun owners may not be penalized for such flimsy reasons. See, e.g., *Board of Estimate of City of New York v. Morris*, 489 U.S. 688, 702 n.10 (1989); *Heller v. District of Columbia*, 801 F.3d 264, 310 (D.C. Cir. 2015) (Henderson, J., concurring in part and dissenting in part). Indeed, in 2018, the House Judiciary Committee in the General Assembly favorably reported a bill (HB 740) that expressly required the State Police to conduct a study of this California alternative. Such legislation may be enacted in the future. The Council has no role in such State-wide matters.

In sum, the Council should not venture out on this ill-conceived regulatory adventure that will, more likely than not, be struck down as preempted or otherwise invalidated by the courts. Waiting for the State to act also makes fiscal sense. If the State General Assembly decides to regulate "ghost guns," then the substantial litigation costs associated with defending that policy will be borne by the State, not by the County. Such legislation, if enacted by the General Assembly, will also undoubtedly conflict in some way with the bans that would be imposed by this bill, thereby resulting in the preemption of the County law. The Council should await action by the General Assembly. "Feel good" legislation is no substitute for sound legal judgment.

Sincerely,

Mark W. Pennak

Mark W. Pennak
President, Maryland Shall Issue, Inc.
mpennak@marylandshallissue.org



**CIRCUIT COURT FOR MONTGOMERY COUNTY MARYLAND**
50 MARYLAND AVENUE
ROCKVILLE, MARYLAND 20850
Main: 240-777-9400

| | |
|---|---|
| **Case Number:** | **485899V** |
| **Other Reference Numbers:** | |

**MARYLAND SHALL ISSUE INC, et al. vs. MONTGOMERY COUNTY MARYLAND**

Date: 8/4/2022

## CERTIFIED COPY

I HEREBY CERTIFY that the foregoing is a full, true and correct copy of Entire Record in

No. 485899V, truly taken and copied from the record of proceedings in the Circuit Court for Montgomery County, Maryland, in the foregoing case.
NOTE: A raised seal authenticates each document herein.



In Testimony Whereof, I have hereunto subscribed my name and Affixed the seal of the Circuit Court for Montgomery County on August 04, 2022.

*Karen A. Bushell*

Karen A. Bushell
Clerk of the Circuit Court