IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MARYLAND SHALL ISSUE, INC., *et al.*, ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| v.  ) | Case No. 8:21-cv-01736-TDC |
| ) | Case No. 8:22-cv-01967-DLB |
| MONTGOMERY COUNTY, MD., ) | |
| ) | |
| *Defendant*. ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO REMAND
COUNTS I, II & III TO STATE COURT AND OPPOSITION TO DEFENDANT'S
MOTION TO HOLD THE FEDERAL CLAIMS IN ABEYANCE**

Plaintiffs respectfully submit this Opposition To Defendant's Motion To Remand Counts I, II & III of the First Amended Complaint To State Court, filed August 8, 2022. Plaintiffs likewise oppose defendant's motion to hold these matters in abeyance pending such a remand. Plaintiffs do not oppose defendant's motion to consolidate these two matters. For the reasons set forth below, defendant's remand and abeyance motions should be denied.

**ARGUMENT**

**THIS COURT SHOULD NOT SEVER AND REMAND THE STATE LAW
CLAIMS OR HOLD THIS CASE IN ABEYANCE**

As defendant notes, this case has been before this court before on defendant, Montgomery County, Maryland's ("the County") attempt to remove all the claims in this case to federal court. At that time, this Court granted, in part, plaintiffs' motion to sever and remand the State law claims to State Court. The Court's opinion is attached as Exhibit A for the convenience of the Court. The Court elected to remand Counts I, II, and III of the Complaint and keep and hold in abeyance the

state and federal vagueness claims in Count IV of the Complaint.[1] This Court held that Counts I, II, and III "substantially predominate" over the vagueness challenge in Count IV, involved novel or complex issues of state law; and that principles of economy, fairness and comity counseled a remand of these Counts. In contrast, the Court held that the federal vagueness claim in Count IV "is limited in scope," (slip op. at 6), and that the scope of relief under Count IV would be more limited (slip op. at 7-8). The parties on remand then proceeded to file cross motions for summary judgment in State court on Counts I, II and III. Those motions were then heard orally July 19, 2022, in State court.

What changed? What changed was the June 23, 2022, decision of the Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), a major decision of the Supreme Court concerning the scope and extent of the Second Amendment as well as the appropriate analysis that the lower courts are to employ in adjudicating Second Amendment claims. That decision in *Bruen* has abrogated the 2013 decision of the Maryland Court of Appeals which had held that the Second Amendment did not even apply outside the home. *Williams v. State*, 417 Md. 479, 496, 10 A.3d 1167 (2011). Similarly, prior to *Bruen*, the circuits were in conflict as to whether and to the extent to which the Second Amendment applied outside the home, with the Fourth Circuit siding with those courts which had rejected Second Amendment challenges using "means-end," intermediate scrutiny. See *Bruen*, 142 S.Ct. at 2126-27 & n.4. Until *Bruen* was decided, a State court Second Amendment challenge to Bill 4-21 simply was not viable.

---

[1] Count I of the Complaint alleged that the Bill 4-21 enacted by the County violated the Maryland Constitution; Count II alleged that Bill 4-21 violated Express Powers Act, MD Code Local Gov't § 10-206; Count III alleged that Bill 4-21 was a "taking" under the Maryland Constitution and Count IV alleged that Bill 4-21 was unconstitutionally vague.

*Bruen* has now changed all that as it makes clear that the Second Amendment fully applies outside the home and that the appropriate test for assessing Second Amendment challenges is text, history and tradition, not intermediate scrutiny under some variant of a "means-end" test. *Bruen* holds that the Second Amendment right to bear arms means "a State may not prevent law-abiding citizens from publicly carrying handguns because they have not demonstrated a special need for self-defense." (142 S.Ct. at 2135 n.8). In so holding, the Court expressly rejected the "means-end," intermediate scrutiny test that had been used almost uniformly by the lower courts (including the Fourth Circuit) to sustain laws challenged as inconsistent with the Second Amendment. (142 S.Ct. at 2129-30). Here, as discussed *infra*, Bill 4-21 is almost exclusively concerned with possession, transport, transfer and sales of all types of firearms (including components) taking place outside the home. See Montgomery County Code § 57-11, as amended by Bill 4-21.

Accordingly, on July 10, 2022, well prior to the July 19th Hearing, plaintiffs filed with the State court a supplemental memorandum bringing to the court's decision the Supreme Court's decision in *Bruen*. A copy of that supplemental memorandum is attached as Exhibit B (without the exhibits). In particular, plaintiffs urged the State court to very narrowly construe the scope of the County's authority under MD Code, Criminal Law, 4-209(b)(1), the only source of the authority on which the County relies. Plaintiffs had previously urged such a narrow construction throughout its motion for summary judgment. *Bruen* is outcome determinative on that argument. The County's response to *Bruen* was to play ostrich and put its head in the sand. The County did not deign to file a response to that supplemental memorandum. Nor did the County file *any* pleading concerning the impact of *Bruen* on this case. Instead, the County maintained during the July 19th Hearing that the court should not even consider the Second Amendment in construing the scope of the County's

authority under Section 4-209(b)(1), asserting that since there was (at that time) no express Second Amendment claim, the State court should simply ignore *Bruen*.[2]

In light of County's position, plaintiffs had little alternative but to file an amended complaint (which was filed as a matter of right under the Maryland Rules) to expressly allege a Second Amendment claim in a new Count V. That amended complaint meant that the Second Amendment could no longer be ignored, as the County argued. Minor changes to the complaint were made throughout the complaint were made to update the complaint to include an express reliance on recent legislation enacted by the Maryland General Assembly on the subject of so-called "ghost guns," and to correct formatting and otherwise update the complaint. All of these changes were highlighted in the "Compare" document filed with the amended complaint. In response, the State court promptly decided that the pending motions for summary judgment were rendered moot by the filing of the Amended Complaint.

Rather than refile its motion under the amended complaint, the County elected to once again remove the entire case to this Court. Supposedly because it does not wish to "start over again in this Court" (Motion at 3), the County now seeks a remand of Counts I, II and III of the amended complaint and asks this Court to hold Counts IV and V in abeyance. After reflecting on the matter, plaintiffs advised the County that while plaintiffs had no objection to consolidation, plaintiffs did **not** consent to any remand or to any order holding the federal claims in abeyance. Taking umbrage to this position, the County accuses plaintiffs of "gamesmanship," asserting that plaintiffs fear "that have lost on their state-law claim [sic]" and thus "seek another bite at the apple in this Court." (Motion at 3). That's pretty rich. After all, it was the **County** that removed this case to this Court,

---

[2] A transcript of the July 19th Hearing has been ordered but has not yet been received by plaintiffs.

not plaintiffs. There was no decision by the State court and thus *neither* party has had any "bite" at the apple thus far. It is the **County** that is desperate not to litigate the constitutional issue in State court. Otherwise, the County could have simply refiled its motion for summary judgment based on the amended complaint. Indeed, in seeking to hold Count V in abeyance, the County does not want to litigate the Second Amendment claim in **this** Court either.

With the decision in *Bruen*, the Second Amendment claim necessarily changes the case in ways that bear directly on removal and abeyance. As noted, the County's authority to enact Bill 4-21 is completely dependent on limited exceptions, found in subsection 4-209(b)(1), to the absolute preemption of local regulation otherwise found in subsection 4-209(a). *Bruen* means that the limited exceptions permitted by 4-209(b)(1) must be very narrowly construed to save **any** regulatory authority for the County. Specifically, Section 4-209(b)(1) may only authorize County regulation over the five very specific "sensitive areas" expressly identified in *Bruen*, *viz.*, courthouses, schools, legislative assemblies, government buildings and polling places. *Bruen*, 142 S.Ct. at 2133. See Supplemental Memorandum at 6-9. No surrounding exclusion zones, like 100 yards, are even mentioned in *Bruen*. Regulations beyond those five areas are presumptively unconstitutional. (Id.). Under *Bruen*, the burden of proof shifts to the County to show "a well-established and representative historical analogue" dating back to 1791 if it seeks to justify banning firearms in locations beyond the five identified in *Bruen*. Id. The controlling "metric" is "whether modern and historical regulations impose a comparable burden on the right of armed self-defense, and second, whether that regulatory burden is comparably justified." Id.

While the incredible vagueness of Bill 4-21 makes it difficult to precisely identify *every* location Bill 4-21 regulates, there can be no possible dispute that Bill 4-21 facially sweeps far more broadly than these very limited sites mentioned in *Bruen*. As amended by Bill 4-21, Section 5-

11(a) of the County Code provides: "In or within 100 yards of *a place of public assembly,* a person must not: (1) *sell, transfer, possess, or transport* a ghost gun, undetectable gun*, handgun, rifle, or shotgun, or ammunition* or major *component* for these firearms." (Emphasis added). Section 51-1 of the Code defines "place of public assembly" to mean: "*a place where the public may assemble,* whether the place is *publicly or privately owned*, including a park; place of worship; school; library; recreational facility; hospital; community health center; long-term facility; or multipurpose exhibition facility, such as a fairgrounds or conference center. A place of public assembly includes all property associated with the place, such as a parking lot or grounds of a building." (Emphasis added).

The bans imposed by these amendments enacted by Bill 4-21 are County-wide, both in scope of content and in the geographic areas in which the bans are effective. Bill 4-21 amends the County Code to ban the mere possession or transport of ordinary handguns, rifles, shotguns, ammunition *as well as* the components of these firearms. With Bill 4-21's definition of "place of public assembly" to include any location, private or public, where people "may assemble," it is hard to imagine any place in Montgomery County that is **not** at or within a 100-yards of a "place of public assembly." The conflict with *Bruen* could hardly be more direct. In *Bruen*, the Court rejected New York's "attempt to characterize New York's proper-cause requirement as a 'sensitive-place' law," ruling that "expanding the category of 'sensitive places' simply to all places of public congregation that are not isolated from law enforcement defines the category of 'sensitive places' far too broadly." (142 S.Ct. at 2134). The County is no more a "sensitive place" than New York City was in *Bruen*.

The County's motion (at 1, note 3) misrepresents the sweep of Bill 4-21, stating that the bill covers "ghost guns" and "undetectable guns" within 100 yards of a place of public assembly.

That statement conveniently omits not only the **other types** firearms expressly covered by County Code Section 57-11, as amended by Bill 4-21, but also elides the sweep of "place of public assembly" as redefined by Section 51-1 of the County Code, as amended by Bill 4-21. When plaintiffs' counsel brought these errors to the attention of County counsel, the County refused to correct them, asserting that "it's the County's Motion and we'll choose the verbiage and word placement." See Supplement 1 to Motion (Dkt #26) filed in No. 21-1736.

The County may well be the master of its motion, but these deliberately misleading statements and omissions, and the concomitant express refusal to correct them when requested, should not be countenanced. See *McCoy v. Court of Appeals of Wisconsin, Dist. 1*, 486 U.S. 429, 436 (1988) ("Neither paid nor appointed counsel may deliberately mislead the court with respect to either the facts or the law, or consume the time and the energies of the court or the opposing party by advancing frivolous arguments."); *Azar v. Garza*, 138 S.Ct. 1790, 1793 (2018) ("all attorneys must remain aware of the principle that zealous advocacy does not displace their obligations as officers of the court"). The County's willingness to engage in such tactics indicates how desperate the County is to avoid a prompt, full and fair litigation of the Second Amendment claim in this Court **or** in State court.

Once these cases are consolidated, plaintiffs intend to request leave under this Court's standing case management order to file a motion for summary judgment on Count V, and perhaps on other Counts. There are no factual disputes and no discovery is necessary. That motion has the potential to dispose of the entire case in multiple ways. For example, Bill 4-21 is invalid either under a narrow construction of subsection 4-209(b)(1), as required by *Bruen*, or it is invalid on its face without regard to any authority bestowed by subsection 4-209(b)(1). A State may not authorize a County to violate the Second Amendment. State laws purporting to do so may not be

enforced and neither may any County ordinance that purports to rely on any such unconstitutional State law. That is particularly true where, as here, the County has vastly expanded the scope of subsection 4-209(b)(1) to apply to all places, public or private, that people "may assemble." That Bill 4-21 vastly expands the scope of the exception provisions of subsection 4-201(b)(1) is apparent on its face and undeniable.

But it would not matter even if Bill 4-21's scope was identical to those locations expressly specified in subsection 4-209(b)(1)(iii), *viz.,* "a park, church, school, public building, and other place of public assembly." For example, bans on possession or transport in a "park" and a "church" do not have any well-established and representative historical analogues. See, e.g., *Bridgeville Rifle & Pistol Club, Ltd. v. Small*, 176 A.3d 632, 652 (Del. 2017) (holding that State parks and forests were not sensitive places and Delaware's ban on the possession of firearms in these locations was unconstitutional under the Delaware constitution). At the time of the Founding, the preferred means of addressing the threat of violence was to require law-abiding individuals to be armed. States "typically required that arms be brought to churches or to all public meetings," and "statutes required arms carrying when traveling or away from home." See D. Kopel & J. Greenlee, *The "Sensitive Places" Doctrine*, 13 Charleston L. Rev. 205, 232 (2018) (cited with approval in *Bruen*, 142 S. Ct. at 2133).

While *Bruen* presumptively permits otherwise reasonable regulation of firearms at schools, government buildings, polling places, courthouses and legislative assemblies, we have found no historical justification or analogue for regulating firearms at the other types of locations covered by Bill 109-21, much less within 100 yards of such locations. Firearms bans at parks and churches are thus presumptively invalid, as are Section 57-11(a)'s bans at a "place of public assembly," unless the term is read as restricted to places of legislative assembly, as identified in *Bruen*.

Certainly, nothing in *Bruen* found any historical analogue to a 100-yard, gun-free, exclusion zones. See, e.g., *People v. Chairez*, 2018 IL 121417, 104 N.E.3d 1158, 1176 (2018) (invalidating a 1000 foot exclusion zone around parks under a sliding scale variant of intermediate scrutiny).

The same test applies to Bill 4-21's restrictions on minors. For example, the Fifth Circuit sustained federal restrictions on persons under the age of 21 in *NRA v. BATF*, 700 F.3d 185, 197-98, 205 (5th Cir. 2012), under intermediate scrutiny. Yet, *Bruen* cites *NRA* and expressly rejects its test and its reasoning. *Bruen*, 142 S.Ct. 2127 n.4. In contrast, in *Hirshcheld v. BAFT*, 5 F.4th 407 (4th Cir.), *vacated as moot*, 14 F.4th 322 (4th Cir. 2021), *cert. denied*, 142 S.Ct. 1447 (2022), the Fourth Circuit exhaustively examined the relevant history concerning minors and persons under the age of 21 and found the same federal law to be unconstitutional under intermediate scrutiny (no less). Again, it is the County's burden to prove that its regulation of firearms, in all its particulars, survives by reference to a well-established, representative historical analogue. It will have an opportunity to do so in response to plaintiffs' motion. See *Bruen*, 142 S. Ct. at 2130 n.6 (noting that the historical inquiry presents "legal questions" that judges are capable of addressing) (emphasis in original); see also id. at 2135 n.8 (rejecting the dissent's suggestion that further fact-finding was needed and holding that its ruling did not "depend on any of the factual issues raised by the dissent").

Because *Bruen* may now be outcome determinative of the case, a remand and holding this federal claim in abeyance would be obviously inappropriate. Indeed, it might turn out to be unnecessary for this Court to address the State law claims at all and those claims could be either voluntarily dismissed by plaintiffs or remanded after a decision by this Court applying *Bruen*. Alternatively, plaintiffs might well ask this Court to exercise its supplemental jurisdiction under 28 U.S.C. § 1367(a), and rule on these State law claims in conjunction with the Second

Amendment claim. Those State law claims certainly "form part of the same case or controversy" within the meaning of Section 1367(a).

This is not a re-litigation of the Court's prior remand order. Rather, this case must now be adjudicated with the recognition that *Bruen* has changed the legal landscape in fundamental ways, including how the State law claims can and should be litigated. After all, *Bruen* has not only abrogated the Maryland Court of Appeals' previously controlling decision in *Williams*, it has likewise abrogated every lower court decision applying means-ends, intermediate scrutiny to sustain firearms regulations. Cf. *Columbus-America Discovery Group v. Atlantic Mut. Ins. Co.*, 203 F.3d 291, 304 (4th Cir. 2000) (noting that law of the case doctrine does not apply where "'controlling authority has since made a contrary decision of law applicable to the issue'") (quoting *United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999)). The Count IV vagueness claims pale in comparison to scope of remedies available under the Second Amendment. The Second Amendment claim is now the predominant claim. See Feb. 7, 2022 slip op. at 5-8 (Exh. A).

Severing Count V and holding it in abeyance while remanding Counts I, II and III would also be especially unfair and unjust. As this Court noted in its prior order, remands are governed in part by "principles of economy, convenience, fairness, and comity and whether the party seeking remand is engaged in a manipulative tactic." (Feb. 7, 2022 slip op. at 10) (Exh. A). Those "principles" would be violated by any order that would allow the County to continue to argue in State court that *Bruen* should be ignored in construing the scope of the County's authority under subsection 4-209(b)(1). No decision in State court on any of the State law claims can change the result that Section 57-11 of the County Code, as amended by Bill 4-21, is unconstitutional under *Bruen*.

The County is also playing games with its abeyance demand. The County's removal of this case to federal court strips the State court of its concurrent jurisdiction to consider the Second Amendment claim, thus arguably insulating the County from *Bruen* in that forum. By then seeking to hold the Second Amendment claim in abeyance in this Court, the County hopes that this Court will permit it to frustrate or delay the exercise of the fundamental constitutional right newly recognized in *Bruen* indefinitely, perhaps for years, while the State law claims are being litigated in State court. Such tactics seek delay for the sake of delay and are thus unethical. See, e.g., *ATSI Comm., Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 154 n.11 (2d Cir. 2009) (noting that a suit filed to gain a tactical advantage and not to vindicate the party's rights is an improper purpose). This Court should not be a part of such a scheme to deny constitutional rights. The Court should emphatically reject the County's "manipulative tactics."

## CONCLUSION

For the foregoing reasons, the County's motion to remand Counts I, II & III of the Amended Complaint and to hold Counts IV and V in abeyance should be denied. The cases should be consolidated without delay.

Respectfully submitted,

*/s/ Mark W. Pennak*

MARK W. PENNAK
Maryland Shall Issue, Inc.
9613 Harford Rd.
Ste C #1015
Baltimore, MD 21234-21502
mpennak@marylandshallissue.org
Phone: (301) 873-3671
MD Atty No. 1905150005
District Court Bar No. 21033

*Counsel for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MARYLAND SHALL ISSUE, INC., *et al.*, ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| v. ) | Case No. 8:21-cv-01736-TDC |
| ) | Case No. 8:22-cv-01967-DLB |
| MONTGOMERY COUNTY, MD, ) | |
| ) | |
| *Defendant*. ) | |

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on August 9, 2022, the forgoing "Plaintiffs' Opposition To Defendant's Motion To Remand Counts I, II & III To State Court And Opposition To Defendant's Motion To Hold The Federal Claims In Abeyance" was served on opposing counsel listed below via ECF service:

Edward B. Lattner
101 Monroe St.
Rockville, MD 20850

Patricia L. Kane
101 Monroe St.
Rockville, MD 20850

Sean C. O'Hara
101 Monroe St.
Rockville, MD 20850


/s/ Mark W. Pennak
_____
MARK W. PENNAK
Maryland Shall Issue, Inc.
9613 Harford Rd, Ste, C #1015
Baltimore, MD 21234-21502
mpennak@marylandshallissue.org
Phone: (301) 873-3671
Bar No. 21033

Dated: August 9, 2022.