IN THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY, MARYLAND

MARYLAND SHALL ISSUE, INC., *et al.*
9613 Harford Rd., Ste C #1015
Baltimore, MD 21234
   *Plaintiffs,*

v.                                                            Case No. C-02-CV-22-000217

ANNE ARUNDEL COUNTY,
 MARYLAND
44 Calvert Street
Annapolis, MD 21401
   *Defendant.*

**PLAINTIFFS' SUBMISSION OF SUPPLEMENTAL AUTHORITIES**

A.   Introduction

Plaintiffs respectfully submit this memorandum for the purpose of bringing to the Court's attention the Supreme Court's recent decision in *New York State Rifle & Pistol Association, Inc. v. Bruen,* --- S.Ct. ---, 2022 WL 2022 WL 2251305 (U.S. June 23, 2022). A copy of the Court's opinion is attached for the convenience of the Court as Exhibit A. As explained in plaintiffs' motion for summary judgment and in their opposition to the County's motions, Bill 109-21 is based on the authority granted by MD Code, Criminal Law, 4-209(b)(1)(iii), which is but a narrow exception to the broad preemption of County firearms regulation set forth in subsection 4-209(a) of that statute. As detailed in plaintiffs' prior pleadings, there are multiple reasons to narrowly construe the authority to regulate allowed by subsection 4-209(b)(l), but an important reason is that the broad construction of subsection 4-209(b)(1), brings Bill 109-21 into conflict not only with multiple provisions of State law, but also with the Second Amendment to the Constitution. See Plaintiffs' Opp. to Def's Motion for Summary Judgment and Memo. In Support of Summary Judgment at 10 (addressing Second Amendment in the context of standing), *id*., at 17 (arguing that

**EXHIBIT B**

Bill 109-21 affects rights of persons from all over Maryland to acquire arms and/or ammunition from County dealers), *id*. at 48-52 (arguing that subsection 4-209(b)(1) must be construed narrowly to avoid constitutional questions), *id*., at 55 (noting that Second Amendment rights are "implicated" by Bill 109-21 for purposes of the vagueness challenge to Bill 109-21). As detailed below, the Supreme Court's recent decision in *Bruen* make these Second Amendment considerations even more important and more stark.

As detailed below, subsection 4-209(b)(1)(iii) must be very narrowly construed to save it from being unconstitutional under *Bruen*. See *Galloway v. State*, 365 Md. 599, 625, 781 A.2d 851 (2001) ("we narrow the construction of the statute . . . to save it from possible unconstitutional vagueness"). See also *Skilling v. United States*, 561 U.S. 358, 406 (2010) ("The elementary rule is that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality.") (citation omitted). As thus narrowly construed, Bill 109-21 plainly is unauthorized and thus preempted by the broad preemption provisions of subsection 4-209(a). This Court should so hold. Such a holding would leave to another day the question of whether subsection 4-209(b)(1)(iii) is, itself, unconstitutional under *Bruen* in so far as it permits local regulation "within 100 yards of or in a park, church, school, public building, and other place of public assembly." On the other hand, if the Court should hold that Bill 109-21 is authorized by subsection 4-209(b)(1)(iii), then the constitutionality of subsection 4-209(b)(1)(iii) is squarely presented and should be decided. Any County regulation that relies on the authority granted by an unconstitutional statute is, by necessity, also *ultra vires* and unconstitutional.

It bears emphasis that the County's claim of power is not limited to mere dealer regulation. If the County may utilize subsection 4-209(b)((1)(iii) to regulate dealers under Bill 109-21, it may likewise claim the same power to regulate broadly the "purchase, sale, taxation, transfer,

manufacture, repair, ownership, possession, and transportation" of any firearms or ammunition under exactly the same reliance on subsection 4-209(b)(1)(iii). The constitutionality of the authority accorded by subsection 4-209(b)(1)(iii) is to assessed by its language, not merely by the County's application of that language in Bill 109-21. As *Bruen* makes clear, it is the County's burden to prove an historical analogue for such any regulation. As the discussion below makes clear, it is highly doubtful it can do so for all the areas encompassed by Bill 109-21. Section 4-209(b)(1)(iii) thus may constitutionally authorize local regulation only with respect to the "sensitive areas" as defined in *Bruen*. As detailed below, Bill 109-21 fails under that standard.

We acknowledge, of course, that plaintiffs did not bring a separate Count in the Complaint under the Second Amendment. At the time the Complaint was filed in this case, the Maryland Court of Appeals had squarely held, in *Williams v. State*, 417 Md. 479, 496, 10 A.3d 1167 (2011), that the Second Amendment did not apply outside the home at all, stating that "[i]f the Supreme Court…meant its holding [in *Heller* and *McDonald*][1] to extend beyond home possession, it will need to say so more plainly." *Bruen* has now "plainly" held that the Second Amendment extends beyond home possession and thus abrogates that ruling in *Williams*. Similarly, courts had analyzed the Second Amendment rights of firearms dealers under the "means-end," two-step intermediate scrutiny test. See, e.g., *Teixeira v. County of Alameda*, 873 F.3d 670, 691 (9th Cir. 2017) (en banc), *cert. denied*, 138 S.Ct. 1988 (2018). See also *MSI v. Hogan*, 971 F.3d 199, 216 (4th Cir. 2020) (relying on *Teixeira* and holding that a firearms dealer had standing to assert its own Second

---

[1] *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. Chicago,* 561 U.S. 742 (2010).

Amendment rights as well as the Second Amendment rights of its customers and members of MSI); *Drummond v. Township of Robinson*, 784 Fed.Appx. 82, 85 n.8 (3d Cir. 2019) (citing *Teixeira* and holding that "a textual and historical analysis" was required at the first step of analyzing laws that regulated "acquiring firearms and maintaining proficiency in their use"). As explained below, that "means-end" approach and intermediate scrutiny analysis was likewise abrogated by *Bruen*. And, as noted above, plaintiffs have consistently argued that the Second Amendment is critically important to the scope and constitutionality of Bill 109-21 in other respects. That the Second Amendment was not raised as a separate claim is thus of no moment. See Rule 2-303(e) ("All pleadings shall be so construed as to do substantial justice."). See *Hays v. State,* 240 Md. 482, 486, 214 A.2d 573 (1965) (holding no waiver of an existing right where the law had changed because of an intervening decision of the Supreme Court).

However, should there be any doubt on that score and should the Court deem it necessary to reach the issue of whether Bill 109-21 and/or subsection 4-209(b)(1)(iii) are unconstitutional under the Second Amendment, then the Court should, at minimum, allow plaintiffs to amend the complaint under Rule 2-341(b) of the Maryland Rules. See, e.g., *RRC Ne., LLC v. BAA*, 413 Md. 638, 673-74, 994 A.2d 430 (2010) ("[L]eave to amend complaints should be granted freely to serve the ends of justice and ... it is the rare situation in which a court should not grant leave to amend."); *Hartford Accident & Indem. Co. v. Scarlett Harbor Ass'n Ltd. P'ship*, 109 Md.App. 217, 248, 674 A.2d 106 (1996) ("Amendments are allowed so that cases will be tried on their merits rather than upon the niceties of pleading and to prevent the substantial injustice of a cause ... being defeated by formal slips or slight variances.") (internal quotations and citations omitted). Such an amendment would simply incorporate the prior allegations of the Complaint and add one more Count to allege that Bill 109-21 violates the Second Amendment. Should the Court deem it

necessary, the Court may construe this memorandum as a formal request for leave to amend under Maryland Rule 2-341(b). But again, plaintiffs believe that no such amendment is necessary because the Court should very narrowly construe subsection 4-209(b)(1)(iii) to preserve as much of that statute as possible and hold that, so construed, subsection 4-209(b)(1)(iii) did not authorize the County to enact Bill 109-21. That would mean that Bill 109-21 would be preempted by the broad preemption provisions of Section 4-209(a). Such a holding would dispose of Count II of the Complaint.

**B.     *Bruen***

In *Bruen*, the Supreme Court held that the Second Amendment right to bear arms means "a State may not prevent law-abiding citizens from publicly carrying handguns because they have not demonstrated a special need for self-defense." Slip op. at 24-25 n.8. Specifically, the Court struck down as unconstitutional New York's "proper cause" requirement for issuance of a permit to carry a handgun in public. The Court went on to reject the "means-end," two step, intermediate scrutiny analysis used by the lower courts to sustain gun regulations, holding that "[d]espite the popularity of this two-step approach, it is one step too many." The Court ruled that "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."

Under this test, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. at 15. Applying that test in *Bruen*, the Court rejected New York's "attempt to characterize New York's proper-cause requirement as a 'sensitive-place' law," ruling that "expanding the category

of 'sensitive places' simply to all places of public congregation that are not isolated from law enforcement defines the category of 'sensitive places' far too broadly." Slip op. at 22. Such a definition, the Court explained, "would in effect exempt cities from the Second Amendment and would eviscerate the general right to publicly carry arms for self-defense." (*Id*.). As the Court explained, "[p]ut simply, there is no historical basis for New York to effectively declare the island of Manhattan a 'sensitive place' simply because it is crowded and protected generally by the New York City Police Department." (*Id*.).

*Bruen* is, of course, controlling authority. See, e.g., *State v. Madison*, 240 Md. 265, 275, 213 A.2d 880 (1965) ("Under our governmental system, the decisions of the Supreme Court must be controlling even when, as here, the decision makes invalid a long-established provision of the Maryland Constitution, previously held valid by this Court."). Indeed, it provides precisely the guidance that the Maryland Court of Appeals sought in *Williams*. The teachings of *Bruen* were thus recognized and applied in *Fooks v. State,* --- A.3d ---, 2022 WL 2339412 (Ct. of Sp. Appeals, June 29, 2022). There, the Court of Special Appeals sustained the conviction of the defendant for illegal possession of a firearm by a disqualified person as consistent with *Bruen*, but recognized that in *Bruen* "the Supreme Court declined to adopt both prongs of the two-prong test" for assessing Second Amendment challenges, and had thus rejected "means-ends scrutiny in the Second Amendment context." Slip op. at 11. The Court of Special Appeals also recognized that *Bruen* "defines the boundaries of firearms regulation *solely* in historical terms." (*Id*. at 12)(emphasis supplied). A copy of *Fooks* is attached as Exhibit B.

Stated simply, *Bruen* makes clear that subsection 4-209(b)(1)(iii) must itself be very narrowly construed in order to save it from being struck down as unconstitutional. As previously detailed, Section 4-209(a) broadly preempts County regulation of anything having to do with

firearms, providing that "the State preempts the right of a county, municipal corporation, or special taxing district to regulate the purchase, sale, taxation, transfer, manufacture, repair, ownership, possession, and transportation of: (1) a handgun, rifle, or shotgun; and (2) ammunition for and components of a handgun, rifle, or shotgun." Subsection (b)(1)(iii) then purports to provide exceptions to this broad preemption provision, stating that county, municipal corporation, or special taxing district may regulate the purchase, sale, transfer, ownership, possession, and transportation of the items listed in subsection (a) of this section: *** (iii) except as provided in paragraph (2) of this subsection, within 100 yards of or in a park, church, school, public building, and other place of public assembly." The County here relies exclusively on subsection 4-209(b)(1)(iii), as giving it the authority to broadly define "place of public assembly" to mean, as defined in Bill 109-21, "a location used for a gathering of 50 or more persons for deliberation, worship, entertainment, eating, drinking, amusement, shopping, awaiting transportation, or similar uses." See Anne Arundel Code, § 12-6-101, as enacted by Bill 109-21. Bill 109-21 then incorporates that definition of "place of public assembly" into the Bill's substantive limitations on firearms dealers, providing in County Code § 12-6-102, that "[t]his title applies to dealers within 100 yards of or in a park, house of worship, school, public building, or other place of public assembly."

C.   **Bill 109-21 Is Unconstitutional Under *Bruen*.**

The regulations imposed by Bill 109-21 are plainly unconstitutional under *Bruen*. While the *Bruen* Court indicated that a State may utilize a "shall issue" licensing system to regulate the right to carry a handgun outside the home, *Bruen*, slip op. at 30 n.9, the Court stressed that such licensing system must be based on objective criteria, and not be dependent on any discretionary decision-making by the licensing official. See *Bruen*, slip op. 4-5. Indeed, the *Bruen* Court

expressly identified Maryland's carry permit law, requiring a "good and substantial reason" for a permit, as example of the type of "may issue" law that is, like New York's, invalid under this analysis precisely because it accorded licensing officials discretion. See slip op. at 6 n. 2. The Maryland Attorney General has thus advised the Maryland State Police that the "good and substantial reason" requirement "is now clearly unconstitutional" and that the State Police "is not required to continue enforcing—and, in fact, may not continue to enforce—the 'good and substantial reason' requirement in processing public-carry permit applications." AG Opinion Letter at 1 (July 6, 2022) (attached as Exhibit C).

Here, the County does not purport to create any such "shall issue," objective licensing system for the requirements imposed by Bill 109-21. Quite to the contrary. Bill 109-21 first expressly conditions the right of a State-licensed dealer to operate upon the approval of the police by requiring the dealer to obtain a yearly license from the police. See County Code 12-6-102. The issuance of that local license is left to the utter discretion of the police, who have unlimited power over the approval of the dealer's security measures. The security requirements imposed by Bill 109-21 are also highly subjective and vague and thus accord the police virtually unlimited enforcement discretion. See Plaintiffs' Opp. to Def's Motion for Summary Judgment and Memo. In Support of Summary Judgment at 41-43. For example, under Bill 109-21, the police are empowered to post a police officer at the dealer's business (at the dealer's expense) if the police are of the opinion that a violation of the vague requirements imposed by Bill 109-21 are such as to "bring the security of firearms into question." See County Code, § 12-6-301(a). There is nothing objective about such a requirement. These requirements do not survive scrutiny as a type of objective licensing system required by *Bruen*.

As noted, the Court of Special Appeals has already held that *Bruen* "defines the boundaries of firearms regulation solely in historical terms." *Fooks*, slip op at 12. There is no historical analogue that could justify the vague regulatory requirements imposed by Bill 109-21. The County bears the burden of proof to show the historical presence of such analogous regulations. See *Bruen*. at 52 ("we are not obliged to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden."). Under *Bruen*, "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." Slip op. at 8. Here, the text of the Second Amendment indisputably covers the sale or acquisition of firearms and ammunition. See page 3, *supra*; Plaintiffs' Opp. to Def's Motion for Summary Judgment and Memo. In Support of Summary Judgment at 49 and n.6. In such cases, "the government may not simply posit that the regulation promotes an important interest," but rather "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen,* slip op. at 8. The County has not and cannot make any such showing.

*Bruen* holds that governments may regulate firearms at "legislative assemblies, polling places, and courthouses" (*Bruen*, slip op. at 21), and states that "courts can use analogies to those historical regulations of 'sensitive places' to determine that modern regulations prohibiting the carry of firearms in new and analogous sensitive places are constitutionally permissible." (*Id*.). See also *Bruen*, slip op. at 21 (noting that sensitive places could likewise include "schools and government buildings," as discussed in *Heller*). But nothing in *Bruen* can be read to allow a State (or a municipality) to regulate activities protected by the Second Amendment at the types of locations regulated by Bill 109-21.

Indeed, the Court in *Bruen* expressly rejected New York's attempt to ban the exercise of Second Amendment rights at "all places of public congregation," holding that such a regulation

"would eviscerate the general right to publicly carry arms for self-defense." (Slip op. at 22). The County's attempt to regulate every dealer operation within 100 yards of any place "within 100 yards of . . . place of public assembly" as defined in Bill 109-21 fails under this holding in *Bruen*. Other than the locations mentioned in *Bruen*, such places "of public assembly" in the County are no more "sensitive" than "places of public congregation" in Manhattan or elsewhere in New York. While *Bruen* presumptively permits regulation of firearms at schools, government buildings, polling places, courthouses and legislative assemblies, we have found no historical justification or analogue for regulating firearms at the other types of locations covered by Bill 109-21, much less within 100 yards of such locations. See D. Kopel & J. Greenlee, *The "Sensitive Places" Doctrine*, 13 Charleston L. Rev. 205, 229–236, 244-247 (2018), cited with approval in *Bruen*, slip op. at 21.

Significantly, American law at the time the Bill of Rights was adopted "typically *required* that arms be brought to churches or to all public meetings," and "statutes *required* arms carrying when traveling or away from home." *Id*. at 232 (emphasis added). See also *id*., at 242 (noting that "Boston's unusual law against carrying loaded guns into buildings was far outnumbered by statutes all over America that required bringing guns into churches, and sometimes to other public assemblies."). Under *Bruen*, the historical analogue necessary to justify regulation must be "a well-established and representative historical *analogue*." *Bruen*, slip op. at 21. Historical "outlier" requirements of a few jurisdictions are to be disregarded. *Bruen*, slip op. at 46 n.22, 57, 62. Certainly, nothing currently in Maryland State law purports to regulate or ban permit holders from carrying in churches or other places of worship or places of public assembly. In fact, churches, mosques and synagogues in Maryland and elsewhere commonly use permit holders among their members to provide protection. The State Police, in the past, has found such use to be a "good and substantial reason" for the issuance of a carry permit under MD Code, Public Safety, § 5-

306(a)(6)(ii). Allowing a County to ban carry by permit holders at such places under subsection 4-209(b)(1)(iii) would seriously jeopardize the ability of places of worship to provide for their own security. *Bruen* simply does not permit such bans.

The Fourth Circuit discussed whether parks are a "sensitive place" in *United States v. Masciandaro*, 638 F.3d 458 (4th Cir.), *cert. denied,* 565 U.S. 1058 (2011), but the court ultimately elected not to decide the question but rather to apply intermediate scrutiny to sustain the constitutionality of the Park Service regulation there at issue. That holding in *Masciandaro* was expressly abrogated in *Bruen*. See *Bruen*, slip op. at 6 (citing *Masciandaro* with disapproval). Indeed, the Parks Police regulation at issue in *Masciandaro* was legislatively abrogated by Congress with the enactment of Pub.L. 113-287, § 3, 128 Stat. 3168 (2014), codified at 54 U.S.C. § 104906. That legislation affirmatively made it legal for persons to carry firearms in the National Park System, if such carry is otherwise consistent with the law of State in which the Park is situated. See 54 U.S.C. § 104906(b). Many States generally allow possession of firearms in State parks, including Pennsylvania, Title 18 § 6109 (m.3) & (n), and Ohio, Title 29: 2923.126 (B)(7), just to name two. Other States allow such access by carry permit holders. See, e.g, Wisconsin, Wisc. Code § 29.089(2)(d). See, generally, https://www.handgunlaw.us/. There is no wide-spread modern tradition of banning firearms in parks by permit holders, much less an "established and representative" historical one.

Indeed, the Delaware Supreme Court held in *Bridgeville Rifle & Pistol Club, Ltd. v. Small*, 176 A.3d 632, 652 (Del. 2017), that Delaware's regulation broadly banning firearms in State parks and forests was unconstitutional under the Delaware's State constitution version of the Second Amendment. In so holding, the court expressly held that such a regulation could not be justified under any "sensitive place" analysis. *Bridgeville*, 176 A.3d at 654. As the court explained, "State

Parks and State Forests also present a far different 'place restriction' than one limiting possession of firearms in a school or courthouse—traditional 'sensitive places,' where the courts in *Heller* and *Doe* suggested that restrictions might be constitutional." (176 A.3d at 658). The Delaware Supreme Court has likewise applied intermediate scrutiny to hold that a resident had a State constitutional right to carry a firearm in a residential common area. *Doe v. Wilm. Hous. Auth.*, 88 A.3d 654, 665-68 (Del. 2014). And the Delaware Superior Court has struck down a State regulation banning firearms from State park camping sites, holding that such places were not sensitive areas. *Delaware State Sportsmen's Association v. Garvin*, 196 A.3d 1254, 1271 (Del.Sup.Ct. 2018).

Likewise in *People v. Chairez*, 2018 IL 121417, 104 N.E.3d 1158, 1176 (2018), the Supreme Court of Illinois applied a sliding scale version of means-ends scrutiny to hold that an Illinois statute that banned the possession of a firearm within 1000 feet of a public park violated the Second Amendment, holding that the area regulated was not a sensitive place and that the State had failed to justify the restriction with "evidentiary support." See also *Morris v. Army Corps of Engineers*, 60 F. Supp. 3d 1120 (D. Idaho 2014), *appeal dismissed*, 2017 WL 11676289 (9th Cir. 2017) (holding that Army regulation banning firearms at Corps' outdoor recreation sites was unconstitutional under the Second Amendment, and rejecting the government's argument that the sites were sensitive places); *Ezell v. City of Chicago*, 846 F.3d 888, 894-95 (7th Cir. 2017) (invaliding the City of Chicago's location zoning restrictions on firing ranges, holding that restrictions could not be justified as sensitive places under a sliding scale of heightened scrutiny).

The Eleventh Circuit's decision in *GeorgiaCarry.Org, Inc. v. Georgia*, 788 F.3d 1318, 1328 (11th Cir. 2015), is easily distinguishable. There, the court merely held, on an interlocutory appeal, it was "missing basic information" that the court thought necessary to decide whether the Army Corps of Engineers property there at issue was a "sensitive place" under heightened scrutiny.

The court thus concluded that the district court did not abuse its discretion in denying a preliminary injunction under that standard. That approach is obviously inconsistent with the *Bruen*'s abrogation of any "means-end" scrutiny under the Second Amendment in favor of a strict historical analysis. In short, even before *Bruen*, parks and other areas of general public access were generally not considered to be sensitive places, even under intermediate scrutiny. There is no evidence that parks in particular were historically regulated at the time of the Founding. Under *Bruen*, it is the County's burden to prove the contrary.

Finally, and even apart from *Bruen*, we reiterate that the County's attempt to regulate every "person in the business of selling, renting, or transferring firearms at wholesale or retail" (County Code 12-6-101(1)), is inconsistent and in conflict with State law, which strictly regulates dealers who sell regulated firearms while leaving the regulation of long gun sales by federally licensed dealers to federal law. See Plaintiffs' Opp. to Def's Motion for Summary Judgment and Memo. In Support of Summary Judgment at 31-32. That regulation of State-licensed dealers is in the context of statutory preemption provisions in State law that expressly preclude local regulation of the sale, transfer and possession of regulated firearms. See Plaintiffs' Opp. to Def's Motion for Summary Judgment and Memo. In Support of Summary Judgment at 23-24. The State has also expressly preempted local regulation of long gun transfers as well. MD Code, Public Safety, § 5-207(a). Instead of regulating federal licensees, the State makes affirmative use of such federally licensed dealers to facilitate background checks for the private sale of long guns. MD Code, Public Safety, § 5-204.1. The County plainly enacted Bill 109-21 so as to expand its power to regulate the sale of all firearms throughout the County. That effort is unconstitutional under *Bruen* and in direct conflict and inconsistent with the comprehensive system of regulation of firearms dealers under

State law. Constitutionally, subsection 4-209(b)(1)(iii) simply cannot be stretched to authorize the enactment of Bill 109-21.

# CONCLUSION

For all the foregoing reasons, and for the reasons previously set forth, plaintiffs' motion for summary judgment should be granted and defendant's motion to dismiss and for summary judgment should be denied.

                                          Respectfully submitted,

                                          */s/ Mark W. Pennak*

                                          MARK W. PENNAK
                                          Maryland Shall Issue, Inc.
                                          9613 Harford Rd, Ste C #1015
                                          Baltimore, MD 21234-21502
                                          mpennak@marylandshallissue.org
                                          Phone: (301) 873-3671
                                          MD Atty No. 1905150005

Dated: July 14, 2022                        *Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on July 14, 2022, a copy of the foregoing PLAINTIFFS' SUBMISSION OF SUPPLEMENTAL AUTHORITIES was served on counsel of record via the MDEC e-filing system:

/s/ *Mark W. Pennak*

MARK W. PENNAK
*Counsel for Plaintiffs*