UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

MARYLAND SHALL ISSUE, INC.,
ENGAGE ARMAMENT, LLC,
ANDREW RAYMOND,
CARLOS RABANALES,
BRANDON FERRELL,
DERYCK WEAVER,
JOSHUA EDGAR,
I.C.E. FIREARMS & DEFENSIVE
TRAINING, LLC,
RONALD DAVID and
NANCY DAVID,

    Plaintiffs,

v.

MONTGOMERY COUNTY, MARYLAND,

    Defendant.

Civil Action No. TDC-21-1736

**MEMORANDUM OPINION**

Plaintiffs have filed this civil action against Defendant Montgomery County, Maryland ("the County"), alleging that a recently enacted County ordinance regulating ghost guns and other undetectable guns violates Article XI-E of the Maryland Constitution; the Maryland Express Powers Act; the Takings Clause of the Maryland Constitution; the Due Process Clause of Article 24 of the Maryland Declaration of Rights; and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Pending before the Court is Plaintiffs' Motion to Sever and Remand All State Law Claims and to Hold in Abeyance, which is fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local

EXHIBIT A

R. 105.6. For the reasons set forth below, Plaintiffs' Motion will be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

On April 16, 2021, the County Executive of Montgomery County signed into law Bill No. 4-21, legislation passed by the Montgomery County Council to regulate ghost guns, undetectable guns, 3D-printed guns, and major components of such guns. Bill No. 4-21 amended the County's existing firearms ordinance by adding such guns and their components to the list of items subject to the County's prohibitions on the transfer of guns to a minor and on the sale, transfer, possession, or transport of firearms within 100 yards of a place of public assembly. Bill No. 4-21 also expanded the definition of a "place of public assembly" to include "a place where the public may assemble, whether the place is publicly or privately owned." Bill No. 4-21 at 4, Compl. Ex. A, ECF No. 7. Finally, the bill added a requirement for the Montgomery County Police Department to report annually on the availability and use of ghost guns and undetectable guns within the County. The effective date of Bill No. 4-21 was July 16, 2021.

On May 25, 2021, Plaintiffs filed this action in the Circuit Court for Montgomery County, Maryland, alleging four counts numbered as follows: (1) that by expanding the "place of public assembly" definition, the County exceeded its authority under Article XI-E of the Maryland Constitution to enact local laws; (2) that Bill No. 4-21's amendments are inconsistent with and preempted by existing state law, in violation of the Maryland Express Powers Act, Md. Code Ann., Local Gov't § 10-206 (LexisNexis 2013); (3) that Bill No. 4-21 violates the Takings Clause of the Maryland Constitution, Md. Const. art. III, § 40, and the Due Process Clause in Article 24 of the Maryland Declaration of Rights ("the Maryland Due Process Clause") by depriving gun owners of property without legal process or compensation; and (4) that Bill No. 4-21's definitions of "place

2

of public assembly," "ghost gun," "major component," and other terms are unconstitutionally vague, in violation of the Maryland Due Process Clause and the Due Process Clause of the Fourteenth Amendment. Plaintiffs requested a declaratory judgment on all four counts, a preliminary and permanent injunction barring enforcement of Bill No. 4-21, compensatory and punitive damages for the Fourteenth Amendment violation pursuant to 42 U.S.C. § 1983, and attorney's fees and costs pursuant to 42 U.S.C. § 1988.

On June 16, 2021, Plaintiffs filed an Emergency Motion for Partial Summary Judgment, which was scheduled for a hearing in the Circuit Court on July 15, 2021. On July 12, 2021, before the hearing could take place, the County removed the case to this Court pursuant to 28 U.S.C. § 1441 based on federal question jurisdiction.

**DISCUSSION**

In their Motion, Plaintiffs argue that the state law claims in this case should be severed and remanded to state court because (1) severance and remand is mandatory under 28 U.S.C. § 1441(c); and (2) remand is warranted under 28 U.S.C. § 1367 because the state law claims predominate and this case raises novel or complex issues of state law. Plaintiffs also request that the remaining federal claim be stayed pending completion of the state court proceedings on the remanded state law claims.

**I.  Section 1441**

Plaintiffs first argue that severance and remand is mandatory under 28 U.S.C. § 1441(c), which provides, in relevant part, that:

(1)  If a civil action includes—

 (A)  a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of section 1331 of this title), and

3

(B)   a claim not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by statute,

the entire action may be removed if the action would be removable without the inclusion of the claim described in subparagraph (B).

(2)   Upon removal of an action described in paragraph (1), the district court shall sever from the action all claims described in paragraph (1)(B) and shall remand the severed claims to the State court from which the action was removed.

28 U.S.C. § 1441(c).

This provision does not require remand. Although it requires severance and remand of "all claims described in paragraph (1)(B)," which as relevant here consists of any "claim not within the original or supplemental jurisdiction of the district court," such severance is not required because all of the state law claims are within this Court's supplemental jurisdiction. 28 U.S.C. § 1441(c)(2). A federal district court has supplemental jurisdiction over "all other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Here, where the Court has original jurisdiction over Plaintiffs' federal due process claim and the state law claims provide different legal theories by which Plaintiffs challenge the same County ordinance at issue in the federal claim, the Court concludes that it has supplemental jurisdiction over the state law claims. Plaintiffs do not argue otherwise. Because the state law claims here are not subject to the mandatory severance and remand provision of 28 U.S.C. § 1441(c)(2), remand is not warranted on that basis.

## II.   Section 1367

That severance and remand is not mandatory does not the end the inquiry. Historically, pendent or supplemental jurisdiction has been "a doctrine of discretion." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995) (stating that 28 U.S.C. § 1367 codified the doctrine of pendent jurisdiction developed in *Gibbs*).

4

Under § 1367, a federal district court "may decline to exercise supplemental jurisdiction over a claim" if:

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Pursuant to this provision, a court has the "inherent power . . . in cases removed from State court, to remand." *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617 (4th Cir. 2001). In deciding "the additional question of whether to remand" claims to state court, a court should consider "principles of economy, convenience, fairness, and comity" and "whether the efforts of a party in seeking remand amount to a 'manipulative tactic.'" *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988)). Here, Plaintiffs argue that declining supplemental jurisdiction and remanding the state law claims is warranted because the state law claims substantially predominate over the federal claim, and they raise a novel or complex issue of state law.

### A. Substantially Predominate

The United States Supreme Court has stated that federal district courts should decline to exercise jurisdiction over state law claims if the state law issues substantially predominate "in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought." *Gibbs*, 383 U.S. at 726. "Once it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage," a district court "may fairly" decline to exercise jurisdiction over the state claim. *Id.* at 727. State law claims may predominate when "the state law claims are more complex or require more judicial resources to adjudicate or are more

5

salient in the case as a whole than the federal law claims." *Diven v. Amalgamated Transit Union Int'l*, 38 F.3d 598, 602 (D.C. Cir. 1994) (citation omitted). Here, while Plaintiffs do not suggest that the proof required differs for the state law claims as compared to the federal claim, the scope of the issues raised and the comprehensiveness of the remedy sought illustrate that the state law claims substantially predominate over the federal due process claim.

Although the County argues that the scope of the issues is "essentially identical across all four counts" because both the federal claim and the collection of state law claims would require analysis of the term "place of public assembly" as defined in Bill No. 4-21, Opp'n Mot. Remand at 8-9, ECF No. 19, the Court does not construe the scope of the state law claims so narrowly. The state law claims collectively constitute a frontal attack on the validity of Bill No. 4-21 based on an array of state constitutional and statutory arguments. Counts 1 and 2 argue that the County's enactment of Bill No. 4-21 violated provisions of the Maryland Constitution and state statutes that limit the authority of the county to legislate on firearms. Count 2 in particular asserts that numerous different provisions of Bill No. 4-21 conflict with or are preempted by state law, in violation of Maryland's Express Powers Act. Count 3 asserts that all of the limitations on gun possession throughout Bill No. 4-21 violate state constitutional provisions barring the taking of private property without due process and compensation. In contrast, the sole federal claim in Count 4 is limited in scope. It challenges the County's definition of specific words and phrases such as "public," "may assemble," "library," "recreational facility," "park," "unfinished receiver," and "major component" as unconstitutionally vague and overly broad as to invite arbitrary enforcement, in violation of the Due Process Clause of the Fourteenth Amendment. Compl. ¶¶ 58-62, ECF No. 7.

Moreover, the state law claims are more complex and would likely require more judicial resources to resolve. While the federal claim would primarily require the Court to examine specific phrases in Bill No. 4-21, the state law claims require the Court to look beyond the text and analyze the interplay between the bill and various Maryland constitutional and state law provisions. For example, the claim in Count 1 that the County is not authorized to enact this legislation requires analysis of whether it is the type of "local law[]" permitted by Article XI-E of the Maryland Constitution. Md. Const. art. XI-E. In response, the County states that its authority to legislate in this instance arises not from Article XI-E, but instead from Article XI-A, thus requiring the Court to analyze both provisions to evaluate the scope of the County's authority under the Maryland Constitution. *See* Md. Const. arts. XI-A, XI-E. Count 2, which alleges that Bill No. 4-21 conflicts with and is preempted by state law, requires an analysis of the six different Maryland statutes that Plaintiffs claim to preempt or conflict with Bill No. 4-21. Although the County argues that there is no preemption because Bill No. 4-21 fits within a statutory exception permitting a county to regulate certain specific gun activities, *see* Md. Code Ann., Crim. Law § 4-209(b) (LexisNexis 2021), consideration of that argument would require the Court to separately analyze that statute and Maryland firearm preemption law more generally. Further, the state constitutional claims in Count 3 add another complex legal analysis relating to two state constitutional provisions to the range of issues presented by the state law claims.

The comprehensiveness of the remedies sought also illustrates that the state law claims predominate. Plaintiffs primarily seek declaratory and injunctive relief against enforcement of Bill No. 4-21. If successful on the state law claims, the scope of that relief would be broader than what they could obtain by prevailing on the federal claim alone. For example, Plaintiffs' success on the federal due process claim likely would not bar enforcement of provisions of Bill No. 4-21

unconnected to the terms challenged as unconstitutionally vague, such as the limitations on transferring to a minor ghost guns not containing an unfinished receiver or guns made through a 3-D printing process. Because resolution of the federal claim in Plaintiffs' favor would still require consideration of whether the state law claims invalidate other provisions of Bill No. 4-21, the remedy sought through the federal claim is less comprehensive than the remedy sought through the state law claims.

For these reasons, the Court concludes that the state law claims "substantially predominate" over the federal claim. The state claims "constitute[] the real body of [the] case," and the federal claim here is "only an appendage." *Gibbs*, 383 U.S. at 727.

### B. Novel or Complex Issue of State Law

As for whether the state law claims present a novel or complex issue of state law, the Court also finds that at least one of Plaintiffs' claims presents such an issue, specifically, Plaintiffs' assertion in Count 2 that Bill No. 4-21 is preempted by state law. In Count 2, Plaintiffs challenge Bill No. 4-21 based on the assertion that six different Maryland state statutes conflict with or preempt it in some way. Although the County argues that the preemption issue is limited to the question of whether Bill No. 4-21 fits within the explicit statutory exception to preemption of firearms regulations which permits a county to regulate the "purchase, sale, transfer, ownership, possession, and transportation" of firearms "with respect to minors" or within 100 yards of a "place of public assembly," Md. Code Ann., Crim. Law § 4-209(b)(1), the existence of this provision does not resolve the question of whether Bill No. 4-21 conflicts with the other allegedly preemptive or conflicting state statutes, or how such conflicts should be reconciled with section 4-209(b). The parties have not cited, and the Court has not identified, any controlling authority applying that statutory exception or meaningfully interpreting its scope.

8

Notably, the existing law relating to whether Maryland has preempted local government laws regulating firearms, including the coverage of section 4-209, is not easily navigated. In *Mora v. City of Gaithersburg*, 462 F. Supp. 2d 675 (D. Md. 2006), a judge in this District analyzing section 4-209 and several other state statutory provisions that preempt local authority to regulate firearms concluded that "[s]tate law has so thoroughly and pervasively covered the subject of firearms regulation and the subject so demands uniform state treatment, that any non-specified regulation by local governments is clearly preempted." *Id.* at 687, 690 (holding that the City of Gaithersburg's questionnaire, which requested more information for the return of a firearm than that required under state law to possess a firearm, was preempted by state law), *modified on other grounds*, 519 F.3d 216 (4th Cir. 2008). The court further concluded that "there can be no doubt that the exceptions to otherwise blanket preemption" in Maryland state law "are narrow and strictly construable." *Id.* Subsequently, in *State v. Phillips*, 63 A.3d 51 (Md. Ct. Spec. App. 2013), the Maryland Court of Special Appeals held that a local ordinance that was not expressly preempted by section 4-209(a) was not impliedly preempted because Maryland "ha[d] not so extensively regulated the field of firearm use, possession, and transfer that all local laws relating to firearms are preempted." *Id.* at 56, 75-76 (holding that a Baltimore City ordinance requiring certain persons convicted of gun offenses to register with the police commissioner was not void based on preemption). Against this landscape, another judge in this District has noted that there is a "lack of clarity regarding the preemption of local law" on firearm use, possession, and transfer. *Blue v. Batth*, No. GJH-15-1024, 2017 WL 4162244, at *5 n.7 (D. Md. Sept. 18, 2017).

Significantly, while the County cites to two opinions from the Maryland Attorney General addressing preemption of local gun laws, no party has cited to authority from the Maryland Court of Appeals interpreting section 4-209. The sole Maryland Court of Appeals case referenced by

the County, *Montgomery County v. Atlantic Guns, Inc.*, 489 A.2d 1114 (Md. 1985), interprets a predecessor preemption provision and is thus of limited value. *See id.* at 1115, 1118 (finding a county ordinance regulating loaded handguns to be preempted because the express preemption provision barring regulation of handguns applied to the regulation of ammunition).

Against this backdrop of limited relevant Maryland case law, the preemption issue presented is a matter of first impression. The Maryland courts have yet to consider and resolve a challenge to Bill No. 4-21, on preemption grounds or otherwise, and they have not considered Plaintiffs' specific theory under Count 2 that the County's broadened definition of "place of public assembly" has expanded the regulation of firearms beyond what is permitted by section 4-209(b). Under these circumstances, the Court finds that the state law claims involve a "novel or complex issue of State law." 28 U.S.C. § 1367(c)(1). Because the Court finds that the state law claims both substantially predominate over the federal claim and that at least one state law claim involves a novel or complex issue of state law, the Court may decline to exercise supplemental jurisdiction over the state law claims.

### C. Other Considerations

In determining whether to remand, the Court also considers the principles of economy, convenience, fairness, and comity and whether the party seeking remand is engaged in a manipulative tactic. *Hinson*, 239 F.3d at 617. The Court does not find that Plaintiffs have engaged in a manipulative tactic in seeking remand, so the Court will focus on the other factors.

Principles of economy and convenience generally support keeping all claims in one forum. In this instance, however, Plaintiffs request a remand of state law claims and a stay of the sole remaining federal claim until the state claims are resolved. This approach would mitigate concerns about economy and convenience by preventing the County from having to litigate simultaneously

in two separate forums and, depending on the proceedings in state court, may obviate the need to litigate the federal claim to completion. Moreover, because this action is in the early stages of litigation and the parties do not anticipate discovery, there is no concern about having wasted judicial resources by remanding at this stage of the action.

The County argues that because the legal theories advanced by Plaintiffs "contain significant overlap," there is a risk that issues of estoppel may complicate adjudication of the federal claim. Opp'n Mot. Remand at 10. The Court finds that Plaintiffs' claims in Counts 1-3 are different enough in nature and scope from the federal claim that this risk is not significant. Although this risk may be greater as to Count 4, in which the federal and state vagueness claims are largely duplicative, the Court will address this risk by exercising supplemental jurisdiction over the state law claim in Count 4 and declining to sever and remand that claim.

Most importantly, the Court finds that any benefits of judicial economy or convenience that could be achieved by keeping all of the claims in one forum are significantly outweighed by the principles of fairness and comity, which favor remand of the state law claims. This litigation is at its core about whether a local government ordinance regulating firearms violates the Maryland Constitution and state law restrictions on such local government provisions. "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Gibbs*, 383 U.S. at 726. Accordingly, the Court concludes that interests of comity outweigh any minimal federal interest in having this Court insert itself into what is primarily a dispute over the scope of a local government's authority to legislate under state law. *See, e.g., Kimberlin v. Nat'l Bloggers Club*, No. GJH–13–3059, 2015 WL 1242763, at *18 (D. Md. Mar. 17, 2015) (declining to exercise supplemental jurisdiction because "no federal policy . . . would be furthered" by the Court

presiding over state law claims and one federal claim). The Court will therefore decline to exercise supplemental jurisdiction over Counts 1-3 and will sever those counts and remand them to state court.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Sever and Remand All State Law Claims will be GRANTED IN PART and DENIED IN PART in that the Court will decline to exercise supplemental jurisdiction over the claims in Counts 1, 2, and 3, which will be severed and remanded to the Circuit Court for Montgomery County, and Count 4 will be stayed and held in abeyance pending the state court's resolution of Counts 1, 2, and 3. A separate order shall issue.

Date: February 7, 2022

THEODORE D. CHUANG
United States District Judge